# **EXHIBIT 4**

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Attorneys for Walker Edison Furniture Company, LLC*

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **COMPLAINT** <br><br> Civil No. <br><br><br> Judge _____ <br><br> Discovery Tier 3 <br><br><br> **Jury Trial Demanded** |

**COMPLAINT**

Plaintiff Walker Edison Furniture Company LLC ("**Walker Edison**" or the "**Company**"), for its Complaint against Defendants, alleges as follows:

**INTRODUCTION**

1.      This action seeks to recover approximately $210 million of cash that Defendants wrongfully took from Walker Edison, a Utah-based global furniture company. In March 2021, Defendants, the former controlling owners and their affiliates, abused their positions of control to cause the Company to borrow more than $300 million in order to fund an improper $210 million dividend that went straight into Defendants' pockets. This illegitimate transfer occurred at the worst possible time for Walker Edison, amid spiraling costs, cash flow and inventory problems, and related revenue challenges of which Defendants were fully aware, rendering the Company effectively insolvent, short of cash, and unable to pay its debts as they became due.

2.      Defendants—who were not just the controlling owners but also comprised essentially the entirety of Walker Edison's senior management and governing board—did so with full knowledge that the dividend was improper because of the Company's effective insolvency. They knew that the Company was facing a liquidity crisis. They knew the Company's financial statements and projections were inaccurate and unreasonable because they did not account for massive increases in expenses. They knew that no fair or reasonable valuation of the Company justified such a large dividend. And they knew that removing approximately $210 million from the Company and taking on $300 million in new debt just as costs were skyrocketing would exacerbate its liquidity problems and put the Company's survival at risk. Indeed, when the loan to Walker Edison closed on March 31, 2021 and Defendants paid

themselves their massive dividend, the Defendants knew that (i) the Company had cash flow problems and was unable to pay its manufacturers on time, (ii) the historical financial statements overstated profitability by failing to properly account for freight expenses that were rapidly increasing, (iii) the financial projections used to justify the dividend failed to account for the massive increase in expenses the Company had experienced during the preceding months, and (iv) the Company would be unable to meet the financial covenants required under the new financing.

3.      Defendants paid themselves anyway.  And when the Company's cash shortages compounded soon afterward, Defendants unsuccessfully sought to remedy the consequences of their wrongful conduct through desperate efforts to obtain additional financing and additional equity investments.  These measures were not enough.  In the span of only one year—the very year Defendants decided to take approximately $210 million in badly needed cash out of the Company that could have been used to weather difficult times—the Company burned through over $100 million of cash to address the same spiraling costs and inventory challenges that were evident to the Defendants prior to the dividend payment.  Two years later, its performance still has not recovered.

4.      By early 2023, unable to reverse the effects of their misconduct, Defendants abandoned the Company in a change-of-control transaction and exited the disaster they had created.  As a result, Walker Edison's lenders assumed ownership and control of the Company and provided approximately $50 million of additional capital support to support operations.  Meanwhile, Defendants, as former owners, have retained the benefits of their massive and improper payout.  As a result of the facts described herein, Walker Edison brings the instant suit

to right this egregious wrong and to recoup the Company's capital, which should have remained with the Company and should never have been paid out to Defendants as a dividend.

## JURISDICTION, VENUE, AND DISCOVERY TIER

5.      Jurisdiction is proper under Utah Code § 78A-5-102(1).

6.      Venue is proper in this Court under Utah Code § 78B-3-307(1)(a) because this is the county in which the causes of action arose, and Utah Code § 78B-3-307(1)(b) because this is the county in which one or more Defendants reside at the commencement of this action.

7.      Defendants Brad Bonham and Matt Davis are residents of Utah and therefore subject to the general personal jurisdiction of this Court.

8.      Defendant MB & BB Holdings, LLC is subject to the general personal jurisdiction of this Court because it is a Utah limited liability company with its principal place of business in Utah.

9.      Collectively, Brad Bonham, MB & BB Holdings, LLC, and Matt Davis are referred to as the "**Founder Defendants**."

10.     Defendants Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., and Prospect Hill Growth Fund II Co-Invest, L.P. (collectively, the "**PHGP Defendants**" and with the Founder Defendants, the "**Defendants**") are subject to personal jurisdiction in this Court pursuant to Utah Code § 78B-3-201 et seq.

11.     This case involves claims for more than $300,000, and therefore falls within Tier 3 of Rule 26(c)(3) of the Utah Rules of Civil Procedure.

4890-0050-5178

## THE PARTIES

I.    **PLAINTIFF WALKER EDISON FURNITURE COMPANY LLC**

12.    Walker Edison is a Utah limited liability company, with its principal place of business at 1553 West 9000 South, West Jordan, Utah.

II.    **DEFENDANTS**

13.    Brad Edison Bonham is the former Chief Executive Officer and co-owner of Walker Edison, as well as a member of the board of directors that controlled Walker Edison at all times relevant to this Complaint. On information and belief, he resides in Salt Lake City, Utah.

14.    MB & BB Holdings, LLC is a Utah limited liability company, with its principal place of business at 4350 West 2100 South, Suite A, Salt Lake City, Utah. On information and belief, it is owned and managed by Defendant Brad Bonham.

15.    Matthew Brown Davis is the former Chief Operating Officer and co-owner of Walker Edison, as well as a member of the board of directors that controlled Walker Edison at all times relevant to this Complaint. On information and belief, he resides at 6141 W. Cherry Springs Ct., Salt Lake City, Utah.

16.    Walker Edison Holding Company, LLC ("**Walker Edison Holding**") is a Delaware limited liability company. On information and belief, its principal place of business is in West Jordan, Utah.

17.    Prospect Hill Growth Partners, L.P. ("**Prospect Hill**") is a Delaware limited partnership, with its principal place of business at 500 Totten Pond Road, 6th Floor, Waltham, Massachusetts.

5

18.     JWC-WE Holdco, LLC is a Delaware limited liability company.  On information and belief, its principal place of business is in Waltham, Massachusetts.

19.     JWC-WE Holdings, L.P. is a Delaware limited partnership.  On information and belief, its principal place of business is in Waltham, Massachusetts.

20.     Prospect Hill Growth Fund II, L.P. is a Delaware limited partnership.  On information and belief, its principal place of business is in Waltham, Massachusetts.

21.     Prospect Hill Growth Fund II Co-Invest, L.P. is a Delaware limited partnership. On information and belief, its principal place of business is in Waltham, Massachusetts.

22.     Phil Damiano is an Operating Partner at Prospect Hill and was the non-executive chairman of the board of directors that controlled Walker Edison at all times relevant to this Complaint.  On information and belief, he resides in or around Waltham, Massachusetts.

23.     Ken Murphy is CEO of a Prospect Hill portfolio company and a member of the board of directors that controlled Walker Edison at all times relevant to this Complaint.  On information and belief, he resides in or around Philadelphia, Pennsylvania.

24.     Adam Suttin is Managing Partner of Prospect Hill and was a member of the board of directors that controlled Walker Edison at all times relevant to this Complaint.  On information and belief, he resides in or around Newton, Massachusetts.

25.     Kyle Casella is a Principal at Prospect Hill and was a member of the board of directors that controlled Walker Edison at all times relevant to this Complaint.  On information and belief, he resides in or around Boston, Massachusetts.

26.     David Fiorentino is a former Partner at Prospect Hill and was a member of the board of directors that controlled Walker Edison at all times relevant to this Complaint.  On information and belief, he resides in or around Winchester, Massachusetts.

27.     Does 1 through 100 are individuals who received unlawful distributions or transfers or participated in some manner in the events described in this Complaint, and therefore proximately caused or are otherwise liable for the injuries and damages that this Complaint describes.  The true names and capacities of Does 1 through 100 are not now known to Plaintiff, who therefore sues these Defendants by fictitious names.  Plaintiff will amend this Complaint to show their true names and capacities as it learns this information.

## FACTUAL ALLEGATIONS

### III.    WALKER EDISON'S BUSINESS AND ORGANIZATION.

#### A.    Operations.

28.     Walker Edison is a supplier of affordable, ready-to-assemble home furnishing products through e-commerce channels to consumers worldwide.  Defendants Brad Bonham and Matthew Davis founded the Company in or around 2006.  Brad Bonham served as Walker Edison's Chief Executive Officer until June 2022 and served on the board of directors that controlled Walker Edison until the Company changed owners in 2023.  Matt Davis served as Walker Edison's Chief Operating Officer until April 2022 and continued to serve on the board of directors that controlled Walker Edison until the Company changed owners in 2023.  In the years leading up to 2020, Walker Edison was a profitable company with an impressive track record.

29.     Unlike traditional brick-and-mortar furniture stores, at all relevant times Walker Edison operated exclusively through e-commerce channels, in which orders are placed on

platforms such as Wayfair and Amazon. The vast majority of its products are shipped from Walker Edison's manufacturing suppliers in Asia and South America to the Company's own distribution centers or to the distribution centers of its e-commerce channel partners. From these distribution centers, orders are then drop-shipped directly to consumers.

30.    In order to meet customer demands for prompt delivery, Walker Edison must carefully manage its network of distribution centers and maintain a sophisticated inventory management system and a dedicated logistics team. E-commerce platforms therefore monitor the performance of suppliers like Walker Edison to ensure prompt and satisfactory deliveries to consumers. If Walker Edison fails to meet expectations, its listings on e-commerce platforms will drop lower in the platform's search results, which reduces the visibility of Walker Edison's products and negatively impacts sales.

31.    Walker Edison operates in a highly competitive industry with relatively few e-commerce platforms through which to sell its products to consumers. As of January 2021, approximately 86% of the Company's sales were generated through relationships with just four e-commerce platforms—Wayfair, Amazon, Walmart, and Target. Accordingly, Walker Edison must maintain good relationships with its e-commerce platform partners because disruptions on even one platform can have serious consequences for Walker Edison.

**B.    Corporate Structure.**

32.    Plaintiff Walker Edison is, and has been at all times relevant to this Complaint, fully owned by Walker Edison Intermediate, LLC ("**Walker Edison Intermediate**"). In turn, during the relevant period, Walker Edison Intermediate was fully owned by Defendant Walker Edison Holding. On information and belief, at all relevant times, neither Walker Edison nor

4890-0050-5178

Walker Edison Intermediate had a dedicated board of directors, including when Defendants decided to incur the new debt and to pay the dividends that are the subjects of this Complaint. Rather, the board of directors for Walker Edison Holding (the "**Board**") controlled all material decisions of Walker Edison Intermediate and Walker Edison. On information and belief, at all relevant times, the Board was controlled and dominated by Defendants Davis, Bonham, and Prospect Hill. On information and belief, the Board did not have a single independent director, and was comprised solely of insiders.

C.    **Prospect Hill and the Founder Defendants Owned and Controlled Walker Edison.**

33.    Prior to September 2018, Walker Edison was jointly owned by the Founder Defendants and a California-based private equity and mezzanine debt provider.

34.    In or around September 2018, the PHGP Defendants, comprising a Massachusetts-based private equity firm and family of funds now known as Prospect Hill, but then known as J.W. Childs Associates, acquired for approximately $191 million a 55% majority share of the Company from the Founder Defendants and the California-based firm, with the Founder Defendants retaining a 45% ownership interest.

35.    Prospect Hill is a private equity investor that has invested over $2.8 billion in 37 portfolio companies.

36.    Following Prospect Hill's 2018 investment, Defendant Brad Bonham continued to serve as CEO, and Defendant Matt Davis continued to serve as COO. Both Defendants Bonham and Davis also continued to serve on the Board. Upon acquiring a majority share of the Company, Prospect Hill added its own Board members, including non-executive chairman Phil Damiano (Operating Partner at Prospect Hill), Ken Murphy (CEO of a Prospect Hill portfolio

company), Adam Suttin (Managing Partner of Prospect Hill), Kyle Casella (then-Vice President and now Principal at Prospect Hill), and David Fiorentino (then-Partner at Prospect Hill). On information and belief, there were no independent directors on the Board.

## IV. DEFENDANTS FALSELY PORTRAYED WALKER EDISON'S FINANCIAL HEALTH TO ATTRACT FINANCING FOR A MASSIVE DIVIDEND.

### A. Defendants Sought to Cash Out of the Business Following a Period of Explosive Growth.

37. The Company experienced massive growth in the years leading up to and including portions of 2020 amid the COVID-19 pandemic. During that period, e-commerce furniture sellers experienced significant sales growth as brick-and-mortar competitors shut their doors and consumer demand rose as people were forced to spend more time at home. Industry-wide, the share of all furniture sales conducted online grew from only 21% pre-COVID-19 to 71% of all furniture sales during the peak of the COVID-19 pandemic from March 19 to May 20, 2020.

38. Walker Edison benefited from the significant and immediate growth in the online furniture industry. From 2017 to 2020, Walker Edison saw EBITDA grow from $13 million to $84 million. EBITDA stands for earnings before interest, taxes, depreciation, and amortization. It is one of the most widely used measures of a company's overall financial performance. And while such growth peaked during the pandemic, online furniture sales overall remained above pre-pandemic levels even after brick-and-mortar competitors began to reopen.

39. In at least as early as 2020, seeking to capitalize on this explosive growth, the existing shareholders—Defendants Bonham, Davis, and Prospect Hill—decided it was the right time to launch an effort to extract cash from the business.

40.     On information and belief, in order to finance their desired payout, Defendants considered a number of options to allow them to liquidate their ownership in the Company, including an acquisition by a Special Purpose Acquisition Company ("**SPAC**"), a large equity investment, or a debt financing.

41.     Ultimately, Defendants' efforts in late 2020 and early 2021 to explore various non-debt options proved unsuccessful, and they settled on a strategy to finance their payout through a dividend recapitalization, or "dividend recap."  This required the Company to incur $300 million of additional debt in order to fund an approximately $210 million dividend to themselves (the "**Dividend**").  Without the loan, Defendants could not have paid such a large dividend to themselves, and with the loan, the Company's debt load would increase tremendously.  Having failed to realize alternative strategies, Defendants began soliciting potential lenders on behalf of the Company in or around March 2021.  On information and belief, the efforts to fund this dividend recap were led by Defendants Bonham, Davis, and representatives of Defendant Prospect Hill, including Defendants David Fiorentino, Philip Damiano, Kyle Casella, and others.

**B.      The Company Began to Experience Financial Distress Before Defendants Received the Dividend.**

42.     In late 2020, while Defendants were strategizing ways to fund their payout, Walker Edison management discovered that overseas freight and shipping costs had been skyrocketing due to pandemic-related supply chain issues, and that the Company's accrual accounting method had been inappropriately understating freight costs.

43.     From March 2020 to March 2021, the cost of a single ocean shipping container used to transport Walker Edison's products from its overseas manufacturers rose from

4890-0050-5178

approximately $2,600 to $7,300, an increase of approximately 180%, year over year. By December 2021, the cost of a single container increased to approximately $8,800.

44.    Not later than October 2020, Defendants knew that freight and shipping expenses were rising rapidly and that their accounting methods were not accurately reflecting real-time increases. On October 9, 2020, for example, the Company's Controller notified the CFO that in working on the month-end closing process for the Company's income statement, he had noticed an "area of significant concern" relating to an unusual increase in freight and shipping expenses that he could not explain, including a cost balance that had grown 57% since the previous month, and that was five times higher than the previous January. The CFO reviewed the income statement figures and replied "my biggest concern is the shipping expenses. Would really like to know what's going on there. Seems like maybe the cost allocations for capitalizing freight are being understated potentially?" In fact, the Company's accounting was significantly understating freight costs in violation of Generally Accepted Accounting Principles due to a failure to reconcile actual freight costs with capitalized prepaid costs.

45.    Defendants were aware of this serious problem by not later than December 2020, and quickly realized that it could spook potential investors and therefore jeopardize their desired payout. Accordingly, the Founder Defendants and PHGP Defendants suppressed mention of these issues in promotional materials. On December 8, 2020, a PHGP representative told the Founder Defendants that "[we] thought not ideal to call out ocean freight at this point as the market dynamics are still fluctuating and we might not want buyers scrutinizing this." (emphasis added) On information and belief, Defendants continued to investigate, monitor, and discuss the increased freight and shipping costs—and the Company's failure to properly account for freight

costs—over the next two months, including during the Company's closing of its year-end financial statements in February 2021, when the Company again confirmed that there were, in fact, significant errors with the Company's freight accounting that had the effect of understating freight expenses and materially overstating gross profit and EBITDA.

46.     Defendants knew that these financial statements did not reflect the Company's true financial position, but elected not to rectify the accounting misstatements, which understated the costs and thereby overstated net income.  On information and belief, they decided not to correct these misstatements because correcting the accounting information could impair the Founder Defendants' and PHGP Defendants' chances of achieving a large payday through a new equity investment or dividend recap transaction.

47.     Rising freight and shipping costs were not the only problem that the Company was beginning to face.  The same supply chain disruptions that were causing increased freight and shipping costs were also causing a spike in Walker Edison's out-of-stock rates and on-time delivery rates, both of which directly impact Walker Edison's sales.  High out-of-stock rates lead to lost revenue because Walker Edison cannot sell what it does not have.  And both high out-of-stock rates and low on-time delivery rates negatively impact a seller's relationship with e-commerce platforms and cause their listings to appear lower in the platform's search results.  In combination, these problems were also creating significant cash flow problems for the Company.

48.     Defendants knew that problems were mounting with their out-of-stock and on-time delivery rates, which would cause problems down the road prior to paying themselves the Dividend.  But as with freight expenses, Defendants relied on and reported financial information that did not reflect the reality that the business was facing.  On information and belief, the

13

misstated out-of-stock rates and on-time shipment rates, of which Defendants were aware, negatively affected the Company's preferential page placement with key e-commerce partners and contributed to a significant decline in sales in at least May and June, 2021.

49.    All of these issues, among others, meant that the Defendants knew the Company, prior to the issuance of the Dividend, was facing disruption to its business and financial projections that would impact the Company's ability to pay debts as they came due.  As the months played out, and as a result of these known circumstances, the Company did in fact begin hemorrhaging cash to such an extent that it faced challenges in funding ongoing operations.

C.    **Defendants Portrayed a Financially Healthy Company When Walker Edison Was Actually in Crisis.**

50.    To attract potential lenders to loan the Company $300 million in new money, and to justify taking the approximately $210 million Dividend out of the company despite the imminent cash flow problems that Defendants knew were on the horizon, Defendants relied upon and disclosed to lenders financial data through February 2021 that they knew was not reasonable or realistic under the circumstances.

51.    More specifically, the projections that Defendants relied on and distributed to potential lenders in March 2021 contemplated that Walker Edison would continue its earlier strong performance despite known and knowable facts to the contrary.  The faulty projections included the below.

- Gross profit:  Defendants projected gross profit of $197.2 million in 2021, which was higher than the Company's last-twelve-month ("**LTM**") gross profit of $146.5 million.

- Reported EBITDA:  Defendants projected reported EBITDA of $104.4 million for 2021.

- Adjusted EBITDA: Defendants projected adjusted EBITDA of $111.6 million for 2021. Adjusted EBITDA is a measure of EBITDA that removes what the Company considers to be nonrecurring, or one-time items.

52. In reality, because the Company was experiencing diminished liquidity to fund operations, revenue challenges, and increased costs that were not reflected in the Company's historical financial statements or go-forward projections, these projections were intentionally misleading.

53. Meanwhile, to justify causing the Company to borrow $300 million to fund the Dividend, Defendants represented in forecasts that the Company's explosive growth—including the "bump" in sales that the Company and industry experienced during the first year of the COVID-19 pandemic—would continue without disruption. In other words, the Defendants premised their efforts to finance a massive dividend for their exclusive benefit on (a) unwarranted assumptions that the Company would continue the substantial growth it experienced as a result of the COVID-19 pandemic; and (b) bad data that they knew misleadingly omitted the impact of increased freight, shipping, and other costs, which impacts would ultimately also contribute to slumping sales.

54. The financial statements and projections that Defendants shared with potential equity investors and lenders portrayed a successful and growing company. The reality was that Defendants knew by no later than March 2021 that the Company was experiencing decreased profits and sales, increased expenses, and a substantial liquidity shortage. Undeterred in their mission to extract the Dividend from the Company, Defendants knowingly provided materially inaccurate information to lenders and relied on that information to justify the Dividend.

4890-0050-5178

55.     In contrast to the rosy portrayal of the Company that Defendants made to lenders, Defendants had begun internally to express decidedly pessimistic views of the Company's financial position, none of which were disclosed to potential investors or lenders.  On March 11, 2021, for example—approximately three weeks before closing the new $300 million loan and causing the Dividend to be issued—Defendant Bonham told Defendant Davis and other Walker Edison employees that they "just had a meeting with the P[rospect] H[ill] guys," where the Company's CFO, "shared an erosion happening in our profit profile due to inbound freight and outbound increased FedEx charges."  (Emphasis added).  On the same day, the CFO warned Defendants Bonham and Davis that "I think the price increases are inevitable.  I know we 'think' we will see relief in May or June on the ocean freight, but I wouldn't count on it and I'm really worried about the raw materials market."  (Emphasis added).  There was no disagreement from Defendant Bonham, who, in another email, expressly stated that he did not "see ocean freight or fedex costs reverting."

56.     Tempers appeared to flare at the Company, as Defendants tried to fix the Company's financial woes.  On March 11, 2021, the Company's Controller put it bluntly:  "cash is short right now."  On the same day, the Defendants had attended a meeting to discuss the Company's "recent underperformance."  The Company's President then expressed regrets that "the meeting did not go well and could have been better managed," alluding to Defendants' frustration with the management team that had brought them more bad news without providing any reassurance.  The Company's President then provided the Founder Defendants and PHGP Defendants a summary of next steps that were necessary to address the Company's "reduced profitability, increased costs, and the impact on the FY21 EBITDA forecast."

57.     As the days passed, other management-level employees began expressing concern that the Company would continue to suffer from spiraling freight costs well beyond March 2021. On March 19, 2021, a Company vice president stated that "ocean freight increases will be persistent," and that the increasing freight costs plaguing the Company and the global supply chain would not be "short term/temp."  The Company's Treasurer told the CFO that "it seems like [freight expenses] ha[ve] been going up every month since the first of the year."  On information and belief, the Founder Defendants and PHGP Defendants began holding "all hands" meetings to discuss how to handle the soaring freight and shipping costs, which were quickly burning up the Company's cash resources and risked making the Company's financial position untenable.

58.     Despite this internal discussion, the Company's projections that Defendants used to justify and support the incurrence of the loan and the issuance of the Dividend did not reflect Defendants' knowledge that the Company would continue to suffer from increased freight and shipping costs and that costs would continue to increase after consummation of the transaction.

59.     To the contrary, knowing that they could not hide the issue entirely, Defendants sought to downplay its impact.  At the same time that Defendants and Walker Edison management were discussing the "persistent" and "inevitable" increases in freight and shipping costs and the "erosion in our profit profile"—as Defendant Bonham put it—caused by those increases that were not accounted for in the financial projections, Defendants were telling prospective lenders that the issue had been resolved.  For example, in a confidential information memorandum given to lenders in March 2021, Defendants told lenders that although Walker Edison had "experienced unprecedented supply chain challenges" in November 2020, it "has

since worked through the supply chain challenges, which no longer pose an issue" and that "[t]he Company's January 2021 performance recovered well from December 2020, as the supply chain challenges subsided and Walker Edison continued to experience increased demand."  This statement came at the same time that Defendant Bonham was telling management internally, "I don't see ocean freight or fedex costs reverting" and the Company's president was warning Bonham, Davis, and the PHGP Defendants of "reduced profitability, increased costs, and the impact on the FY21 EBITDA forecast."  In addition, on March 24, 2021, days before closing the new loan, employees of Walker Edison were still grappling with the related errors with the Company's freight accounting, noting that there had been "$6.4 million of freight costs" that were "not being allocated to inventory timely."

60.    As problems mounted, the Company was forced to take drastic steps to deal with its lack of liquidity to pay ongoing debts due to its deteriorating financial condition.  On information and belief, not later than March 2021, the Company started to intentionally delay payments to certain critical vendors to manage its cash liquidity.  While helpful on paper to slow cash burn, delaying critical vendor payments caused material risk to the Company's relationships and business going forward.  As of at least March 17, 2021, management expressed concern that the Company's factory relationships—absolutely essential to the Company's business and survival—could be seriously jeopardized if the Company continued to stretch payments beyond due dates for orders that it had placed, and debated which part of the Company was better positioned to "weather this storm."

61.    And by March 18, the Company had completed an internal projection showing that it would exceed its borrowing capacity under its asset based loan facility (the "**ABL**

Facility")—the Company's key source of liquidity—by May 2021. Incredibly, the projection showed that the Company would burn through more than $100 million in cash—which it did not have—by December 2021.

62.     The Company's actual performance with respect to freight and shipping delays and increased costs not only impacted its cash liquidity in the form of reduced profits, it also reduced the Company's ability to access the bank borrowing that was essential for it to meet its debts. Specifically, the freight and shipping issues had an immediate impact on the Company's ability to borrow cash under its ABL Facility. Prior to the Company obtaining debt financing and issuing the Dividend in March 2021, the Company's ABL Facility had a maximum loan capacity of $55 million. In connection with incurrence of the debt financing, on March 31, 2021, the ABL Facility was also amended to increase the available loan capacity to $75 million. Even prior to that amendment, however, the Company's ability to access that facility was uncertain.

63.     On March 26, 2021, the Company's CFO sent an email to representatives of Prospect Hill and to the Company's lender under the ABL Facility. The CFO stated that (a) the Company's projections (which were used to justify the new loan and the issuance of the Dividend) depended on the Company having access to the full $75 million available under the ABL Facility, but (b) delays in shipments of the Company's inventory precluded the Company from borrowing the full amount it needed under the ABL Facility because the inventory that would serve as the collateral for additional borrowing, would be "in-transit" beyond the lender's permitted limits. Moreover, the amount of inventory in transit "could swing week to week depending on supply chain conditions week to week."

64.     Rather than correct the Company's projections so that they would be realizable at the closing of the debt financing and Dividend or seeking relief under the ABL Facility to address the Company's shipping delays, Defendants intentionally concealed the issue, as they had previously done to keep others from "scrutinizing" the Company's financial problems.  The CFO told the ABL lender and representatives of Defendant Prospect Hill that they should not seek approval for a longer in-transit period at that time, because it might jeopardize Defendants' ability to "stay on the current timeline for close"—i.e., the "timeline" for the Defendants to cause Walker Edison to incur $300 million in new debt so that they could take the $210 million Dividend out of the Company.

**D.      Defendants Caused the Company to Borrow $300 Million to Fund an Approximately $210 Million Dividend to Themselves.**

65.     Even though Defendants knew that the Company was seeing a dramatic "erosion" in its "profit profile," and that the Company's financial statements and projections contained material inaccuracies, they nevertheless plowed ahead undeterred in their desire to cash out of the business.  Having failed to obtain other financing, their only remaining course was to cause Walker Edison to incur $300 million in new secured debt on March 31, 2021, for the purpose of issuing an immediate dividend of approximately $210 million for their own benefit.

66.     Walker Edison, as Borrower, and Walker Edison Intermediate and the Company's subsidiaries, as Guarantors, entered into a loan agreement, dated March 31, 2021 (the "**Loan Agreement**").  Under the Loan Agreement, Walker Edison incurred $300 million of new secured debt (the "**New Secured Loan**") from its lenders.  The New Secured Loan resulted in $294,921,250 in net cash for the Company.  However, Defendants did not permit a single dollar of the New Secured Loan to be kept by the Company to fund its ongoing operating costs or to

4890-0050-5178

solve its known liquidity issues. Rather, 100% of the proceeds of the New Secured Loan were used to pay transaction fees, pay off existing debt of $82,874,156.25, and to fund the Dividend, which amounted to $209,320,503.41. Defendants appear to have attempted to address the Company's liquidity issues by causing the Company to incur even more debt by increasing the loan capacity under the ABL Facility from $55 million to $75 million, notwithstanding the $300 million term loan debt they had just caused the Company to incur. Yet, projections and internal emails showed that even this increased loan capacity under the ABL Facility would either not be available or would be insufficient in light of the Company's substantial liquidity needs and cash burn.

67.    Had Defendants observed corporate formalities, the Dividend would have been distributed through the Company's corporate structure—(i) first to Walker Edison Intermediate, (ii) then to Walker Edison Holding, and (iii) then to the beneficial owners of Walker Edison Holding. The Dividend, however, was not distributed in accordance with this corporate structure. Rather, it was paid in cash directly by Walker Edison to Defendants JWC-WE Holdco, Inc. (on information and belief, an entity owned and/or controlled by Prospect Hill), MB & BB Holdings, LLC (on information and belief, an entity owned and/or controlled by Brad Bonham), and Matthew Davis (collectively, the "**Wrongful Distribution Defendants**"). The cash amounts of the Dividend transferred to the Wrongful Distribution Defendants (the "**Transfers**") are reflected in the below chart.

| Transfer Recipient | Transfer Amount |
|---|---|
| JWC-WE Holdco, Inc. | $119,895,590.37 |
| MB & BB Holdings, LLC | $66,143,473.13 |
| Matthew Davis | $22,049,157.32 |
| Total: | **$208,088,220.82** |

68.    In addition to the Transfers to the Wrongful Distribution Defendants, the Company also distributed $1,232,282.60 of the Dividend for certain senior employee profit interests.  As with the Dividend payouts, the Company did not receive any of the funds distributed to these employee recipients.

69.    The Transfers were made to and for the benefit of the Wrongful Distribution Defendants, each of which were either insiders and controlling owners of Walker Edison or controlled by insiders or controlling owners of Walker Edison.  Walker Edison received no consideration in return for the Transfers.

70.    Not only did the Dividend strip the Company of loan proceeds that should have been used to address its liquidity and performance issues, the $300 million New Secured Loan that funded the Dividend left the Company with substantially increased debt and monthly cost of debt service.  Prior to the consummation of the Loan Agreement and Dividend, the Company had less than $83 million in funded term loan debt and had approximately $22 million outstanding under the ABL Facility that had a borrowing limit of $55 million.  After consummation of the Loan Agreement and the Dividend, the Company had $300 million in funded term loan debt under the Loan Agreement, with an increased borrowing limit under the ABL Facility of $75 million.  As a result of the closing of the Loan Agreement, the cost of the Company's monthly debt service therefore more than tripled, from an average of approximately $640,000 per month in the six months prior to the closing of the Loan Agreement to an average of approximately $2 million per month in the six months following the closing of the Loan Agreement.

4890-0050-5178

71.     In other words, the Loan Agreement that funded the Dividend more than tripled the Company's interest expense and increased the required cash necessary to fund the Company's debt by more than $1.4 million per month at a time when the Company was already experiencing liquidity and cash problems and an inability to pay debts as they came due in the ordinary course of the Company's activities and affairs.  At the same time, the Dividend depleted the Company of approximately $210 million of cash that could have been used to mitigate the Company's operating losses and fund its debt payments.

**V.    AS DEFENDANTS FORESAW, WALKER EDISON'S ACTUAL PERFORMANCE DID NOT IMPROVE AFTER CLOSING THE NEW SECURED LOAN.**

72.     Contrary to Defendants' misleadingly positive portrayal of the Company's financial health, in the weeks leading up to the closing of the New Secured Loan and the issuance of the Dividend, the Company's actual sales were lower than the projections Defendants had provided to obtain the New Secured Loan.  In reality, the Company was facing a severe liquidity shortage and significant increases in expenses (primarily freight, shipping, and distribution center costs) that were not likely to dissipate soon.  Defendants were aware that as of the time they received the Dividend that the Company would not be able to pay its debts as they came due in the ordinary course of the Company's activities and affairs.  This was borne out almost immediately after the closing of the New Secured Loan and the issuance of the Dividend.

73.     Following the issuance of the Dividend on March 31, 2021, the Company missed the projections they had presented to lenders and used to justify the Dividend by a material margin.  The Company's actual 2021 net sales of $399.6 million fell more than ***$100 million***

*short* of its projected forecast of $504.2 million.  And its 2021 actual reported EBITDA of negative $1.6 million fell well short of its projected $104.4 million.

74.    These significant misses reflected the fact that the monthly financials and financial forecasts that Defendants used to justify the Dividend prior to the transaction closing on March 31, 2021, did not reflect the operative reality of the Company due to Defendants' failure to properly allocate freight expenses for accounting purposes, and due to the persistent increase in freight, shipping, and other costs that the Company experienced in the months preceding and following the issuance of the Dividend.  Moreover, the Company's freight and shipping issues prior to the March 31, 2021 closing did not only impact expenses.  The Company began experiencing delayed delivery times to customers prior to the incurrence of the New Secured Loan and issuance of the Dividend, which resulted in increased out-of-stock rates and diminished on-time shipment rates.  This, in turn, negatively affected the Company's page placement with its e-commerce platforms resulting in declining sales.

75.    The Company's actual financial information, which was known to Defendants, showed significant financial headwinds and liquidity problems well before the Dividend was paid.  Based on this, Defendants should have refrained from extracting hundreds of millions of dollars from the Company while taking on massive new debt, because such actions immediately jeopardized the Company's ability to continue operations and pay its debts on time.

76.    Had Defendants used the true financial information that was available to them, neither Defendants nor the Company could have rationalized borrowing and paying the Dividend of approximately $210 million solely from borrowed funds.

## VI.    THE COMPANY ENGAGED IN AN ADDITIONAL EQUITY TRANSACTION.

77.    Defendants' efforts to use the Company to line their own pockets did not stop with the Dividend issued in March 2021, notwithstanding the fact that the Defendants knew that the Company's performance continued to falter at the expense of its creditors.  Rather, in May 2021, Defendants irresponsibly sought and obtained an additional $250 million equity investment from a New York-based private equity growth firm in Walker Edison Holding.  As with the New Secured Loan, this additional investment was, incredibly, used to fund a second massive dividend to Defendants.  Like the Dividend issued in March 2021, barely any of this cash infusion was used to help fund the Company's operations and get it back on its feet.  Ultimately, very little if any of the $250 million investment was distributed to Walker Edison, a de minimis amount compared to the size of the dividends, and to the cash needed by Walker Edison to solve its continued liquidity and operations problems.  Following the additional equity investment, the Company's continuing insolvency only worsened.

## VII.    WALKER EDISON WAS EFFECTIVELY INSOLVENT WHEN THE COMPANY ISSUED THE DIVIDEND.

78.    As a result of the financial difficulties described above, rational projections of the Company's performance and cash flow based on the information actually known by the Defendants would have shown that Walker Edison was insolvent, unable to pay its debts as they came due, and/or would be left with unreasonably small assets at the time of, or as a result of, the Dividend.  It was clear internally that the Company would have little cash to help "weather this storm" that it was facing, and that the combination of the "erosion in our profit profile" that Defendant Bonham identified and the increase in operating and debt expenses would leave the Company in an untenable position financially.  Defendants, however, refused to correct their

materially misleading projections to conform to what they knew. Defendants therefore received the Dividend with knowledge that Walker Edison would not be able to pay its debts as they came due in the ordinary course of the Company's activities and affairs and would be left with unreasonably small assets in relation to its business.

79.     Throughout 2021, based on facts and circumstances that existed as of the Company's entry into the Loan Agreement and issuance of the Dividend, Walker Edison experienced a significant cash shortage and struggled and failed to pay its manufacturers on time. This forced the Company to choose which manufacturers would get paid and which ones would have to wait. The Company's liquidity was not improved by the imposition of the New Secured Loan, as the Company's debt service load increased tremendously, and no proceeds of that loan were made available to the Company for anything other than distribution of the Dividend, repayment of existing debt, or payment of transaction fees. After the closing of the New Secured Loan and the issuance of the Dividend, the Company was only able to fund operations through the later incurrence of more debt and new infusions of equity capital, none of which was reasonably certain or guaranteed to occur when the Dividend was distributed.

80.     As detailed above, the Company's ability to borrow cash under its ABL Facility was limited. And by March 18, 2021, the Company's internal projections showed that it would exceed its borrowing capacity under its ABL Facility—its key source of liquidity—by May 2021 and would burn through over $100 million in cash by December 2021. Therefore, the Defendants knew when they received the Dividend that the Company would be left with unreasonably small assets at the time of, or as a result of, the issuance of the Dividend and would be unable to pay its debts as they became due.

81.    Such anticipated problems were borne out as the months passed.  As of March 31, 2021, the Company had borrowed approximately $22 million under its $75 million ABL Facility. Less than five months later, in August 2021, the Company increased the availability under its ABL Facility to $100 million.  By the end of 2021, the Company had fully drawn the amount available under the ABL Facility, made necessary by the Company's continued failure to meet its projections, which failure was the inevitable consequence of facts and circumstances known and reasonably knowable to Defendants as of March 2021, if not earlier.

82.    Even the increase in availability under the ABL Facility was not sufficient to prevent the Company from running out of cash in 2021.  Between September and December 2021, the Company was forced to obtain an additional $60 million in cash through capital contributions made by the Defendants and other shareholders.

83.    Moreover, because Defendants negotiated the Loan Agreement without properly taking account of the Company's negative financial condition and performance at that time, within months of issuing the Dividend, the Company was in danger of breaching the financial covenants under the Loan Agreement they caused in order to fund their own massive $210 million dividend.  Specifically, during the life of the New Secured Loan, the Company was required to maintain a specific "Total Net Leverage Ratio," which was to be tested quarterly. The Company was unable to even satisfy the *very first* such test on September 30, 2021, however, something that Defendants knew and understood was likely before receiving the Dividend, given the "erosion" of the Company's profit profile and the fact that Defendants "[didn't] see ocean freight and fedex costs reverting," as Defendant Bonham put it.

84.    In fact, by July 2021, only four months after they received the $210 million Dividend, Defendants informed Walker Edison's lenders that the Company's financial picture was so bleak that it may breach the Total Net Leverage Ratio covenant under the Loan Agreement.  Further, on August 27, 2021, Defendants notified Walker Edison's lenders that, due to the additional pressures and an influx of pre-bought inventory, the Company was facing a severe liquidity crisis and likely only had two to four *weeks* of liquidity left.

85.    The Company's insolvency was known and knowable to Defendants at the time of the Dividend and New Secured Loan.  The failure to satisfy the Total Net Leverage Ratio covenant under the Loan Agreement, if not timely cured, threatened to constitute an "Event of Default" under the Loan Agreement, which would allow the full amount of the New Secured Loan to be accelerated and become immediately due, meaning that the full approximately $300 million New Secured Loan would have been immediately due and payable, a consequence that would have caused the Company to fall into bankruptcy.  The Company did not have sufficient cash or refinancing capability to pay such debt when due.  Based on the facts and circumstances known by Defendants but concealed from lenders, as of March 31, 2021, when they extracted the $210 million Dividend, the Company did not have a realistic chance of satisfying the Total Net Leverage Ratio covenant under the Loan Agreement and was otherwise unable to satisfy its debts as they came due in the ordinary course of business.

## VIII.  <u>DEFENDANTS EXECUTE A RESTRUCTURING SUPPORT AGREEMENT AND CHANGE OF CONTROL.</u>

86.    By January 2023, it became clear that, due to Defendants' profligate misuse of Walker Edison's financial resources and debt capacity, the Company would not be able to survive without more drastic action.  Accordingly, Walker Edison, its investors, and the lenders

under the Loan Agreement entered into a Restructuring Support Agreement, dated January 27, 2023 (the "**RSA**").  The purpose of the RSA was to (i) preserve and maximize the value of the Company by improving its balance sheet, (ii) provide necessary liquidity to address the Company's operating needs by providing for an additional $13 million loan under the Loan Agreement, (iii) preserve employee jobs, and (iv) satisfy the Company's ongoing obligations. Under the RSA, Walker Edison's lenders assumed ownership and control over Walker Edison Intermediate, and, in turn, Walker Edison and its subsidiaries.

87.    By early 2023, Defendants' wasteful and unnecessary looting of Walker Edison, a once-successful Utah-based global furniture business, had taken its toll by jeopardizing the long-term survival of the Company.  Defendants, in the face of this disastrous result and having improperly caused a massive liquidity event at the worst possible time simply to line their own pockets, quietly exited the Company, leaving the Company's lenders to pick up the pieces and rebuild.

88.    Prior to the filing of this Complaint, the Company and Walker Edison Intermediate have entered into a tolling agreement to preserve any claims the Company may have against Walker Edison Intermediate, which is now under common ownership with the Company.

### CAUSES OF ACTION

**COUNT I:  Wrongful Distribution Under Utah Code §§ 48-3a-405, 48-3a-406(3)**

(*Against Defendants JWC-WE Holdco, Inc., MB & BB Holdings, LLC, Matthew Davis, and Walker Edison Holding Company, LLC*)

89.    Walker Edison restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

4890-0050-5178

90.    On or around March 31, 2021, Walker Edison issued the Dividend through direct distributions to the Wrongful Distribution Defendants as follows:

| Transfer Recipient | Transfer Amount |
|---|---|
| JWC-WE Holdco, Inc. | $119,895,590.37 |
| MB & BB Holdings, LLC | $66,143,473.13 |
| Matthew Davis | $22,049,157.32 |
| **Total:** | **$208,088,220.82** |

91.    In addition, on information and belief, Walker Edison Holding also received a legal right to some or all of the Dividend pursuant to its operating agreement or other governance documents, and therefore can be considered a recipient of the Dividend.  The knowledge and conduct of the Defendants can be imputed to Walker Edison Holding based on their positions as agents, representatives, officers, directors, and/or owners of Walker Edison Holding.

92.    After the Dividend, Walker Edison was unable to pay its debts as they came due in the ordinary course of Walker Edison's activities and affairs, including payments to manufacturers and suppliers and its obligations under the Loan Agreement.  To continue operations in 2021, the Company required an additional $60 million in equity contributions and an additional $20 million in availability under the ABL Facility.

93.    After the Dividend, Walker Edison's financial statements showed that its total assets were less than the sum of its total liabilities.

94.    The financial statements and valuation analyses used to support the propriety of the Dividend were not reasonable under the circumstances.  Among other reasons, those financial statements and valuations were based on the Company's unreasonable failures to properly account for estimated and actual freight costs, looming out-of-stock inventory and delayed deliveries, revenue impacts from detrimental placement of the Company's products on

e-commerce partners' platforms, excessive inventory costs, and they were based on unreasonable and faulty projections that did not match the reality of the Company's financial condition.

95.    At the time of the Dividend, the Wrongful Distribution Defendants and Walker Edison Holding knew that the Company would not be able to pay its debts as they became due in the ordinary course of the Company's activities and affairs and that Walker Edison's total assets were less than the sum of its total liabilities, and therefore, that the Dividend violated Utah Code § 48-3a-405.

96.    Accordingly, each Wrongful Distribution Defendant and Walker Edison Holding is personally liable to Walker Edison for the amount of the Dividend received by such Defendant which exceeds the amount that could have been distributed without violation of Utah Code § 48 3a 405.

**COUNT II: Constructive Fraudulent Transfer Under Utah Code §§ 25-6-202, 203, 304 And Other Equivalent State Laws**
***(Against Defendants Brad Bonham, Matthew Davis, Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., and Does 1-100)***

97.    Walker Edison restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

98.    Walker Edison holds valid and legally enforceable claims arising out of the Dividend against the Wrongful Distribution Defendants and Walker Edison Holding under Utah Code §§ 48-3a-405 and 48-3a-406(3).

99.    In addition, at the time of the Dividend, Walker Edison was a member-managed limited liability company under the laws of the State of Utah and under control of the Defendants.    Walker Edison Intermediate was the sole member of Walker Edison, and, on

information and belief, consented to the Dividend, and in doing so did not comply with Utah Code § 48-3a-409. Walker Edison holds valid and legally enforceable claims arising out of the Dividend against Walker Edison Intermediate under Utah Code §§ 48-3a-405 and 48-3a-406(1) and Utah Code § 48-3a-409.

100.    On information and belief, after completion of the Dividend by Walker Edison, the Wrongful Distribution Defendants, Walker Edison Holding, and Walker Edison Intermediate subsequently transferred some or all of the proceeds of the Dividend (collectively, the "**Uptier Transfers**") to persons or entities, including Brad Bonham, Matt Davis, Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., and Prospect Hill Growth Fund II Co-Invest, L.P., and certain Doe defendants who have not yet been identified (collectively, the "**Uptier Transfer Defendants**").

101.    On information and belief, the Wrongful Distribution Defendants, Walker Edison Holding, and Walker Edison Intermediate did not receive reasonably equivalent value for the Uptier Transfers.

102.    On information and belief, at the time of the Uptier Transfers, Defendants JWC-WE Holdco, Inc. and MB & BB Holdings, LLC, as well as Walker Edison Holding and Walker Edison Intermediate, were engaged, or were about to be engaged, in a business or a transaction for which their remaining assets were unreasonably small in relation to their business or transaction.

103.    On information and belief, at the time of the Dividend, Defendants JWC-WE Holdco, Inc. and MB & BB Holdings, LLC, as well as Walker Edison Holding and Walker

Edison Intermediate, intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they came due.

104.    On information and belief, Defendants JWC-WE Holdco, Inc. and MB & BB Holdings, LLC, as well as Walker Edison Holding and Walker Edison Intermediate, were insolvent at the time of the applicable Uptier Transfers or became insolvent as a result of the applicable Uptier Transfers.

105.    The Uptier Transfer Defendants and any immediate or mediate transferee of the Uptier Transfer Defendants did not receive any interests or proceeds of the Uptier Transfers in good faith or for value.

106.    The Uptier Transfers are avoidable as constructive fraudulent transfers under Utah Code §§ 25-6-202 and 203.  Under Utah Code § 25-6-304, Walker Edison is entitled to a judgment against the Uptier Transfer Defendants or any immediate or mediate transferee thereof for the lesser of the value of the Uptier Transfers or the amount necessary to satisfy Walker Edison's claims against the Wrongful Distribution Defendants, Walker Edison Holding, and Walker Edison Intermediate, together with prejudgment interest from the date of such transfers, costs, all other relief set forth in Utah Code § 25-6-303, or compensatory damages in an amount to be determined for the value thereof, and any further relief that this Court deems just, fair and equitable.

**COUNT III: Actual Fraudulent Transfer Under Utah Code § 25-6-202 And Other Equivalent State Laws**
***(Against Defendants Brad Bonham, Matthew Davis, Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., and Does 1-100)***

107.    Walker Edison restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

108.    Walker Edison holds valid and legally enforceable claims arising out of the Dividend against the Wrongful Distribution Defendants under Utah Code §§ 48-3a-405 and 48-3a-406(3).

109.    In addition, Walker Edison is a member-managed limited liability company under the laws of the State of Utah.  Walker Edison Intermediate is the member of Walker Edison, and, on information and belief, consented to the Dividend, and in doing so did not comply with Utah Code § 48-3a-409.  Walker Edison holds valid and legally enforceable claims arising out of the Dividend against Walker Edison Intermediate under Utah Code §§ 48-3a-405 and 48-3a-406(1) and Utah Code § 48-3a-409.

110.    On information and belief, after completion of the Dividend by Walker Edison, the Wrongful Distribution Defendants, Walker Edison Holding, and Walker Edison Intermediate subsequently made the Uptier Transfers to the Uptier Transfer Defendants.

111.    The Uptier Transfers were made with an actual intent to hinder, delay, and/or defraud creditors of the Wrongful Distribution Defendants, Walker Edison Holding, and Walker Edison Intermediate, to the detriment and harm of their creditors, including Walker Edison. Such intent can be inferred from several badges of fraud, as set forth in Utah Code § 25-6-202(1)(a), including, among other things, on information and belief:  (i) the Uptier Transfers

4890-0050-5178

were made to and for the benefit of Defendants or their related entities, each of which was an insider of the applicable debtor; (ii) the Uptier Transfers were of substantially all of the applicable debtor's assets; (iii) the value of the consideration received by the debtor was not reasonably equivalent to the value of the Uptier Transfers; (iv) Defendants JWC-WE Holdco, Inc. and MB & BB Holdings, LLC, as well as Walker Edison Holding and Walker Edison Intermediate, were insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; and (v) the Uptier Transfers occurred shortly after a substantial debt was incurred in the form of the obligation of the debtor to return the Dividend.

112.    The Uptier Transfers are avoidable as actual fraudulent transfers under Utah Code §§ 25-6-202 and 203.  Under Utah Code § 25-6-304, Walker Edison is entitled to a judgment against the Uptier Transfer Defendants or any immediate or mediate transferee thereof for the lesser of the value of the Uptier Transfers or the amount necessary to satisfy Walker Edison's claims against the Wrongful Distribution Defendants, Walker Edison Holding, and Walker Edison Intermediate, together with prejudgment interest from the date of such transfers, costs, all other relief set forth in Utah Code § 25-6-303, or compensatory damages in an amount to be determined for the value thereof, and any further relief that this Court deems just, fair and equitable.

### COUNT IV: Breach of Fiduciary Duty
***(Against Defendants Walker Edison Holding, JWC-WE Holdco, Inc., MB & BB Holdings, LLC, Brad Bonham, Matthew Davis, Phil Damiano, Ken Murphy, Adam Suttin, Kyle Casella, and David Fiorentino)***

113.    Walker Edison restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

114.    The Wrongful Distribution Defendants, Walker Edison Holding, Brad Bonham, Phil Damiano, Ken Murphy, Adam Suttin, Kyle Casella, and David Fiorentino (collectively, the "**Controlling Defendants**"), as members of the Board and/or controlling shareholders of Walker Edison owed fiduciary duties of care, loyalty, and good faith to Walker Edison.

115.    The Controlling Defendants' duty of care obligated them to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

116.    The Controlling Defendants were obligated to refrain from dealing with Walker Edison in the conduct of its activities as a person having an interest adverse to the Company.

117.    The Controlling Defendants were obligated to discharge their duties and obligations under applicable law and in accordance with the Walker Edison operating agreement and in the exercise of rights consistently with the contractual obligation of good faith and fair dealing.

118.    The Controlling Defendants exerted direct control over the assets of Walker Edison by, among other things, causing Walker Edison to incur debt and distribute the Dividend to the Wrongful Distribution Defendants, and they did so to their own advantage and at the expense of Walker Edison.

119.    In causing Walker Edison to incur debt and distribute the Dividend to the Wrongful Distribution Defendants, the Controlling Defendants failed to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law, dealt with Walker Edison in the conduct of its activities as persons having interests adverse to the Company, and acted inconsistently with the contractual obligation of good faith and fair dealing.

4890-0050-5178

120.    The Controlling Defendants were required not to plunder Walker Edison for their benefit, or for the benefit of its controlling shareholders and parent limited liability companies.

121.    The Controlling Defendants similarly breached the duties of care, loyalty, and good faith and fair dealing in causing Walker Edison to issue the Dividend at a time when it was effectively insolvent, inadequately capitalized, and unable to pay its debts as they came due in the ordinary course of its activities and affairs.

122.    The Controlling Defendants' wrongful conduct in breach of their duties was not ratified or authorized after full disclosure of all material facts.

123.    The Controlling Defendants' wrongful conduct in breach of their duties was not fair to Walker Edison.

124.    The Controlling Defendants' wrongful conduct in breach of their duties directly and proximately caused damage to Walker Edison and improperly extracted monies from Walker Edison.

125.    Walker Edison is entitled to damages and restitution of amounts improperly taken from Walker Edison as a result of the Controlling Defendants' wrongful conduct.

126.    Walker Edison is entitled to disgorgement of all ill-gotten gains to the Controlling Defendants as a result of their wrongful conduct.

**COUNT V:  Breach of the Implied Covenant of Good Faith and Fair Dealing**
***(Against Defendants Walker Edison Holding, JWC-WE Holdco, Inc., MB & BB Holdings, LLC, Matthew Davis, Brad Bonham, Phil Damiano, Ken Murphy, Adam Suttin, Kyle Casella, and David Fiorentino)***

127.    Walker Edison restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

128.    Under the controlling LLC operating agreements, the Controlling Defendants had an implied obligation to deal with Walker Edison consistent with their implied obligations of good faith and fair dealing.

129.    The Controlling Defendants breached the implied covenant of good faith and fair dealing that is contained in every contract.

130.    The Controlling Defendants were obligated to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

131.    The Controlling Defendants were obligated to refrain from dealing with Walker Edison in the conduct of its activities as a person having an interest adverse to the Company.

132.    The Controlling Defendants were obligated to discharge their duties and obligations under applicable law and in accordance with the Walker Edison operating agreement and in the exercise of rights consistently with the contractual obligation of good faith and fair dealing.

133.    The Controlling Defendants exerted direct control over the assets of Walker Edison by, among other things, causing Walker Edison to incur debt and distribute the Dividend to the Wrongful Distribution Defendants, and they did so to their own advantage and at the expense of Walker Edison.

134.    In causing Walker Edison to incur debt and distribute the Dividend to the Wrongful Distribution Defendants, the Controlling Defendants failed to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law, dealt with Walker Edison in the conduct of its activities as persons having interests adverse to the Company, and acted inconsistently with the contractual obligation of good faith and fair dealing.

135.    The Controlling Defendants were required not to plunder Walker Edison for their benefit, or for the benefit of its controlling shareholders and parent limited liability companies.

136.    The Controlling Defendants similarly breached their obligation of good faith and fair dealing in causing Walker Edison to issue the Dividend at a time when it was effectively insolvent, inadequately capitalized, and unable to pay its debts as they came due in the ordinary course of its activities and affairs.

137.    The Controlling Defendants' wrongful conduct was not ratified or authorized after full disclosure of all material facts.

138.    The Controlling Defendants' wrongful conduct was not fair to Walker Edison.

139.    The Controlling Defendants' wrongful conduct directly and proximately caused damage to Walker Edison and improperly extracted monies from Walker Edison.

140.    Walker Edison is entitled to damages and restitution of amounts improperly taken from Walker Edison as a result of the Controlling Defendants' wrongful conduct.

141.    Walker Edison is entitled to disgorgement of all ill-gotten gains to the Controlling Defendants as a result of their wrongful conduct.

### COUNT VI: Aiding and Abetting Breach of Fiduciary Duty
### (*Against All Defendants*)

142.    Walker Edison restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

143.    The Controlling Defendants, as members of the Board and/or controlling shareholders of Walker Edison owed fiduciary duties of care, loyalty, and good faith to Walker Edison.

144.    In causing Walker Edison to distribute the Dividend to the Wrongful Distribution Defendants, the Controlling Defendants breached their fiduciary duties of care, loyalty, and good faith to Walker Edison.

145.    The Defendants knew that the Controlling Defendants owed fiduciary duties to Walker Edison.

146.    The Defendants also knew that the Controlling Defendants were in breach of their fiduciary duties to Walker Edison.

147.    The Defendants knowingly provided substantial assistance and encouragement to the Controlling Defendants to breach their fiduciary duties to Walker Edison.

148.    The Defendants therefore aided and abetted the Controlling Defendants' breach of their fiduciary duties to Walker Edison.

149.    As a result of the Defendants' bad acts, the Defendants are jointly responsible with the Controlling Defendants for the damages to Walker Edison resulting from those breaches.

## COUNT VII:  Civil Conspiracy
### (*Against All Defendants*)

150.    Walker Edison restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

151.    Defendants and/or their representatives constitute a combination of two or more persons.

152.    Defendants each sought to accomplish the object of causing Walker Edison to pay out the Dividend for their own benefits and for the benefits of their affiliates and assigns.

153.    Defendants had a meeting of the minds to accomplish their object by seeking to have the Company take out a large loan in order to finance the Dividend.

154.    Defendants conspired to and participated in the commission of one or more unlawful, overt acts, in furtherance of their object, including causing the Company to distribute the Dividend to the Wrongful Distribution Defendants and others.

155.    Walker Edison has suffered damages as a direct result of these actions.

### COUNT VIII: Unjust Enrichment
### (*Against All Defendants*)

156.    Walker Edison restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

157.    This unjust enrichment claim is asserted in the alternative, in the event the remedies asserted in Counts I–VII do not provide an adequate remedy at law.

158.    Defendants received benefits when they wrongfully received the Transfers and/or the Uptier Transfers.

159.    Defendants knowingly and voluntarily accepted and retained benefits in the form of the Transfers and/or the Uptier Transfers.

160.    The circumstances alleged in this Complaint render Defendants' retention of those benefits unjust and inequitable.

161.    Defendants have been unjustly enriched at the expense of Walker Edison in the amount of the Transfers and/or the Uptier Transfers, and Walker Edison is entitled to judgment in those amounts.

162.    Walker Edison is entitled to the return of the Transfers and/or the Uptier Transfers through disgorgement or any other applicable remedy and judgment against the Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Walker Edison respectfully requests that the Court enter judgment as follows:

a.      On its first Cause of Action, for judgment in favor of Walker Edison and against Defendants JWC-WE Holdco, Inc., MB & BB Holdings, LLC, Matthew Davis, and Walker Edison Holding Company, LLC, awarding Walker Edison's damages in the amount of all improper distributions, plus interest and costs, including, but not limited to costs and reasonable attorneys' fees incurred in collection of the debt;

b.      On its second Cause of Action, for judgment in favor of Walker Edison and against Defendants Brad Bonham, Matthew Davis, Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., and Does 1-100:

i.      Pursuant to Utah Code § 25-6-303(1)(a), to satisfy Walker Edison's claim, avoiding and recovering all fraudulent transfers until all funds, assets, and property are recovered by Walker Edison;

ii.      Pursuant to Utah Code § 25-6-303(1)(c)(ii), appointing a receiver; and

iii.      Granting the remedies provided for avoidance and recovery under Utah Code § 25-6-303(1):

(a)      avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(b)      an attachment or other provisional remedy against the asset transferred or other property of the transferee if available under applicable law;

4890-0050-5178

(c)    subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

(i)    an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(ii)    appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(iii)    any other relief the circumstances may require;

c.    On its third Cause of Action, for judgment in favor of Walker Edison and against Defendants Brad Bonham, Matthew Davis, Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., and Does 1-100:

i.    Pursuant to Utah Code § 25-6-303(1)(a), to satisfy Walker Edison's claim, avoiding and recovering all fraudulent transfers until all funds, assets, and property are recovered by Walker Edison;

ii.    Pursuant to Utah Code § 25-6-303(1)(c)(ii), appointing a receiver; and

iii.    Granting the remedies provided for avoidance and recovery under Utah Code § 25-6-303(1):

(a)    avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(b)    an attachment or other provisional remedy against the asset transferred or other property of the transferee if available under applicable law;

43

4890-0050-5178

(c)     subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

(i)     an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(ii)     appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(iii)     any other relief the circumstances may require;

d.     On its fourth Cause of Action, for judgment in favor of Walker Edison and against Defendants JWC-WE Holdco, Inc., MB & BB Holdings, LLC, Brad Bonham, Matthew Davis, Walker Edison Holding, Phil Damiano, Ken Murphy, Adam Suttin, Kyle Casella, and David Fiorentino, awarding Walker Edison's damages sustained as a result of the breaches of fiduciary duty, together with pre-judgment interest, in an amount to be determined at trial;

e.     On its fifth Cause of Action, for judgment in favor of Walker Edison and against Defendants JWC-WE Holdco, Inc., MB & BB Holdings, LLC, Brad Bonham, Matthew Davis, Walker Edison Holding, Phil Damiano, Ken Murphy, Adam Suttin, Kyle Casella, and David Fiorentino awarding Walker Edison's damages sustained as a result of the breaches of the implied covenant of good faith and fair dealing, together with pre-judgment interest, in an amount to be determined at trial;

f.     On its sixth Cause of Action, for judgment in favor of Walker Edison and against Defendants, awarding Walker Edison's damages sustained as a result of the breaches of fiduciary duty, together with pre-judgment interest, in an amount to be decided at trial;

44

g.      On its seventh Cause of Action, for judgment in favor of Walker Edison and against Defendants, awarding Walker Edison's damages sustained as a result of the civil conspiracy, together with pre-judgment interest, in an amount to be decided at trial;

h.      On its eighth Cause of Action, for judgment in favor of Walker Edison and against Defendants, awarding disgorgement and Walker Edison's damages for such unjust enrichment, together with pre-judgment interest, in an amount to be decided at trial; and

i.      On all Causes of Action, for:

    i.      Restitution;

    ii.      Disgorgement of the Transfers and/or the Uptier Transfers;

    iii.      Preliminary and permanent injunctive relief;

    iv.      Attorneys' fees and costs;

    v.      Pre-judgment interest; and

    vi.      Other further relief as is just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial of all issues in this action triable of right by a jury.

DATED March 30, 2023.

PARSONS BEHLE & LATIMER

/s/ Erik A. Christiansen
Erik Christiansen

Attorneys for Walker Edison Furniture
Company, LLC

4890-0050-5178

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Attorneys for Walker Edison Furniture Company, LLC*

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **NOTICE OF APPEARANCE OF COUNSEL**<br><br>Civil No. 230902160<br><br>Judge Robert Faust |

**PLEASE TAKE NOTICE** that Erik A. Christiansen and the law firm of Parsons Behle & Latimer hereby enter their appearance as counsel on behalf of Plaintiff Walker Edison Furniture

Company, LLC in the above-captioned case, and request that he be copied on all pleadings filed

and notices sent in this matter as follows:

> Erik A. Christiansen
> **PARSONS BEHLE & LATIMER**
> 201 South Main Street, Suite 1800
> Salt Lake City, UT  84111
> Telephone: 801.532.1234
> Echristiansen@parsonbehle.com

DATED March 31, 2023.

<div align="right">

**PARSONS BEHLE & LATIMER**
/s/ Erik A. Christiansen
_____
Erik A. Christiansen
Alan S. Mouritsen
Brian M. Rothschild

Attorneys for Walker Edison Furniture
Company, LLC

</div>

2

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Attorneys for Walker Edison Furniture
Company, LLC*

Jeffrey C. Krause, CA Bar #94053
*(Pro Hac Vice Pending)*
Michael M. Farhang, CA Bar #181320
*(Pro Hac Vice Pending)*
Michael S. Neumeister, CA Bar #274220
*(Pro Hac Vice Pending)*
**GIBSON, DUNN & CRUTCHER, LLP**
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
jkrause@gibsondunn.com
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com

Adam J. Jantzi, NY Bar #4919494
*(Pro Hac Vice Pending)*
**GIBSON, DUNN & CRUTCHER, LLP**
200 Park Avenue
New York, NY 10166
Telephone: 212.351.2436
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, | **MOTION AND CONSENT OF SPONSORING LOCAL COUNSEL FOR PRO HAC VICE ADMISSION OF ADAM J. JANTZI** |
| Plaintiff, | |
| vs. | |
| BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, | Civil No. 230902160<br><br>Judge Robert Faust<br><br>Discovery Tier 3<br><br>**Jury Trial Demanded** |
| Defendants. | |

Pursuant to Rule 14-806 of the Utah Code of Judicial Administration, Erik A. Christiansen moves the court for an order admitting Adam J. Jantzi pro hac vice to act as counsel in the above-captioned matter on the following basis:

Plaintiff Walker Edison Furniture, LLC, have retained the services Adam J. Jantzi, who is neither licensed to practice law in the State of Utah nor a resident of Utah. Adam J. Jantzi is admitted to practice in the States of California and Texas, where he is an attorney in good standing, as evidenced by the original Certificates of Good Standing and Application submitted to the Utah State Bar.

As required by Rule 14-806, both a filing fee and Adam J. Jantzi's Application and Certificates of Good Standing have been submitted to the Utah State Bar. Copies of the

Application, the Certificates of Good Standing and Acknowledgment from the Utah State Bar showing payment of the required $425 fee are attached hereto as Exhibit A.

Erik A. Christiansen hereby agrees to serve as designated local counsel for the subject case. He agrees to comply with all applicable provisions of the Utah Rules of Civil Procedure and the Utah Code of Judicial Administration, and to readily communicate with opposing counsel and the court regarding the conduct of this case. He also agrees to accept papers when served as well as recognizes the responsibility to act for and on behalf of the clients in all case-related proceedings, including hearings, pretrial conferences, and trials, should Adam J. Jantzi fail to respond to any court order.

DATED May 1, 2023.

PARSONS BEHLE & LATIMER

/s/ Erik A. Christiansen
Erik A. Christiansen

Attorneys for Walker Edison Furniture Company, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of May, 2023 that a true and correct copy of the foregoing **MOTION AND CONSENT OF SPONSORING LOCAL COUNSEL FOR PRO HAC VICE ADMISSION OF ADAM J. JANTZI** was filed with the Court using the Court's e-filing system which sent notice to those registered to receive notice in the above-captioned matter.

/s/ Erik A. Christiansen

4859-8076-7171

EXHIBIT A



## APPLICATION FOR PRO HAC VICE ADMISSION

### CONTACT INFORMATION

| | |
|---|---|
| Local Counsel: | Brian M. Rothschild |
| Firm: | Parsons Behle & Latimer |
| Address: | 201 S. Main Street, Suite 1800 |
| | Salt Lake City, UT 84111 |
| | |
| Telephone: | 801-532-1234 |
| Email: | BRothschild@parsonsbehle.com |

| | |
|---|---|
| Pro Hac Vice Applicant: | Adam Jantzi |
| Firm: | Gibson, Dunn & Crutcher LLP |
| Address: | 200 Park Ave. |
| | New York, NY 10166 |
| | |
| Telephone: | 212-351-2436 |
| Email: | ajantzi@gibsondunn.com |

Case in which Applicant wishes to appear:

| | |
|---|---|
| Case Name: | Walker Edison Furniture Company, LLC v. Brad Bonham, et al. |
| Case Number: | |

Party on Whose behalf Applicant seeks to appear: Plaintiff, Walker Edison Furniture Company, LLC

### BAR MEMBERSHIP
### Attached your Certificate(s) of Good Standing

| Jurisdiction | Bar Number | Date of Admission |
|---|---|---|
| New York | 4919494 | 2011 |
| | | |
| | | |
| | | |
| | | |
| | | |

Have you ever been the subject of disciplinary action by any bar?     ☐ Yes   ☑ No

1

If yes, please explain:

Are you (the Applicant) the subject of any pending disciplinary proceedings by any state's or court's disciplinary agency?    ☐ Yes    ☑ No

## LIST PRO HAC VICE ADMISSIONS IN THE STATE OF UTAH
### Last five (5) years

| Case Name | Case Number | Date of Admission |
|---|---|---|
| N/A | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Applicant certifies that they are a member in good standing of all bars to which they have been admitted.    ☑ Yes    ☐ No

Applicant is familiar with the rules of procedure and evidence, including applicable local rules.    ☑ Yes    ☐ No

Applicant will be available for all depositions, hearings and conferences.    ☑ Yes    ☐ No

Applicant will comply with the rulings and orders of the court.    ☑ Yes    ☐ No

Applicant certifies that they have read and will comply with the Utah Rules of Professional Conduct and the Utah Standards of Professionalism and Civility.    ☑ Yes    ☐ No

Applicant hereby certifies that they are not a resident of Utah and that the foregoing is true and correct and is subject to the penalty of perjury.

_____
Applicant Signature

4/19/2023
_____
Date

2



*Appellate Division of the Supreme Court*
*of the State of New York*
*First Judicial Department*

————————

I, Susanna M. Rojas, Clerk of the Appellate Division of the Supreme Court of the State of New York, First Judicial Department, do hereby certify that

## Adam John Jantzi

was duly licensed and admitted to practice as an Attorney and Counselor at Law in all the courts of this State on **March 7, 2011**, has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counselors at Law on file in this office, is duly registered with the Administration Office of the Courts, and according to the records of this Court is currently in good standing as an Attorney and Counselor-at-Law.



In Witness Whereof, I have hereunto set my hand in the City of New York on April 6, 2023.

*Clerk of the Court*

CertID-00112939



# Supreme Court of the State of New York
## Appellate Division, First Department

ROLANDO T. ACOSTA
PRESIDING JUSTICE

SUSANNA MOLINA ROJAS
CLERK OF THE COURT

MARGARET SOWAH
DEPUTY CLERK OF THE COURT

To Whom It May Concern

An attorney admitted to practice by this Court may request a certificate of good standing, which is the only official document this Court issues certifying to an attorney's admission and good standing.

An attorney's registration status, date of admission and disciplinary history may be viewed through the attorney search feature on the website of the Unified Court System.

New York State does not register attorneys as active or inactive.

An attorney may request a disciplinary history letter from the Attorney Grievance Committee of the First Judicial Department.

Bar examination history is available from the New York State Board of Law Examiners.

Instructions, forms and links are available on this Court's website.

Susanna Rojas
Clerk of the Court

Revised October 2020

PHV Acknowledgement/Receipt Letter                                 Apr 25 2023

**Utah Bar Admissions**
**645 South 200 East**
**Salt Lake City, UT 84111**
**TELEPHONE 801 531-9077**



# Utah State Bar®

645 South 200 East, Suite 310 • Salt Lake City, Utah 84111-3834
Telephone: 801-531-9077
http://www.UtahBar.org

### ACKNOWLEDGEMENT OF SUPPORTING DOCUMENTATION
### AND RECEIPT OF PRO HAC VICE FILING FEE

Date Issued:      April 25, 2023
Case Name:      Walker Edison Furniture Co. v. Brad Bonham: MD, et al.
Court Name:     In The Third Judicial District, Salt Lake County, State of Utah
Case Number:    230902160

This letter serves as an acknowledgement that the $425.00 pro hac vice filing fee for **Adam John Jantzi** in the above-referenced case has been paid to the Utah State Bar and that the required supporting documentation is complete and in good order. If you have any questions, please call the Bar at (801) 531-9077.

Brady M. Whitehead
Paralegal to General Counsel

**Note to Counsel:** An original motion signed by a member of the Utah State Bar who expressly consents to appearing as local counsel should be filed with the court along with: (1) copies of the Application and Certificate of Good Standing which were provided to the Bar; (2) this Acknowledgement of Supporting Documentation and Receipt of Pro Hac Vice Filing Fee; and (3) a proposed order.

*Attorneys admitted Pro Hac Vice must file an "Annual Renewal with the Bar on or before the anniversary date of the filing of the[ir] initial application with the Bar... certify[ing] to the Bar that [they will] continue to act as counsel in the cause or that the cause has been finally

adjudicated... And remit to the Bar an annual fee equal to the current dues paid by active members of the Utah State Bar. See Rule 14-806(n). and Rule 14-806(o) for failure to renew.

**For annual renewal information visit: https://www.utahbar.org/admissions/pro-hac-vice/#Annual

Serving the public. Working for justice.

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Attorneys for Walker Edison Furniture
Company, LLC*

Jeffrey C. Krause, CA Bar #94053
*(Pro Hac Vice Pending)*
Michael M. Farhang, CA Bar #181320
*(Pro Hac Vice Pending)*
Michael S. Neumeister, CA Bar #274220
*(Pro Hac Vice Pending)*
**GIBSON, DUNN & CRUTCHER**
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520
jkrause@gibsondunn.com
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>    Defendants. | **MOTION AND CONSENT OF SPONSORING LOCAL COUNSEL FOR PRO HAC VICE ADMISSION OF MICHAEL M. FARHANG**<br><br>Civil No. 230902160<br><br>Judge Robert Faust<br><br>Discovery Tier 3<br><br>**Jury Trial Demanded** |

Pursuant to Rule 14-806 of the Utah Code of Judicial Administration, Erik A. Christiansen moves the court for an order admitting Michael M. Farhang pro hac vice to act as counsel in the above-captioned matter on the following basis:

Plaintiff Walker Edison Furniture, LLC, have retained the services Michael M. Farhang, who is neither licensed to practice law in the State of Utah nor a resident of Utah. Michael M. Farhang is admitted to practice in the States of California and Texas, where he is an attorney in good standing, as evidenced by the original Certificates of Good Standing and Application submitted to the Utah State Bar.

As required by Rule 14-806, both a filing fee and Michael M. Farhang's Application and Certificates of Good Standing have been submitted to the Utah State Bar. Copies of the Application, the Certificates of Good Standing and Acknowledgment from the Utah State Bar showing payment of the required $425 fee are attached hereto as Exhibit A.

Erik A. Christiansen hereby agrees to serve as designated local counsel for the subject case. He agrees to comply with all applicable provisions of the Utah Rules of Civil Procedure and the Utah Code of Judicial Administration, and to readily communicate with opposing counsel and the court regarding the conduct of this case. He also agrees to accept papers when served as well as recognizes the responsibility to act for and on behalf of the clients in all case-related proceedings, including hearings, pretrial conferences, and trials, should Michael M. Farhang fail to respond to any court order.

4860-0865-9294

DATED May 1, 2023.

PARSONS BEHLE & LATIMER

/s/ Erik A. Christiansen
Erik A. Christiansen

Attorneys for Walker Edison Furniture
Company, LLC

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 1st day of May, 2023 that a true and correct copy of the foregoing **MOTION AND CONSENT OF SPONSORING LOCAL COUNSEL FOR PRO HAC VICE ADMISSION OF MICHAEL M. FARHANG** was filed with the Court using the Court's e-filing system which sent notice to those registered to receive notice in the above-captioned matter.

/s/ Erik A. Christiansen

4860-0865-9294

# EXHIBIT A



## APPLICATION FOR PRO HAC VICE ADMISSION

### CONTACT INFORMATION

| | |
|---|---|
| Local Counsel: | Brian M. Rothschild |
| Firm: | Parsons Behle & Latimer |
| Address: | 201 S. Main Street, Suite 1800 |
| | Salt Lake City, UT 84111 |
| Telephone: | 801-532-1234 |
| Email: | BRothschild@parsonsbehle.com |

| | |
|---|---|
| Pro Hac Vice Applicant: | Michael Farhang |
| Firm: | Gibson, Dunn & Crutcher |
| Address: | 333 S. Grand Avenue |
| | Los Angeles, Ca 90071 |
| Telephone: | 213-229-7000 |
| Email: | mfarhang@gibsondunn.com |

Case in which Applicant wishes to appear:

| | |
|---|---|
| Case Name: | Walker Edison Furniture Company, LLC v. Brad Bonham, et al. |
| Case Number: | |

Party on Whose behalf Applicant seeks to appear: Plaintiff, Walker Edison Furniture Company, LLC

### BAR MEMBERSHIP
### Attached your Certificate(s) of Good Standing

| Jurisdiction | Bar Number | Date of Admission |
|---|---|---|
| California | 181320 | 12-26-95 |
| Texas | 24133413 | 1-12-23 |
| | | |
| | | |
| | | |
| | | |

Have you ever been the subject of disciplinary action by any bar?    ☐ Yes    ☒ No

1

If yes, please explain:

Are you (the Applicant) the subject of any pending disciplinary proceedings by any state's or court's disciplinary agency?     ☐ Yes     ☒ No

## LIST PRO HAC VICE ADMISSIONS IN THE STATE OF UTAH
### Last five (5) years

| Case Name | Case Number | Date of Admission |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Applicant certifies that they are a member in good standing of all bars to which they have been admitted.     ☒ Yes     ☐ No

Applicant is familiar with the rules of procedure and evidence, including applicable local rules.     ☒ Yes     ☐ No

Applicant will be available for all depositions, hearings and conferences.     ☒ Yes     ☐ No

Applicant will comply with the rulings and orders of the court.     ☒ Yes     ☐ No

Applicant certifies that they have read and will comply with the Utah Rules of Professional Conduct and the Utah Standards of Professionalism and Civility.     ☒ Yes     ☐ No

Applicant hereby certifies that they are not a resident of Utah and that the foregoing is true and correct and is subject to the penalty of perjury.

_Michael Kil_____
Applicant Signature

4/18/23
_____
Date

2



# Supreme Court of California

**JORGE E. NAVARRETE**
*Clerk and Executive Officer of the Supreme Court*

## CERTIFICATE OF THE CLERK OF THE SUPREME COURT

### OF THE

### STATE OF CALIFORNIA

### <u>*MICHAEL MASSEY FARHANG*</u>

*I, JORGE E. NAVARRETE, Clerk of the Supreme Court of the State of California, do hereby certify that MICHAEL MASSEY FARHANG, # 181320, was on the 26th day of December, 1995, duly admitted to practice as an attorney and counselor at law in all the courts of this state, and is now listed on the Roll of Attorneys as a member of the bar of this state in good standing.*

*Witness my hand and the seal of the court
on the 5th day of April 2023.*

JORGE E. NAVARRETE
*Clerk of the Supreme Court*

By: _____
*Biying Jia, Assistant Deputy Clerk*

# STATE BAR OF TEXAS



*Office of the Chief Disciplinary Counsel*

April 05, 2023


Re: Michael Massey Farhang, State Bar Number 24133413


To Whom It May Concern:

This is to certify that Michael Massey Farhang was licensed to practice law in Texas on January 12, 2023, and is an active member in good standing with the State Bar of Texas. "Good standing" means that the attorney is current on payment of Bar dues; has met Minimum Continuing Legal Education requirements; and is not presently under either administrative or disciplinary suspension from the practice of law.


This certification expires 30 days from the date, unless sooner revoked or rendered invalid by operation of rule or law.


Sincerely,

Seana Willing
Chief Disciplinary Counsel
SW/web



PHV Acknowledgement/Receipt Letter                                                                        Apr 28 2023

Utah Bar Admissions
645 South 200 East
Salt Lake City, UT 84111
TELEPHONE 801 531-9077



# Utah State Bar®

645 South 200 East, Suite 310 • Salt Lake City, Utah 84111-3834
Telephone: 801-531-9077
http://www.UtahBar.org

### ACKNOWLEDGEMENT OF SUPPORTING DOCUMENTATION
### AND RECEIPT OF PRO HAC VICE FILING FEE

Date Issued:     April 28, 2023
Case Name:       Walker Edison Furniture Co., LLC vs. Brad Bonham, et al.
Court Name:      In The Third Judicial District, Salt Lake County State of Utah
Case Number:     230902160

This letter serves as an acknowledgement that the $425.00 pro hac vice filing fee for **Michael Massey Farhang** in the above-referenced case has been paid to the Utah State Bar and that the required supporting documentation is complete and in good order. If you have any questions, please call the Bar at (801) 531-9077.

Brady M. Whitehead
Paralegal to General Counsel

**Note to Counsel:** An original motion signed by a member of the Utah State Bar who expressly consents to appearing as local counsel should be filed with the court along with: (1) copies of the Application and Certificate of Good Standing which were provided to the Bar; (2) this Acknowledgement of Supporting Documentation and Receipt of Pro Hac Vice Filing Fee; and (3) a proposed order.

*Attorneys admitted Pro Hac Vice must file an "Annual Renewal with the Bar on or before the anniversary date of the filing of the[ir] initial application with the Bar... certify[ing] to the Bar that [they will] continue to act as counsel in the cause or that the cause has been finally adjudicated... And remit to the Bar an annual fee equal to the current dues paid by active members of the Utah State Bar. See Rule 14-806(n). and Rule 14-806(o) for failure to renew.

**For annual renewal information visit: https://www.utahbar.org/pro-hac-vice/

Serving the public. Working for justice.

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Attorneys for Walker Edison Furniture*
*Company, LLC*

Jeffrey C. Krause, CA Bar #94053
*(Pro Hac Vice Pending)*
Michael M. Farhang, CA Bar #181320
*(Pro Hac Vice Pending)*
Michael S. Neumeister, CA Bar #274220
*(Pro Hac Vice Pending)*
**GIBSON, DUNN & CRUTCHER**
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520
jkrause@gibsondunn.com
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **MOTION AND CONSENT OF SPONSORING LOCAL COUNSEL FOR PRO HAC VICE ADMISSION OF MICHAEL S. NEUMEISTER** <br><br> Civil No. 230902160 <br><br> Judge Robert Faust <br><br> Discovery Tier 3 <br><br> **Jury Trial Demanded** |

Pursuant to Rule 14-806 of the Utah Code of Judicial Administration, Erik A. Christiansen moves the court for an order admitting Michael S. Neumeister pro hac vice to act as counsel in the above-captioned matter on the following basis:

Plaintiff Walker Edison Furniture, LLC, have retained the services Michael S. Neumeister, who is neither licensed to practice law in the State of Utah nor a resident of Utah. Michael S. Neumeister is admitted to practice in the State of California, where he is an attorney in good standing, as evidenced by the original Certificate of Good Standing and Application submitted to the Utah State Bar.

As required by Rule 14-806, both a filing fee and Michael S. Neumeister's Application and Certificate of Good Standing have been submitted to the Utah State Bar. Copies of the Application, the Certificate of Good Standing and Acknowledgment from the Utah State Bar showing payment of the required $425 fee are attached hereto as Exhibit A.

Erik A. Christiansen hereby agrees to serve as designated local counsel for the subject case. He agrees to comply with all applicable provisions of the Utah Rules of Civil Procedure and the Utah Code of Judicial Administration, and to readily communicate with opposing counsel and the court regarding the conduct of this case. He also agrees to accept papers when served as well as recognizes the responsibility to act for and on behalf of the clients in all case-related proceedings, including hearings, pretrial conferences, and trials, should Michael S. Neumeister fail to respond to any court order.

DATED May 1, 2023.

PARSONS BEHLE & LATIMER

/s/ Erik A. Christiansen
Erik A. Christiansen

Attorneys for Walker Edison Furniture
Company, LLC

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 1st day of May, 2023 that a true and correct copy of the foregoing **MOTION AND CONSENT OF SPONSORING LOCAL COUNSEL FOR PRO HAC VICE ADMISSION OF MICHAEL S. NEUMEISTER** was filed with the Court using the Court's e-filing system which sent notice to those registered to receive notice in the above-captioned matter.

/s/ Erik A. Christiansen

4862-4019-7982

EXHIBIT A



## APPLICATION FOR PRO HAC VICE ADMISSION

### <u>CONTACT INFORMATION</u>

| | |
|---|---|
| Local Counsel: | Brian M. Rothschild |
| Firm: | Parsons Behle & Latimer |
| Address: | 201 S. Main Street, Suite 1800 |
| | Salt Lake City, UT 84111 |
| | |
| Telephone: | 801-532-1234 |
| Email: | BRothschild@parsonsbehle.com |

| | |
|---|---|
| Pro Hac Vice Applicant: | Michael S. Neumeister |
| Firm: | Gibson, Dunn & Crutcher LLP |
| Address: | 333 S. Grand Avenue |
| | Los Angeles, CA 90071-3197 |
| | |
| Telephone: | 213-229-7006 |
| Email: | MNeumeister@gibsondunn.com |

Case in which Applicant wishes to appear:

Case Name: Walker Edison Furniture Company, LLC v. Brad Bonham, et al.

Case Number:

Party on Whose behalf Applicant seeks to appear: Plaintiff, Walker Edison Furniture Company, LLC

### <u>BAR MEMBERSHIP</u>
### <u>Attached your Certificate(s) of Good Standing</u>

| Jurisdiction | Bar Number | Date of Admission |
|---|---|---|
| California | 274220 | 12/03/2010 |
| | | |
| | | |
| | | |
| | | |

Have you ever been the subject of disciplinary action by any bar?    ☐ Yes    ☑ No

1

If yes, please explain:

n/a

Are you (the Applicant) the subject of any pending disciplinary proceedings by any state's or court's disciplinary agency?   ☐ Yes   ☑ No

### LIST PRO HAC VICE ADMISSIONS IN THE STATE OF UTAH
### Last five (5) years

| Case Name | Case Number | Date of Admission |
|---|---|---|
| None | n/a | n/a |
| | | |
| | | |
| | | |
| | | |

Applicant certifies that they are a member in good standing of all bars to which they have been admitted.   ☑ Yes   ☐ No

Applicant is familiar with the rules of procedure and evidence, including applicable local rules.   ☑ Yes   ☐ No

Applicant will be available for all depositions, hearings and conferences.   ☑ Yes   ☐ No

Applicant will comply with the rulings and orders of the court.   ☑ Yes   ☐ No

Applicant certifies that they have read and will comply with the Utah Rules of Professional Conduct and the Utah Standards of Professionalism and Civility.   ☑ Yes   ☐ No

Applicant hereby certifies that they are not a resident of Utah and that the foregoing is true and correct and is subject to the penalty of perjury.

Applicant Signature

April 18, 2023

Date

2



## The State Bar
## of California

**OFFICE OF ATTORNEY REGULATION &
CONSUMER RESOURCES**

180 Howard Street, San Francisco, CA 94105

AttorneyRegulation@calbar.ca.gov
888-800-3400

# CERTIFICATE OF STANDING

March 29, 2023

TO WHOM IT MAY CONCERN:

This is to certify that according to the records of the State Bar, MICHAEL SCOTT NEUMEISTER, #274220 was admitted to the practice of law in this state by the Supreme Court of California on December 3, 2010 and has been since that date, and is at date hereof, an ACTIVE licensee of the State Bar of California; and that no recommendation for discipline for professional or other misconduct has ever been made by the Board of Trustees or a Disciplinary Board to the Supreme Court of the State of California.

THE STATE BAR OF CALIFORNIA

Alex Calderon
Custodian of Records

<div align="center">
**Utah Bar Admissions**
**645 South 200 East**
**Salt Lake City, UT 84111**
**TELEPHONE 801 531-9077**
</div>



# Utah State Bar®

645 South 200 East, Suite 310 • Salt Lake City, Utah 84111-3834
Telephone: 801-531-9077
http://www.UtahBar.org

<div align="center">

### ACKNOWLEDGEMENT OF SUPPORTING DOCUMENTATION
### AND RECEIPT OF PRO HAC VICE FILING FEE

</div>

Date Issued:    April 25, 2023
Case Name:      Walker Edison Furniture Company, LLC v. Brad Bonham, et al.
Court Name:     In The Third Judicial District, Salt Lake County State of Utah
Case Number:    230902160

This letter serves as an acknowledgement that the $425.00 pro hac vice filing fee for **Michael Scott Neumeister** in the above-referenced case has been paid to the Utah State Bar and that the required supporting documentation is complete and in good order. If you have any questions, please call the Bar at (801) 531-9077.

Brady M. Whitehead
Paralegal to General Counsel

**Note to Counsel:** An original motion signed by a member of the Utah State Bar who expressly consents to appearing as local counsel should be filed with the court along with: (1) copies of the Application and Certificate of Good Standing which were provided to the Bar; (2) this Acknowledgement of Supporting Documentation and Receipt of Pro Hac Vice Filing Fee; and (3) a proposed order.

*Attorneys admitted Pro Hac Vice must file an "Annual Renewal with the Bar on or before the anniversary date of the filing of the[ir] initial application with the Bar... certify[ing] to the Bar that [they will] continue to act as counsel in the cause or that the cause has been finally

adjudicated... And remit to the Bar an annual fee equal to the current dues paid by active members of the Utah State Bar. See Rule 14-806(n). and Rule 14-806(o) for failure to renew.

**For annual renewal information visit: https://www.utahbar.org/admissions/pro-hac-vice/#Annual

Serving the public. Working for justice.

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Attorneys for Walker Edison Furniture
Company, LLC*

Jeffrey C. Krause, CA Bar #94053
*(Pro Hac Vice Pending)*
Michael M. Farhang, CA Bar #181320
*(Pro Hac Vice Pending)*
Michael S. Neumeister, CA Bar #274220
*(Pro Hac Vice Pending)*
**GIBSON, DUNN & CRUTCHER**
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520
jkrause@gibsondunn.com
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>        Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>        Defendants. | **ORDER ADMITTING JEFFREY C. KRAUSE FOR PRO HAC VICE ADMISSION**<br><br>Civil No. 230902160<br><br><br>Judge Robert Faust<br><br>Discovery Tier 3<br><br>**Jury Trial Demanded** |

4865-2221-9866

Based upon the Motion for Admission Pro Hac Vice of Jeffrey C. Krause and the consent to appear as associate counsel by Erik E. Christiansen, it is hereby ordered that Jeffrey C. Krause be admitted pro hac vice as counsel for Plaintiff Walker Edison Furniture, LLC in the above-entitled matter.

IT IS SO ORDERED.

**In accordance with the Utah State District Courts E-filing Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Attorneys for Walker Edison Furniture
Company, LLC*

Jeffrey C. Krause, CA Bar #94053
*(Pro Hac Vice Pending)*
Michael M. Farhang, CA Bar #181320
*(Pro Hac Vice Pending)*
Michael S. Neumeister, CA Bar #274220
*(Pro Hac Vice Pending)*
**GIBSON, DUNN & CRUTCHER**
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520
jkrause@gibsondunn.com
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **ORDER ADMITTING MICHAEL M. FARHANG FOR PRO HAC VICE ADMISSION** <br><br> Civil No. 230902160 <br><br> Judge Robert Faust <br><br> Discovery Tier 3 <br><br> **Jury Trial Demanded** |

Based upon the Motion for Admission Pro Hac Vice of Michael M. Farhang and the consent to appear as associate counsel by Erik E. Christiansen, it is hereby ordered that Michael M. Farhang be admitted pro hac vice as counsel for Plaintiff Walker Edison Furniture, LLC in the above-entitled matter.

IT IS SO ORDERED.

**In accordance with the Utah State District Courts E-filing Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

2

4884-1730-3646

**The Order of the Court is stated below:**
**Dated:** May 01, 2023        **/s/**  ROBERT FAUST
                12:26:16 PM                District Court Judge

Erik A. Christiansen, USB #7372

Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Attorneys for Walker Edison Furniture
Company, LLC*

Jeffrey C. Krause, CA Bar #94053
*(Pro Hac Vice Pending)*
Michael M. Farhang, CA Bar #181320
*(Pro Hac Vice Pending)*
Michael S. Neumeister, CA Bar #274220
*(Pro Hac Vice Pending)*
**GIBSON, DUNN & CRUTCHER, LLP**
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
jkrause@gibsondunn.com
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com

Adam J. Jantzi, NY Bar #4919494
*(Pro Hac Vice Pending)*
**GIBSON, DUNN & CRUTCHER, LLP**
200 Park Avenue
New York, NY 10166
Telephone: 212.351.2436
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, | **ORDER ADMITTING ADAM J. JANTZI FOR PRO HAC VICE ADMISSION** |
| Plaintiff, | |
| vs. | Civil No. 230902160 |
| BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, | Judge Robert Faust<br><br>Discovery Tier 3<br><br>**Jury Trial Demanded** |
| Defendants. | |

Based upon the Motion for Admission Pro Hac Vice of Adam J. Jantzi and the consent to appear as associate counsel by Erik E. Christiansen, it is hereby ordered that Adam J. Jantzi be admitted pro hac vice as counsel for Plaintiff Walker Edison Furniture, LLC in the above-entitled matter.

IT IS SO ORDERED.

**In accordance with the Utah State District Courts E-filing Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

4874-3979-5295

May 01, 2023 12:26 PM

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Attorneys for Walker Edison Furniture Company, LLC*

Jeffrey C. Krause, CA Bar #94053
*(Pro Hac Vice Pending)*
Michael M. Farhang, CA Bar #181320
*(Pro Hac Vice Pending)*
Michael S. Neumeister, CA Bar #274220
*(Pro Hac Vice Pending)*
**GIBSON, DUNN & CRUTCHER**
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520
jkrause@gibsondunn.com
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **ORDER ADMITTING MICHAEL S. NEUMEISTER FOR PRO HAC VICE ADMISSION** <br><br> Civil No. 230902160 <br><br> Judge Robert Faust <br><br> Discovery Tier 3 <br><br> **Jury Trial Demanded** |

Based upon the Motion for Admission Pro Hac Vice of Michael S. Neumeister and the consent to appear as associate counsel by Erik E. Christiansen, it is hereby ordered that Michael S. Neumeister be admitted pro hac vice as counsel for Plaintiff Walker Edison Furniture, LLC in the above-entitled matter.

IT IS SO ORDERED.

**In accordance with the Utah State District Courts E-filing Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

The Order of the Court is stated below:
**Dated:**   May 01, 2023          **/s/**   ROBERT FAUST
                  12:26:16 PM                    District Court Judge



Erik A. Christiansen, USB #7372

Alan S. Mouritsen, USB #13558

Brian M. Rothschild, USB #15316

**Parsons Behle & Latimer**

201 South Main Street, Suite 1800

Salt Lake City, Utah 84111

Telephone: 801.532.1234

Facsimile: 801.536.6111

echristiansen@parsonsbehle.com

amouritsen@parsonsbehle.com

brothschild@parsonsbehle.com

*Attorneys for Walker Edison Furniture Company, LLC*

Jeffrey C. Krause, CA Bar #94053
*(Pro Hac Vice Pending)*
Michael M. Farhang, CA Bar #181320
*(Pro Hac Vice Pending)*
Michael S. Neumeister, CA Bar #274220
*(Pro Hac Vice Pending)*
**Gibson, Dunn & Crutcher, LLP**
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
jkrause@gibsondunn.com
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com

Adam J. Jantzi, NY Bar #4919494
*(Pro Hac Vice Pending)*
**Gibson, Dunn & Crutcher, LLP**
200 Park Avenue
New York, NY 10166
Telephone: 212.351.2436
ajantzi@gibsondunn.com

---

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

---

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>      Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>      Defendants. | **ORDER ADMITTING ADAM J. JANTZI FOR PRO HAC VICE ADMISSION**<br><br>Civil No. 230902160<br><br><br>Judge Robert Faust<br><br>Discovery Tier 3<br><br>**Jury Trial Demanded** |

Based upon the Motion for Admission Pro Hac Vice of Adam J. Jantzi and the consent to appear as associate counsel by Erik E. Christiansen, it is hereby ordered that Adam J. Jantzi be admitted pro hac vice as counsel for Plaintiff Walker Edison Furniture, LLC in the above-entitled matter.

IT IS SO ORDERED.

**In accordance with the Utah State District Courts E-filing Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

4874-3979-5295
May 01, 2023 12:26 PM

The Order of the Court is stated below:
**Dated:** May 01, 2023      **/s/**  ROBERT FAUST
        12:30:42 PM              District Court Judge



Erik A. Christiansen, USB #7372

Alan S. Mouritsen, USB #13558

Brian M. Rothschild, USB #15316

**PARSONS BEHLE & LATIMER**

201 South Main Street, Suite 1800

Salt Lake City, Utah 84111

Telephone: 801.532.1234

Facsimile: 801.536.6111

echristiansen@parsonsbehle.com

amouritsen@parsonsbehle.com

brothschild@parsonsbehle.com

*Attorneys for Walker Edison Furniture
Company, LLC*

Jeffrey C. Krause, CA Bar #94053

*(Pro Hac Vice Pending)*

Michael M. Farhang, CA Bar #181320

*(Pro Hac Vice Pending)*

Michael S. Neumeister, CA Bar #274220

*(Pro Hac Vice Pending)*

**GIBSON, DUNN & CRUTCHER**

333 S. Grand Avenue

Los Angeles, CA 90071

Telephone: 213.229.7000

Facsimile: 213.229.7520

jkrause@gibsondunn.com

mfarhang@gibsondunn.com

mneumeister@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>      Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>      Defendants. | **ORDER ADMITTING MICHAEL M. FARHANG FOR PRO HAC VICE ADMISSION**<br><br>Civil No. 230902160<br><br>Judge Robert Faust<br><br>Discovery Tier 3<br><br>**Jury Trial Demanded** |

Based upon the Motion for Admission Pro Hac Vice of Michael M. Farhang and the consent to appear as associate counsel by Erik E. Christiansen, it is hereby ordered that Michael M. Farhang be admitted pro hac vice as counsel for Plaintiff Walker Edison Furniture, LLC in the above-entitled matter.

IT IS SO ORDERED.

**In accordance with the Utah State District Courts E-filing Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

4884-1730-3646

The Order of the Court is stated below:
**Dated:** May 01, 2023          **/s/**  ROBERT FAUST
            12:30:30 PM                              District Court Judge



Erik A. Christiansen, USB #7372

Alan S. Mouritsen, USB #13558

Brian M. Rothschild, USB #15316

**PARSONS BEHLE & LATIMER**

201 South Main Street, Suite 1800

Salt Lake City, Utah 84111

Telephone: 801.532.1234

Facsimile: 801.536.6111

echristiansen@parsonsbehle.com

amouritsen@parsonsbehle.com

brothschild@parsonsbehle.com

*Attorneys for Walker Edison Furniture Company, LLC*

Jeffrey C. Krause, CA Bar #94053

*(Pro Hac Vice Pending)*

Michael M. Farhang, CA Bar #181320

*(Pro Hac Vice Pending)*

Michael S. Neumeister, CA Bar #274220

*(Pro Hac Vice Pending)*

**GIBSON, DUNN & CRUTCHER**

333 S. Grand Avenue

Los Angeles, CA 90071

Telephone: 213.229.7000

Facsimile: 213.229.7520

jkrause@gibsondunn.com

mfarhang@gibsondunn.com

mneumeister@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br>        Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br>        Defendants. | **ORDER ADMITTING MICHAEL S. NEUMEISTER FOR PRO HAC VICE ADMISSION** <br><br> Civil No. 230902160 <br><br><br> Judge Robert Faust <br><br> Discovery Tier 3 <br><br> **Jury Trial Demanded** |

Based upon the Motion for Admission Pro Hac Vice of Michael S. Neumeister and the consent to appear as associate counsel by Erik E. Christiansen, it is hereby ordered that Michael S. Neumeister be admitted pro hac vice as counsel for Plaintiff Walker Edison Furniture, LLC in the above-entitled matter.

IT IS SO ORDERED.

**In accordance with the Utah State District Courts E-filing Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Attorneys for Walker Edison Furniture
Company, LLC*

Jeffrey C. Krause, CA Bar #94053
*(Pro Hac Vice Pending)*
Michael M. Farhang, CA Bar #181320
*(Pro Hac Vice Pending)*
Michael S. Neumeister, CA Bar #274220
*(Pro Hac Vice Pending)*
**GIBSON DUNN & CRUTCHER**
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520
jkrause@gibsondunn.com
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>    Defendants. | **MOTION AND CONSENT OF SPONSORING LOCAL COUNSEL FOR PRO HAC VICE ADMISSION OF JEFFREY C. KRAUSE**<br><br>Civil No. 230902160<br><br>Judge Robert Faust<br><br>Discovery Tier 3<br><br>**Jury Trial Demanded** |

Pursuant to Rule 14-806 of the Utah Code of Judicial Administration, Erik A. Christiansen moves the court for an order admitting Jeffrey C. Krause pro hac vice to act as counsel in the above-captioned matter on the following basis:

Plaintiff Walker Edison Furniture, LLC, have retained the services Jeffrey C. Krause, who is neither licensed to practice law in the State of Utah nor a resident of Utah. Jeffrey C. Krause is admitted to practice in the State of California, where he is an attorney in good standing, as evidenced by the original Certificate of Good Standing and Application submitted to the Utah State Bar.

As required by Rule 14-806, both a filing fee and Jeffrey C. Krause's Application and Certificate of Good Standing have been submitted to the Utah State Bar. Copies of the Application, the Certificate of Good Standing and Acknowledgment from the Utah State Bar showing payment of the required $425 fee are attached hereto as Exhibit A.

Erik A. Christiansen hereby agrees to serve as designated local counsel for the subject case. He agrees to comply with all applicable provisions of the Utah Rules of Civil Procedure and the Utah Code of Judicial Administration, and to readily communicate with opposing counsel and the court regarding the conduct of this case. He also agrees to accept papers when served as well as recognizes the responsibility to act for and on behalf of the clients in all case-related proceedings, including hearings, pretrial conferences, and trials, should Jeffrey C. Krause fail to respond to any court order.

DATED May 1, 2023.

PARSONS BEHLE & LATIMER

/s/ Erik A. Christiansen
Erik A. Christiansen

Attorneys for Walker Edison Furniture
Company, LLC

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 1st day of May, 2023 that a true and correct copy of the foregoing **MOTION AND CONSENT OF SPONSORING LOCAL COUNSEL FOR PRO HAC VICE ADMISSION OF JEFFREY C. KRUASE** was filed with the Court using the Court's e-filing system which sent notice to those registered to receive notice in the above-captioned matter.

<div align="right">/s/ Erik A. Christiansen              </div>

4872-9344-6746

EXHIBIT A



## APPLICATION FOR PRO HAC VICE ADMISSION

### <u>CONTACT INFORMATION</u>

Local Counsel: Brian M. Rothschild
Firm: Parsons Behle & Latimer
Address: 201 S. Main Street, Suite 1800
Salt Lake City, UT 84111

Telephone: 801-532-1234
Email: BRothschild@parsonsbehle.com

Pro Hac Vice Applicant: Jeffrey C. Krause
Firm: Gibson, Dunn & Crutcher LLP
Address: 333 S. Grand Avenue
Los Angeles, CA 90071-3197

Telephone: 213-229-7995
Email: JKrause@gibsondunn.com

Case in which Applicant wishes to appear:

Case Name: Walker Edison Furniture Company, LLC v. Brad Bonham, et al.
Case Number:

Party on Whose behalf Applicant seeks to
appear: Plaintiff, Walker Edison Furniture Company, LLC

### <u>BAR MEMBERSHIP</u>
### <u>Attached your Certificate(s) of Good Standing</u>

| Jurisdiction | Bar Number | Date of Admission |
|---|---|---|
| California | 94053 | 12/16/1980 |
| | | |
| | | |
| | | |
| | | |

Have you ever been the subject of disciplinary action by any bar?   ☐ Yes   ☑ No

1

If yes, please explain:

n/a

Are you (the Applicant) the subject of any pending disciplinary proceedings   ☐ Yes   ☑ No
by any state's or court's disciplinary agency?

### LIST PRO HAC VICE ADMISSIONS IN THE STATE OF UTAH
### Last five (5) years

| Case Name | Case Number | Date of Admission |
|---|---|---|
| None | n/a | n/a |
| | | |
| | | |
| | | |
| | | |
| | | |

Applicant certifies that they are a member in good standing of all bars to which they have been admitted.   ☑ Yes   ☐ No

Applicant is familiar with the rules of procedure and evidence, including applicable local rules.   ☑ Yes   ☐ No

Applicant will be available for all depositions, hearings and conferences.   ☑ Yes   ☐ No

Applicant will comply with the rulings and orders of the court.   ☑ Yes   ☐ No

Applicant certifies that they have read and will comply with the Utah Rules of Professional Conduct and the Utah Standards of Professionalism and Civility.   ☑ Yes   ☐ No

Applicant hereby certifies that they are not a resident of Utah and that the foregoing is true and correct and is subject to the penalty of perjury.

_____
Applicant Signature

April 18, 2023
_____
Date

2

**The State Bar**
*of California*

**OFFICE OF ATTORNEY REGULATION &
CONSUMER RESOURCES**

180 Howard Street, San Francisco, CA 94105

AttorneyRegulation@calbar.ca.gov
888-800-3400

# CERTIFICATE OF STANDING

March 29, 2023

TO WHOM IT MAY CONCERN:

This is to certify that according to the records of the State Bar, JEFFREY CHARLES KRAUSE, #94053 was admitted to the practice of law in this state by the Supreme Court of California on December 16, 1980 and has been since that date, and is at date hereof, an ACTIVE licensee of the State Bar of California; and that no recommendation for discipline for professional or other misconduct has ever been made by the Board of Trustees or a Disciplinary Board to the Supreme Court of the State of California.

THE STATE BAR OF CALIFORNIA

Alex Calderon
Custodian of Records

**Utah Bar Admissions**
**645 South 200 East**
**Salt Lake City, UT 84111**
**TELEPHONE 801 531-9077**



# Utah State Bar ®

645 South 200 East, Suite 310 • Salt Lake City, Utah 84111-3834
Telephone: 801-531-9077
http://www.UtahBar.org

## ACKNOWLEDGEMENT OF SUPPORTING DOCUMENTATION
## AND RECEIPT OF PRO HAC VICE FILING FEE

Date Issued:      April 25, 2023
Case Name:        Walker Edison Furniture Company, LLC v. Brad Bonham, et al.
Court Name:       In The Third Judicial District, Salt Lake County State of Utah
Case Number:      230902160

This letter serves as an acknowledgement that the $425.00 pro hac vice filing fee for **Jeffrey Charles Krause** in the above-referenced case has been paid to the Utah State Bar and that the required supporting documentation is complete and in good order. If you have any questions, please call the Bar at (801) 531-9077.

Brady M. Whitehead
Paralegal to General Counsel

**Note to Counsel:** An original motion signed by a member of the Utah State Bar who expressly consents to appearing as local counsel should be filed with the court along with: (1) copies of the Application and Certificate of Good Standing which were provided to the Bar; (2) this Acknowledgement of Supporting Documentation and Receipt of Pro Hac Vice Filing Fee; and (3) a proposed order.

*Attorneys admitted Pro Hac Vice must file an "Annual Renewal with the Bar on or before the anniversary date of the filing of the[ir] initial application with the Bar... certify[ing] to the Bar that [they will] continue to act as counsel in the cause or that the cause has been finally adjudicated... And remit to the Bar an annual fee equal to the current dues paid by active members of the Utah State Bar. See Rule 14-806(n). and Rule 14-806(o) for failure to renew.

\*\*For annual renewal information visit: https://www.utahbar.org/admissions/pro-hac-vice/#Annual

Serving the public. Working for justice.

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture Company, LLC*

Michael M. Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

### FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **STIPULATED MOTION TO STAY RESPONSIVE-PLEADING DEADLINE AND STIPULATION RE: ACCEPTANCE OF SERVICE** <br><br> Civil No. 230902160 <br><br><br> Judge Robert Faust <br><br> Discovery Tier 3 |

Plaintiff Walker Edison Furniture Company, LLC ("Walker Edison") and Defendants Brad

Bonham; MB & BB Holdings, LLC; Matt Davis; Walker Edison Holding Company, LLC;

Prospect Hill Growth Partners, LP; JWC-WE Holdco, LLC; JWC-WE Holdings, L.P.; Prospect Hill Growth Fund II, L.P.; Prospect Hill Growth Fund II Co-Invest, L.P.; Phil Damiano; Ken Murphy; Adam Suttin; Kyle Casella; and David Fiorentino (collectively, "Defendants" and together with Walker Edson, the "Parties") hereby stipulate and agree to the following and jointly move the Court to stay all deadlines in this matter—including Defendants' responsive-pleading deadline—through and including November 22, 2023, while the Parties engage in settlement discussions.

In support of this Stipulated Motion, the Parties jointly stipulate and agree as follows:

1.      Defendants Brad Bonham, MB & BB Holdings, LLC, and Matt Davis (collectively, the "Founder Defendants"), by and through their undersigned counsel hereby accept service of the that First Amended Complaint filed in this Court on May 8, 2023 (the "First Amended Complaint") and Summonses in the above-captioned matter as if they had been served pursuant to Rule 4 of the Utah Rules of Civil Procedure on the date below. The Founder Defendants waive any defects in service of the Complaint and Summonses, but otherwise retain all defenses and objections in accordance with Utah Rule of Civil Procedure 4(d)(3)(D).

2.      Defendants Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, LP, JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Phil Damiano, Ken Murphy, Adam Suttin; Kyle Casella, and David Fiorentino (collectively, the "Prospect Hill Defendants," and together with the Founder Defendants, "Defendants"), by and through their undersigned counsel hereby accept service of the First Amended Complaint and Summonses in the above-captioned matter as if they had been served pursuant to Rule 4 of the Utah Rules of Civil Procedure on the date below. Defendants Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, LP, JWC-WE

4868-9202-4178.v1

Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Phil Damiano, Ken Murphy, Adam Suttin; Kyle Casella, and David Fiorentino  waive any defects in service of the First Amended Complaint and Summonses, but otherwise retain all defenses and objections in accordance with Utah Rule of Civil Procedure 4(d)(3)(D).

3.      Under Rule 6(b) of the Utah Rules of Civil Procedure, Walker Edison and Defendants wish to stay all deadlines in this case while they attempt to resolve their dispute. To promote judicial efficiency and conserve party resources, the Parties request that all pre-trial deadlines—including Defendants' responsive-pleading deadline—be stayed through and including November 22, 2023.

4.      Walked Edison filed the Complaint on March 30, 2023, and the First Amended Complaint on May 8, 2023.

5.      As noted above, Defendants have agreed to accept service of the Complaint and the applicable Summonses.

6.      The Parties have been in communication and wish to engage in mediation regarding the potential resolution of their dispute.

7.      The Parties agree that it would promote judicial efficiency and conserve party resources to stay all deadlines in the above-captioned matter—including Defendants' responsive-pleading deadline—through and including November 22, 2023.

8.      If the parties do not reach a resolution and provide joint written notice of such to the Court prior to November 10, 2023, Defendants' responsive pleadings with respect to the Complaint shall be due on November 22, 2023.

DATED July 25, 2023.

| **PARR BROWN GEE & LOVELESS, P.C.** | **SPERLING & SLATER, LLC** |
|---|---|
| /s/ David C. Reymann | /s/ Greg Shinall |
| David C. Reymann | Greg Shinall (*pro hac vice pending*) |
| Jonathan O. Hafen | |
| | |
| 101 South 200 East, Suite 700 | 55 West Monroe Street, 32nd Floor |
| Salt Lake City, UT  84111 | Chicago, IL 60603 |
| dreymann@parrbrown.com | shinall@sperling-law.com |
| jhafen@parrbrown.com | |

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

| **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** | **STRONG AND HANNI** |
|---|---|
| /s/ Geoffrey Chepiga | /s/ Graden P. Jackson |
| Geoffrey Chepiga (*pro hac vice pending*) | Graden P. Jackson, Esq. |
| | |
| 1285 Avenue of the Americas | 9350 South 150 East, Suite 820 |
| New York, NY 10019 | Sandy, UT 84070 |
| gchepiga@paulweiss.com | gjackson@strongandhanni.com |

*For defendants*: Prospect Hill Growth Fund II,
L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

4

4868-9202-4178.v1

**PARSONS BEHLE & LATIMER**

/s/ Erik Christiansen
Erik Christiansen
Alan Mouritsen
Brian M. Rothschild

201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*For Plaintiff Walker Edison Furniture
Company, LLC*

**GIBSON, DUNN & CRUTCHER LLP**

/s/ Michael M. Farhang
Michael M. Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)

333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)

200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

*For Plaintiff Walker Edison Furniture
Company, LLC*

4868-9202-4178.v1

## CERTIFICATE OF SERVICE

I certify that on this 25th day of July, 2023, I caused to be served via email a true and correct copy of the **STIPULATED MOTION TO STAY RESPONSIVE-PLEADING DEADLINE AND STIPULATION RE: ACCEPTANCE OF SERVICE**, on the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**STRONG AND HANNI**
Graden P. Jackson, Esq.
9350 South 150 East, Suite 820
Sandy, UT 84070
gjackson@strongandhanni.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

/s/ Alan S. Mouritsen

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **ORDER GRANTING STIPULATED MOTION TO STAY RESPONSIVE-PLEADING DEADLINE** <br><br> Civil No. 230902160 <br><br><br> Judge: Hon. Robert Faust <br><br> Discovery Tier 3 |

Before the Court is the Parties' Stipulated Motion to Stay Responsive-Pleading Deadline,

filed on July 25, 2023.  Based on the stipulation, and for good cause appearing,

**IT IS HEREBY ORDERED** that the request is GRANTED.  All deadlines in this matter, including Defendants' responsive-pleading deadline—are stayed through and including November 22, 2023.

IT IS FURTHER ORDERED that Defendants' responsive pleadings shall be due on or before November 22, 2023.

**In accordance with the Utah State District Courts Efiling Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

Agreed as to form by:

**PARR BROWN GEE & LOVELESS, P.C.**      **SPERLING & SLATER, LLC**

/s/ David C. Reymann                          /s/ Greg Shinall
David C. Reymann                              Greg Shinall (*pro hac vice pending*)
Jonathan O. Hafen

101 South 200 East, Suite 700                 55 West Monroe Street, 32nd Floor
Salt Lake City, UT  84111                     Chicago, IL 60603
dreymann@parrbrown.com                        shinall@sperling-law.com
jhafen@parrbrown.com


*For defendants*: Adam Suttin, Phil Damiano,     *For defendants*: Adam Suttin, Phil Damiano,
Kyle Casella, David Fiorentino, Kyle          Kyle Casella, David Fiorentino, Kyle
Murphy, and Walker Edison Holding Co.,        Murphy, and Walker Edison Holding Co.,
LLC; and, *for purposes of the Stipulated*     LLC
*Motion to Stay Responsive Pleading*
*Deadline, for defendants*: Prospect Hill
Growth Fund II, L.P., Prospect Hill Growth
Fund II Co-Invest, L.P., Prospect Hill Growth
Partners, L.P., JWC-WE Holdco, LLC, and
JWC-WE Holdings, L.P.

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga (*pro hac vice pending*)

1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II,
L.P., Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.,
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

**STRONG AND HANNI**

/s/ Graden P. Jackson
Graden P. Jackson, Esq.

9350 South 150 East, Suite 820
Sandy, UT 84070
gjackson@strongandhanni.com

*For defendants*: Brad Bonham; MB & BB
Holdings, LLC; Matt Davis

**PARSONS BEHLE & LATIMER**

/s/ Erik Christiansen
Erik Christiansen
Alan Mouritsen
Brian M. Rothschild

201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*For Plaintiff Walker Edison Furniture
Company, LLC*

**GIBSON, DUNN & CRUTCHER LLP**

/s/ Michael M. Farhang
Michael M. Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)

333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)

200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

*For Plaintiff Walker Edison Furniture
Company, LLC*

## CERTIFICATE OF SERVICE

I certify that on this 25th day of July, 2023, I caused to be served via email a true and correct copy of the **ORDER GRANTING STIPULATED MOTION TO STAY RESPONSIVE-PLEADING DEADLINE**, on the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**STRONG AND HANNI**
Graden P. Jackson, Esq.
9350 South 150 East, Suite 820
Sandy, UT 84070
gjackson@strongandhanni.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

*/s/ Alan S. Mouritsen*

4

The Order of the Court is stated below:
Dated:  July 26, 2023                /s/   ROBERT FAUST
            08:23:54 AM                        District Court Judge

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **ORDER GRANTING STIPULATED MOTION TO STAY RESPONSIVE-PLEADING DEADLINE** <br><br> Civil No. 230902160 <br><br><br> Judge: Hon. Robert Faust <br><br> Discovery Tier 3 |

Before the Court is the Parties' Stipulated Motion to Stay Responsive-Pleading Deadline,

filed on July 25, 2023.  Based on the stipulation, and for good cause appearing,

**IT IS HEREBY ORDERED** that the request is GRANTED.  All deadlines in this matter,

including Defendants' responsive-pleading deadline—are stayed through and including

November 22, 2023.

IT IS FURTHER ORDERED that Defendants' responsive pleadings shall be due on or before November 22, 2023.

**In accordance with the Utah State District Courts Efiling Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

Agreed as to form by:

**PARR BROWN GEE & LOVELESS, P.C.**

/s/ David C. Reymann _____
David C. Reymann
Jonathan O. Hafen

101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**

/s/ Greg Shinall _____
Greg Shinall (*pro hac vice pending*)

55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

**STRONG AND HANNI**

2

/s/ Geoffrey Chepiga
Geoffrey Chepiga (*pro hac vice pending*)

1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II,
L.P., Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.,
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

/s/ Graden P. Jackson
Graden P. Jackson, Esq.

9350 South 150 East, Suite 820
Sandy, UT 84070
gjackson@strongandhanni.com

*For defendants*: Brad Bonham; MB & BB
Holdings, LLC; Matt Davis

**PARSONS BEHLE & LATIMER**

/s/ Erik Christiansen
Erik Christiansen
Alan Mouritsen
Brian M. Rothschild

201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*For Plaintiff Walker Edison Furniture
Company, LLC*

**GIBSON, DUNN & CRUTCHER LLP**

/s/ Michael M. Farhang
Michael M. Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)

333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)

200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

*For Plaintiff Walker Edison Furniture
Company, LLC*

3

## **CERTIFICATE OF SERVICE**

I certify that on this 25th day of July, 2023, I caused to be served via email a true and correct copy of the **ORDER GRANTING STIPULATED MOTION TO STAY RESPONSIVE-PLEADING DEADLINE**, on the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**PAUL, WEISS, RIFKIND,**

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**STRONG AND HANNI**

4

**WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

Graden P. Jackson, Esq.
9350 South 150 East, Suite 820
Sandy, UT 84070
gjackson@strongandhanni.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

*/s/ Alan S. Mouritsen*

5

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael M. Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **STIPULATED MOTION TO EXTEND STAY OF RESPONSIVE PLEADING DEADLINE AND FOR STIPULATED BRIEFING SCHEDULE**<br><br>Civil No. 230902160<br><br>Judge: Hon. Robert Faust<br><br>Discovery Tier 3 |

Plaintiff Walker Edison Furniture Company, LLC ("Walker Edison") and Defendants Brad

Bonham; MB & BB Holdings, LLC; Matt Davis; Walker Edison Holding Company, LLC;

Prospect Hill Growth Partners, LP; JWC-WE Holdco, LLC; JWC-WE Holdings, L.P.; Prospect Hill Growth Fund II, L.P.; Prospect Hill Growth Fund II Co-Invest, L.P.; Phil Damiano; Ken Murphy; Adam Suttin; Kyle Casella; and David Fiorentino (collectively, "Defendants" and together with Walker Edson, the "Parties") hereby stipulate and agree to the following, and jointly move the Court to stay all deadlines in this matter—including Defendants' responsive-pleading deadline—through and including January 12, 2024, while the Parties engage in settlement discussions.

In support of this Stipulated Motion, the Parties jointly stipulate and agree as follows:

1.      Walker Edison filed the Complaint on March 30, 2023, and the First Amended Complaint on May 8, 2023. As previously reported to the Court, all Defendants have accepted service of process.

2.      On July 26, 2023, at the Parties' request, the Court entered an order staying Defendants' responsive pleading deadline through November 22, 2023.

3.      The Parties previously advised the Court that they were in the process of arranging a mediation regarding the potential resolution of their dispute. The Parties have since scheduled a mediation for November 29, 2023.

4.      In light of the mediation scheduled for November 29, 2023, the Parties agree that it would promote judicial efficiency and conserve party resources to stay all deadlines in the above-captioned matter—including Defendants' responsive-pleading deadline—through and including January 12, 2024.

5.      If the Parties do not reach a resolution and provide joint written notice of such to the Court prior to December 29, 2023, Defendants' responsive pleadings with respect to the Complaint shall be due on January 12, 2024.

6.    Plaintiff's response or opposition to any motion filed by Defendants shall be due on February 27, 2024.

7.    Defendants' response or reply to any opposition filed by Plaintiff shall be due on March 26, 2024.

8.    Therefore, pursuant to Rule 6(b) of the Utah Rules of Civil Procedure, the Parties respectfully request entry of an order reflecting the stipulation above; extending the stay of proceedings currently set to expire on November 22, 2023; holding in abeyance Defendants' obligation to answer or otherwise plead to Plaintiff's amended complaint until no earlier than January 12, 2024; and setting the above briefing schedule for any responsive motion filed by Defendants.

DATED November 10, 2023.

**PARR BROWN GEE & LOVELESS, P.C.**

/s/ David C. Reymann
David C. Reymann
Jonathan O. Hafen

101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline and for Stipulated Briefing Schedule, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**

/s/ Greg Shinall
Greg Shinall (*pro hac vice pending*)

55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

3

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga (*pro hac vice pending*)

1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II,
L.P., Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.,
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

**ARMSTRONG TEASDALE LLP**

/s/ Brennan H. Moss
Brennan H. Moss

222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB
Holdings, LLC; Matt Davis

**PARSONS BEHLE & LATIMER**

/s/ Erik Christiansen
Erik Christiansen
Alan Mouritsen
Brian M. Rothschild

201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*For Plaintiff Walker Edison Furniture
Company, LLC*

**GIBSON, DUNN & CRUTCHER LLP**

/s/ Michael M. Farhang
Michael M. Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)

333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)

200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

*For Plaintiff Walker Edison Furniture
Company, LLC*

4875-2460-5840.v1

## CERTIFICATE OF SERVICE

I certify that on this 10th day of November, 2023, I caused to be filed via email a true and correct copy of the **STIPULATED MOTION TO EXTEND STAY OF RESPONSIVE PLEADING DEADLINE AND FOR STIPULATED BRIEFING SCHEDULE**, to the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**STRONG AND HANNI**
Graden P. Jackson, Esq.
9350 South 150 East, Suite 820
Sandy, UT 84070
gjackson@strongandhanni.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

*/s/ Alan S. Mouritsen*
_____

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **ORDER GRANTING STIPULATED MOTION TO STAY RESPONSIVE-PLEADING DEADLINE**<br><br>Civil No. 230902160<br><br><br>Judge: Hon. Robert Faust<br><br>Discovery Tier 3 |

Before the Court is the Parties' Stipulated Motion to Stay Responsive-Pleading Deadline,

filed on November 10, 2023.  Based on the stipulation, and for good cause appearing,

**IT IS HEREBY ORDERED** that the request is GRANTED.  All deadlines in this matter, including Defendants' responsive-pleading deadline—are stayed through and including January 12, 2024.

IT IS FURTHER ORDERED that:

Defendants' responsive pleadings shall be due on or before January 12, 2024;

Plaintiff's response or opposition to any motion filed by Defendants shall be due on February 27, 2024; and

Defendants' response or reply to any opposition filed by Plaintiff shall be due on March 26, 2024.

**In accordance with the Utah State District Courts Efiling Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

Agreed as to form by:

**PARR BROWN GEE & LOVELESS, P.C.**

/s/ David C. Reymann
David C. Reymann
Jonathan O. Hafen

101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline and for Stipulated Briefing Schedule, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P.,

**SPERLING & SLATER, LLC**

/s/ Greg Shinall
Greg Shinall (*pro hac vice pending*)

55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

2

JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga *(pro hac vice pending*)

1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund
II,
L.P., Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.,
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

**PARSONS BEHLE & LATIMER**

/s/ Erik Christiansen
Erik Christiansen
Alan Mouritsen
Brian M. Rothschild

201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*For Plaintiff Walker Edison Furniture
Company, LLC*

**ARMSTRONG TEASDALE LLP**

/s/ Brennan H. Moss
Brennan H. Moss

222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB
Holdings, LLC; Matt Davis

**GIBSON, DUNN & CRUTCHER LLP**

/s/ Michael M. Farhang
Michael M. Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)

333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)

200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

*For Plaintiff Walker Edison Furniture
Company, LLC*

3

4884-0357-4928.v1

## CERTIFICATE OF SERVICE

       I certify that on this 10th day of November, 2023, I caused to be filed via email a true and correct copy of the **ORDER GRANTING STIPULATED MOTION TO STAY RESPONSIVE-PLEADING DEADLINE**, to the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II,
L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**STRONG AND HANNI**
Graden P. Jackson, Esq.
9350 South 150 East, Suite 820
Sandy, UT 84070
gjackson@strongandhanni.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

*/s/ Alan S. Mouritsen*

4

4884-0357-4928.v1

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **CERTIFICATE OF SERVICE OF NOT SIGNED ORDER GRANTING STIPULATED MOTION TO STAY RESPONSIVE-PLEADING DEADLINE AND REASON FOR DENIAL** <br><br> Civil No. 230902160 <br><br><br> Judge: Hon. Robert Faust <br><br> Discovery Tier 3 |

This is to certify that on the 14th of November, 2023, a copy of Service Notification

regarding the Not Signed Order (Proposed) Granting Stipulated Motion to Stay Response-

Pleading Deadline was served via email and U.S. mail to the following per court order:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**
Brennan H. Moss
222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

DATED this 14th day of November, 2023**.**

/s/ Alan S. Mouritsen
_____

4857-2550-0560.v1

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **ORDER GRANTING STIPULATED MOTION TO STAY RESPONSIVE-PLEADING DEADLINE**<br><br>Civil No. 230902160<br><br><br>Judge: Hon. Robert Faust<br><br>Discovery Tier 3 |

Before the Court is the Parties' Stipulated Motion to Stay Responsive-Pleading Deadline, filed on November 10, 2023.  Based on the stipulation, and for good cause appearing,

**IT IS HEREBY ORDERED** that the request is GRANTED.  All deadlines in this matter, including Defendants' responsive-pleading deadline—are stayed through and including January 12, 2024.

4884-0357-4928.v1

IT IS FURTHER ORDERED that:

Defendants' responsive pleadings shall be due on or before January 12, 2024;

Plaintiff's response or opposition to any motion filed by Defendants shall be due on February 27, 2024; and

Defendants' response or reply to any opposition filed by Plaintiff shall be due on March 26, 2024.

**In accordance with the Utah State District Courts Efiling Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

Agreed as to form by:

**PARR BROWN GEE & LOVELESS, P.C.**

/s/ David C. Reymann
David C. Reymann
Jonathan O. Hafen

101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline and for Stipulated Briefing Schedule, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**

/s/ Greg Shinall
Greg Shinall (*pro hac vice pending*)

55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

2

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga (*pro hac vice pending*)

1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II,
L.P., Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.,
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

**ARMSTRONG TEASDALE LLP**

/s/ Brennan H. Moss
Brennan H. Moss

222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB
Holdings, LLC; Matt Davis

**PARSONS BEHLE & LATIMER**

/s/ Erik Christiansen
Erik Christiansen
Alan Mouritsen
Brian M. Rothschild

201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*For Plaintiff Walker Edison Furniture
Company, LLC*

**GIBSON, DUNN & CRUTCHER LLP**

/s/ Michael M. Farhang
Michael M. Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)

333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)

200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

*For Plaintiff Walker Edison Furniture*

3

4884-0357-4928.v1

*Company, LLC*
## CERTIFICATE OF SERVICE

I certify that on this 10th day of November, 2023, I caused to be filed via email a true and correct copy of the **ORDER GRANTING STIPULATED MOTION TO STAY RESPONSIVE-PLEADING DEADLINE**, to the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON**

**STRONG AND HANNI**
Graden P. Jackson, Esq.

4884-0357-4928.v1

4

**& GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the
Americas
New York, NY 10019
gchepiga@paulweiss.co
m

*For          defendants*:
Prospect   Hill   Growth
Fund II,
L.P.,   Prospect   Hill
Growth   Fund   II   Co-
Invest,
L.P.,   Prospect   Hill
Growth Partners, L.P.,
JWC-WE  Holdco,  LLC,
and  JWC-WE  Holdings,
L.P.

9350  South  150  East,
Suite 820
Sandy, UT 84070
gjackson@strongandhan
ni.com

*For defendants*:  Brad
Bonham;   MB   &   BB
Holdings,   LLC;   Matt
Davis

*/s/ Alan S. Mouritsen*

5

4884-0357-4928.v1

November 14, 2023 09:26 AM

**PARR BROWN GEE & LOVELESS, P.C.**
Jonathan O. Hafen (6096)
David C. Reymann (8495)
101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

---

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **UNOPPOSED MOTION TO EXTEND RESPONSIVE PLEADING DEADLINE** <br><br> Civil No. 230902160 <br><br><br> Judge Robert Faust <br><br> Discovery Tier 3 |

Defendants Brad Bonham; MB & BB Holdings, LLC; Matt Davis; Walker Edison Holding

Company, LLC; Prospect Hill Growth Partners, LP; JWC-WE Holdco, LLC; JWC-WE Holdings,

L.P.; Prospect Hill Growth Fund II, L.P.; Prospect Hill Growth Fund II Co-Invest, L.P.; Phil

Damiano; Ken Murphy; Adam Suttin; Kyle Casella; and David Fiorentino (collectively,

"Defendants") respectfully move the Court to extend the date by which they must answer or

otherwise plead to Plaintiff's Amended Complaint, and to establish a briefing schedule to respond to any motion to dismiss filed by Defendants. In support of this Motion, Defendants state:

1.      On November 14, 2023, the Court declined to enter the Parties' stipulated extension of the stay entered by this Court's July 26, 2023 Order. Defendants file this motion to provide additional context and to respectfully request a more limited extension of time to respond to Plaintiffs' Amended Complaint, together with a briefing schedule for any motion to dismiss.

2.      The parties previously scheduled a mediation for October 13, 2023 with the Honorable Shelley C. Chapman (Ret.). Judge Chapman, a former United States Bankruptcy Judge for the Southern District of New York from 2010-2022, is now Senior Counsel with the law firm of Willkie, Farr & Gallagher LLP in New York City.

3.      It proved difficult to coordinate attendance on that date for all parties, counsel and insurers so the parties agreed to continue the mediation session to November 29, 2023.

4.      In the interim, the parties exchanged substantial mediation briefing and informal document discovery.

5.      Defendants and their counsel have committed and continue to commit significant time and resources to preparing this matter for mediation and making an early effort at settlement. The November 29 mediation is in-person and will have all parties and all of Defendants' insurers in attendance.

6.      Should the mediation be unsuccessful, Defendants and their counsel will be prepared to promptly respond to the Complaint and to advance these proceedings.

7.      Therefore, Defendants respectfully request the Court to extend the deadline for the filing of their responses to the Amended Complaint until after the mediation, and approve a reasonable briefing schedule that accounts for the current mediation schedule and the complexity

of the issues in this case. Defendants propose an extension of 28 days – 21 days following the November 29, 2023 mediation session – to December 20, 2023.

8.      Counsel for Defendants conferred with Counsel for Plaintiff prior to the filing of this motion. Plaintiff has no objection to the relief and schedule requested herein.

9.      Therefore, pursuant to Rule 6(b) of the Utah Rules of Civil Procedure, Defendants respectfully request entry of an order extending the time for: Defendants to answer or otherwise plead to Plaintiff's amended complaint to December 20, 2023; Plaintiff to file a response to any motion filed by Defendants to January 24, 2024; and Defendants to file a response to any opposition filed by Plaintiff to February 14, 2024.

10.      Counsel for Defendants is available at the Court's convenience to address this matter.

DATED: November 16, 2023.

**PARR BROWN GEE & LOVELESS, P.C.**

/s/ David C. Reymann
Jonathan O. Hafen
David C. Reymann

101 South 200 East, Suite 700
Salt Lake City, UT 84111
jhafen@parrbrown.com
dreymann@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Unopposed Motion to Extend Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**

/s/ Greg Shinall
Greg Shinall (*pro hac vice pending*)

55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga *(pro hac vice pending)*

1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II,
L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**

/s/ Brennan H. Moss
Brennan H. Moss

222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

4

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 16th day of November 2023, I electronically filed the

foregoing **UNOPPOSED MOTION TO EXTEND RESPONSIVE PLEADING DEADLINE**,

which served all counsel of record.

/s/ David C. Reymann

Jonathan O. Hafen (6096) (jhafen@parrbrown.com)
David C. Reymann (8495) (dreymann@parrbrown.com)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino, Kyle
Murphy, and Walker Edison Holding Co., LLC

---

### IN THE THIRD JUDICIAL DISTRICT COURT

### SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, | **NOTICE OF APPEARANCE OF COUNSEL** |
| Plaintiff, | Case No. 230902160 |
| v. | Hon. Robert Faust |
| BRAD BONHAM, *et al.*, | |
| Defendants. | |

David C. Reymann of the firm PARR BROWN GEE & LOVELESS, P.C. hereby enters his

appearance as counsel for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David

Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC in this matter and requests

inclusion on all certificates of service.

DATED this 16th day of November 2023.

                PARR BROWN GEE & LOVELESS, P.C.

                /s/ David C. Reymann
                Jonathan O. Hafen
                David C. Reymann

                Attorneys for Defendants Adam Suttin, Phil
                Damiano, Kyle Casella, David Fiorentino, Kyle
                Murphy, and Walker Edison Holding Co., LLC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 16th day of November 2023, I electronically filed the

foregoing **NOTICE OF APPEARANCE OF COUNSEL**, which served all counsel of record.

/s/ David C. Reymann

**PARR BROWN GEE & LOVELESS, P.C.**
Jonathan O. Hafen (6096)
David C. Reymann (8495)
101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **ORDER GRANTING UNOPPOSED MOTION TO EXTEND RESPONSIVE PLEADING DEADLINE**<br><br>Civil No. 230902160<br><br>Judge: Hon. Robert Faust<br><br>Discovery Tier 3 |

Before the Court is Defendants' Unopposed Motion to Extend Responsive Pleading Deadline, filed on November 16, 2023. Based on the motion, and for good cause appearing,

**IT IS HEREBY ORDERED** that the motion is GRANTED. Defendants shall have to and including December 20, 2023 to answer or otherwise respond to Plaintiff's Amended Complaint. Plaintiff's response to any motion filed by Defendants shall be due on January 24, 2024. Defendants' response to any opposition filed by Plaintiff shall be due on February 14, 2024.

In accordance with the Utah State District Courts Efiling Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.


Agreed as to form by:


**PARR BROWN GEE & LOVELESS, P.C.**

/s/ David C. Reymann
Jonathan O. Hafen
David C. Reymann

101 South 200 East, Suite 700
Salt Lake City, UT 84111
jhafen@parrbrown.com
dreymann@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Unopposed Motion to Extend Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**

/s/ Greg Shinall
Greg Shinall (*pro hac vice pending*)

55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC


**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga (*pro hac vice pending*)

1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**

/s/ Brennan H. Moss
Brennan H. Moss

222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

2

**PARR BROWN GEE & LOVELESS, P.C.**
Jonathan O. Hafen (6096)
David C. Reymann (8495)
101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

---

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **REQUEST TO SUBMIT FOR DECISION: UNOPPOSED MOTION TO EXTEND RESPONSIVE PLEADING DEADLINE** <br><br> Civil No. 230902160 <br><br><br> Judge Robert Faust <br><br> Discovery Tier 3 |

Pursuant to Rule 7(g) and (*l*) of the Utah Rules of Civil Procedure, Defendants hereby submit for decision their Unopposed Motion to Extend Responsive Pleading Deadline, filed concurrently herewith along with a proposed Order granting the same. The motion is unopposed and can be acted upon without awaiting a response. Utah R. Civ. P. 7(*l*)(1)(B). Accordingly, Defendants request that the proposed Order be entered.

DATED: November 16, 2023.

**PARR BROWN GEE & LOVELESS, P.C.**

/s/ David C. Reymann
Jonathan O. Hafen
David C. Reymann

101 South 200 East, Suite 700
Salt Lake City, UT  84111
jhafen@parrbrown.com
dreymann@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano,
Kyle Casella, David Fiorentino, Kyle
Murphy, and Walker Edison Holding Co.,
LLC; and, *for purposes of the Unopposed
Motion to Stay Extend Pleading Deadline, for
defendants*: Prospect Hill Growth Fund II,
L.P., Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.,
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

**SPERLING & SLATER, LLC**

/s/ Greg Shinall
Greg Shinall (*pro hac vice pending*)

55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano,
Kyle Casella, David Fiorentino, Kyle
Murphy, and Walker Edison Holding Co.,
LLC

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga (*pro hac vice pending*)

1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund
II,
L.P., Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.,
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

**ARMSTRONG TEASDALE LLP**

/s/ Brennan H. Moss
Brennan H. Moss

222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB
Holdings, LLC; Matt Davis

2

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 16th day of November 2023, I electronically filed the foregoing **REQUEST TO SUBMIT FOR DECISION: UNOPPOSED MOTION TO EXTEND RESPONSIVE PLEADING DEADLINE**, which served all counsel of record.

/s/ David C. Reymann

The Order of the Court is stated below:
**Dated:** November 20, 2023          /s/   ROBERT FAUST
          08:54:55 AM                  District Court Judge

**PARR BROWN GEE & LOVELESS, P.C.**
Jonathan O. Hafen (6096)
David C. Reymann (8495)
101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

---

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

---

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **ORDER GRANTING UNOPPOSED MOTION TO EXTEND RESPONSIVE PLEADING DEADLINE** <br><br><br> Civil No. 230902160 <br><br><br><br> Judge: Hon. Robert Faust <br><br> Discovery Tier 3 |

Before the Court is Defendants' Unopposed Motion to Extend Responsive Pleading Deadline, filed on November 16, 2023.  Based on the motion, and for good cause appearing,

**IT IS HEREBY ORDERED** that the motion is GRANTED.  Defendants shall have to and including December 20, 2023 to answer or otherwise respond to Plaintiff's Amended Complaint.  Plaintiff's response to any motion filed by Defendants shall be due on January 24, 2024.  Defendants' response to any opposition filed by Plaintiff shall be due on February 14, 2024.

**In accordance with the Utah State District Courts Efiling Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

Agreed as to form by:

**PARR BROWN GEE & LOVELESS, P.C.**

/s/ David C. Reymann
Jonathan O. Hafen
David C. Reymann

101 South 200 East, Suite 700
Salt Lake City, UT  84111
jhafen@parrbrown.com
dreymann@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Unopposed Motion to Extend Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**

/s/ Greg Shinall
Greg Shinall (*pro hac vice pending*)

55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga (*pro hac vice pending*)

1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**

/s/ Brennan H. Moss
Brennan H. Moss

222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

2

David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
(801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

*For defendants:* Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino,
Kyle Murphy, Walker Edison Holding Co.,
LLC, Prospect Hill Growth Fund II, L.P.,
Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.,
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

Brennan Moss (10267)
Michael Gehret (11890)
Charles Morris (18058)
**ARMSTRONG TEASDALE LLP**
222 South Main St., Suite 1830
Salt Lake City, Utah
(801) 401-1600
bmoss@atllp.com
mgehret@atllp.com
cdmorris@atllp.com

*For defendants*: Brad Bonham, MB & BB
Holdings, LLC, and Matt Davis

*Additional counsel listed in signature block*

IN THE THIRD JUDICIAL DISTRICT COURT
FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>    Plaintiff,<br><br>    vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>    Defendants. | **ANSWER TO FIRST AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES**<br><br>Civil No. 230902160<br><br>Judge Robert Faust<br><br>Discovery Tier 3 |

Defendants Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Company, LLC ("Holding") , Brad Bonham, MB & BB Holdings, LLC, and Matt Davis by and through their attorneys hereby answer the First Amended Complaint of Plaintiff Walker Edison Furniture Company, LLC ("Walker Edison "), and state as follows:

## INTRODUCTION

1.      This action seeks to recover approximately $210 million of cash that Defendants wrongfully took from Walker Edison, a Utah-based global furniture company. In March 2021, Defendants, the former controlling owners and their affiliates, abused their positions of control to cause the Company to borrow more than $300 million in order to fund an improper $210 million dividend that went straight into Defendants' pockets. This illegitimate transfer occurred at the worst possible time for Walker Edison, amid spiraling costs, decreasing cash flow, inventory problems, and revenue challenges of which Defendants were fully aware, rendering the Company effectively insolvent, short of cash, and unable to pay its debts as they became due.

**ANSWER:**

Defendants admit that on March 31, 2021, Walker Edison and Walker Edison Intermediate, LLC ("Intermediate") entered into a loan agreement with Owl Rock Capital Corporation ("Owl Rock") and others in the amount of $300 million ("Loan Agreement"). The Loan Agreement stated that "[Walker Edison] intends to make a cash Dividend . . . in an amount up to $210,000,000 . . . to existing equityholders and optionholders . . . .," and it obligated Walker Edison to issue such dividend ("Dividend"). Defendants refer to the Loan Agreement for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

2.      Defendants—who were not just the controlling owners but also comprised essentially the entirety of Walker Edison's senior management and governing board—did so with full knowledge that the dividend was improper because of the Company's effective insolvency. They knew that the Company was facing a liquidity crisis. They knew the Company's financial statements and projections were inaccurate, unreasonable, and inflated because they did not account for massive increases in expenses that were plaguing the Company. They knew that no fair or reasonable valuation of the Company justified such a large dividend. And they knew that

removing approximately $210 million from the Company and taking on $300 million in new debt just as costs were skyrocketing would exacerbate the Company's liquidity problems and put its survival at risk.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

3.      Indeed, when the loan to Walker Edison closed on March 31, 2021, and Defendants paid themselves their massive $210 million dividend, things were so bad at Walker Edison that the Defendants had already decided to start short-paying the Company's suppliers and to implement immediate and drastic hiring cuts. The Company's internal cash flow projections were showing that it would run out of credit availability within weeks. These were not conditions that justified Defendants taking $210 million out of the Company. On the contrary, Defendants knew at the time of the dividend that (i) the Company had cash flow problems and was unable to pay its suppliers on time, (ii) the historical financial statements overstated profitability by failing to properly account for freight expenses that were rapidly increasing, (iii) the Company would be unable to meet the financial covenants required under the new financing, and (iv) the financial projections used to justify the dividend were materially inflated and failed to account for the massive increase in expenses the Company had experienced during the preceding months, which were not expected to decrease in the foreseeable future. As the Company's own President complained several weeks after the Defendants took their dividend, "we were saying from the very beginning that the forecast for this year was way too high, and no one listened."

**ANSWER:**

To the extent this paragraph refers to a written communication, Defendants refer to such

written communication for the complete contents thereof and deny all allegations and

characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all

allegations and characterizations in this paragraph.

4.      Defendants paid themselves anyway by taking on additional debt, which further exacerbated the Company's insufficient liquidity. And when the Company's cash shortages compounded soon afterward, Defendants unsuccessfully sought to remedy the consequences of their wrongful conduct through desperate efforts to obtain additional financing and additional equity investments. These measures were not enough. In the span of only one year—the very year Defendants decided to take approximately $210 million in badly needed cash out of the Company that could have been used to weather difficult times—the Company burned through over $100 million of cash to address the same spiraling costs and inventory challenges that were evident to the Defendants prior to the dividend payment. Within just months of receiving their dividend, Defendants described the Company's financial position with statements like "the house is on fire," and "the precarious situation we are in," as they discussed firing all employees who were not "mission critical," and questioned whether the Company would have "the cash and profitability to actually survive this." Two years after the $210 million dividend, the Company's performance still has not recovered.

**ANSWER:**

To the extent this paragraph refers to written communications, Defendants refer to such written communications for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

5.     By early 2023, unable to reverse the effects of their misconduct, Defendants abandoned the Company in a change-of-control transaction and exited the disaster they had created. As a result, Walker Edison's lenders assumed ownership and control of the Company and provided approximately $50 million of additional capital to support operations. Meanwhile, Defendants, as former owners, have retained the benefits of their massive and improper payout. As a result of the facts described herein, Walker Edison brings the instant suit to right this egregious wrong and to recoup the Company's capital, which should have remained with the Company and should never have been paid out to Defendants as a dividend.

**ANSWER:**

Defendants state that in January 2023, Walker Edison, Intermediate, Holding, Owl Rock and others entered into a Restructuring Support Agreement ("RSA") pursuant to which Walker Edison Holding Company LLC ("Holding") agreed to transfer 100% of its equity interest in Intermediate to an acquisition entity formed by Owl Rock. Defendants refer to the RSA for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

## JURISDICTION, VENUE, AND DISCOVERY TIER

6.     Jurisdiction is proper under Utah Code § 78A-5-102(1).

**ANSWER:**

Admitted.

7.     Venue is proper in this Court under Utah Code § 78B-3-307(1)(a) because this is the county in which the causes of action arose, and Utah Code § 78B-3-307(1)(b) because this is the county in which one or more Defendants reside at the commencement of this action.

**ANSWER:**

Admitted.

8.      Defendants Brad Bonham and Matt Davis are residents of Utah and therefore subject to the general personal jurisdiction of this Court.

**ANSWER:**

Admitted.

9.      Defendant MB & BB Holdings, LLC is subject to the general personal jurisdiction of this Court because it is a Utah limited liability company with its principal place of business in Utah.

**ANSWER:**

Admitted.

10.     Collectively, Brad Bonham, MB & BB Holdings, LLC, and Matt Davis are referred to as the "Founder Defendants."

**ANSWER:**

Admitted that the Complaint refers to Brad Bonham, MB & BB Holdings, LLC, and Matt

Davis as the "Founder Defendants."

11.     Defendants Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., and Prospect Hill Growth Fund II Co-Invest, L.P. (collectively, the "PHGP Defendants" and with the Founder Defendants, the "Defendants") are subject to personal jurisdiction in this Court pursuant to Utah Code § 78B-3-201 et seq.

**ANSWER:**

Denied.

12.     This case involves claims for more than $300,000, and therefore falls within Tier 3 of Rule 26(c)(3) of the Utah Rules of Civil Procedure.

**ANSWER:**

Defendants admit that the amount in controversy exceeds more than $300,000 but assert

that this paragraph contains a legal conclusion that does not require an answer.

## THE PARTIES

### I. PLAINTIFF WALKER EDISON FURNITURE COMPANY LLC.

13.     Walker Edison is a Utah limited liability company, with its principal place of business at 1553 West 9000 South, West Jordan, Utah.

**ANSWER:**

Admitted.

### II. DEFENDANTS.

14.     Brad Edison Bonham is the former Chief Executive Officer and co-owner of Walker Edison, as well as a member of the board of directors that controlled Walker Edison at all times relevant to this Complaint. On information and belief, he resides in Salt Lake City, Utah.

**ANSWER:**

Mr. Bonham admits he is the former Chief Executive Officer and former co-owner of

Walker Edison and he resides in Salt Lake City, Utah. Mr. Bonham denies he was a member of

the board of directors of Walker Edison, but admits he was a member of the board of managers of

Walker Edison Holding Company, LLC ("Holding"). Except as so admitted and stated, Defendants

deny all allegations and characterizations in this paragraph.

15.     MB & BB Holdings, LLC is a Utah limited liability company, with its principal place of business at 4350 West 2100 South, Suite A, Salt Lake City, Utah. On information and belief, it is owned and managed by Defendant Brad Bonham.

**ANSWER:**

MB & BB Holdings, LLC admits the allegations in this paragraph.

16.     Matthew Brown Davis is the former Chief Operating Officer and co-owner of Walker Edison, as well as a member of the board of directors that controlled Walker Edison at all times relevant to this Complaint. On information and belief, he resides at 6141 W. Cherry Springs Ct., Salt Lake City, Utah.

**ANSWER:**

Matt Davis denies that he is known as Matthew Brown Davis. To the extent "Matthew

Brown Davis" refers to Matt Davis, Mr. Davis admits he is the former Chief Operating Officer

6

and former co-owner of Walker Edison. Mr. Davis denies he resides at the address alleged in this

paragraph. Mr. Davis denies he was a member of the board of directors of Walker Edison, but

admits he was a member of the board of managers of Holding. Except as so admitted and stated,

Defendants deny all allegations and characterizations in this paragraph.

17.    Walker Edison Holding Company, LLC ("Walker Edison Holding") is a Delaware limited liability company. On information and belief, its principal place of business is in West Jordan, Utah.

**ANSWER:**

Holding admits it is a Delaware limited liability company. Except as so admitted and stated,

Defendants deny all allegations and characterizations in this paragraph.

18.    Prospect Hill Growth Partners, L.P. ("Prospect Hill") is a Delaware limited partnership, with its principal place of business at 500 Totten Pond Road, 6th Floor, Waltham, Massachusetts.

**ANSWER:**

Prospect Hill admits it is a Delaware limited partnership with its principal place of business

in Waltham, Massachusetts. Except as so admitted and stated, Defendants deny all allegations and

characterizations in this paragraph.

19.    JWC-WE Holdco, LLC is a Delaware limited liability company. On information and belief, its principal place of business is in Waltham, Massachusetts.

**ANSWER:**

Admitted.

20.    JWC-WE Holdings, L.P. is a Delaware limited partnership. On information and belief, its principal place of business is in Waltham, Massachusetts.

**ANSWER:**

Admitted.

21.    Prospect Hill Growth Fund II, L.P. is a Delaware limited partnership. On information and belief, its principal place of business is in Waltham, Massachusetts.

**ANSWER:**

Admitted.

22.     Prospect Hill Growth Fund II Co-Invest, L.P. is a Delaware limited partnership. On information and belief, its principal place of business is in Waltham, Massachusetts.

**ANSWER:**

Admitted.

23.     Phil Damiano is an Operating Partner at Prospect Hill and was the non-executive chairman of the board of directors that controlled Walker Edison at all times relevant to this Complaint. On information and belief, he resides in or around Waltham, Massachusetts.

**ANSWER:**

Mr. Damiano admits he is an operating partner at Prospect Hill. Mr. Damiano denies he

was either chairman or a member of the board of directors of Walker Edison, but admits he is

chairman of the board of managers of Holding. Except as so admitted and stated, Defendants deny

all allegations and characterizations in this paragraph.

24.     Ken Murphy is CEO of a Prospect Hill portfolio company and a member of the board of directors that controlled Walker Edison at all times relevant to this Complaint. On information and belief, he resides in or around Philadelphia, Pennsylvania.

**ANSWER:**

Mr. Murphy admits he is CEO of Comoto Holdings, a Prospect Hill portfolio company that

is unrelated to this action. Mr. Murphy denies he was a member of the board of directors of Walker

Edison, but admits he was a member of the board of managers of Holding. Except as so admitted

and stated, Defendants deny all allegations and characterizations in this paragraph.

25.     Adam Suttin is Managing Partner of Prospect Hill and was a member of the board of directors that controlled Walker Edison at all times relevant to this Complaint. On information and belief, he resides in or around Newton, Massachusetts.

**ANSWER:**

Mr. Suttin admits he is managing partner of Prospect Hill and resides in Massachusetts.

Mr. Suttin denies he was a member of the board of directors of Walker Edison, but admits he is a

member of the board of managers of Holding. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

26.    Kyle Casella is a Principal at Prospect Hill and was a member of the board of directors that controlled Walker Edison at all times relevant to this Complaint. On information and belief, he resides in or around Boston, Massachusetts.

**ANSWER:**

Mr. Casella admits he is a principal at Prospect Hill and resides in Boston, Massachusetts. Mr. Casella denies he was a member of the board of directors of Walker Edison, but admits he is a member of the board of managers of Holding. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

27.    David Fiorentino is a former Partner at Prospect Hill and was a member of the board of directors that controlled Walker Edison at all times relevant to this Complaint. On information and belief, he resides in or around Winchester, Massachusetts.

**ANSWER:**

Mr. Fiorentino admits he is a former partner at Prospect Hill and resides in Winchester, Massachusetts. Mr. Fiorentino denies he was a member of the board of directors of Walker Edison, but admits he was a member of the board of managers of Holding, Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

28.    Does 1 through 100 are individuals who received unlawful distributions or transfers or participated in some manner in the events described in this Complaint, and therefore proximately caused or are otherwise liable for the injuries and damages that this Complaint describes. The true names and capacities of Does 1 through 100 are not now known to Plaintiff, who therefore sues these Defendants by fictitious names. Plaintiff will amend this Complaint to show their true names and capacities as it learns this information.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph, and deny knowledge or information sufficient to form a belief concerning whether "true names and capacities of Does 1 through 100 are not now known to Plaintiff," or whether those unnamed

individuals "participated in some manner in the events described in the events described in this Complaint.".

## FACTUAL ALLEGATIONS

### III.    WALKER EDISON'S BUSINESS AND ORGANIZATION.

A.    Operations.

29.    Walker Edison is a supplier of affordable, ready-to-assemble home furnishing products through e-commerce channels to consumers worldwide. Defendants Brad Bonham and Matthew Davis founded the Company in or around 2006. Defendant Bonham served as Walker Edison's Chief Executive Officer until June 2022, and served on the board of directors that controlled Walker Edison until the Company changed owners in 2023. Defendant Davis served as Walker Edison's Chief Operating Officer until April 2022, and continued to serve on the board of directors that controlled Walker Edison until the Company changed owners in 2023. In the years leading up to 2020, Walker Edison was a profitable company with an impressive track record.

**ANSWER:**

Defendants admit that Walker Edison is a supplier of affordable, ready-to-assemble home furnishing products through e-commerce channels; that Messrs. Bonham and Davis founded the company in 2006; that Mr. Bonham served as Walker Edison's Chief Executive Officer until June 2022; that Mr. Davis served as Walker Edison's Chief Operating Officer until April 2022; and that Walker Edison has been a profitable company with an impressive track record. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

30.    Unlike traditional brick-and-mortar furniture stores, at all relevant times Walker Edison operated exclusively through e-commerce channels, in which orders are placed on platforms such as Wayfair and Amazon. The vast majority of its products are shipped from Walker Edison's manufacturing suppliers in Asia and South America to the Company's own distribution centers or to the distribution centers of its e-commerce channel partners. From these distribution centers, orders are then drop-shipped directly to consumers.

**ANSWER:**

To the extent this paragraph includes the fact that Walker Edison also accepts orders on its website, Defendants admit the allegations therein. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

31.    In order to meet customer demands for prompt delivery, Walker Edison must carefully manage its network of distribution centers and maintain a sophisticated inventory management system and a dedicated logistics team. E-commerce platforms therefore monitor the performance of suppliers like Walker Edison to ensure prompt and satisfactory deliveries to consumers. If Walker Edison fails to meet expectations, its listings on e-commerce platforms will drop lower in the platform's search results, which reduces the visibility of Walker Edison's products and negatively impacts sales.

**ANSWER:**

Defendants admit that Walker Edison maintains or employs a network of distribution

centers, an inventory management system, and a logistics team; that E-commerce platforms

monitor the performance of suppliers; and that a supplier's performance may affect search result

rankings on E-commerce platforms. Except as so admitted and stated, Defendants deny all

allegations and characterizations in this paragraph.

32.    Walker Edison operates in a highly competitive industry with relatively few e-commerce platforms through which to sell its products to consumers. As of January 2021, approximately 86% of the Company's sales were generated through relationships with just four e-commerce platforms—Wayfair, Amazon, Walmart, and Target. Accordingly, Walker Edison must maintain good relationships with its e-commerce platform partners because disruptions on even one platform can have serious consequences for Walker Edison.

**ANSWER:**

Defendants admit that as of January 2021, the majority of Walker Edison's sales were

generated on Wayfair, Amazon, Walmart and Target; and that a supplier's performance may affect

search result rankings on E-commerce platforms. Except as so admitted and stated, Defendants

deny all allegations and characterizations in this paragraph.

**B.    Corporate Structure.**

33.    Plaintiff Walker Edison is, and has been at all times relevant to this Complaint, fully owned by Walker Edison Intermediate, LLC ("Walker Edison Intermediate"). In turn, during the relevant period, Walker Edison Intermediate was fully owned by Defendant Walker Edison Holding. On information and belief, at all relevant times, the board of directors for Walker Edison Holding (the "Board") controlled all material decisions of Walker Edison Intermediate and Walker Edison. On information and belief, at all relevant times, the Board was controlled and dominated by Defendants Davis, Bonham, and Prospect Hill. On information and belief, the Board did not have a single independent director, and was comprised solely of insiders.

**ANSWER:**

Defendants admit that Intermediate owns Walker Edison and Holding owned Intermediate until Holding transferred its equity interests in Intermediate pursuant to the RSA. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

C.      **Prospect Hill and the Founder Defendants Owned and Controlled Walker Edison.**

34.     Prior to September 2018, Walker Edison was jointly owned by the Founder Defendants and a California-based private equity and mezzanine debt provider.

**ANSWER:**

To the extent this paragraph refers to California based private equity and mezzanine debt provider, "Caltius Capital," Defendants admit the allegations in this paragraph. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

35.     In or around September 2018, the PHGP Defendants, comprising a Massachusetts-based private equity firm and family of funds now known as Prospect Hill, but then known as J.W. Childs Associates, acquired for approximately $191 million a 55% majority share of the Company from the Founder Defendants and the California-based firm, with the Founder Defendants retaining a 45% ownership interest.

**ANSWER:**

Defendants state that as a result of a transaction in September 2018 ("2018 Transaction"): Intermediate was owned by Holding; Holding was owned by JWC-WE Holdco, LLC ("JWC Holdco"), MB & BB, LLC and Mr. Davis; JWC Holdco was owned by JWC-WE Holdings, L.P. ("JWC Holdings"); and JWC Holdings was owned by Prospect Hill Growth Fund II, L.P. ("Fund II") and Prospect Hill Growth Fund II Co-Invest, L.P. ("Fund II Co-Invest"). To the extent this paragraph purports to characterize transaction documents governing the 2018 Transaction and resulting ownership, Defendants refer to those documents for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

36.    Prospect Hill is a private equity investor that has invested over $2.8 billion in 37 portfolio companies.

**ANSWER:**

Admitted.

37.    Following Prospect Hill's 2018 investment, Defendant Brad Bonham continued to serve as CEO, and Defendant Matt Davis continued to serve as COO. Both Defendants Bonham and Davis also continued to serve on the Board. Upon acquiring a majority share of the Company, Prospect Hill added its own Board members, including non-executive chairman Defendant Damiano (Operating Partner at Prospect Hill), Defendant Murphy (CEO of a Prospect Hill portfolio company), Defendant Suttin (Managing Partner of Prospect Hill), Defendant Casella (then-Vice President and now Principal at Prospect Hill), and Defendant Fiorentino (then-Partner at Prospect Hill). On information and belief, there were no independent directors on the Board.

**ANSWER:**

Defendants admit that following the 2018 Transaction Mr. Bonham continued to serve as CEO of Walker Edison and Mr. Davis continued to serve as COO of Walker Edison. Defendants deny that any of the named defendants served on the board of directors of Walker Edison, but admit that Mr. Bonham, Mr. Davis, Mr. Damiano, Mr. Murphy, Mr. Suttin, Mr. Casella, and Mr. Fiorentino were members of the board of managers of Holding. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

## IV.    DEFENDANTS FALSELY PORTRAYED WALKER EDISON'S FINANCIAL HEALTH TO ATTRACT FINANCING FOR A MASSIVE DIVIDEND.

### A.    Defendants Sought to Cash Out of the Business Following a Period of Explosive Growth.

38.    The Company experienced massive growth in the years leading up to and including portions of 2020 amid the COVID-19 pandemic. During that period, e-commerce furniture sellers experienced significant sales growth as brick-and-mortar competitors shut their doors while consumer demand rose as people were forced to spend more time at home. Industry-wide, the share of all furniture sales conducted online grew from only 21% pre-COVID-19 to 71% of all furniture sales during the peak of the COVID-19 pandemic from March 19 to May 20, 2020.

**ANSWER:**

Defendants admit that Walker Edison experienced substantial revenue growth over many years through 2020; and that Walker Edison and certain other E-commerce furniture sellers

13

experienced significant sales growth during the COVID-19 pandemic. Defendants deny knowledge or information sufficient to form a belief about the change in the percentage of online furniture sales pre-COVID 19 to the peak of the COVID-19 pandemic, but to the extent this paragraph refers to published industry data, Defendants refer to such data for the relevant sales statistics and deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

39.    Walker Edison benefited from the significant and immediate growth in the online furniture industry. From 2017 to 2020, Walker Edison saw EBITDA grow from $13 million to $84 million. EBITDA stands for earnings before interest, taxes, depreciation, and amortization. It is one of the most widely used measures of a company's overall financial performance. And while such growth peaked during the pandemic, online furniture sales overall remained above pre-pandemic levels even after brick-and-mortar competitors began to reopen.

**ANSWER:**

Defendants admit that since Walker Edison was founded, E-commerce sales of furniture have grown significantly; that from 2017 to 2020, Walker Edison's EBITDA grew from $13 million to $84 million; and that "EBITDA" generally refers to earnings before interest, taxes, depreciation, and amortization, a widely used measure of a company's overall financial performance. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

40.    In at least as early as 2020, seeking to capitalize on this explosive growth, the existing shareholders—Defendants Bonham, Davis, and Prospect Hill—decided it was the right time to launch an effort to extract cash from the business.

**ANSWER:**

Defendants deny the allegations in this paragraph except admit that in 2020, Walker Edison began considering various potential options to provide a return on investment to its upstream equity holders, including a sale or partial sale, an IPO, a going public transaction, and a dividend recapitalization. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

14

41.     On information and belief, in order to finance their desired payout, Defendants considered a number of options to allow them to liquidate their ownership in the Company, including an acquisition by a Special Purpose Acquisition Company ("SPAC"), a large equity investment, or a debt financing.

**ANSWER:**

Defendants state that in 2020, Walker Edison began considering various potential options to provide a return on investment to its upstream equity holders, including a sale or partial sale, an IPO, a going public transaction (potentially through a Special Purpose Acquisition Company or "SPAC"), and a dividend recapitalization. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

42.     Ultimately, Defendants' efforts in late 2020 and early 2021 to explore various non-debt options proved unsuccessful, and they settled on a strategy to finance their payout through a dividend recapitalization, or "dividend recap." This required the Company to incur $300 million of additional debt in order to fund an approximately $210 million dividend to themselves (the "Dividend"). Without the loan, Defendants could not have paid such a large dividend to themselves, and with the loan, the Company's debt load would increase tremendously. Having failed to realize alternative strategies, Defendants began soliciting potential lenders on behalf of the Company in or around March 2021. On information and belief, the efforts to fund this dividend recap were led by Defendants Bonham, Davis, and representatives of Defendant Prospect Hill, including Defendants Fiorentino, Damiano, Casella, and others.

**ANSWER:**

Defendants state that, in addition to other potential transactions, Walker Edison explored the possibility of a dividend recapitalization transaction and that before Walker Edison entered into the Loan Agreement, Goldman Sachs proposed a syndicated debt placement to fund a dividend recapitalization for Walker Edison. Defendants further admit that Walker Edison and Intermediate entered into the Loan Agreement providing for a $300 million loan, with $210 million to be paid as a dividend to equityholders and optionholders. Defendants refer to the Loan Agreement for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

**B.** **The Company Began to Experience Financial Distress Before Defendants Received the Dividend.**

43.    In late 2020, while Defendants were strategizing ways to fund their payout, Walker Edison management discovered that overseas freight and shipping costs had been skyrocketing due to pandemic-related supply chain issues, and that the Company's accrual accounting method had been inappropriately understating freight costs.

**ANSWER:**

Defendants admit that ocean freight costs increased industry-wide and for Walker Edison

in late 2020, but deny knowledge or information sufficient to form a belief about how Plaintiff is

using the term "skyrocketing" in regards to freight costs in 2020, and on that basis denies the

allegations. Except as so admitted and stated, Defendants deny all allegations and characterizations

in this paragraph.

44.    From March 2020 to March 2021, the cost of a single ocean freight container used to transport Walker Edison's products from its overseas manufacturers rose from approximately $2,600 to $7,300, an increase of approximately 180%, year over year. By December 2021, the cost of a single container increased to approximately $8,800.

**ANSWER:**

Defendants deny knowledge or information sufficient to form a belief as to the allegations

in this paragraph 44.

45.    Not later than October 2020, Defendants knew that freight and shipping expenses were rising rapidly and that their accounting methods were not accurately reflecting real-time increases. On October 9, 2020, for example, the Company's Controller notified the CFO that in working on the month-end closing process for the Company's income statement, he had noticed an "area of significant concern" relating to an unusual increase in freight and shipping expenses that he could not explain, including a cost balance that had grown 57% since the previous month, and that was five times higher than the previous January. The CFO reviewed the income statement figures and replied "my biggest concern is the shipping expense. Would really like to know what's going on there. Seems like maybe the cost allocations for capitalizing freight are being understated potentially?" In fact, the Company's accounting at the time was significantly understating freight costs in violation of Generally Accepted Accounting Principles due to a failure to reconcile actual freight costs with capitalized prepaid costs.

**ANSWER:**

Defendants admit that ocean freight costs increased significantly industry-wide and for Walker Edison in late 2020, but deny the remaining allegations in the first sentence of this paragraph. To the extent the remainder of this paragraph purports to refer to emails exchanged on October 9, 2020, Defendants refer to those documents for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

46.     A few days later, Defendant Bonham spoke with the Company's CFO, who told him that the Company had seen an $800,000 increase in shipping charges from the prior month, "but no revenue offset of that expense which we would expect to see." A month later, the CFO told Defendants Bonham and Davis that shipping charges continued to rise month-over-month and that the Company would miss budgeted EBITDA in part because "we are getting killed by FedEx peak season charges."

**ANSWER:**

On information and belief, this paragraph refers to emails dated October 13, 2020 and November 11, 2020. Defendants refer to those documents for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Defendants deny the allegations in this paragraph to the extent they assert that "an $800 increase in shipping charges" is related to the "FedEx peak season charges." Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

47.     Almost immediately, the Founder Defendants began discussing the precipitous increases in shipping and ocean freight expenses affecting the Company with the PHGP Defendants. The Founder Defendants and PHGP Defendants were well aware of the risk to the Company's forecasted performance posed by freight and shipping price increases and the decreasing FedEx and UPS shipping capacity for the Company's products, which was resulting in significant delays and price increases hitting the Company's bottom line each month. On October 12, 2020, Defendant Casella asked Defendants Bonham and Davis about the "big log jam expected in Q4" that could spiral "out of our control" and asked for a call to discuss "the potential impact of shipping on our ability to hit the forecast," which he said would receive "very heightened scrutiny" in light of Defendants' desire for a liquidity transaction. Three days later, Defendant Fiorentino recounted that the PHGP Defendants had been told in a management presentation that ocean freight costs were "way up," and advised that "[a]t the least, we should calculate the hit we

have taken vs. last year," noting that Defendant Davis would be following up with information on this point and on the issue of FedEx and UPS rates.

**ANSWER:**

On information and belief, this paragraph refers to emails dated October 12, 2020 and October 15, 2020. Defendants refer to those documents for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

48.    Defendants were fully aware of the serious problem posed by rising freight and shipping charges (and the Company's improper understatement of freight charges in its financial statements) by not later than December 2020, and quickly realized that it could spook potential investors and therefore jeopardize their desired payout. Accordingly, the Founder Defendants and PHGP Defendants discussed the need to suppress mention of these issues in Company promotional materials. On December 2, 2020, Defendants Fiorentino, Casella, and Damiano were told that "[freight] rates are increasing all over the map due to capacity limitations." Defendant Fiorentino then told Defendants Casella and Damiano that he had hoped the ocean freight market would improve but that "doesn't seem to be the case." On December 8, 2020, a PHGP representative told the Founder Defendants that "[we] thought not ideal to call out ocean freight at this point as the market dynamics are still fluctuating and we might not want buyers scrutinizing this." (Emphasis added). Two weeks later, Defendant Fiorentino reinforced his concern about highlighting freight prices to buyers, saying "I don't think we want to open the ocean freight can of worms." On information and belief, Defendants continued to investigate, monitor, and discuss the increased freight and shipping costs—and the Company's failure to properly account for freight costs—over the next two months, including during the Company's closing of its year-end financial statements in February 2021, when the Company again confirmed that there were, in fact, significant errors with the Company's freight accounting that had the effect of understating freight expenses and materially overstating gross profit and EBITDA.

**ANSWER:**

On information and belief, this paragraph refers to emails dated December 2, 8, and 24, 2020. Defendants refer to those documents for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Defendants state that certain of the individual defendants monitored and discussed freight and shipping costs during the two-month-period following December 8, 2020. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

49. Defendants knew that the Company's financial statements—which understated costs and thereby overstated EBITDA and net income—did not reflect the Company's true financial position. But Defendants chose not to rectify the accounting misstatements until after the closing of the dividend recap transaction. On information and belief, Defendants decided not to correct these misstatements because correcting the accounting information could impair the Founder Defendants' and PHGP Defendants' chances of achieving a large payday through a new equity investment or dividend recap transaction.

**ANSWER:**

Denied.

50. Rising freight and shipping costs and delays were not the only problem that the Company was beginning to face. The same supply chain disruptions that were causing increased freight and shipping costs were also causing a spike in Walker Edison's out-of-stock rates and on-time delivery rates, both of which directly impact Walker Edison's sales. High out-of-stock rates lead to lost revenue because Walker Edison cannot sell what it does not have. And both high out-of-stock rates and low on-time delivery rates negatively impact a seller's relationship with e-commerce platforms and can cause their listings to appear lower in the platform's search results. By December 2020, shipping delays had become so pronounced that they caused one of Walker Edison's largest e-commerce platform customers to shut off the Company's sales on the platform entirely for much of the month of December, causing the loss of millions of dollars in revenue. Referring to the negative impacts on the Company's performance caused by the shipping problems, Defendant Bonham told Defendant Davis and his management team, "I expect all of us to ask ourselves 'how did we [expletive] December this badly'. . . . [i]f we don't take drastic action right now, we can kiss January goodbye as well." In combination, these problems were also creating significant cash flow problems for the Company.

**ANSWER:**

On information and belief, this paragraph refers to instant messages dated December 13, 2020. Defendants refer to those documents for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

51. Defendants knew that problems were mounting with their out-of-stock and on-time delivery rates, which would cause problems down the road prior to paying themselves the Dividend. But as with freight expenses, Defendants relied on and reported financial information that did not reflect the reality that the business was facing. On information and belief, the misstated out-of-stock rates and on-time shipment rates, of which Defendants were aware, negatively affected the Company's preferential page placement with key e-commerce partners and contributed to a significant decline in sales in at least May and June, 2021.

**ANSWER:**

Denied.

52.     All of these issues, among others, meant that the Defendants knew the Company, prior to the issuance of the Dividend, was facing disruption to its business and financial projections that would impact the Company's ability to pay debts as they came due. As the months played out, and as a result of these known circumstances, the Company did in fact begin hemorrhaging cash to such an extent that it faced challenges in funding ongoing operations.

**ANSWER:**

Denied.

### C.     Defendants Portrayed a Financially Healthy Company When Walker Edison Was Actually in Crisis.

53.     To attract potential lenders to loan the Company $300 million in new money, and to justify taking the approximately $210 million Dividend out of the company despite the imminent cash flow problems that Defendants knew were on the horizon, Defendants relied upon and disclosed to lenders financial data through February 2021 that they knew was not reasonable or realistic under the circumstances

**ANSWER:**

Denied.

54.     More specifically, the projections that Defendants relied on and distributed to potential lenders in March 2021 contemplated that Walker Edison would continue its earlier strong performance despite known and knowable facts to the contrary. The faulty projections included the below.

- Cost of Goods Sold and Cost of Shipping: Defendants projected the same Cost of Goods Sold as a percentage of net sales for 2021 through 2025 and the same Cost of Shipping as a percentage of net sales for 2021 as they had in earlier projections as of November 2020, failing to account for the known dramatic increases in both freight expense (captured in Cost of Goods Sold) and cost of shipping since that time.
- Gross profit: Defendants projected gross profit of $197.2 million in 2021, which was higher than the Company's last-twelve-month ("LTM") gross profit of $146.5 million.
- Reported EBITDA: Defendants projected reported EBITDA of $104.4 million for 2021.
- Adjusted EBITDA: Defendants projected adjusted EBITDA of $111.6 million for 2021.
  Adjusted EBITDA is a measure of EBITDA that removes what the Company considers to be nonrecurring or one-time items.

**ANSWER:**

On information and belief, this paragraph refers to Walker Edison financial projections dated in or around November 2020 and March 2021 projections. Defendants refer to those projections for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so stated, Defendants deny all allegations and characterizations in this paragraph.

55.    In reality, because the Company was experiencing diminished liquidity to fund operations, revenue challenges, and increased costs that were not reflected in the Company's historical financial statements or go-forward projections, these projections were intentionally misleading.

**ANSWER:**

Denied.

56.    Meanwhile, to justify causing the Company to borrow $300 million to fund the Dividend, Defendants represented in forecasts that the Company's explosive growth—including the "bump" in sales that the Company and industry experienced during the first year of the COVID-19 pandemic—would continue without disruption. In other words, the Defendants premised their efforts to finance a massive dividend for their exclusive benefit on (a) unwarranted assumptions that the Company would continue the substantial growth it experienced as a result of the COVID-19 pandemic; and (b) bad data that they knew misleadingly omitted the impact of increased freight, shipping, and other costs, which impacts would ultimately also contribute to slumping sales.

**ANSWER:**

Denied.

57.    The financial statements and projections that Defendants shared with potential equity investors and lenders portrayed a successful and growing company. The reality was that Defendants knew by no later than March 2021 that the Company was experiencing decreased profits and sales, increased expenses, and a substantial liquidity shortage. Undeterred in their mission to extract the Dividend from the Company, Defendants knowingly provided materially inaccurate information to lenders and relied on that information to justify the Dividend.

**ANSWER:**

On information and belief, this paragraph refers to certain Walker Edison financial statements and projections. Defendants refer to those financial statements and projections for the

complete contents thereof and deny all allegations and characterizations inconsistent therewith.

Except as so stated, Defendants deny all allegations and characterizations in this paragraph.

58.     In contrast to the rosy portrayal of the Company that Defendants made to lenders, Defendants had begun internally to express decidedly pessimistic views of the Company's financial position, none of which were disclosed to potential investors or lenders. On March 11, 2021, for example—approximately three weeks before closing the new $300 million loan and causing the Dividend to be issued—Defendant Bonham told Defendant Davis and other Walker Edison employees that they "just had a meeting with the P[rospect] H[ill] guys," where the Company's CFO, "shared an erosion happening in our profit profile due to inbound freight and outbound increased FedEx charges." (Emphasis added). On the same day, the CFO warned Defendants Bonham and Davis that "I know we 'think' we will see relief in May or June on the ocean freight, but I wouldn't count on it and I'm really worried about the raw materials market." There was no disagreement from Defendant Bonham, who, in another email, expressly stated that he did not "see ocean freight or fedex costs reverting."

**ANSWER:**

On information and belief, this paragraph refers to instant messages dated March 11, 2021.

Defendants refer to those documents for the complete contents thereof and deny all allegations and

characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all

allegations and characterizations in this paragraph.

59.     Tempers appeared to flare at the Company as Defendants tried to deal with the Company's financial woes. On March 11, 2021, the Company's Controller put it bluntly: "cash is short right now." On the same day, the Defendants had attended a meeting to discuss the Company's "recent underperformance." The Company's President then expressed regrets that "the meeting did not go well and could have been better managed," alluding to Defendants' frustration with the management team that had brought them more bad news without providing any reassurance. The Company's President then provided the Founder Defendants and PHGP Defendants a summary of next steps that were necessary to address the Company's "reduced profitability, increased costs, and the impact on the FY21 EBITDA forecast." Five days later, on March 16, 2021, Defendant Fiorentino wrote to Defendants Bonham, Davis, Casella, and Damiano that there were "very high hurdles for gross margin/EBITDA year over year starting in April." Despite this, he noted that the focus was still on a "dividend path to private deal," meaning a dividend recapitalization.

**ANSWER:**

On information and belief, this paragraph refers to emails dated March 11, 2020 and March

16, 2021. Defendants refer to those documents for the complete contents thereof and deny all

allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

60.    As the days passed, other management-level employees similarly expressed concern that the Company would continue to suffer from spiraling freight costs well beyond March 2021. On March 19, 2021, a Company vice president stated that "ocean freight increases will be persistent," and that the increasing freight costs plaguing the Company and the global supply chain would not be "short term/temp." The Company's Treasurer told the CFO that "it seems like [freight expenses] ha[ve] been going up every month since the first of the year." On information and belief, the Founder Defendants and PHGP Defendants began holding "all hands" meetings to discuss how to handle the soaring freight and shipping costs, which were quickly burning up the Company's cash resources and risked making the Company's financial position untenable.

**ANSWER:**

On information and belief, this paragraph refers to emails and/or instant messages dated March 2021. Defendants refer to those documents for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

61.    Despite this internal discussion, the Company's projections that Defendants used to justify and support the incurrence of the loan and the issuance of the Dividend did not reflect Defendants' knowledge that the Company would continue to suffer from increased freight and shipping costs and that costs would continue to increase after consummation of the transaction. In fact, Defendants knew that the projections upon which they relied to promote and justify the dividend recapitalization failed to account for the increased freight and shipping expenses the Company had encountered since at least as early as October 2020, or the resulting erosion in EBITDA that Defendants knew would continue to occur. In fact, Defendants did not even properly account for the EBITDA misses that they knew had already resulted from these issues and other performance challenges. Moreover, Defendants were aware that the Company's financial projections were unreasonably high and ignored reality in order to justify the dividend. As the Company's President lamented weeks after the dividend was issued, "we were saying from the beginning that the forecast for this year was way too high and no one listened."

**ANSWER:**

On information and belief, this paragraph refers to instant messages dated April 20, 2021. Defendants refer to those documents for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

62.    To the contrary, knowing that they could not hide the problems entirely, Defendants sought to downplay their impact. At the same time that Defendants and Walker Edison management were discussing the "persistent" and "inevitable" increases in freight and shipping costs and the "erosion in our profit profile"—as Defendant Bonham put it—caused by those increases that were not accounted for in the financial projections, Defendants were telling prospective lenders that the issues had been resolved. For example, in a confidential information memorandum given to lenders in March 2021, Defendants told lenders that although Walker Edison had "experienced unprecedented supply chain challenges" in November 2020, it "has since worked through the supply chain challenges, which no longer pose an issue" and that "[t]he Company's January 2021 performance recovered well from December 2020, as the supply chain challenges subsided and Walker Edison continued to experience increased demand." This statement came at the same time that Defendant Bonham was telling management internally, "I don't see ocean freight or fedex costs reverting" and the Company's president was warning Bonham, Davis, and the PHGP Defendants of "reduced profitability, increased costs, and the impact on the FY21 EBITDA forecast." In addition, on March 24, 2021, days before closing the new loan, employees of Walker Edison were still grappling with the related errors with the Company's freight accounting, noting that there had been "$6.4 million of freight costs" that were "not being allocated to inventory timely."

**ANSWER:**

On information and belief, this paragraph refers to documents including the Walker Edison Confidential Information Memorandum dated March 2021, instant messages dated March 11, 2021, and an email dated March 24, 2021. Defendants refer to those documents for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

63.    As problems mounted, the Company was forced to take drastic steps to deal with its lack of liquidity to pay ongoing debts due to its deteriorating financial condition. On information and belief, not later than March 2021, the Company started to intentionally delay payments to certain critical vendors to manage its cash liquidity. While helpful on paper to slow cash burn, delaying critical vendor payments caused material risk to the Company's relationships and business going forward.

**ANSWER:**

Denied.

64.    The Founder Defendants and PHGP Defendants were aware of the liquidity crisis faced by the Company and were advised of various measures Company management was proposing to deal with the Company's growing inability to pay its debts. On March 3-8, 2021, for example, the Company's CFO requested that a cash flow four-week forecast be drawn up showing that the Company would only be able to pay 86% of what it was scheduled to pay to its suppliers in China and Brazil, and stated that he was "going to talk to [Defendant Bonham], [Walker

Edison's President], and [Defendant Davis] today about pushing orders out," i.e., delaying critical orders from suppliers, "since we aren't hitting sales goals."

**ANSWER:**

On information and belief, this paragraph refers to emails dated March 3 and 8, 2021. Defendants refer to those documents for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

65.     As of at least March 17, 2021, management expressed concern that the Company's factory relationships—absolutely essential to the Company's business and survival—could be seriously jeopardized if the Company continued to stretch payments beyond due dates for orders that it had placed, and debated which part of the Company was better positioned to "weather this storm."

**ANSWER:**

On information and belief, this paragraph refers to emails dated March 17, 2021. Defendants refer to those documents for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

66.     Defendant Bonham also started pushing the idea of slashing hiring at the Company given the dire financial conditions, telling Defendant Davis and others on the management team, "revenue miss plus increasing expenses = stop hiring." However, this formula did not stop Defendants from causing the Company to incur $300 million in debt (resulting in increased debt service costs) to fund an approximately $210 million distribution to line their own pockets.

**ANSWER:**

On information and belief, this paragraph refers to instant messages dated March 11, 2021. Defendants refer to those documents for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

67.     By March 18, 2021, the Company had completed an internal projection showing that it would exceed its borrowing capacity under its asset based loan facility (the "ABL Facility")—the Company's key source of liquidity—by May 2021. Incredibly, the projection

showed that the Company would burn through more than $100 million in cash—which it did not have—by December 2021. On that same date, March 18, the Company's President advised Defendants Bonham, Davis, Fiorentino, Damiano, and Casella as members of the Walker Edison Board that the Company should delay certain critical hiring and implement a 31% reduction in hiring of non-critical roles "immediately" and not reintroduce non-critical hiring until "performance improves."

**ANSWER:**

On information and belief, this paragraph refers to Walker Edison projections dated March 2021 and emails dated March 18, 2021. Defendants refer to those projections and documents for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

68.     The Company's actual performance with respect to freight and shipping delays and increased costs not only impacted its cash liquidity in the form of reduced profits, it also reduced the Company's ability to access the bank borrowing that was essential for it to meet its debts. Specifically, the freight and shipping issues had an immediate impact on the Company's ability to borrow cash under its ABL Facility. Prior to the Company obtaining debt financing and issuing the Dividend in March 2021, the Company's ABL Facility had a maximum loan capacity of $55 million. In connection with incurrence of the debt financing, on March 31, 2021, the ABL Facility was also amended to increase the available loan capacity to $75 million. Even prior to that amendment, however, the Company's ability to access that facility was uncertain.

**ANSWER:**

Defendants state that on or around March 31, 2021, Walker Edison's asset based loan credit agreement ("ABL Credit Agreement") was amended to increase its Aggregate Commitments (as defined therein) by $25 million. Defendants refer to the ABL Credit Agreement for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so stated, Defendants deny all allegations and characterizations in this paragraph.

69.     On March 26, 2021, the Company's CFO sent an email to representatives of Prospect Hill and to the Company's lender under the ABL Facility telling them that (a) the Company's projections (which were used to justify the new loan and the issuance of the Dividend) depended on the Company having access to the full $75 million available under the ABL Facility, but (b) delays in shipments of the Company's inventory would preclude the Company from borrowing the full amount it needed under the ABL Facility because the inventory necessary to supply the necessary collateral had been averaging in-transit times far beyond the lender's

permitted 45-day time limits. Defendants ultimately declined to make a request to the ABL lender to increase the limits because Defendant Casella responded that he did not want such a request to "slow down the process," and the CFO agreed that doing so could jeopardize Defendants' ability to "stay on the current timeline for close"—i.e., meaning the "timeline" and the "process" by which Defendants were to cause Walker Edison to incur $300 million in new debt so that they could take the $210 million Dividend out of the Company only a few days later.

**ANSWER:**

On information and belief, this paragraph refers to emails dated March 26, 2021.

Defendants refer to those documents for the complete contents thereof and deny all allegations and

characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all

allegations and characterizations in this paragraph.

**D.    Defendants Caused the Company to Borrow $300 Million to Fund an Approximately $210 Million Dividend to Themselves.**

70.    Even though Defendants knew that the Company was seeing a dramatic "erosion" in its "profit profile," and that the Company's financial statements and projections contained material inaccuracies, they nevertheless plowed ahead, undeterred in their desire to cash out of the business. Having failed to obtain other financing, their only remaining course was to cause Walker Edison to incur $300 million in new secured debt on March 31, 2021, for the purpose of issuing an immediate dividend of approximately $210 million for their own benefit.

**ANSWER:**

Denied.

71.    Walker Edison, as Borrower, and Walker Edison Intermediate and the Company's subsidiaries, as Guarantors, entered into a loan agreement, dated March 31, 2021 (the "Loan Agreement"). Under the Loan Agreement, Walker Edison incurred $300 million of new secured debt (the "New Secured Loan") from its lenders. The New Secured Loan resulted in $294,921,250 in net cash for the Company. However, Defendants did not permit a single dollar of the New Secured Loan to be kept by the Company to fund its ongoing operating costs or to solve its known liquidity issues. Rather, 100% of the proceeds of the New Secured Loan were used to pay transaction fees, pay off existing debt of $82,874,156.25, and to fund the Dividend, which amounted to $209,320,503.41. Defendants appear to have attempted to address the Company's liquidity issues by causing the Company to incur even more debt by increasing the loan capacity under the ABL Facility from $55 million to $75 million, notwithstanding the $300 million term loan debt they had just caused the Company to incur. Yet, projections and internal emails showed that even this increased loan capacity under the ABL Facility would either not be available or would be insufficient given the Company's substantial liquidity needs and cash burn.

**ANSWER:**

Defendants admit the allegations in the first, second, and third sentences of this paragraph, and refer to the Loan Agreement and other transaction documents for their complete contents. Defendants further refer to those documents setting forth the Dividend sources and uses, and Defendants deny all allegations and characterizations inconsistent therewith. Defendants state that on or around March 31, 2021, the ABL Credit Agreement was amended to increase its Aggregate Commitments (as defined therein) by $25 million. Defendants refer to the ABL Credit Agreement for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

72.    Had Defendants observed corporate formalities, the Dividend would have been distributed through the Company's corporate structure—(i) first to Walker Edison Intermediate, (ii) then to Walker Edison Holding, and (iii) then to the beneficial owners of Walker Edison Holding. The Dividend, however, was not distributed in accordance with this corporate structure. Rather, it was paid in cash directly by Walker Edison to Defendants JWC-WE Holdco, Inc. (on information and belief, an entity owned and/or controlled by Prospect Hill), MB & BB Holdings, LLC (on information and belief, an entity owned and/or controlled by Brad Bonham), and Matthew Davis (collectively, the "**Wrongful Distribution Defendants**"). The cash amounts of the Dividend transferred to the Wrongful Distribution Defendants (the "Transfers") are reflected in the below chart.

| Transfer Recipient | Transfer Amount |
|---|---|
| JWC-WE Holdco, Inc. | $119,895,590.37 |
| MB & BB Holdings, LLC | $66,143,473.13 |
| Matthew Davis | $22,049,157.32 |

**ANSWER:**

Defendants that the Defendants identified in this paragraph received funds in approximately the alleged amounts on or about March 31, 2021. Except as so admitted, Defendants deny the allegations and characterizations in this paragraph.

73.    In addition to the Transfers to the Wrongful Distribution Defendants, the Company also distributed $1,232,282.60 of the Dividend for certain senior employee profit interests. As with the Dividend payouts, the Company did not receive any of the funds distributed to these employee recipients.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief regarding the allegations in this paragraph, except admit that certain employees of Walker Edison were intended to receive funds in approximately the alleged amounts on or about March 31, 2021. Except as so admitted, Defendants deny the allegations and characterizations in this paragraph.

74.    The Transfers were made to and for the benefit of the Wrongful Distribution Defendants, each of which were either insiders and controlling owners of Walker Edison or controlled by insiders or controlling owners of Walker Edison. Walker Edison received no consideration in return for the Transfers.

**ANSWER:**

Denied.

75.    Not only did the Dividend strip the Company of loan proceeds that should have been used to address its liquidity and performance issues, the $300 million New Secured Loan that funded the Dividend left the Company with substantially increased debt and monthly cost of debt service. Prior to the consummation of the Loan Agreement and Dividend, the Company had less than $83 million in funded term loan debt and had approximately $22 million outstanding under the ABL Facility that had a borrowing limit of $55 million. After consummation of the Loan Agreement and the Dividend, the Company had $300 million in funded term loan debt under the Loan Agreement, with an increased borrowing limit under the ABL Facility of $75 million. As a result of the closing of the Loan Agreement, the cost of the Company's monthly debt service therefore more than tripled, from an average of approximately $640,000 per month in the six months prior to the closing of the Loan Agreement to an average of approximately $2 million per month in the six months following the closing of the Loan Agreement.

**ANSWER:**

Defendants incorporate their answer to Paragraph 1. Defendants refer to the Loan Agreement, the ABL Credit Agreement, and the loan balances, borrowing limits, and debt service amounts in Walker Edison's financial statements and reports for the complete contents thereof, and Defendants deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

76.    In other words, the Loan Agreement that funded the Dividend more than tripled the Company's interest expense and increased the required cash necessary to fund the Company's debt by more than $1.4 million per month at a time when the Company was already experiencing liquidity and cash problems and an inability to pay debts as they came due in the ordinary course

of the Company's activities and affairs. At the same time, the Dividend depleted the Company of approximately $210 million of cash that could have been used to mitigate the Company's operating losses and fund its debt payments.

**ANSWER:**

Defendants incorporate their answer to Paragraph 75. Except as so admitted and stated,

Defendants deny all allegations and characterizations in this paragraph.

## V.    AS DEFENDANTS FORESAW, WALKER EDISON'S ACTUAL PERFORMANCE DID NOT IMPROVE AFTER CLOSING THE NEW SECURED LOAN.

77.    Contrary to Defendants' misleadingly positive portrayal of the Company's financial health, in the weeks leading up to the closing of the New Secured Loan and the issuance of the Dividend, the Company's actual gross profit and EBITDA were lower than the projections Defendants had provided to obtain the New Secured Loan. In reality, the Company was facing a severe liquidity shortage and significant increases in expenses (primarily freight, shipping, and distribution center costs) that were not likely to dissipate soon. Defendants were aware that as of the time they received the Dividend that the Company would not be able to pay its debts as they came due in the ordinary course of the Company's activities and affairs. This was borne out almost immediately after the closing of the New Secured Loan and the issuance of the Dividend.

**ANSWER:**

Defendants refer to Walker Edison's financial reports and projections for the complete

contents thereof and deny all allegations and characterizations inconsistent therewith. Except as

so stated, Defendants deny all allegations and characterizations in this paragraph.

78.    Following the issuance of the Dividend on March 31, 2021, the Company missed the projections they had presented to lenders and used to justify the Dividend by a material margin. The Company's actual 2021 net sales of $399.6 million fell more than $100 million short of its projected forecast of $504.2 million. And its 2021 actual reported EBITDA of negative $1.6 million fell well short of its projected $104.4 million.

**ANSWER:**

Defendants refer to Walker Edison's financial reports, statements and projections for the

complete contents thereof and deny all allegations and characterizations inconsistent therewith.

Except as so stated, Defendants deny all allegations and characterizations in this paragraph.

79.    These significant misses reflected the fact that the monthly financials and financial forecasts that Defendants used to justify the Dividend prior to the transaction closing on March 31, 2021, did not reflect the operative reality of the Company due to Defendants' failure to properly

allocate freight expenses for accounting purposes, and due to the persistent increase in freight, shipping, and other costs that the Company experienced in the months preceding and following the issuance of the Dividend. Moreover, the Company's freight and shipping issues prior to the March 31, 2021, closing did not only impact expenses. The Company began experiencing delayed delivery times to customers prior to the incurrence of the New Secured Loan and issuance of the Dividend, which resulted in increased out-of-stock rates and diminished on-time shipment rates. This, in turn, negatively affected the Company's page placement with its e-commerce platforms, resulting in declining sales.

**ANSWER:**

Defendants incorporate their answers to Paragraphs 31 and 50. Except as so stated,

Defendants deny all allegations and characterizations in this paragraph.

80.    The Company's actual financial information, which was known to Defendants, showed significant financial headwinds and liquidity problems well before the Dividend was paid. Based on this, Defendants should have refrained from extracting hundreds of millions of dollars from the Company while taking on massive new debt, because such actions immediately jeopardized the Company's ability to continue operations and pay its debts on time.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

81.    Had Defendants used the true financial information that was available to them, neither Defendants nor the Company could have rationalized borrowing and paying the Dividend of approximately $210 million solely from borrowed funds.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

## VI.    THE COMPANY ENGAGED IN AN ADDITIONAL EQUITY TRANSACTION.

82.    Defendants' efforts to use the Company to line their own pockets did not stop with the Dividend issued in March 2021, notwithstanding the fact that the Defendants knew that the Company's performance continued to falter at the expense of its creditors. Rather, in May 2021, Defendants irresponsibly sought and obtained an additional $250 million equity investment from a New York-based private equity growth firm in Walker Edison Holding. As with the New Secured Loan, this additional investment was, incredibly, used to fund a second massive dividend to Defendants. Like the Dividend issued in March 2021, barely any of this cash infusion was used to help fund the Company's operations and get it back on its feet. Ultimately, very little, if any, of the $250 million investment was distributed to Walker Edison, a de minimis amount compared to the size of the dividends, and to the cash needed by Walker Edison to solve its continued liquidity and operations problems. Following the additional equity investment, the Company's continuing insolvency only worsened.

**ANSWER:**

Defendants state that in May 2021, an entity owned or controlled by Blackstone Inc. paid $250 million to acquire equity in Holding. Except as so stated, Defendants deny all allegations and characterizations in this paragraph.

## VII.    WALKER EDISON WAS EFFECTIVELY INSOLVENT WHEN THE COMPANY ISSUED THE DIVIDEND.

83.    As a result of the financial difficulties described above, rational projections of the Company's performance and cash flow based on the information actually known by the Defendants would have shown that Walker Edison was insolvent, unable to pay its debts as they came due, and/or would be left with unreasonably small assets at the time of, or as a result of, the Dividend. It was clear internally that the Company would have little cash to help "weather this storm" that it was facing, and that the combination of the "erosion in our profit profile" that Defendant Bonham identified and the increase in operating and debt expenses would leave the Company in an untenable position financially. Defendants, however, refused to correct their materially misleading projections to conform to what they knew. Defendants therefore received the Dividend with knowledge that Walker Edison would not be able to pay its debts as they came due in the ordinary course of the Company's activities and affairs and would be left with total assets less than total liabilities and otherwise unreasonably small assets in relation to its business.

**ANSWER:**

Denied.

84.    Throughout 2021, based on facts and circumstances that existed as of the Company's entry into the Loan Agreement and issuance of the Dividend, Walker Edison experienced a significant cash shortage and struggled and failed to pay its manufacturers on time. This forced the Company to choose which manufacturers would get paid and which ones would have to wait. The Company's liquidity was not improved by the imposition of the New Secured Loan, as the Company's debt service load increased tremendously, and no proceeds of that loan were made available to the Company for anything other than distribution of the Dividend, repayment of existing debt, or payment of transaction fees. After the closing of the New Secured Loan and the issuance of the Dividend, the Company was only able to fund operations through the later incurrence of more debt and new infusions of equity capital, neither of which was reasonably certain or guaranteed to occur when the Dividend was distributed.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

85.    As detailed above, the Company's ability to borrow cash under its ABL Facility was limited. And by March 18, 2021, the Company's internal projections showed that it would exceed its borrowing capacity under its ABL Facility—its key source of liquidity—by May 2021

and would burn through over $100 million in cash by December 2021. Therefore, the Defendants knew when they received the Dividend that the Company would be left with total assets less than total liabilities and otherwise unreasonably small assets at the time of, or as a result of, the issuance of the Dividend and would be unable to pay its debts as they became due.

**ANSWER:**

Defendants refer to the ABL Credit Agreement for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so stated, Defendants deny all allegations and characterizations in this paragraph.

86.    Such anticipated problems were borne out as the months passed. As of March 31, 2021, the Company had borrowed approximately $22 million under its $75 million ABL Facility. Less than five months later, in August 2021, the Company increased the availability under its ABL Facility to $100 million. By the end of 2021, the Company had fully drawn the amount available under the ABL Facility, made necessary by the Company's continued failure to meet its projections, which failure was the inevitable consequence of facts and circumstances known and reasonably knowable to Defendants as of March 2021, if not earlier.

**ANSWER:**

Defendants refer to the ABL Credit Agreement and the loan balances in Walker Edison's financial statements and reports for the complete contents thereof, and Defendants deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

87.    Even the increase in availability under the ABL Facility was not sufficient to prevent the Company from running out of cash in 2021. Between September and December 2021, the Company was forced to obtain an additional $60 million in cash through capital contributions made by the Defendants and other shareholders. During this period, Defendant Bonham angrily told Defendants Damiano and Casella that "everyone knows ocean freight isn't abating anytime soon." Describing the Company's financial position, Defendant Bonham was unsparing and blunt, stating that "the house is on fire," the situation was "precarious," and the Company should fire all Company employees not deemed "mission critical." In the face of these challenges, having authorized not just one but two gigantic dividends to himself and the other Defendants in 2021 at the expense of Walker Edison's financial viability, Defendant Bonham told Defendants Damiano and Casella that "honestly, I want to sail off into the sunset."

**ANSWER:**

On information and belief, paragraph 87 refers to an email dated October 21, 2021. Defendants refer to that document for the complete contents thereof and deny all allegations and

characterizations inconsistent therewith. Defendants state that in 2021 certain of Walker Edison's equityholders contributed $60 million that flowed to Walker Edison. Except as so stated, Defendants deny all allegations and characterizations in this paragraph.

88.    Moreover, because Defendants negotiated the Loan Agreement without properly taking account of the Company's negative financial condition and performance at that time, within months of issuing the Dividend, the Company was in danger of breaching the financial covenants under the Loan Agreement that Defendants caused in order to fund their own massive $210 million dividend. Specifically, during the life of the New Secured Loan, the Company was required to maintain a specific "Total Net Leverage Ratio," which was to be tested quarterly. The Company was unable to even satisfy the very first such test on September 30, 2021, however, something that Defendants knew and understood was likely before receiving the Dividend, given the "erosion" of the Company's profit profile and the fact that Defendants "[didn't] see ocean freight and fedex costs reverting," as Defendant Bonham put it.

**ANSWER:**

Defendants refer to the Loan Agreement and Walker Edison's financial statements and reports for the complete contents thereof, and Defendants deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

89.    In fact, by July 2021, only four months after they received the $210 million Dividend, Defendants had informed Walker Edison's lenders that the Company's financial picture was so bleak that it may breach the Total Net Leverage Ratio covenant under the Loan Agreement. Further, on August 27, 2021, Defendants notified Walker Edison's lenders that, due to the additional pressures and an influx of pre-bought inventory, the Company was facing a severe liquidity crisis and likely only had two to four weeks of liquidity left.

**ANSWER:**

On information and belief, this paragraph refers to communications dated July 2021 and August 27, 2021. Defendants refer to those communications for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so stated, Defendants deny all allegations and characterizations in this paragraph.

90.    The Company's insolvency was known and knowable to Defendants at the time of the Dividend and New Secured Loan. The failure to satisfy the Total Net Leverage Ratio covenant under the Loan Agreement, if not timely cured, threatened to constitute an "Event of Default" under the Loan Agreement, which would allow the full amount of the New Secured Loan to be

accelerated and become immediately due, meaning that the full, approximately $300 million New Secured Loan would have been immediately due and payable, a consequence that would have caused the Company to fall into bankruptcy. The Company did not have sufficient cash or refinancing capability to pay such debt when due. Based on the facts and circumstances known by Defendants but concealed from lenders, as of March 31, 2021, when they extracted the $210 million Dividend, the Company did not have a realistic chance of satisfying the Total Net Leverage Ratio covenant under the Loan Agreement and was otherwise unable to satisfy its debts as they came due in the ordinary course of business.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

## VIII.  DEFENDANTS EXECUTE A RESTRUCTURING SUPPORT AGREEMENT AND CHANGE OF CONTROL.

91.     By January 2023, it became clear that, due to Defendants' profligate misuse of Walker Edison's financial resources and debt capacity, the Company would not be able to survive without more drastic action. Accordingly, Walker Edison, its investors, and the lenders under the Loan Agreement entered into a Restructuring Support Agreement, dated January 27, 2023 (the "RSA"). The purpose of the RSA was to (i) preserve and maximize the value of the Company by improving its balance sheet, (ii) provide necessary liquidity to address the Company's operating needs by providing for an additional $13 million loan under the Loan Agreement, (iii) preserve employee jobs, and (iv) satisfy the Company's ongoing obligations. Under the RSA, Walker Edison's lenders assumed ownership and control over Walker Edison Intermediate, and, in turn, Walker Edison and its subsidiaries.

**ANSWER:**

Defendants refer to the RSA for the complete contents thereof and deny all allegations and

characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all

allegations and characterizations in this paragraph.

92.     By early 2023, Defendants' wasteful and unnecessary looting of Walker Edison, a once-successful Utah-based global furniture business, had jeopardized the long-term survival of the Company. Defendants, in the face of this disastrous result and having improperly caused a massive liquidity event at the worst possible time simply to line their own pockets, quietly exited the Company, leaving the Company's lenders to pick up the pieces and rebuild.

**ANSWER:**

Defendants refer to the RSA for the complete contents thereof and deny all allegations and

characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all

allegations and characterizations in this paragraph.

93.     Prior to the filing of this Complaint, the Company and Walker Edison Intermediate have entered into a tolling agreement to preserve any claims the Company may have against Walker Edison Intermediate, which is now under common ownership with the Company.

**ANSWER:**

Defendants deny knowledge or information sufficient to form a belief as to whether Walker

Edison entered into a tolling agreement with Intermediate.

## CAUSES OF ACTION

### COUNT I: Wrongful Distribution Under Utah Code §§ 48-3a-405, 48-3a-406(3)

### *(Against Defendants JWC-WE Holdco, Inc., MB & BB Holdings, LLC, Matthew Davis, and Walker Edison Holding Company, LLC)*

94.     Walker Edison restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:**

Defendants incorporate their responses to the preceding paragraphs.

95.     On or around March 31, 2021, Walker Edison issued the Dividend through direct distributions to the Wrongful Distribution Defendants as follows:

| Transfer Recipient | Transfer Amount |
|---|---|
| JWC-WE Holdco, Inc. | $119,895,590.37 |
| MB & BB Holdings, LLC | $66,143,473.13 |
| Matthew Davis | $22,049,157.32 |

**ANSWER:**

Defendants admit that the Defendants identified in this paragraph received funds in

approximately the alleged amounts on or about March 31, 2021. Except as so admitted, Defendants

deny the allegations and characterizations in this paragraph.

96.     In addition, on information and belief, Walker Edison Holding also received a legal right to some or all of the Dividend pursuant to its operating agreement or other governance documents, and therefore can be considered a recipient of the Dividend. The knowledge and conduct of the Defendants can be imputed to Walker Edison Holding based on their positions as agents, representatives, officers, directors, and/or owners of Walker Edison Holding.

**ANSWER:**

Defendants refer to Holding's limited liability company agreement for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

97.    After the Dividend, Walker Edison was unable to pay its debts as they came due in the ordinary course of Walker Edison's activities and affairs, including payments to manufacturers and suppliers and its obligations under the Loan Agreement. To continue operations in 2021, the Company required an additional $60 million in equity contributions and an additional $20 million in availability under the ABL Facility.

**ANSWER:**

Defendants deny the allegations in this paragraph, except admit that in 2021 certain of Walker Edison's indirect equityholders provided $60 million that flowed to Walker Edison. With respect to Walker Edison's ABL Facility, Defendants refer to the ABL Credit Agreement for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so stated, Defendants deny all allegations and characterizations in this paragraph.

98.    After the Dividend, Walker Edison's financial statements showed that its total assets were less than the sum of its total liabilities.

**ANSWER:**

Denied.

99.    The financial statements and valuation analyses used to support the propriety of the Dividend were not reasonable under the circumstances. Among other reasons, those financial statements and valuations were based on the Company's unreasonable failures to properly account for estimated and actual freight costs, looming out-of-stock inventory and delayed deliveries, revenue impacts from detrimental placement of the Company's products on e-commerce partners' platforms, and excessive inventory costs, and they were based on unreasonable and faulty projections that did not match the reality of the Company's financial condition.

**ANSWER:**

Denied.

100.    At the time of the Dividend, the Wrongful Distribution Defendants and Walker Edison Holding knew that the Company would not be able to pay its debts as they became due in the ordinary course of the Company's activities and affairs, and that Walker Edison's total assets were less than the sum of its total liabilities, and therefore, that the Dividend violated Utah Code § 48-3a-405.

**ANSWER:**

Denied.

101.    Accordingly, each Wrongful Distribution Defendant and Walker Edison Holding is personally liable to Walker Edison for the Dividend amount received by such Defendant which exceeds the amount that could have been distributed without violation of Utah Code § 48-3a-405.

**ANSWER:**

Denied.

### COUNT II: Constructive Fraudulent Transfer Under Utah Code §§ 25-6-202, 203, 304 And Other Equivalent State Laws

*(Against Defendants Brad Bonham, Matthew Davis, Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., and Does 1-100)*

102.    Walker Edison restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:**

Defendants incorporate their responses to the preceding paragraphs.

103.    Walker Edison holds valid and legally enforceable claims arising out of the Dividend against the Wrongful Distribution Defendants and Walker Edison Holding under Utah Code §§ 48-3a-405 and 48-3a-406(3).

**ANSWER:**

Denied.

104.    In addition, at the time of the Dividend, Walker Edison was a member-managed limited liability company under the laws of the State of Utah and under control of the Defendants. Walker Edison Intermediate was the sole member of Walker Edison, and, on information and belief, consented to the Dividend, and in doing so did not comply with Utah Code § 48-3a-409. Walker Edison holds valid and legally enforceable claims arising out of the Dividend against Walker Edison Intermediate under Utah Code §§ 48-3a-405, 48-3a-406(1), and 48-3a-409.

**ANSWER:**

Defendants admit that as of March 31, 2021, (i) Walker Edison was a Utah limited liability

company, owned by Intermediate; (ii) Intermediate was owned by Holding; (iii)  Holding was

owned by JWC-WE Holdco, LLC ("JWC Holdco"), MB & BB, LLC, and Davis; (iv) Holdco was owned by JWC-WE Holdings, L.P. ("JWC-WE Holdings"); and (v) JWC-WE Holdings was owned by Prospect Hill Growth Fund II, L.P. ("Fund II"), Prospect Hill Growth Fund II Co-Invest, L.P. ("Fund II Co-Invest") and certain third parties. Defendants admit that Intermediate consented to the dividend and refer to the March 31, 2021 Written Consent of Sole Member for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so stated, Defendants deny all allegations and characterizations in this paragraph.

105.    On information and belief, after completion of the Dividend by Walker Edison, the Wrongful Distribution Defendants, Walker Edison Holding, and Walker Edison Intermediate subsequently transferred some or all of the proceeds of the Dividend (collectively, the "Uptier Transfers") to persons or entities, including Brad Bonham, Matt Davis, Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., and Prospect Hill Growth Fund II Co-Invest, L.P., and certain Doe defendants who have not yet been identified (collectively, the "Uptier Transfer Defendants").

**ANSWER:**

Defendants state that following its receipt of $119,895,590.17, JWC Holdco transferred all or most that amount to JWC-WE Holding and other persons or entities. Except as so stated, Defendants deny all allegations and characterizations in this paragraph.

106.    On information and belief, the Wrongful Distribution Defendants, Walker Edison Holding, and Walker Edison Intermediate did not receive reasonably equivalent value for the Uptier Transfers.

**ANSWER:**

Denied.

107.    On information and belief, at the time of the Uptier Transfers, Defendants JWC-WE Holdco, Inc. and MB & BB Holdings, LLC, as well as Walker Edison Holding and Walker Edison Intermediate, were engaged, or were about to be engaged, in a business or a transaction for which their remaining assets were unreasonably small in relation to their business or transaction.

**ANSWER:**

Denied.

108.    On information and belief, at the time of the Dividend, Defendants JWC-WE Holdco, Inc. and MB & BB Holdings, LLC, as well as Walker Edison Holding and Walker Edison Intermediate, intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they came due.

**ANSWER:**

Denied.

109.    On information and belief, Defendants JWC-WE Holdco, Inc. and MB & BB Holdings, LLC, as well as Walker Edison Holding and Walker Edison Intermediate, were insolvent at the time of the applicable Uptier Transfers, or became insolvent as a result of the applicable Uptier Transfers.

**ANSWER:**

Denied.

110.    The Uptier Transfer Defendants and any immediate or mediate transferee of the Uptier Transfer Defendants did not receive any interests or proceeds of the Uptier Transfers in good faith or for value.

**ANSWER:**

Denied.

111.    The Uptier Transfers are avoidable as constructive fraudulent transfers under Utah Code §§ 25-6-202 and 203. Under Utah Code § 25-6-304, Walker Edison is entitled to a judgment against the Uptier Transfer Defendants or any immediate or mediate transferee thereof for the lesser of the value of the Uptier Transfers or the amount necessary to satisfy Walker Edison's claims against the Wrongful Distribution Defendants, Walker Edison Holding, and Walker Edison Intermediate, together with prejudgment interest from the date of such transfers, costs, all other relief set forth in Utah Code § 25-6-303, or compensatory damages in an amount to be determined for the value thereof, and any further relief that this Court deems just, fair, and equitable.

**ANSWER:**

Denied.

### COUNT III: Actual Fraudulent Transfer Under Utah Code § 25-6-202 And Other Equivalent State Laws

*(Against Defendants Brad Bonham, Matthew Davis, Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., and Does 1-100)*

112.    Walker Edison restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:**

Defendants incorporate their responses to the preceding paragraphs.

113.    Walker Edison holds valid and legally enforceable claims arising out of the Dividend against the Wrongful Distribution Defendants under Utah Code §§ 48-3a-405 and 48-3a-406(3).

**ANSWER:**

Denied.

114.    In addition, Walker Edison is a member-managed limited liability company under the laws of the State of Utah. Walker Edison Intermediate is the member of Walker Edison, and, on information and belief, consented to the Dividend, and in doing so did not comply with Utah Code § 48-3a-409. Walker Edison holds valid and legally enforceable claims arising out of the Dividend against Walker Edison Intermediate under Utah Code §§ 48-3a-405, 48-3a-406(1), and 48-3a-409.

**ANSWER:**

Defendants incorporate their answer to Paragraph 104. Except as so admitted and stated,

Defendants deny all allegations and characterizations in this paragraph.

115.    On information and belief, after completion of the Dividend by Walker Edison, the Wrongful Distribution Defendants, Walker Edison Holding, and Walker Edison Intermediate subsequently made the Uptier Transfers to the Uptier Transfer Defendants.

**ANSWER:**

Defendants incorporate their answer to Paragraph 105. Except as so admitted and stated,

Defendants deny all allegations and characterizations in this paragraph.

116.    The Uptier Transfers were made with an actual intent to hinder, delay, and/or defraud creditors of the Wrongful Distribution Defendants, Walker Edison Holding, and Walker Edison Intermediate, to the detriment and harm of their creditors, including Walker Edison. Such intent can be inferred from several badges of fraud, as set forth in Utah Code § 25-6-202(1)(a), including, among other things, on information and belief: (i) the Uptier Transfers were made to and for the benefit of Defendants or their related entities, each of which was an insider of the applicable debtor; (ii) the Uptier Transfers were of substantially all of the applicable debtor's assets; (iii) the value of the consideration received by the debtor was not reasonably equivalent to the value of the Uptier Transfers; (iv) Defendants JWC-WE Holdco, Inc. and MB & BB Holdings, LLC, as well as Walker Edison Holding and Walker Edison Intermediate, were insolvent or

became insolvent shortly after the transfer was made or the obligation was incurred; and (v) the Uptier Transfers occurred shortly after a substantial debt was incurred in the form of the obligation of the debtor to return the Dividend.

**ANSWER:**

Denied.

117.    The Uptier Transfers are avoidable as actual fraudulent transfers under Utah Code §§ 25-6-202 and 203. Under Utah Code § 25-6-304, Walker Edison is entitled to a judgment against the Uptier Transfer Defendants or any immediate or mediate transferee thereof for the lesser of the value of the Uptier Transfers or the amount necessary to satisfy Walker Edison's claims against the Wrongful Distribution Defendants, Walker Edison Holding, and Walker Edison Intermediate, together with prejudgment interest from the date of such transfers, costs, all other relief set forth in Utah Code § 25-6-303, or compensatory damages in an amount to be determined for the value thereof, and any further relief that this Court deems just, fair, and equitable.

**ANSWER:**

Denied.

### COUNT IV: Breach of Fiduciary Duty

*(Against Defendants Walker Edison Holding, JWC-WE Holdco, Inc., MB & BB Holdings, LLC, Brad Bonham, Matthew Davis, Phil Damiano, Ken Murphy, Adam Suttin, Kyle Casella, and David Fiorentino)*

118.    Walker Edison restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:**

Defendants incorporate their responses to the preceding paragraphs.

119.    The Wrongful Distribution Defendants, Walker Edison Holding, Brad Bonham, Phil Damiano, Ken Murphy, Adam Suttin, Kyle Casella, and David Fiorentino (collectively, the "Controlling Defendants"), as members of the Board and/or controlling shareholders of Walker Edison owed fiduciary duties of care, loyalty, and good faith to Walker Edison.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

120.    The Walker Edison operating agreement in effect at all times relevant to this Complaint, which was signed by Defendants Bonham and Davis, did not alter or eliminate the duties of loyalty, care, or good faith and fair dealing owed by Controlling Defendants to Walker Edison under Utah law, nor did it specify any method by which a specific act or transaction that

42

would otherwise violate the duty of loyalty could be authorized or ratified by one or more disinterested and independent persons after full disclosure of all material facts.

**ANSWER:**

Defendants refer to the Walker Edison limited liability company agreement for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Except as so admitted and stated, Defendants deny all allegations and characterizations in this paragraph.

121.    The Controlling Defendants' duty of care obligated them to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

122.    The Controlling Defendants' duty of loyalty obligated them to refrain from dealing with Walker Edison in the conduct of its activities as a person having an interest adverse to the Company.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

123.    The Controlling Defendants were obligated to discharge their duties and obligations under applicable law and in accordance with the Walker Edison operating agreement and in the exercise of rights consistent with the contractual obligation of good faith and fair dealing.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

124.    The Controlling Defendants exerted direct control over the assets of Walker Edison by, among other things, causing Walker Edison to incur debt and distribute the Dividend to the Wrongful Distribution Defendants, and they did so to their own advantage and at the expense of Walker Edison.

**ANSWER:**

Denied.

125.    In causing Walker Edison to incur debt and distribute the Dividend to the Wrongful Distribution Defendants, the Controlling Defendants failed to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law, dealt with

Walker Edison in the conduct of its activities as persons having interests adverse to the Company, and acted inconsistently with the contractual obligation of good faith and fair dealing.

**ANSWER:**

Denied.

126.    The Controlling Defendants were required not to plunder Walker Edison for their benefit, or for the benefit of its controlling shareholders and parent limited liability companies.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

127.    The Controlling Defendants similarly breached the duties of care, loyalty, and good faith and fair dealing in causing Walker Edison to issue the Dividend at a time when it was effectively insolvent, inadequately capitalized, and unable to pay its debts as they came due in the ordinary course of its activities and affairs.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

128.    The Controlling Defendants' wrongful conduct in breach of their duties was not ratified or authorized after full disclosure of all material facts.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

129.    The Controlling Defendants' wrongful conduct in breach of their duties was not fair to Walker Edison.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

130.    The Controlling Defendants' wrongful conduct in breach of their duties directly and proximately caused damage to Walker Edison and improperly extracted monies from Walker Edison.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

131.    Walker Edison is entitled to damages and restitution of the amounts improperly taken from Walker Edison as a result of the Controlling Defendants' wrongful conduct.

**ANSWER:**

Denied.

132.    Walker Edison is entitled to disgorgement of all ill-gotten gains to the Controlling Defendants as a result of their wrongful conduct.

**ANSWER:**

Denied.

133.    Walker Edison is entitled to recover punitive damages by reason of the wanton, willful, reckless, and malicious acts of the Controlling Defendants.

**ANSWER:**

Denied.

**COUNT V: Breach of the Implied Covenant of Good Faith and Fair Dealing**

*(Against Defendants Walker Edison Holding, JWC-WE Holdco, Inc., MB & BB Holdings, LLC, Matthew Davis, Brad Bonham, Phil Damiano, Ken Murphy, Adam Suttin, Kyle Casella, and David Fiorentino)*

134.    Walker Edison restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:**

Defendants incorporate their responses to the preceding paragraphs.

135.    Under the controlling LLC operating agreements, the Controlling Defendants had an implied obligation to deal with Walker Edison consistent with their implied obligations of good faith and fair dealing.

**ANSWER:**

Defendants refer to limited liability company agreements for the complete contents thereof and deny all allegations and characterizations inconsistent therewith. Defendants deny all allegations and characterizations in this paragraph.

136.    The Controlling Defendants breached the implied covenant of good faith and fair dealing that is contained in every contract.

**ANSWER:**

Denied.

137.    The Controlling Defendants were obligated to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

138.    The Controlling Defendants were obligated to refrain from dealing with Walker Edison in the conduct of its activities as a person having an interest adverse to the Company.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

139.    The Controlling Defendants were obligated to discharge their duties and obligations under applicable law and in accordance with the Walker Edison operating agreement and in the exercise of rights consistent with the contractual obligation of good faith and fair dealing.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

140.    The Controlling Defendants exerted direct control over the assets of Walker Edison by, among other things, causing Walker Edison to incur debt and distribute the Dividend to the Wrongful Distribution Defendants, and they did so to their own advantage and at the expense of Walker Edison.

**ANSWER:**

Denied.

141.    In causing Walker Edison to incur debt and distribute the Dividend to the Wrongful Distribution Defendants, the Controlling Defendants failed to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law, dealt with Walker Edison in the conduct of its activities as persons having interests adverse to the Company, and acted inconsistently with the contractual obligation of good faith and fair dealing.

**ANSWER:**

Denied.

142.    The Controlling Defendants were required not to plunder Walker Edison for their benefit, or for the benefit of its controlling shareholders and parent limited liability companies.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

143.    The Controlling Defendants similarly breached their obligation of good faith and fair dealing in causing Walker Edison to issue the Dividend at a time when it was effectively insolvent, inadequately capitalized, and unable to pay its debts as they came due in the ordinary course of its activities and affairs.

**ANSWER:**

Denied.

144.    The Controlling Defendants' wrongful conduct was not ratified or authorized after full disclosure of all material facts.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

145.    The Controlling Defendants' wrongful conduct was not fair to Walker Edison.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

146.    The Controlling Defendants' wrongful conduct directly and proximately caused damage to Walker Edison and improperly extracted monies from Walker Edison.

**ANSWER:**

Denied.

147.    Walker Edison is entitled to damages and restitution of the amounts improperly taken from Walker Edison as a result of the Controlling Defendants' wrongful conduct.

**ANSWER:**

Denied.

148.    Walker Edison is entitled to disgorgement of all ill-gotten gains to the Controlling Defendants as a result of their wrongful conduct.

**ANSWER:**

Denied.

**COUNT VI: Aiding and Abetting Breach of Fiduciary Duty (Against All Defendants)**

149.    Walker Edison restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:**

Defendants incorporate their responses to the preceding paragraphs.

150.    The Controlling Defendants, as members of the Board and/or controlling shareholders of Walker Edison, owed fiduciary duties of care, loyalty, and good faith to Walker Edison.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

151.    In causing Walker Edison to distribute the Dividend to the Wrongful Distribution Defendants, the Controlling Defendants breached their fiduciary duties of care, loyalty, and good faith to Walker Edison.

**ANSWER:**

Denied.

152.    The Defendants knew that the Controlling Defendants owed fiduciary duties to Walker Edison.

**ANSWER:**

Denied.

153.    The Defendants also knew that the Controlling Defendants were in breach of their fiduciary duties to Walker Edison.

**ANSWER:**

Denied.

154.    The Defendants knowingly provided substantial assistance and encouragement to the Controlling Defendants to breach their fiduciary duties to Walker Edison.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

155.    Each Defendant therefore aided and abetted the Controlling Defendants' breach of their fiduciary duties to Walker Edison.

**ANSWER:**

Denied.

156.    As a result of the Defendants' bad acts, the Defendants are jointly responsible with the Controlling Defendants for the damages to Walker Edison resulting from those breaches.

**ANSWER:**

Denied.

**COUNT VII: Civil Conspiracy (Against All Defendants)**

157.    Walker Edison restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:**

Defendants incorporate their responses to the preceding paragraphs.

158.    Defendants and their representatives formed a combination of two or more persons.

**ANSWER:**

Denied.

159.    Defendants each sought to accomplish the object of causing Walker Edison to pay out the Dividend for their own benefits and for the benefits of their affiliates and assigns.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

160.    Defendants had a meeting of the minds to accomplish their object by seeking to have the Company take out a large loan in order to finance the Dividend.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

161.    Defendants conspired to and participated in the commission of one or more unlawful, overt acts, in furtherance of their object, including causing the Company to distribute the Dividend to the Wrongful Distribution Defendants and others.

**ANSWER:**

Denied.

162.    Walker Edison has suffered damages as a direct result of these actions.

**ANSWER:**

Denied.

### COUNT VIII: Unjust Enrichment (Against All Defendants)

163.    Walker Edison restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:**

Defendants incorporate their responses to the preceding paragraphs.

164.    This unjust enrichment claim is asserted in the alternative, in the event the remedies asserted in Counts I–VII do not provide an adequate remedy at law.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

165.    Defendants received benefits when they wrongfully received the Transfers and/or the Uptier Transfers.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

166.    Defendants knowingly and voluntarily accepted and retained benefits in the form of the Transfers and/or the Uptier Transfers.

**ANSWER:**

Defendants deny all allegations and characterizations in this paragraph.

167.    The circumstances alleged in this Complaint render Defendants' retention of those benefits unjust and inequitable.

**ANSWER:**

Denied.

168.    Defendants have been unjustly enriched at the expense of Walker Edison in the amount of the Transfers and/or the Uptier Transfers, and Walker Edison is entitled to judgment in those amounts.

**ANSWER:**

Denied.

169.     Walker Edison is entitled to the return of the Transfers and/or the Uptier Transfers through disgorgement or any other applicable remedy and judgment against the Defendants.

**ANSWER:**

Denied.

## GENERAL DENIALS

Defendants deny every allegation in the Complaint, including those set forth in the Prayer for Relief and in all headings and subheadings, except as expressly admitted or stated herein.

Defendants incorporate this general denial into each and every defense below as if set forth fully therein.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative and/or separate defenses.  By asserting these defenses, Defendants do not assume any burden of proof or persuasion they would not otherwise bear, and no defense constitutes an admission that Defendants bear any such burden.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's allegations fail to state a claim against Defendants upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims fail in whole or in part due to a failure of a condition precedent.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred under the doctrine of unclean hands and/or *in pari delicto*.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Plaintiff has failed to act in good faith and/or has breached the covenant and duty of good faith and fair dealing.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of ratification, estoppel, laches, assumption of risk, and/or waiver.

<h3 align="center">SIXTH AFFIRMATIVE DEFENSE</h3>

Plaintiff's claims are barred by reason of Plaintiff's own conduct and/or misrepresentations or statements to Defendants.

<h3 align="center">SEVENTH AFFIRMATIVE DEFENSE</h3>

Plaintiff's claims fail because Plaintiff's alleged harm, if any, was caused by a third party or by a supervening event.

<h3 align="center">EIGHTH AFFIRMATIVE DEFENSE</h3>

Plaintiff's claims are barred by reason of its failure to mitigate damages.

<h3 align="center">NINTH AFFIRMATIVE DEFENSE</h3>

Plaintiff's claims fail because Defendants had no scheme to defraud Plaintiff.

<h3 align="center">TENTH AFFIRMATIVE DEFENSE</h3>

Plaintiff's claims fail under the doctrines of a frustration of purposes, impossibility, and/or impracticability.

<h3 align="center">ELEVENTH AFFIRMATIVE DEFENSE</h3>

Plaintiff's claims are barred because its alleged damages, if any, were proximately caused by acts or omissions, negligence, carelessness, or intentional acts by third parties that Defendants had no control or right of control over, or such damages were caused by conditions or events over which Defendants had no control or right of control.

<h3 align="center">TWELFTH AFFIRMATIVE DEFENSE</h3>

Plaintiff's claims fail because Defendants' communications were not in furtherance of a scheme to defraud.

<h3 align="center">THIRTEENTH AFFIRMATIVE DEFENSE</h3>

Plaintiff's claims fail because of a lack of materiality as it related to whether information tended to influence the recipient.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by reason of Plaintiff's prior material breaches and/or defaults on its obligations under those agreements that exist between Plaintiff and Defendants.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by reason of fraud, misrepresentation, and/or illegality.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by Defendants' substantial compliance with their alleged duties, imputed or otherwise.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the applicable statutes of limitations or statutes of repose.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Defendants observed sufficient corporate formalities for their corporate actions to be respected and observed.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Plaintiff was sufficiently capitalized for its corporate actions to be respected and observed.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Plaintiff paid dividends sufficiently for its corporate actions to be respected and observed.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Utah Code Ann. § 48-3a-304 bars one or more of Plaintiff's claims and/or the evidence offered in support of such claim(s).

### TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's fraudulent transfer claims should be dismissed because they were not stated with the particularity required by Rule 9 of the Utah Rules of Civil Procedure.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Defendants determined that the Dividend was not prohibited was based upon financial statements prepared on the basis of accounting practices and principles that were reasonable in the circumstances and/or on the basis of a fair valuation or other method that was reasonable under the circumstances.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Plaintiff's sole member authorized and/or ratified the Dividend after disclosure of all material facts.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the Dividend recipients took the Dividend in good faith and in exchange for reasonably equivalent value.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the Dividend was not issued with actual intent to hinder, delay, or defraud any creditors of Plaintiff or any other person or entity.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Plaintiff's remaining assets following the Dividend were not unreasonably small in relation to its business or to the Dividend, and Defendants did not intend, nor reasonably should have believed, that the Dividend would cause Plaintiff to incur debts beyond its ability to pay as they became due.

### RESERVATION OF RIGHTS

Defendants reserve the right to supplement or amend their affirmative defenses with

reasonable notice under the Utah Rules of Civil Procedure, as well as to assert any counterclaims or cross-claims that may come to light as a result of discovery conducted in this action.

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray that Plaintiff takes nothing by its Amended Complaint, that all claims asserted against Defendants therein be dismissed with prejudice and on the merits, that Defendants be awarded their costs and expenses, including its attorneys' fees incurred in defending against Plaintiff's Amended Complaint, and for such other and further relief as may be just and proper under the circumstances.

DATED:          December 20, 2023

**PARR BROWN GEE & LOVELESS**

/s/ David C. Reymann
David C. Reymann
Kade N. Olsen
Tammy M Frisby

101 South 200 East, Suite 700
Salt Lake City, Utah 84111
(801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

*For defendants:* Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, Walker Edison Holding Co., LLC, Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**

/s/ Brennan Moss
Brennan H. Moss
Michael Gehret
Charles Morris

222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
(801) 401-1600
bmoss@atllp.com
mgehret@atllp.com
cdmorris@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC, and Matt Davis

**SPERLING & SLATER, LLC**

/s/ Greg Shinall
Greg Shinall *(pro hac vice forthcoming)*
Matthew Rice *(pro hac vice forthcoming)*

55 West Monroe Street, 32nd Floor
Chicago, Illinois 60603
(312) 641-3200
shinall@sperling-law.com
mrice@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano,
Kyle Casella, David Fiorentino, Kyle
Murphy, and Walker Edison Holding Co.,
LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga *(pro hac vice forthcoming*)
William Clareman (*pro hac vice forthcoming)*

1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000
gchepiga@paulweiss.com
wclareman@paulweiss.com

*For defendants*: Prospect Hill Growth Fund
II, L.P., Prospect Hill Growth Fund II Co-
Invest, L.P., Prospect Hill Growth Partners,
L.P., JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of December 2023, I electronically filed the

foregoing **ANSWER TO FIRST AMENDED COMPLAINT AND AFFIRMATIVE**

**DEFENSES**, which served all counsel of record.

/s/ David C. Reymann

3RD DISTRICT COURT
SALT LAKE COUNTY, STATE OF UTAH

| WALKER EDISON FURNITURE COMPAN, | : | |
| Plaintiff | : | |
| | : | |
| | : | |
| vs. | : | NOTICE OF EVENT DUE DATES |
| | : | |
| | : | |
| | : | |
| BRAD BONHAM, | : | Case No: 230902160 MI |
| Defendant | : | Discovery Tier: 3 |
| | : | Judge: ROBERT FAUST |

To Counsel and Parties:

The district court case management system has automatically generated this notice, calculating the dates set forth below under Utah Rule of Civil Procedure 26. These dates will constitute the schedule for disclosures, fact discovery, expert discovery, ADR and readiness for trial. This schedule does not govern extraordinary discovery.

Based on the date the answer was filed, the following event due dates apply in this case. If any date is a Saturday, Sunday or legal holiday, the due date is the following business day.

| | | |
|---|---|---|
| Date Answer filed: | 20-Dec-23 | |
| * Moving party's initial disclosures due: | 03-Jan-24 | (Date answer filed plus 14 days) |
| * Responding party's initial disclosures due: | 31-Jan-24 | (Date answer filed plus 14 or 42 days, depending on discovery tier) |
| * Fact discovery completed: | 28-Aug-24 | (Date responding party's disclosures due plus 90, 120, 180, or 210 days, depending on the discovery tier) |
| * Expert discovery completed: | 26-Mar-25 | (Date fact discovery completed plus 210 days) |
| * ADR completed (unless exempt): | 26-Mar-25 | (Date expert discovery completed) |
| * Certificate of Readiness for Trial due: | 26-Mar-25 | (Date expert discovery completed) |

The parties shall promptly notify the Court of any settlements or stipulations. Self Help Resources are available at www.utcourts.gov.

CERTIFICATE OF NOTIFICATION

I certify that a copy of the attached document was sent to the following people for case 230902160 by the method and on the date specified.

EMAIL:  DAVID REYMANN

EMAIL:  DAVID REYMANN

EMAIL:  DAVID REYMANN

EMAIL:  DAVID REYMANN

EMAIL:  DAVID REYMANN

EMAIL:  DAVID REYMANN

EMAIL:  DAVID REYMANN

EMAIL:  DAVID REYMANN
EMAIL:  DAVID REYMANN
EMAIL:  DAVID REYMANN
EMAIL:  DAVID REYMANN
EMAIL:  DAVID REYMANN
EMAIL:  DAVID REYMANN
EMAIL:  DAVID REYMANN
EMAIL:  ERIK CHRISTIANSEN
EMAIL:  ALAN MOURITSEN
EMAIL:  BRIAN ROTHSCHILD
EMAIL:  Jeffrey C Krause
EMAIL:  Michael Farhang
EMAIL:  Michael S Neumeister
EMAIL:  Adam Jantzi
MAIL:  DOES 1-100 UNKNOWN
Date:  December 20, 2023                    /s/ CHRIS DAVIES
                                            Clerk/Clerk of Court

Brennan H. Moss (10267)
Michael A. Gehret (11890)
Charles D. Morris (18058)
ARMSTRONG TEASDALE LLP
222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
Telephone: (801) 401-1600
Email: bmoss@atllp.com
          mgehret@atllp.com
          cdmorris@atllp.com

*Attorneys for Brad Bonham,*
*MB & BB Holdings, LLC, and Matt Davis*

---

**IN THE THIRD JUDICIAL DISTRICT COURT**
**IN AND FOR SALT LAKE COUNTY, STATE OF UTAH**

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **NOTICE OF APPEARANCE** <br><br> Case No: 230902160 <br><br> Judge Robert Faust |

Brennan H. Moss, Michael A. Gehret, and Charles D. Morris of the law firm of Armstrong Teasdale, LLP, hereby appear as counsel for Defendants Brad Bonham, MB & BB Holdings, LLC, and Matt Davis in the above-entitled matter. The undersigned requests that all further notices and copies of pleadings, papers, orders, reports, schedules, lists, and other material relevant to this

action be served and directed to:

>Brennan H. Moss
>Michael A. Gehret
>Charles D. Morris
>**ARMSTRONG TEASDALE LLP**
>222 South Main Street, Ste. 1830
>Salt Lake City, Utah 84101
>bmoss@atllp.com
>mgehret@atllp.com
>cdmorris@atllp.com

DATED this 21st day of December, 2023.

**ARMSTRONG TEASDALE LLP**

*/s/ Charles D. Morris*
Brennan H. Moss
Michael A. Gehret
Charles D. Morris

*Attorneys for Brad Bonham,*
*MB & BB Holdings, LLC, and Matt Davis*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of December, 2023, I caused a copy of the foregoing

to be served on all counsel of record via the Court's Electronic Filing System.


_/s/ Shelby Irvin_____

Brennan H. Moss (10267)
Michael A. Gehret (11890)
Charles D. Morris (18058)
ARMSTRONG TEASDALE LLP
222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
Telephone: (801) 401-1600
Email: bmoss@atllp.com
        mgehret@atllp.com
        cdmorris@atllp.com

*Attorneys for Brad Bonham,*
*MB & BB Holdings, LLC, and Matt Davis*

---

## IN THE THIRD JUDICIAL DISTRICT COURT
## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, | |
| Plaintiff, | **NOTICE OF APPEARANCE** |
| v. | Case No: 230902160 |
| BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, | Judge Robert Faust |
| Defendants. | |

Brennan H. Moss, Michael A. Gehret, and Charles D. Morris of the law firm of Armstrong Teasdale, LLP, hereby appear as counsel for Defendants Brad Bonham, MB & BB Holdings, LLC, and Matt Davis in the above-entitled matter. The undersigned requests that all further notices and copies of pleadings, papers, orders, reports, schedules, lists, and other material relevant to this

action be served and directed to:

Brennan H. Moss
Michael A. Gehret
Charles D. Morris
**ARMSTRONG TEASDALE LLP**
222 South Main Street, Ste. 1830
Salt Lake City, Utah 84101
bmoss@atllp.com
mgehret@atllp.com
cdmorris@atllp.com

DATED this 21st day of December, 2023.

**ARMSTRONG TEASDALE LLP**

*/s/ Charles D. Morris*
Brennan H. Moss
Michael A. Gehret
Charles D. Morris

*Attorneys for Brad Bonham,*
*MB & BB Holdings, LLC, and Matt Davis*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of December, 2023, I caused a copy of the foregoing

to be served on all counsel of record via the Court's Electronic Filing System.

*/s/ Shelby Irvin*

Brennan H. Moss (10267)
Michael A. Gehret (11890)
Charles D. Morris (18058)
ARMSTRONG TEASDALE LLP
222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
Telephone: (801) 401-1600
Email: bmoss@atllp.com
          mgehret@atllp.com
          cdmorris@atllp.com

*Attorneys for Brad Bonham,*
*MB & BB Holdings, LLC, and Matt Davis*

---

**IN THE THIRD JUDICIAL DISTRICT COURT
IN AND FOR SALT LAKE COUNTY, STATE OF UTAH**

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, | **CERTIFICATE OF SERVICE – DEFENDANTS' RULE 26(a) INITIAL DISCLOSURES** |
| Plaintiff, | |
| v. | Case No: 230902160 |
| BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, | Judge Robert Faust |
| Defendants. | |

I hereby certify that on January 31, 2024, a true and correct copy of Defendants' Rule

26(a) Initial Disclosures, a copy of this document, and bates numbered documents

PHG_0000001 – PHG_0005611 and WE-INS_0000001 – WE-INS_0000199 were served via

Electronic mail on the following:

    Erik A. Christiansen
    Alan S. Mouritsen
    Brian M. Rothschild
    PARSONS BEHLE & LATIMER
    201 South Main Street, Ste. 1800
    Salt Lake City, Utah 84111
    echristiansen@parsonsbehle.com
    amouritsen@parsonsbehle.com
    brothschild@parsonsbehle.com

    Michael Farhang
    Michael Neumeister
    Jeffrey C. Krause
    GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
    Los Angeles, California 90071
    MFarhang@gibsondunn.com
    mneumeister@gibsondunn.com
    jkrause@gibsondunn.com

    Adam J. Jantzi
    GIBSON, DUNN & CRUTCHER, LLP
    200 Park Avenue
    New York, New York 10166
    ajantzi@gibsondunn.com

DATED this 31st day of January, 2024.

                              **ARMSTRONG TEASDALE LLP**


                              */s/ Charles D. Morris*
                              Brennan H. Moss
                              Michael A. Gehret
                              Charles D. Morris
                              *Attorneys for Founder Defendants*

Brennan H. Moss (10267)
Michael A. Gehret (11890)
Charles D. Morris (18058)
ARMSTRONG TEASDALE LLP
222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
Telephone: (801) 401-1600
Email: bmoss@atllp.com
         mgehret@atllp.com
         cdmorris@atllp.com

*Attorneys for Brad Bonham,*
*MB & BB Holdings, LLC, and Matt Davis*

---

**IN THE THIRD JUDICIAL DISTRICT COURT**
**IN AND FOR SALT LAKE COUNTY, STATE OF UTAH**

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, | **CERTIFICATE OF SERVICE – DEFENDANTS' FIRST SUPPLEMENTAL DISCLOSURES** |
| Plaintiff, | |
| v. | Case No: 230902160 |
| BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, | Judge Robert Faust |
| Defendants. | |

I hereby certify that on February 6, 2024, a true and correct copy of Defendants' First

Supplemental Disclosures, a copy of this document, and bates numbered documents

PHG_0000001 – PHG_0005611, WE-INS_0000001 – WE-INS_0000199, and PHG_0005612 –

PHG_0008148 were served via Electronic mail on the following:

    Erik A. Christiansen
    Alan S. Mouritsen
    Brian M. Rothschild
    PARSONS BEHLE & LATIMER
    201 South Main Street, Ste. 1800
    Salt Lake City, Utah 84111
    echristiansen@parsonsbehle.com
    amouritsen@parsonsbehle.com
    brothschild@parsonsbehle.com

    Michael Farhang
    Michael Neumeister
    Jeffrey C. Krause
    GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
    Los Angeles, California 90071
    MFarhang@gibsondunn.com
    mneumeister@gibsondunn.com
    jkrause@gibsondunn.com

    Adam J. Jantzi
    GIBSON, DUNN & CRUTCHER, LLP
    200 Park Avenue
    New York, New York 10166
    ajantzi@gibsondunn.com

DATED this 6th day of February, 2024.

                         **ARMSTRONG TEASDALE LLP**

                         */s/ Charles D. Morris*
                         Brennan H. Moss
                         Michael A. Gehret
                         Charles D. Morris
                         *Attorneys for Founder Defendants*

David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

Attorneys for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, Walker Edison Holding Co., LLC, Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

Greg Shinall (*pro hac vice pending*)
Matthew H. Rice (*pro hac vice pending*)
Sean M. Koller (*pro hac vice pending*)
**SPERLING & SLATER, LLC**
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Telephone: (312) 641-3200
shinall@sperling-law.com
mrice@sperling-law.com
skoller@sperling-law.com

Attorneys for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

---

## IN THE THIRD JUDICIAL DISTRICT COURT

## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BRAD BONHAM, *et al.*, <br><br> Defendants. | **MOTION FOR PRO HAC VICE ADMISSION OF GREG SHINALL AND CONSENT OF SPONSORING LOCAL COUNSEL** <br><br> Case No. 230902160 <br><br> Hon. Robert Faust |

Pursuant to Rule 14-806 of the Utah Code of Judicial Administration, David C. Reymann moves the court for an order admitting Greg Shinall pro hac vice to act as counsel in the above-captioned matter for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC.  Mr. Shinall is neither licensed to practice

law in Utah nor a resident of Utah.  Mr. Shinall is admitted to practice in Illinois, where he is an

attorney in good standing as evidenced by the Certificate of Good Standing attached as Exhibit 1,

along with the Bar's Acknowledgement of his application.

      The undersigned agrees to serve as designated local counsel for the subject case, to

comply with all applicable provisions of the Utah Rules of Civil Procedure and the Utah Code of

Judicial Administration, and to readily communicate with opposing counsel and the court

regarding the conduct of this case.  He also agrees to accept papers when served as well as

recognizes the responsibility to act for and on behalf of the clients in all case-related

proceedings, including hearings, pretrial conferences, and trials, should Mr. Shinall fail to

respond to any court order.

      A proposed order admitting Mr. Shinall accompanies this Motion.

      RESPECTFULLY SUBMITTED this 7th day of February 2024.

               PARR BROWN GEE & LOVELESS, P.C.

               /s/ David C. Reymann
               David C. Reymann
               Kade N. Olsen
               Tammy M. Frisby

               Attorneys for Defendants Adam Suttin, Phil
               Damiano, Kyle Casella, David Fiorentino, Kyle
               Murphy, Walker Edison Holding Co., LLC,
               Prospect Hill Growth Fund II, L.P., Prospect Hill
               Growth Fund II Co-Invest, L.P., Prospect Hill
               Growth Partners, L.P., JWC-WE Holdco, LLC,
               and JWC-WE Holdings, L.P.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 7th day of February 2024, I electronically filed the

foregoing **MOTION FOR PRO HAC VICE ADMISSION OF GREG SHINALL AND**

**CONSENT OF SPONSORING LOCAL COUNSEL**, which served all counsel of record.


/s/ David C. Reymann

3

# EXHIBIT 1

**Feb 05 2024**

**Utah Bar Admissions**
**645 South 200 East**
**Salt Lake City, UT 84111**
**TELEPHONE 801 531-9077**



# Utah State Bar ®

645 South 200 East, Suite 310 • Salt Lake City, Utah 84111-3834
Telephone: 801-531-9077
http://www.UtahBar.org

## ACKNOWLEDGEMENT OF SUPPORTING DOCUMENTATION
## AND RECEIPT OF PRO HAC VICE FILING FEE

| | |
|---|---|
| Date Issued: | February 05, 2024 |
| Case Name: | WALKER EDISON FURNITURE COMPANY, LLC v. BRAD BONHAM, et al. |
| Court Name: | In The Third Judicial District, Salt Lake County, State of Utah |
| Case Number: | 230902160 |

This letter serves as an acknowledgement that the $425.00 pro hac vice filing fee for **Greg Shinall** in the above-referenced case has been paid to the Utah State Bar and that the required supporting documentation is complete and in good order. If you have any questions, please call the Bar at (801) 531-9077.

Maribeth LeHoux
General Counsel

**Note to Counsel:** An original motion signed by a member of the Utah State Bar who expressly consents to appearing as local counsel should be filed with the court along with: (1) copies of the Application and Certificate of Good Standing which were provided to the Bar; (2) this Acknowledgement of Supporting Documentation and Receipt of Pro Hac Vice Filing Fee; and (3) a proposed order.

*Attorneys admitted Pro Hac Vice must file an "Annual Renewal with the Bar on or before the anniversary date of the filing of the[ir] initial application with the Bar... certify[ing] to the Bar that [they will] continue to act as counsel in the cause or that the cause has been finally adjudicated... And remit to the Bar an annual fee equal to the current dues paid by active members of the Utah State Bar. See Rule 14-806(n). and Rule 14-806(o) for failure to renew.

**For annual renewal information visit: https://www.utahbar.org/pro-hac-vice/

Serving the public. Working for justice.

# Certificate of Admission
# To the Bar of Illinois

I, Cynthia A. Grant, Clerk of the Supreme Court of Illinois, do hereby certify that

Greg Shinall

has been duly licensed and admitted to practice as an Attorney and Counselor at Law within this State; has duly taken the required oath to support the CONSTITUTION OF THE UNITED STATES and of the STATE OF ILLINOIS, and also the oath of office prescribed by law, that said name was entered upon the Roll of Attorneys and Counselors in my office on 11/08/1990 and is in good standing, so far as the records of this office disclose.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the seal of said Court, this 23rd day of January, 2024.

*Cynthia A. Grant*

Clerk,
Supreme Court of the State of Illinois

David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino,
Kyle Murphy, Walker Edison Holding Co.,
LLC, Prospect Hill Growth Fund II, L.P.,
Prospect Hill Growth Fund II Co-Invest, L.P.,
Prospect Hill Growth Partners, L.P., JWC-
WE Holdco, LLC, and JWC-WE Holdings,
L.P.

Greg Shinall (*pro hac vice pending*)
Matthew H. Rice (*pro hac vice pending*)
Sean M. Koller (*pro hac vice pending*)
**SPERLING & SLATER, LLC**
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Telephone: (312) 641-3200
shinall@sperling-law.com
mrice@sperling-law.com
skoller@sperling-law.com

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino,
Kyle Murphy, and Walker Edison Holding
Co., LLC

---

## IN THE THIRD JUDICIAL DISTRICT COURT

## SALT LAKE COUNTY, STATE OF UTAH

| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BRAD BONHAM, *et al.*, <br><br> Defendants. | **MOTION FOR PRO HAC VICE ADMISSION OF MATTHEW H. RICE AND CONSENT OF SPONSORING LOCAL COUNSEL** <br><br> Case No. 230902160 <br><br> Hon. Robert Faust |
|---|---|

Pursuant to Rule 14-806 of the Utah Code of Judicial Administration, David C. Reymann moves the court for an order admitting Matthew H. Rice pro hac vice to act as counsel in the above-captioned matter for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC.  Mr. Rice is neither licensed to

practice law in Utah nor a resident of Utah.  Mr. Rice is admitted to practice in Ohio, where he is

an attorney in good standing as evidenced by the Certificate of Good Standing attached as

Exhibit 1, along with the Bar's Acknowledgement of his application.

The undersigned agrees to serve as designated local counsel for the subject case, to

comply with all applicable provisions of the Utah Rules of Civil Procedure and the Utah Code of

Judicial Administration, and to readily communicate with opposing counsel and the court

regarding the conduct of this case.  He also agrees to accept papers when served as well as

recognizes the responsibility to act for and on behalf of the clients in all case-related

proceedings, including hearings, pretrial conferences, and trials, should Mr. Rice fail to respond

to any court order.

A proposed order admitting Mr. Rice accompanies this Motion.

RESPECTFULLY SUBMITTED this 7th day of February 2024.

PARR BROWN GEE & LOVELESS, P.C.

/s/ David C. Reymann
David C. Reymann
Kade N. Olsen
Tammy M. Frisby

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino, Kyle
Murphy, Walker Edison Holding Co., LLC,
Prospect Hill Growth Fund II, L.P., Prospect Hill
Growth Fund II Co-Invest, L.P., Prospect Hill
Growth Partners, L.P., JWC-WE Holdco, LLC,
and JWC-WE Holdings, L.P.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 7th day of February 2024, I electronically filed the

foregoing **MOTION FOR PRO HAC VICE ADMISSION OF MATTHEW H. RICE AND**

**CONSENT OF SPONSORING LOCAL COUNSEL**, which served all counsel of record.


/s/ David C. Reymann
_____

# **<u>EXHIBIT 1</u>**

**Utah Bar Admissions**
**645 South 200 East**
**Salt Lake City, UT 84111**
**TELEPHONE 801 531-9077**



# Utah State Bar®

645 South 200 East, Suite 310 • Salt Lake City, Utah 84111-3834
Telephone: 801-531-9077
http://www.UtahBar.org

## ACKNOWLEDGEMENT OF SUPPORTING DOCUMENTATION
## AND RECEIPT OF PRO HAC VICE FILING FEE

| | |
|---|---|
| Date Issued: | February 05, 2024 |
| Case Name: | Walker Edison Furniture Company, LLC v. Brad Bonham et al. |
| Court Name: | In The Third Judicial District, Salt Lake County, State of Utah |
| Case Number: | 230902160 |

This letter serves as an acknowledgement that the $425.00 pro hac vice filing fee for
**Matthew Rice** in the above-referenced case has been paid to the Utah State Bar and that
the required supporting documentation is complete and in good order. If you have any
questions, please call the Bar at (801) 531-9077.

Maribeth LeHoux
General Counsel

**Note to Counsel:** An original motion signed by a member of the Utah State Bar who
expressly consents to appearing as local counsel should be filed with the court along with: (1)
copies of the Application and Certificate of Good Standing which were provided to the Bar; (2)
this Acknowledgement of Supporting Documentation and Receipt of Pro Hac Vice Filing Fee;
and (3) a proposed order.

*Attorneys admitted Pro Hac Vice must file an "Annual Renewal with the Bar on or before the anniversary date of the filing of the[ir] initial application with the Bar... certify[ing] to the Bar that [they will] continue to act as counsel in the cause or that the cause has been finally adjudicated... And remit to the Bar an annual fee equal to the current dues paid by active members of the Utah State Bar. See Rule 14-806(n). and Rule 14-806(o) for failure to renew.

**For annual renewal information visit: https://www.utahbar.org/pro-hac-vice/

Serving the public. Working for justice.

 # THE SUPREME COURT *of* OHIO

## CERTIFICATE OF GOOD STANDING

I, MICHEL JENDRETZKY, Director of the Attorney Services Division of the Supreme Court of Ohio, do hereby certify that I am the custodian of the records of the Office of Attorney Services of the Supreme Court and that the Attorney Services Division is responsible for reviewing Court records to determine the status of Ohio attorneys. I further certify that, having fulfilled all of the requirements for admission to the practice of law in Ohio,

**Matthew Huntley Rice**
Attorney Registration No. **0097290**

was admitted to the practice of law in Ohio on March 20, 2018; has registered as an active attorney pursuant to the Supreme Court Rules for the Government of the Bar of Ohio; is in good standing with the Supreme Court of Ohio; and is entitled to practice law in this state.



IN TESTIMONY WHEREOF, I have subscribed my name and affixed the seal of the Supreme Court, this 31st day of January, 2024.

MICHEL JENDRETZKY
*Director, Attorney Services Division*

Kirstyn Moyers, *Attorney Services Coordinator*
*Office of Attorney Services*


No. 2024-01-31-1
Verify by email at GoodStandingRequests@sc.ohio.gov

David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
**Parr Brown Gee & Loveless, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

Greg Shinall (*pro hac vice pending*)
Matthew H. Rice (*pro hac vice pending*)
Sean M. Koller (*pro hac vice pending*)
**Sperling & Slater, LLC**
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Telephone: (312) 641-3200
shinall@sperling-law.com
mrice@sperling-law.com
skoller@sperling-law.com

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino,
Kyle Murphy, Walker Edison Holding Co.,
LLC, Prospect Hill Growth Fund II, L.P.,
Prospect Hill Growth Fund II Co-Invest, L.P.,
Prospect Hill Growth Partners, L.P., JWC-
WE Holdco, LLC, and JWC-WE Holdings,
L.P.

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino,
Kyle Murphy, and Walker Edison Holding
Co., LLC

## IN THE THIRD JUDICIAL DISTRICT COURT

## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>BRAD BONHAM, *et al.*,<br><br>    Defendants. | **MOTION FOR PRO HAC VICE ADMISSION OF SEAN M. KOLLER AND CONSENT OF SPONSORING LOCAL COUNSEL**<br><br>Case No. 230902160<br><br>Hon. Robert Faust |

Pursuant to Rule 14-806 of the Utah Code of Judicial Administration, David C. Reymann moves the court for an order admitting Sean M. Koller pro hac vice to act as counsel in the above-captioned matter for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC.  Mr. Koller is neither licensed

to practice law in Utah nor a resident of Utah. Mr. Koller is admitted to practice in Illinois, where he is an attorney in good standing as evidenced by the Certificate of Good Standing attached as Exhibit 1, along with the Bar's Acknowledgement of his application.

The undersigned agrees to serve as designated local counsel for the subject case, to comply with all applicable provisions of the Utah Rules of Civil Procedure and the Utah Code of Judicial Administration, and to readily communicate with opposing counsel and the court regarding the conduct of this case. He also agrees to accept papers when served as well as recognizes the responsibility to act for and on behalf of the clients in all case-related proceedings, including hearings, pretrial conferences, and trials, should Mr. Koller fail to respond to any court order.

A proposed order admitting Mr. Koller accompanies this Motion.

RESPECTFULLY SUBMITTED this 7th day of February 2024.

PARR BROWN GEE & LOVELESS, P.C.

/s/ David C. Reymann
David C. Reymann
Kade N. Olsen
Tammy M. Frisby

Attorneys for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, Walker Edison Holding Co., LLC, Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 7th day of February 2024, I electronically filed the foregoing **MOTION FOR PRO HAC VICE ADMISSION OF SEAN M. KOLLER AND CONSENT OF SPONSORING LOCAL COUNSEL**, which served all counsel of record.

/s/ David C. Reymann

# **<u>EXHIBIT 1</u>**

**Utah Bar Admissions**
**645 200 East**
**Salt Lake City, UT 84111**
**TELEPHONE 801-531-9077**



# Utah State Bar ®

645 South 200 East, Suite 310 • Salt Lake City, Utah 84111-3834
Telephone: 801-531-9077
http://www.UtahBar.org (http://www.utahbar.org/)

## ACKNOWLEDGEMENT OF SUPPORTING DOCUMENTATION
## AND RECEIPT OF PRO HAC VICE FILING FEE

| | |
|---|---|
| Date Issued: | February 05, 2024 |
| Case Name: | Walker Edison Furniture Company, LLC v. Brad Bonham, et al. |
| Court Name: | In The Third Judicial District, Salt Lake County, State of Utah |
| Case Number: | 230902160 |

This letter serves as an acknowledgement that the $425.00 pro hac vice filing fee for **Sean G. Koller** in the above-referenced case has been paid to the Utah State Bar and that the required supporting documentation is complete and in good order. If you have any questions, please call the Bar at (801) 531-9077.

Maribeth LeHoux
General Counsel

## Cookie Policy

By using this site, you understand that we use cookies to improve your experience on our site.

# Certificate of Admission
# To the Bar of Illinois

I, Cynthia A. Grant, Clerk of the Supreme Court of Illinois, do hereby certify that

Sean Michael Koller

has been duly licensed and admitted to practice as an Attorney and Counselor at Law within this State; has duly taken the required oath to support the CONSTITUTION OF THE UNITED STATES and of the STATE OF ILLINOIS, and also the oath of office prescribed by law, that said name was entered upon the Roll of Attorneys and Counselors in my office on 11/10/2016 and is in good standing, so far as the records of this office disclose.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the seal of said Court, this 30th day of January, 2024.

*Cynthia A. Grant*

Clerk,
Supreme Court of the State of Illinois

David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

Greg Shinall (*pro hac vice pending*)
Matthew H. Rice (*pro hac vice pending*)
Sean M. Koller (*pro hac vice pending*)
**SPERLING & SLATER, LLC**
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Telephone: (312) 641-3200
shinall@sperling-law.com
mrice@sperling-law.com
skoller@sperling-law.com

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino, Kyle
Murphy, Walker Edison Holding Co., LLC,
Prospect Hill Growth Fund II, L.P., Prospect Hill
Growth Fund II Co-Invest, L.P., Prospect Hill
Growth Partners, L.P., JWC-WE Holdco, LLC,
and JWC-WE Holdings, L.P.

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino, Kyle
Murphy, and Walker Edison Holding Co., LLC

---

## IN THE THIRD JUDICIAL DISTRICT COURT

## SALT LAKE COUNTY, STATE OF UTAH

---

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BRAD BONHAM, *et al.*, <br><br> Defendants. | **ORDER GRANTING MOTION FOR PRO HAC VICE ADMISSION OF GREG SHINALL** <br><br> Case No. 230902160 <br><br> Hon. Robert Faust |

Based upon the Motion for Admission Pro Hac Vice of Greg Shinall and the consent to

appear as local counsel by David C. Reymann, it is hereby ordered that Greg Shinall be admitted

pro hac vice as counsel for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David

Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC in the above-entitled matter.

**END OF ORDER**
**Entered as indicated by the signature above**



David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino, Kyle
Murphy, Walker Edison Holding Co., LLC,
Prospect Hill Growth Fund II, L.P., Prospect Hill
Growth Fund II Co-Invest, L.P., Prospect Hill
Growth Partners, L.P., JWC-WE Holdco, LLC,
and JWC-WE Holdings, L.P.

Greg Shinall (*pro hac vice pending*)
Matthew H. Rice (*pro hac vice pending*)
Sean M. Koller (*pro hac vice pending*)
**SPERLING & SLATER, LLC**
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Telephone: (312) 641-3200
shinall@sperling-law.com
mrice@sperling-law.com
skoller@sperling-law.com

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino, Kyle
Murphy, and Walker Edison Holding Co., LLC

---

## IN THE THIRD JUDICIAL DISTRICT COURT

## SALT LAKE COUNTY, STATE OF UTAH

---

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BRAD BONHAM, *et al.*,<br><br>Defendants. | **ORDER GRANTING MOTION FOR PRO HAC VICE ADMISSION OF MATTHEW H. RICE**<br><br>Case No. 230902160<br><br>Hon. Robert Faust |

Based upon the Motion for Admission Pro Hac Vice of Matthew H. Rice and the consent

to appear as local counsel by David C. Reymann, it is hereby ordered that Matthew H. Rice be

admitted pro hac vice as counsel for Defendants Adam Suttin, Phil Damiano, Kyle Casella,

David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC in the above-entitled

matter.

**END OF ORDER**

**Entered as indicated by the signature above**



David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

Greg Shinall (*pro hac vice pending*)
Matthew H. Rice (*pro hac vice pending*)
Sean M. Koller (*pro hac vice pending*)
**SPERLING & SLATER, LLC**
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Telephone: (312) 641-3200
shinall@sperling-law.com
mrice@sperling-law.com
skoller@sperling-law.com

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino, Kyle
Murphy, Walker Edison Holding Co., LLC,
Prospect Hill Growth Fund II, L.P., Prospect Hill
Growth Fund II Co-Invest, L.P., Prospect Hill
Growth Partners, L.P., JWC-WE Holdco, LLC,
and JWC-WE Holdings, L.P.

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino, Kyle
Murphy, and Walker Edison Holding Co., LLC

---

## IN THE THIRD JUDICIAL DISTRICT COURT

## SALT LAKE COUNTY, STATE OF UTAH

---

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>BRAD BONHAM, *et al.*,<br><br>          Defendants. | **ORDER GRANTING MOTION FOR PRO HAC VICE ADMISSION OF SEAN M. KOLLER**<br><br>Case No. 230902160<br><br>Hon. Robert Faust |

Based upon the Motion for Admission Pro Hac Vice of Sean M. Koller and the consent to

appear as local counsel by David C. Reymann, it is hereby ordered that Sean M. Koller be

admitted pro hac vice as counsel for Defendants Adam Suttin, Phil Damiano, Kyle Casella,

David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC in the above-entitled

matter.

**END OF ORDER**

**Entered as indicated by the signature above**



David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino,
Kyle Murphy, Walker Edison Holding Co.,
LLC, Prospect Hill Growth Fund II, L.P.,
Prospect Hill Growth Fund II Co-Invest, L.P.,
Prospect Hill Growth Partners, L.P., JWC-
WE Holdco, LLC, and JWC-WE Holdings,
L.P.

Greg Shinall (*pro hac vice pending*)
Matthew H. Rice (*pro hac vice pending*)
Sean M. Koller (*pro hac vice pending*)
**SPERLING & SLATER, LLC**
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Telephone: (312) 641-3200
shinall@sperling-law.com
mrice@sperling-law.com
skoller@sperling-law.com

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino,
Kyle Murphy, and Walker Edison Holding
Co., LLC

---

## IN THE THIRD JUDICIAL DISTRICT COURT

## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>              Plaintiff,<br><br>v.<br><br>BRAD BONHAM, *et al.*,<br><br>              Defendants. | **REQUEST TO SUBMIT FOR DECISION: MOTIONS FOR PRO HAC VICE ADMISSION**<br><br>Case No. 230902160<br><br>Hon. Robert Faust |

Pursuant to Rule 7(g) of the Utah Rules of Civil Procedure, Defendants Adam Suttin, Phil

Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

hereby submit for decision the following three motions filed concurrently herewith:

   1.      Motion for Pro Hac Vice Admission of Greg Shinall;

2.      Motion for Pro Hac Vice Admission of Matthew H. Rice; and

3.      Motion for Pro Hac Vice Admission of Sean M. Koller.

This Court may act upon the motions without awaiting a response.  Utah R. Civ. P.

7(*l*)(1)(C).  Proposed orders for each motion are also filed concurrently herewith.

DATED this 7th day of February 2024.

<div align="center">

PARR BROWN GEE & LOVELESS, P.C.

/s/ David C. Reymann
David C. Reymann
Kade N. Olsen
Tammy M. Frisby

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino, Kyle
Murphy, Walker Edison Holding Co., LLC,
Prospect Hill Growth Fund II, L.P., Prospect Hill
Growth Fund II Co-Invest, L.P., Prospect Hill
Growth Partners, L.P., JWC-WE Holdco, LLC,
and JWC-WE Holdings, L.P.

</div>

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 7th day of February 2024, I electronically filed the

foregoing **REQUEST TO SUBMIT FOR DECISION: MOTIONS FOR PRO HAC VICE**

**ADMISSION**, which served all counsel of record.

/s/ David C. Reymann

The Order of the Court is stated below:
**Dated:** February 08, 2024          /s/   ROBERT FAUST
          10:37:33 AM                     District Court Judge

David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

Greg Shinall (*pro hac vice pending*)
Matthew H. Rice (*pro hac vice pending*)
Sean M. Koller (*pro hac vice pending*)
**SPERLING & SLATER, LLC**
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Telephone: (312) 641-3200
shinall@sperling-law.com
mrice@sperling-law.com
skoller@sperling-law.com

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino, Kyle
Murphy, Walker Edison Holding Co., LLC,
Prospect Hill Growth Fund II, L.P., Prospect Hill
Growth Fund II Co-Invest, L.P., Prospect Hill
Growth Partners, L.P., JWC-WE Holdco, LLC,
and JWC-WE Holdings, L.P.

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino, Kyle
Murphy, and Walker Edison Holding Co., LLC

## IN THE THIRD JUDICIAL DISTRICT COURT

## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>BRAD BONHAM, *et al.*,<br><br>          Defendants. | **ORDER GRANTING MOTION FOR PRO HAC VICE ADMISSION OF GREG SHINALL**<br><br>Case No. 230902160<br><br>Hon. Robert Faust |

Based upon the Motion for Admission Pro Hac Vice of Greg Shinall and the consent to

appear as local counsel by David C. Reymann, it is hereby ordered that Greg Shinall be admitted

pro hac vice as counsel for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David

Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC in the above-entitled matter.

**END OF ORDER**
**Entered as indicated by the signature above**

4865-7864-7201

2

The Order of the Court is stated below:
**Dated:** February 08, 2024          /s/   ROBERT FAUST
                10:37:45 AM                District Court Judge

David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino, Kyle
Murphy, Walker Edison Holding Co., LLC,
Prospect Hill Growth Fund II, L.P., Prospect Hill
Growth Fund II Co-Invest, L.P., Prospect Hill
Growth Partners, L.P., JWC-WE Holdco, LLC,
and JWC-WE Holdings, L.P.

Greg Shinall (*pro hac vice pending*)
Matthew H. Rice (*pro hac vice pending*)
Sean M. Koller (*pro hac vice pending*)
**SPERLING & SLATER, LLC**
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Telephone: (312) 641-3200
shinall@sperling-law.com
mrice@sperling-law.com
skoller@sperling-law.com

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino, Kyle
Murphy, and Walker Edison Holding Co., LLC

---

## IN THE THIRD JUDICIAL DISTRICT COURT

## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br>      Plaintiff, <br><br> v. <br><br> BRAD BONHAM, *et al.*, <br><br>      Defendants. | **ORDER GRANTING MOTION FOR PRO HAC VICE ADMISSION OF MATTHEW H. RICE** <br><br> Case No. 230902160 <br><br> Hon. Robert Faust |

   Based upon the Motion for Admission Pro Hac Vice of Matthew H. Rice and the consent

to appear as local counsel by David C. Reymann, it is hereby ordered that Matthew H. Rice be

admitted pro hac vice as counsel for Defendants Adam Suttin, Phil Damiano, Kyle Casella,

David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC in the above-entitled

matter.

**END OF ORDER**
**Entered as indicated by the signature above**

4865-3303-4657

2

The Order of the Court is stated below:
**Dated:** February 08, 2024          /s/   ROBERT FAUST
              10:37:55 AM                    District Court Judge

David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino, Kyle
Murphy, Walker Edison Holding Co., LLC,
Prospect Hill Growth Fund II, L.P., Prospect Hill
Growth Fund II Co-Invest, L.P., Prospect Hill
Growth Partners, L.P., JWC-WE Holdco, LLC,
and JWC-WE Holdings, L.P.

Greg Shinall (*pro hac vice pending*)
Matthew H. Rice (*pro hac vice pending*)
Sean M. Koller (*pro hac vice pending*)
**SPERLING & SLATER, LLC**
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Telephone: (312) 641-3200
shinall@sperling-law.com
mrice@sperling-law.com
skoller@sperling-law.com

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino, Kyle
Murphy, and Walker Edison Holding Co., LLC

---

## 1IN THE THIRD JUDICIAL DISTRICT COURT

## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| 2 WALKER EDISON FURNITURE COMPANY, LLC, <br><br>             Plaintiff, <br><br> v. <br><br> BRAD BONHAM, *et al.*, <br><br>             Defendants. | **ORDER GRANTING MOTION FOR PRO HAC VICE ADMISSION OF SEAN M. KOLLER** <br><br> 3Case No. 230902160 <br><br> Hon. Robert Faust |

Based upon the Motion for Admission Pro Hac Vice of Sean M. Koller and the consent to

appear as local counsel by David C. Reymann, it is hereby ordered that Sean M. Koller be

admitted pro hac vice as counsel for Defendants Adam Suttin, Phil Damiano, Kyle Casella,

David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC in the above-entitled matter.

**END OF ORDER**
**Entered as indicated by the signature above**

4854-7895-3633

2

David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino,
Kyle Murphy, Walker Edison Holding Co.,
LLC, Prospect Hill Growth Fund II, L.P.,
Prospect Hill Growth Fund II Co-Invest, L.P.,
Prospect Hill Growth Partners, L.P., JWC-
WE Holdco, LLC, and JWC-WE Holdings,
L.P.

Greg Shinall (*pro hac vice pending*)
Matthew H. Rice (*pro hac vice pending*)
Sean M. Koller (*pro hac vice pending*)
**SPERLING & SLATER, LLC**
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Telephone: (312) 641-3200
shinall@sperling-law.com
mrice@sperling-law.com
skoller@sperling-law.com

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino,
Kyle Murphy, and Walker Edison Holding
Co., LLC

---

## IN THE THIRD JUDICIAL DISTRICT COURT

## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, | **SUBMISSION OF APPLICATIONS FOR PRO HAC VICE ADMISSION** |
| Plaintiff, | |
| v. | Case No. 230902160 |
| BRAD BONHAM, *et al.*, | Hon. Robert Faust |
| Defendants. | |

In connection with previously-filed motions, attached hereto are applications for

admission pro hac vice for Greg Shinall, Matthew H. Rice, and Sean M. Koller.

DATED this 15th day of February 2024.

PARR BROWN GEE & LOVELESS, P.C.

/s/ David C. Reymann
David C. Reymann
Kade N. Olsen
Tammy M. Frisby

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino, Kyle
Murphy, Walker Edison Holding Co., LLC,
Prospect Hill Growth Fund II, L.P., Prospect Hill
Growth Fund II Co-Invest, L.P., Prospect Hill
Growth Partners, L.P., JWC-WE Holdco, LLC,
and JWC-WE Holdings, L.P.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 15th day of February 2024, I electronically filed the

foregoing **SUBMISSION OF APPLICATIONS FOR PRO HAC VICE ADMISSION**, which

served all counsel of record.

/s/ David C. Reymann

# Pro Hac Vice Application - Pro Hac Vice

**Application Submitted on 02.02.2024**

**Personal Information**

**Personal Information**

| | |
|---|---|
| Applicant Full Name | Greg Shinall |
| Applicant Firm Name | Sperling & Slater LLC |
| Applicant Firm Address | 55 West Monroe Street |
| Applicant Firm Address | 32nd Floor |
| Applicant City | Chicago |
| Applicant State | Illinois |
| Applicant Zip Code | 60603 |
| Applicant Mobile Number | 3125040405 |
| Applicant Office Number | 3126413200 |
| Pro Hac Vice Applicant Email | shinall@sperling-law.com |

**Local Counsel Information**

| | |
|---|---|
| Local Counsel Name | David C. Reymann |
| Local Counsel Bar Number | 8495 |
| Local Counsel Firm Name | Parr Brown Gee & Loveless, P.C. |
| Local Counsel Firm Address 1 | 101 South 200 East, Suite 700 |
| Local Counsel Firm Address 2 | |
| Local Counsel City | Salt Lake City |
| **Local Counsel State** | UTAH |
| Local Counsel Zip Code | 84111 |
| Local Counsel Telephone Number | 801-532-7840 |
| Local Counsel Email | dreymann@parrbrown.com |

**Case Information**

| | |
|---|---|
| Case Name | WALKER EDISON FURNITURE COMPANY, LLC v. BRAD BONHAM, et al. |
| Case Number | 230902160 |
| Party on whose behalf Applicant seeks to appear | Defendants - Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC |
| Will you be appearing before a court? | Yes |
| Name of Court and County | Third Judicial District, Salt Lake County |

**Bar Membership**

**Bar Membership**

List every state in which you hold a license to practice law.

NOTE: Please upload <u>separately</u>, a certificate of good standing from the licensing entity of each state that you have been admitted to.

| | |
|---|---|
| Jurisdiction | IL |
| Bar Number | 6204392 |
| Date of Admission | 11-8-1990 |

**Disciplinary Actions**

| | |
|---|---|
| Have you ever been the subject of disciplinary action by any bar? | No |
| Are you (the Applicant) the subject of any pending disciplinary proceedings by any state's or court's disciplinary agency? | No |

**Prior Pro Hac in Utah**

| | |
|---|---|
| List previous Pro Hac Vice Admissions in the State of Utah. If not applicable, enter N/A. | |
| Case Name | N/A |
| Case Number | N/A |

**Attestation**

**Attestation**

| | |
|---|---|
| Applicant certifies that they are a member in good standing of all bars to which they have been admitted | Yes |
| Applicant is familiar with the rules of procedure and evidence, including applicable local rules | Yes |
| Applicant will be available for all depositions, hearings and conferences | Yes |
| Applicant will comply with the rulings and orders of the court | Yes |
| Applicant certifies that they have read and will comply with the Utah Rules of Professional Conduct and the Utah Standards of Professionalism and Civility | Yes |
| Applicant hereby certifies that they are not a resident of Utah and that the foregoing is true and correct and is subject to the penalty of perjury | Yes |
| Require Electronic Signature / Date | |
| By typing your name, you are signing this document electronically and demonstrating your intent to use this electronic signature as your verification that you have read, understood and agreed to the terms and conditions listed in the Release of Liability and Acknowledgement and Acceptance of Testing Conditions. | |
| Type your name in the box to sign electronically: | Greg Shinall |
| **Signed on this date: 02/01/2024 14:41:59** | |

# Pro Hac Vice Application - Pro Hac Vice

**Application Submitted on 02.02.2024**

---

**Personal Information**

**Personal Information**

| | |
|---|---|
| Applicant Full Name | Matthew Rice |
| Applicant Firm Name | Sperling & Slater, LLC |
| Applicant Firm Address | 55 W. Monroe St., Suite 3200, Chicago, IL 60603 |
| Applicant Firm Address | |
| Applicant City | Chicago |
| Applicant State | Illinois |
| Applicant Zip Code | 60603 |
| Applicant Mobile Number | 312-813-7880 |
| Applicant Office Number | 312-242-6294 |
| Pro Hac Vice Applicant Email | mrice@sperling-law.com |

**Local Counsel Information**

| | |
|---|---|
| Local Counsel Name | David C. Reymann |
| Local Counsel Bar Number | 8495 |
| Local Counsel Firm Name | Parr Brown Gee & Loveless, P.C. |
| Local Counsel Firm Address 1 | 101 South 200 East, Suite 700 |
| Local Counsel Firm Address 2 | |
| Local Counsel City | Salt Lake City |
| **Local Counsel State** | |
| | UTAH |
| Local Counsel Zip Code | 84111 |
| Local Counsel Telephone Number | 801-532-7840 |
| Local Counsel Email | dreymann@parrbrown.com |

**Case Information**

| | |
|---|---|
| Case Name | Walker Edison Furniture Company, LLC v. Brad Bonham et al. |

| Case Number | 230902160 |
| --- | --- |
| Party on whose behalf Applicant seeks to appear | Defendants Adam Suttin, Phil Damiano, Kyle Casela, David, Kyle Murphy and Walker Edison Holding Co., LLC |
| Will you be appearing before a court? | Yes |
| Name of Court and County | Third Judicial District, Salt Lake County |

**Bar Membership**

**Bar Membership**

| | |
| --- | --- |
| List every state in which you hold a license to practice law. | |
| NOTE: Please upload separately, a certificate of good standing from the licensing entity of each state that you have been admitted to. | |
| Jurisdiction | OH |
| Bar Number | 0097290 |
| Date of Admission | 3-20-2018 |

**Disciplinary Actions**

| | |
| --- | --- |
| Have you ever been the subject of disciplinary action by any bar? | No |
| Are you (the Applicant) the subject of any pending disciplinary proceedings by any state's or court's disciplinary agency? | No |

**Prior Pro Hac in Utah**

| | |
| --- | --- |
| List previous Pro Hac Vice Admissions in the State of Utah. If not applicable, enter N/A. | |
| Case Name | N/A |
| Case Number | N/A |

**Attestation**

**Attestation**

| | |
| --- | --- |
| Applicant certifies that they are a member in good standing of all bars to which they have been admitted | Yes |
| Applicant is familiar with the rules of procedure and evidence, including applicable local rules | Yes |
| Applicant will be available for all depositions, hearings and conferences | Yes |
| Applicant will comply with the rulings and orders of the court | Yes |
| Applicant certifies that they have read and will comply with the Utah Rules of Professional Conduct and the Utah Standards of Professionalism and Civility | Yes |
| Applicant hereby certifies that they are not a resident of Utah and that the foregoing is true and correct and is subject to the penalty of perjury | Yes |
| Require Electronic Signature / Date | |

By typing your name, you are signing this document electronically and demonstrating your intent to use this electronic signature as your verification that you have read, understood and agreed to the terms and conditions listed in the Release of Liability and Acknowledgement and Acceptance of Testing Conditions.

Type your name in the box to sign electronically:                                                    Matthew Rice

**Signed on this date: 02/02/2024 08:58:21**

# Pro Hac Vice Application - Pro Hac Vice

**Application Submitted on 02.02.2024**

## Personal Information

### Personal Information

| | |
|---|---|
| Applicant Full Name | Sean G Koller |
| Applicant Firm Name | Sperling & Slater, LLC |
| Applicant Firm Address | 55 W. Monroe Street |
| Applicant Firm Address | Suite 3200 |
| Applicant City | Chicago |
| Applicant State | Illinois |
| Applicant Zip Code | 60603 |
| Applicant Mobile Number | 847-721-2091 |
| Applicant Office Number | 312-641-3200 |
| Pro Hac Vice Applicant Email | skoller@sperling-law.com |

### Local Counsel Information

| | |
|---|---|
| Local Counsel Name | David C. Reymann |
| Local Counsel Bar Number | 8495 |
| Local Counsel Firm Name | Parr Brown Gee & Loveless, P.C. |
| Local Counsel Firm Address 1 | 101 South 200 East, Suite 700 |
| Local Counsel Firm Address 2 | |
| Local Counsel City | Salt Lake City |
| **Local Counsel State** | UTAH |
| Local Counsel Zip Code | 84111 |
| Local Counsel Telephone Number | 801-532-7840 |
| Local Counsel Email | dreymann@parrbrown.com |

### Case Information

| | |
|---|---|
| Case Name | Walker Edison Furniture Company, LLC v. Brad Bonham, et al. |

| Case Number | 230902160 |
|---|---|
| Party on whose behalf Applicant seeks to appear | Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy and Walker Edison Holding Co., LLC |
| Will you be appearing before a court? | Yes |
| Name of Court and County | Third Judicial District, Salt Lake County |

## Bar Membership

## Bar Membership

List every state in which you hold a license to practice law.

NOTE: Please upload separately, a certificate of good standing from the licensing entity of each state that you have been admitted to.

| Jurisdiction | IL |
|---|---|
| Bar Number | 6324181 |
| Date of Admission | 11-10-2016 |

## Disciplinary Actions

| Have you ever been the subject of disciplinary action by any bar? | No |
|---|---|
| Are you (the Applicant) the subject of any pending disciplinary proceedings by any state's or court's disciplinary agency? | No |

## Prior Pro Hac in Utah

List previous Pro Hac Vice Admissions in the State of Utah. If not applicable, enter N/A.

| Case Name | N/A |
|---|---|
| Case Number | N/A |

## Attestation

## Attestation

| Applicant certifies that they are a member in good standing of all bars to which they have been admitted | Yes |
|---|---|
| Applicant is familiar with the rules of procedure and evidence, including applicable local rules | Yes |
| Applicant will be available for all depositions, hearings and conferences | Yes |
| Applicant will comply with the rulings and orders of the court | Yes |
| Applicant certifies that they have read and will comply with the Utah Rules of Professional Conduct and the Utah Standards of Professionalism and Civility | Yes |
| Applicant hereby certifies that they are not a resident of Utah and that the foregoing is true and correct and is subject to the penalty of perjury | Yes |
| Require Electronic Signature / Date | |

By typing your name, you are signing this document electronically and demonstrating your intent to use this electronic signature as your verification that you have read, understood and agreed to the terms and conditions listed in the Release of Liability and Acknowledgement and Acceptance of Testing Conditions.

Type your name in the box to sign electronically:                                                                                     Sean M. Koller

**Signed on this date: 02/02/2024 14:53:21**

David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino,
Kyle Murphy, Walker Edison Holding Co.,
LLC, Prospect Hill Growth Fund II, L.P.,
Prospect Hill Growth Fund II Co-Invest, L.P.,
Prospect Hill Growth Partners, L.P., JWC-
WE Holdco, LLC, and JWC-WE Holdings,
L.P.

Greg Shinall (*pro hac vice pending*)
Matthew H. Rice (*pro hac vice pending*)
Sean M. Koller (*pro hac vice pending*)
**SPERLING & SLATER, LLC**
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Telephone: (312) 641-3200
shinall@sperling-law.com
mrice@sperling-law.com
skoller@sperling-law.com

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino,
Kyle Murphy, and Walker Edison Holding
Co., LLC

---

## IN THE THIRD JUDICIAL DISTRICT COURT

## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BRAD BONHAM, *et al.*, <br><br> Defendants. | **SUBMISSION OF APPLICATIONS FOR PRO HAC VICE ADMISSION** <br><br> Case No. 230902160 <br><br> Hon. Robert Faust |

In connection with previously-filed motions, attached hereto are applications for admission pro hac vice for Greg Shinall, Matthew H. Rice, and Sean M. Koller.

DATED this 15th day of February 2024.

PARR BROWN GEE & LOVELESS, P.C.

/s/ David C. Reymann
David C. Reymann
Kade N. Olsen
Tammy M. Frisby

Attorneys for Defendants Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino, Kyle
Murphy, Walker Edison Holding Co., LLC,
Prospect Hill Growth Fund II, L.P., Prospect Hill
Growth Fund II Co-Invest, L.P., Prospect Hill
Growth Partners, L.P., JWC-WE Holdco, LLC,
and JWC-WE Holdings, L.P.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 15th day of February 2024, I electronically filed the foregoing **SUBMISSION OF APPLICATIONS FOR PRO HAC VICE ADMISSION**, which served all counsel of record.

/s/ David C. Reymann

# Pro Hac Vice Application - Pro Hac Vice

**Application Submitted on 02.02.2024**

**Personal Information**

**Personal Information**

| | |
|---|---|
| Applicant Full Name | Greg Shinall |
| Applicant Firm Name | Sperling & Slater LLC |
| Applicant Firm Address | 55 West Monroe Street |
| Applicant Firm Address | 32nd Floor |
| Applicant City | Chicago |
| Applicant State | Illinois |
| Applicant Zip Code | 60603 |
| Applicant Mobile Number | 3125040405 |
| Applicant Office Number | 3126413200 |
| Pro Hac Vice Applicant Email | shinall@sperling-law.com |

**Local Counsel Information**

| | |
|---|---|
| Local Counsel Name | David C. Reymann |
| Local Counsel Bar Number | 8495 |
| Local Counsel Firm Name | Parr Brown Gee & Loveless, P.C. |
| Local Counsel Firm Address 1 | 101 South 200 East, Suite 700 |
| Local Counsel Firm Address 2 | |
| Local Counsel City | Salt Lake City |
| **Local Counsel State** | UTAH |
| Local Counsel Zip Code | 84111 |
| Local Counsel Telephone Number | 801-532-7840 |
| Local Counsel Email | dreymann@parrbrown.com |

**Case Information**

| | |
|---|---|
| Case Name | WALKER EDISON FURNITURE COMPANY, LLC v. BRAD BONHAM, et al. |
| Case Number | 230902160 |
| Party on whose behalf Applicant seeks to appear | Defendants - Adam Suttin, Phil Damiani, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC |
| Will you be appearing before a court? | Yes |
| Name of Court and County | Third Judicial District, Salt Lake County |

**Bar Membership**

**Bar Membership**

List every state in which you hold a license to practice law.

NOTE: Please upload separately, a certificate of good standing from the licensing entity of each state that you have been admitted to.

| | |
|---|---|
| Jurisdiction | IL |
| Bar Number | 6204392 |
| Date of Admission | 11-8-1990 |

**Disciplinary Actions**

| | |
|---|---|
| Have you ever been the subject of disciplinary action by any bar? | No |
| Are you (the Applicant) the subject of any pending disciplinary proceedings by any state's or court's disciplinary agency? | No |

**Prior Pro Hac in Utah**

| | |
|---|---|
| List previous Pro Hac Vice Admissions in the State of Utah. If not applicable, enter N/A. | |
| Case Name | N/A |
| Case Number | N/A |

**Attestation**

**Attestation**

| | |
|---|---|
| Applicant certifies that they are a member in good standing of all bars to which they have been admitted | Yes |
| Applicant is familiar with the rules of procedure and evidence, including applicable local rules | Yes |
| Applicant will be available for all depositions, hearings and conferences | Yes |
| Applicant will comply with the rulings and orders of the court | Yes |
| Applicant certifies that they have read and will comply with the Utah Rules of Professional Conduct and the Utah Standards of Professionalism and Civility | Yes |
| Applicant hereby certifies that they are not a resident of Utah and that the foregoing is true and correct and is subject to the penalty of perjury | Yes |
| Require Electronic Signature / Date | |
| By typing your name, you are signing this document electronically and demonstrating your intent to use this electronic signature as your verification that you have read, understood and agreed to the terms and conditions listed in the Release of Liability and Acknowledgement and Acceptance of Testing Conditions. | |
| Type your name in the box to sign electronically: | Greg Shinall |
| **Signed on this date: 02/01/2024 14:41:59** | |

# Pro Hac Vice Application - Pro Hac Vice

**Application Submitted on 02.02.2024**

---

**Personal Information**

**Personal Information**

| | |
|---|---|
| Applicant Full Name | Matthew Rice |
| Applicant Firm Name | Sperling & Slater, LLC |
| Applicant Firm Address | 55 W. Monroe St., Suite 3200, Chicago, IL 60603 |
| Applicant Firm Address | |
| Applicant City | Chicago |
| Applicant State | Illinois |
| Applicant Zip Code | 60603 |
| Applicant Mobile Number | 312-813-7880 |
| Applicant Office Number | 312-242-6294 |
| Pro Hac Vice Applicant Email | mrice@sperling-law.com |

**Local Counsel Information**

| | |
|---|---|
| Local Counsel Name | David C. Reymann |
| Local Counsel Bar Number | 8495 |
| Local Counsel Firm Name | Parr Brown Gee & Loveless, P.C. |
| Local Counsel Firm Address 1 | 101 South 200 East, Suite 700 |
| Local Counsel Firm Address 2 | |
| Local Counsel City | Salt Lake City |
| **Local Counsel State** | |
| | UTAH |
| Local Counsel Zip Code | 84111 |
| Local Counsel Telephone Number | 801-532-7840 |
| Local Counsel Email | dreymann@parrbrown.com |

**Case Information**

| | |
|---|---|
| Case Name | Walker Edison Furniture Company, LLC v. Brad Bonham et al. |

| | |
|---|---|
| Case Number | 230902160 |
| Party on whose behalf Applicant seeks to appear | Defendants Adam Suttin, Phil Damiano, Kyle Casela, David, Kyle Murphy and Walker Edison Holding Co., LLC |
| Will you be appearing before a court? | Yes |
| Name of Court and County | Third Judicial District, Salt Lake County |

## Bar Membership

## Bar Membership

| | |
|---|---|
| List every state in which you hold a license to practice law. | |
| NOTE: Please upload separately, a certificate of good standing from the licensing entity of each state that you have been admitted to. | |
| Jurisdiction | OH |
| Bar Number | 0097290 |
| Date of Admission | 3-20-2018 |

## Disciplinary Actions

| | |
|---|---|
| Have you ever been the subject of disciplinary action by any bar? | No |
| Are you (the Applicant) the subject of any pending disciplinary proceedings by any state's or court's disciplinary agency? | No |

## Prior Pro Hac in Utah

| | |
|---|---|
| List previous Pro Hac Vice Admissions in the State of Utah. If not applicable, enter N/A. | |
| Case Name | N/A |
| Case Number | N/A |

## Attestation

## Attestation

| | |
|---|---|
| Applicant certifies that they are a member in good standing of all bars to which they have been admitted | Yes |
| Applicant is familiar with the rules of procedure and evidence, including applicable local rules | Yes |
| Applicant will be available for all depositions, hearings and conferences | Yes |
| Applicant will comply with the rulings and orders of the court | Yes |
| Applicant certifies that they have read and will comply with the Utah Rules of Professional Conduct and the Utah Standards of Professionalism and Civility | Yes |
| Applicant hereby certifies that they are not a resident of Utah and that the foregoing is true and correct and is subject to the penalty of perjury | Yes |
| Require Electronic Signature / Date | |

By typing your name, you are signing this document electronically and demonstrating your intent to use this electronic signature as your verification that you have read, understood and agreed to the terms and conditions listed in the Release of Liability and Acknowledgement and Acceptance of Testing Conditions.

Type your name in the box to sign electronically:                                                                 Matthew Rice

**Signed on this date: 02/02/2024 08:58:21**

# Pro Hac Vice Application - Pro Hac Vice

**Application Submitted on 02.02.2024**

## Personal Information

### Personal Information

| | |
|---|---|
| Applicant Full Name | Sean G Koller |
| Applicant Firm Name | Sperling & Slater, LLC |
| Applicant Firm Address | 55 W. Monroe Street |
| Applicant Firm Address | Suite 3200 |
| Applicant City | Chicago |
| Applicant State | Illinois |
| Applicant Zip Code | 60603 |
| Applicant Mobile Number | 847-721-2091 |
| Applicant Office Number | 312-641-3200 |
| Pro Hac Vice Applicant Email | skoller@sperling-law.com |

### Local Counsel Information

| | |
|---|---|
| Local Counsel Name | David C. Reymann |
| Local Counsel Bar Number | 8495 |
| Local Counsel Firm Name | Parr Brown Gee & Loveless, P.C. |
| Local Counsel Firm Address 1 | 101 South 200 East, Suite 700 |
| Local Counsel Firm Address 2 | |
| Local Counsel City | Salt Lake City |
| **Local Counsel State** | UTAH |
| Local Counsel Zip Code | 84111 |
| Local Counsel Telephone Number | 801-532-7840 |
| Local Counsel Email | dreymann@parrbrown.com |

### Case Information

| | |
|---|---|
| Case Name | Walker Edison Furniture Company, LLC v. Brad Bonham, et al. |

| Case Number | 230902160 |
| --- | --- |
| Party on whose behalf Applicant seeks to appear | Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy and Walker Edison Holding Co., LLC |
| Will you be appearing before a court? | Yes |
| Name of Court and County | Third Judicial District, Salt Lake County |

**Bar Membership**

**Bar Membership**

List every state in which you hold a license to practice law.

NOTE: Please upload <u>separately</u>, a certificate of good standing from the licensing entity of each state that you have been admitted to.

| Jurisdiction | IL |
| --- | --- |
| Bar Number | 6324181 |
| Date of Admission | 11-10-2016 |

**Disciplinary Actions**

| Have you ever been the subject of disciplinary action by any bar? | No |
| --- | --- |
| Are you (the Applicant) the subject of any pending disciplinary proceedings by any state's or court's disciplinary agency? | No |

**Prior Pro Hac in Utah**

List previous Pro Hac Vice Admissions in the State of Utah. If not applicable, enter N/A.

| Case Name | N/A |
| --- | --- |
| Case Number | N/A |

**Attestation**

**Attestation**

| Applicant certifies that they are a member in good standing of all bars to which they have been admitted | Yes |
| --- | --- |
| Applicant is familiar with the rules of procedure and evidence, including applicable local rules | Yes |
| Applicant will be available for all depositions, hearings and conferences | Yes |
| Applicant will comply with the rulings and orders of the court | Yes |
| Applicant certifies that they have read and will comply with the Utah Rules of Professional Conduct and the Utah Standards of Professionalism and Civility | Yes |
| Applicant hereby certifies that they are not a resident of Utah and that the foregoing is true and correct and is subject to the penalty of perjury | Yes |
| Require Electronic Signature / Date | |

By typing your name, you are signing this document electronically and demonstrating your intent to use this electronic signature as your verification that you have read, understood and agreed to the terms and conditions listed in the Release of Liability and Acknowledgement and Acceptance of Testing Conditions.

Type your name in the box to sign electronically:                                              Sean M. Koller

**Signed on this date: 02/02/2024 14:53:21**

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
EChristiansen@parsonsbehle.com
AMouritsen@parsonsbehle.com
BRothschild@parsonsbehle.com
ecf@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture Company,
LLC*

Michael Farhang (admitted pro hac vice)
Michael Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
MFarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

---

### IN THE THIRD JUDICIAL DISTRICT COURT
### FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>          Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>          Defendants. | **STIPULATED PROTECTIVE ORDER**<br><br>Civil No. 230902160<br><br><br>Judge Robert Faust<br><br>Discovery Tier 3 |

Pursuant to the parties' Stipulated Motion for Entry of Protective Order, and for good cause, the Court enters this Stipulated Protective Order to govern the confidentiality of information. This Stipulated Protective Order shall govern any record of information produced in this action and designated pursuant to this Stipulated Protective Order, including all designated deposition testimony, all designated deposition exhibits, interrogatory answers, admissions, documents and other discovery materials, whether produced informally or in response to interrogatories, requests for admissions, requests for production of documents or other formal methods of discovery. This Stipulated Protective Order shall apply to the parties and to any nonparty from whom discovery may be sought who desires the protection of this Stipulated Protective Order.

1.    **Definition and Designation of Confidential or Attorneys' Eyes Only**

Designation of information under this Stipulated Protective Order must be made by marking or labeling the information, documents or other materials CONFIDENTIAL or ATTORNEYS' EYES ONLY, in a manner that will not interfere with its legibility.

(a)    <u>CONFIDENTIAL</u>.    A person or entity who produces information, documents, or other materials may designate them as CONFIDENTIAL when they in good faith believe the information, documents, or materials contains trade secrets or nonpublic proprietary confidential technical, scientific, financial, business, health, or medical information.

(b)    <u>ATTORNEYS' EYES ONLY</u>.    A person or entity who produces information, documents, or other materials may designate them as ATTORNEYS' EYES ONLY when they in good faith believe the information, documents, or other materials contain:

(1)    sensitive technical information, including current research,

2

development and manufacturing information and patent prosecution information;

(2)    sensitive business information, including highly sensitive financial or marketing information and the identity of suppliers, distributors and potential or actual customers;

(3)    competitive technical information, including technical analyses or comparisons of competitor's products;

(4)    competitive business information, including non-public financial or marketing analyses or comparisons of competitor's products and strategic product planning; or

(5)    any other CONFIDENTIAL information the disclosure of which to non-qualified people subject to this Stipulated Protective Order the producing party reasonably and in good faith believes would likely cause harm.

(c)    A person or entity may designate deposition testimony or deposition exhibits as CONFIDENTIAL or ATTORNEYS' EYES ONLY when the deposition is taken by requesting the court reporter so designate in the transcript or within 30 days of receipt of the final transcript by the party making the designation.

(d)    A person or entity may also designate information, documents, or other materials as CONFIDENTIAL – NOT TO BE DISCLOSED TO OTHER DEFENDANTS for documents that shall not be disclosed to other defendants.

(e)    A nonparty producing information (including testimony), documents, or

3

other materials, or as required by a subpoena, may designate the information (including testimony), documents, or other materials as CONFIDENTIAL or ATTORNEYS' EYES ONLY consistent with this Stipulated Protective Order.

2.    **Disclosure and Use of Information, Documents, or Other Materials Designated as Confidential or Attorneys' Eyes Only**

(a)    CONFIDENTIAL.  The parties and counsel for the parties must not disclose or permit the disclosure of any information, documents, or other materials designated as CONFIDENTIAL by any other party or nonparty under this Stipulated Protective Order, except that disclosures may be made to the following:

(1)    counsel for a party, who are acting in a legal capacity and are actively engaged in this matter;

(2)    court personnel;

(3)    court-appointed special masters;

(4)    court reporters, recorders, and videographers engaged for depositions;

(5)    court-appointed or jointly-selected mediator or arbitrator;

(6)    technical advisors, including an outside expert, consultant, or investigator, who is not a party to the action, not presently employed by the receiving party or a company affiliated through common ownership, but has been retained to provide technical or other expert services (e.g., expert testimony or assist in litigation or trial preparation), but no disclosure shall be made until a Disclosure

4

Agreement (Attachment A) has been signed;

(7)    deposition and trial witnesses in connection with their testimony in the lawsuit;

(8)    independent providers of document reproduction, electronic discovery, or other litigation services retained or employed specifically in connection with this litigation;

(9)    the insurer of a party to the litigation and their employees to the extent reasonably necessary to assist the party's counsel to afford the insurer an opportunity to investigate and evaluate the claim for purposes of determining coverage and for settlement purposes, but no disclosure shall be made until a Disclosure Agreement (Exhibit A) has been signed;

(10)    a party's representatives, officers, and employees as necessary to assist counsel with this litigation; and

(11)    if those listed in sections 2(a)(1)–(10) engage their partners, associates, employees, staff, or personnel to render reasonably necessary professional services, then these individuals must advised of and subject to the provisions of this Stipulated Protective Order and must hold the information, documents, or other materials in confidence.

(b)    ATTORNEYS' EYES ONLY.  The parties and counsel for the parties may permit the disclosure of any information, documents, or other materials designated as

ATTORNEYS' EYES ONLY by any other party or nonparty under this Stipulated Protective Order to those identified in section 2(a)(1)–(8).

(c)    Information, documents, or other materials designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY under this Stipulated Protective Order must not be used for any purpose whatsoever other than preparing for and conducting the litigation in which the information, documents, or other materials were disclosed (including appeals).  Nothing in this Stipulated Protective Order prohibits a receiving party that is a government agency from following its routine uses and sharing the information, documents, or other materials with other government agencies or self-regulatory organizations as allowed by law.

4.    **Inadvertent Failure to Designate and Inadvertent Disclosure**

(a)    <u>Inadvertent Failure to Designate</u>.  If a party inadvertently discloses information, documents, or other materials containing CONFIDENTIAL or ATTORNEYS' EYES ONLY information without marking or labeling it as such, the information, documents, or other materials do not lose their protected status by production.  The producing party must take all steps reasonably required to assure its continued confidentiality, including: (a) providing written notice to the receiving party within 10 days of the discovery of the inadvertent production; (b) identifying the information, document, or other materials in question; and (c) simultaneously providing appropriately designated substitute copies.  After receiving notice and the production of substitute copies, the receiving party must destroy or return undesignated information, documents, or other materials.

(b)    <u>Inadvertent Disclosure of Information Covered by Attorney-Client Privilege or Work Production Protection in Information, Documents, or Other Materials</u>

6

Designated <u>CONFIDENTIAL or ATTORNEYS' EYES ONLY</u>.   Whether inadvertent or otherwise, the disclosure of any information, documents, or other materials that are subject to an objection based on attorney-client privilege or work-product protection will not be deemed to waive a party's claim to its attorney-client privilege or work-product protection and will not estop that party or the privilege holder from designating the information or documents as attorney-client privileged or subject to work-product protection at a later date.   This Stipulated Protective Order shall be interpreted to provide the maximum protection allowed under Utah R. Evid. 504 and 510.

If a person or entity inadvertently discloses information, documents, or other materials that it believes is subject to a claim of attorney-client privilege or work-product protection, the producing party may give prompt written notice to the receiving party that the information, documents, or other materials is subject to a claim of attorney-client privilege or work-product protection and may request that it be returned to the producing party.   Upon notice, regardless of whether the receiving party agrees with the claim of privilege or work-product protection, the receiving party must: (a) return the information at issue; (b) not use or disclose the materials until the matter is resolved; and (c) take reasonable steps to retrieve the information if the receiving party further disclosed it.

If the receiving party disputes that the information at issue is subject to attorney-client privilege or work-product protection, the receiving party or entity must make reasonable efforts to resolve the dispute without court assistance.   If the dispute cannot be resolved, the receiving party may move the court, under seal, within 45 days of the prompt written communication sent to the opposing party.   The producing party must preserve the information at issue until the claim is resolved.

5.    **Maintenance of Designation**

(a)    Except as provided in section 2, counsel for the parties must keep all information, documents, or other materials designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY that are received under this Stipulated Protective Order secure within their exclusive possession and must place the information, documents, or other materials in a secure area.

(b)    All documents, including attorney notes, abstracts, and copies, that contain another's CONFIDENTIAL or ATTORNEYS' EYES ONLY information must be handled as if they were so designated.

(c)    If any discovery responses, deposition transcripts, memoranda, or any other papers filed with the court include CONFIDENTIAL or ATTORNEYS' EYES ONLY information, they must be so designated and filed consistent with Rules 4-202.04(3) and/or 4-202.09(10) of the Utah Code of Judicial Administration.

(d)    If a filing contains information, documents, or other materials that were designated CONFIDENTIAL or ATTORNEYS' EYES ONLY by a nonparty, the party making the filing must provide prompt written notice of the filing to the nonparty.

(e)    If information, documents, or other materials are reviewed by a receiving party before production, any knowledge learned during the review will be treated by the receiving party as ATTORNEYS' EYES ONLY until the information has been produced, at which time any affixed designation controls. Absent the express permission of the producing party, or as otherwise permitted by an order or rule of the court, no photograph or any other means of duplication, including electronic means, is permitted before the information is produced with the appropriate designation. Any such duplicate will be treated by the receiving party as having the same

8

designation as the original.  There will be no waiver of confidentiality by the inspection of confidential information, documents, or other materials before they are copied and designated.

 (f) If a question is asked at a deposition and a party claims the answer requires the disclosure of CONFIDENTIAL or ATTORNEYS' EYES ONLY information, the following must occur:

  (1) every person present must be advised of the Stipulated Protective Order by the party asserting confidentiality;

  (2) all persons who are not allowed to receive the information under this Stipulated Protective Order, other than the witness, must leave the deposition while the information designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY is disclosed; and

  (3) the witness must answer the question completely.

 (g) If a receiving party is served a subpoena or court order, issued in a separate action, that seeks CONFIDENTIAL or ATTORNEYS' EYES ONLY designated information, documents, or other materials, the receiving party must give prompt written notice to counsel for the producing party to allow a meaningful opportunity to challenge the subpoena or court order before the deadline to comply. No compulsory disclosure to nonparties of CONFIDENTIAL or ATTORNEYS' EYES ONLY designated information, documents, or other materials under this Stipulated Protective Order is deemed a waiver of any claim of confidentiality, except when there is a judicial determination finding otherwise.

 6. **Challenges to a Designation**

 (a) A party may challenge the producing party's designation of

CONFIDENTIAL or ATTORNEYS' EYES ONLY at any time.

(b)     To challenge the designation of ATTORNEYS' EYES ONLY, the receiving party must make reasonable efforts, without court assistance, to resolve the dispute. At a minimum, those efforts must include:

(1)     a prompt written communication sent to the producing party identifying with specificity the information, documents, or other materials at issue and specifying why they believe the designation is improper; and

(2)     a request that the producing party meet and confer, including suggested dates and times.

(c)     If the parties are unable to resolve the dispute regarding the designation of ATTORNEYS' EYES ONLY after engaging in reasonable efforts in section 6(b)(1)–(2), the producing party may file a motion for an order to maintain the designation of ATTORNEYS' EYES ONLY within five business days of the date the parties last met and conferred, or if a party declines to meet and confer at a reasonable time, the date in which the other side declined to meet and confer.  The deadline to file a motion may be extended by agreement between the parties.  The motion must include a certification that states:

(1)     the parties made reasonable efforts to reach agreement on the disputed matters;

(2)     the date, time, and method of the reasonable efforts; and

(3)     the names of all participating parties or attorneys.

(d)     During the course of the parties' meet and confer efforts and pending a

10

resolution of the motion by the Court, any and all existing designations regarding of ATTORNEYS' EYES ONLY shall remain in place.  The producing party bears the burden of proving that the designation is proper.  The producing party's failure to engage in reasonable efforts to resolve the dispute regarding the designation of ATTORNEYS' EYES ONLY or bring an appropriately filed motion may result in the designation as requested by the receiving party absent a showing of good cause for the failure.

(e)     To challenge the designation of CONFIDENTIAL, the receiving party must make reasonable efforts, without court assistance, to resolve the dispute. At a minimum, those efforts must include:

(1)     a prompt written communication sent to the producing party identifying with specificity the information, documents, or other materials at issue and specifying why they believe the designation is improper; and

(2)     a request that the producing party meet and confer, including suggested dates and times.

(f)     If the parties are unable to resolve the dispute regarding the designation of CONFIDENTIAL after engaging in reasonable efforts in section 6(e)(1)–(2), the receiving party may file a motion for an order to challenge the designation of CONFIDENTIAL within five business days of the date the parties last met and conferred, or if a party declines to meet and confer at a reasonable time, the date in which the other side declined to meet and confer.  The deadline to file a motion may be extended by agreement between the parties.  The motion must include a certification that states:

11

(1)    the parties made reasonable efforts to reach agreement on the disputed matters;

(2)    the date, time, and method of the reasonable efforts; and

(3)    the names of all participating parties or attorneys.

(g)    During the course of the parties' meet and confer efforts and pending a resolution of the motion by the Court, any and all existing designations regarding of CONFIDENTIAL shall remain in place.  The producing party bears the burden of proving that the designation is proper.  The producing party's failure to engage in reasonable efforts to resolve the dispute regarding the designation of CONFIDENTIAL or respond to an appropriately filed motion may result in the designation as requested by the receiving party absent a showing of good cause for the failure.

7.    **Conclusion of Litigation**

At the conclusion of the litigation, including through all appeals, a party may request that all information, documents, or other materials that were not filed with the court and not received into evidence and were designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY under this Stipulated Protective Order, but must be returned to the originating party or, if the parties so stipulate, destroyed, unless otherwise provided by law.

Notwithstanding the requirements of this paragraph, a party may retain a complete set of all documents filed with the court, subject to all other restrictions of this Stipulated Protective Order.

The provisions of this paragraph shall not be binding on the United States, any insurance company, or any other party to the extent that such provisions conflict with applicable Federal or

State law.  The Department of Justice, any insurance company, or any other party must notify the producing party in writing of any such conflict it identifies in connection with a particular matter so that such matter can be resolved either by the parties or by the court.

      8.     **Continuing Jurisdiction of Court to Enforce the Stipulated Protective Order**

After the termination of this action, the Court will continue to have jurisdiction to enforce this Order.

      9.     **Confidentiality of Party's Own Documents**

Nothing in this Stipulated Protective Order shall affect the right of the designating party to disclose to its officers, directors, employees, attorneys, consultants or experts, or to any other person, its own information.  Such disclosure shall not waive the protections of this Stipulated Protective Order and shall not entitle other parties or their attorneys to disclose such information in violation of it, unless by such disclosure of the designating party the information becomes public knowledge.  Similarly, the Stipulated Protective Order shall not preclude a party from showing its own information, including its own information that is filed under seal by a party, to its officers, directors, employees, attorneys, consultants or experts, or to any other person.

**Approved as to Form:**


PARSONS BEHLE & LATIMER

*Erik A. Christiansen*

Erik Christiansen
*Attorneys for Plaintiff*


GIBSON, DUNN & CRUTCHER LLP

*Michael Farhang*

Michael Farhang
*Attorneys for Plaintiff*


ARMSTRONG TEASDALE LLP

*Brennan Moss*
Brennan Moss
*Attorneys for Defendants Brad Bonham, MB & BB Holdings, LLC, and Matt Davis*


PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLC

*Geoffrey Chepiga*
Geoffrey Chepiga
*Attorneys for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, Walker Edison Holding Co., LLC, Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P. JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.*


SPERLING & SLATER, LLC

*Greg Shinall*
Greg Shinall
*Attorneys for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, Walker Edison Holding Co., LLC, Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P. JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.*

PARR BROWN GEE & LOVELESS

*David Reymann*
David Reymann
*Attorneys for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, Walker Edison Holding Co., LLC, Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P. JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.*

(Signed with Defendants' permission given via email on February 28, 2024)


**\*\* Pursuant to URCP 10(e), the Court's signature appears**

**at the top of the first page\*\***

**ATTACHMENT A**

**Disclosure Agreement**

The undersigned hereby acknowledges that they have read the court's Stipulated Protective Order attached hereto and dated _____ in in the matter of *Walker Edison Furniture Co., LLC v. Brad Bonham, et al.*, Civil Action No. 230902160, understand the terms and agree to be bound by its terms. The undersigned agrees to be bound by the Stipulated Protective Order in every aspect and to be subject to the jurisdiction of the Third Judicial District, County of Salt Lake, State of Utah Court for purposes of its enforcement. The undersigned understands that the terms of the Stipulated Protective Order obligate them to use information, documents, or other materials designated as CONFIDENTIAL in accordance with the Stipulated Protective Order solely for the purposes of the above-captioned action, and not to disclose information, documents, or other materials designated as CONFIDENTIAL to any other person, firm, or concern, except in accordance with the provisions of the Stipulated Protective Order.

The undersigned acknowledges that violation of the Stipulated Protective Order may result in penalties for contempt of court.

Name: _____

Job Title: _____

Employer: _____

Business Address: _____

_____

Date: _____    _____
Signature

16

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **CERTIFICATE OF SERVICE OF PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.**<br><br>Civil No. 230902160<br><br>Judge: Hon. Robert Faust<br><br>Discovery Tier 3 |

This is to certify that on the 7th day of March, 2024, a true and correct copy of

**PLAINTIFF WALKER EDISON FURNITURE COMPANY, LLC'S FIRST SET OF**

REQUESTS FOR PRODUCTION TO DEFENDANT PROSPECT HILL GROWTH

FUND II CO-INVEST, L.P. and this **CERTIFICATE OF SERVICE** was served via email to

the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano,
Kyle Casella, David Fiorentino, Kyle Murphy,
and Walker Edison Holding Co., LLC; and, *for
purposes of the Stipulated Motion to Stay
Responsive Pleading Deadline, for defendants*:
Prospect Hill Growth Fund II, L.P., Prospect
Hill Growth Fund II Co-Invest, L.P., Prospect
Hill Growth Partners, L.P., JWC-WE Holdco,
LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano,
Kyle Casella, David Fiorentino, Kyle Murphy,
and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II,
L.P., Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.,
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

**ARMSTRONG TEASDALE LLP**
Brennan H. Moss
222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB
Holdings, LLC; Matt Davis

DATED this 7th day of March, 2024**.**

*/s/ Alan S. Mouritsen*

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **CERTIFICATE OF SERVICE OF PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT PROSPECT HILL GROWTH FUND II, L.P.**<br><br>Civil No. 230902160<br><br>Judge: Hon. Robert Faust<br><br>Discovery Tier 3 |

This is to certify that on the 7th day of March, 2024, a true and correct copy of

**PLAINTIFF WALKER EDISON FURNITURE COMPANY, LLC'S FIRST SET OF**

**REQUESTS FOR PRODUCTION TO DEFENDANT PROSPECT HILL GROWTH**

**FUND II, L.P.** and this **CERTIFICATE OF SERVICE** was served via email to the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**
Brennan H. Moss
222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

DATED this 7th day of March, 2024**.**

/s/ Alan S. Mouritsen

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **CERTIFICATE OF SERVICE OF PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT ADAM SUTTIN**<br><br>Civil No. 230902160<br><br><br>Judge: Hon. Robert Faust<br><br>Discovery Tier 3 |

This is to certify that on the 7th day of March, 2024, a true and correct copy of

**PLAINTIFF WALKER EDISON FURNITURE COMPANY, LLC'S FIRST SET OF**

**REQUESTS FOR PRODUCTION TO DEFENDANT ADAM SUTTIN** and this

**CERTIFICATE OF SERVICE** was served via email to the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**
Brennan H. Moss
222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

DATED this 7th day of March, 2024**.**

/s/ Alan S. Mouritsen

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **CERTIFICATE OF SERVICE OF PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT BRAD BONHAM** <br><br> Civil No. 230902160 <br><br><br> Judge: Hon. Robert Faust <br><br> Discovery Tier 3 |

This is to certify that on the 7th day of March, 2024, a true and correct copy of

**PLAINTIFF WALKER EDISON FURNITURE COMPANY, LLC'S FIRST SET OF**

**REQUESTS FOR PRODUCTION TO DEFENDANT BRAD BONHAM** and this

**CERTIFICATE OF SERVICE** was served via email to the following:

| | |
|---|---|
| **PARR BROWN GEE & LOVELESS, P.C.**<br>David C. Reymann<br>Jonathan O. Hafen<br>101 South 200 East, Suite 700<br>Salt Lake City, UT  84111<br>dreymann@parrbrown.com<br>jhafen@parrbrown.com<br><br>*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P. | **SPERLING & SLATER, LLC**<br>Greg Shinall<br>55 West Monroe Street, 32nd Floor<br>Chicago, IL 60603<br>shinall@sperling-law.com<br><br><br>*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC |
| **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>Geoffrey Chepiga<br>1285 Avenue of the Americas<br>New York, NY 10019<br>gchepiga@paulweiss.com<br><br>*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P. | **ARMSTRONG TEASDALE LLP**<br>Brennan H. Moss<br>222 South Main St.<br>Suite 1830<br>Salt Lake City, UT 84101<br>bmoss@atllp.com<br><br>*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis |

DATED this 7th day of March, 2024**.**

/s/ Alan S. Mouritsen
_____

4858-5566-7116.v1

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **CERTIFICATE OF SERVICE OF PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT DAVID FIORENTINO**<br><br>Civil No. 230902160<br><br>Judge: Hon. Robert Faust<br><br>Discovery Tier 3 |

This is to certify that on the 7th day of March, 2024, a true and correct copy of

**PLAINTIFF WALKER EDISON FURNITURE COMPANY, LLC'S FIRST SET OF**

4874-5035-4604.v1

**REQUESTS FOR PRODUCTION TO DEFENDANT DAVID FIORENTINO** and this

**CERTIFICATE OF SERVICE** was served via email to the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**
Brennan H. Moss
222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

DATED this 7th day of March, 2024.

/s/ Alan S. Mouritsen

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **CERTIFICATE OF SERVICE OF PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT JWC-WE HOLDCO, LLC** <br><br> Civil No. 230902160 <br><br><br> Judge: Hon. Robert Faust <br><br> Discovery Tier 3 |

This is to certify that on the 7th day of March, 2024, a true and correct copy of

**PLAINTIFF WALKER EDISON FURNITURE COMPANY, LLC'S FIRST SET OF**

**REQUESTS FOR PRODUCTION TO DEFENDANT JWC-WE HOLDCO, LLC** and this

**CERTIFICATE OF SERVICE** was served via email to the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**
Brennan H. Moss
222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

DATED this 7th day of March, 2024**.**

/s/ Alan S. Mouritsen

2

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture Company, LLC*

Michael Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

---

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **CERTIFICATE OF SERVICE OF PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT KEN MURPHY**<br><br>Civil No. 230902160<br><br>Judge: Hon. Robert Faust<br><br>Discovery Tier 3 |

This is to certify that on the 7th day of March, 2024, a true and correct copy of

**PLAINTIFF WALKER EDISON FURNITURE COMPANY, LLC'S FIRST SET OF**

**REQUESTS FOR PRODUCTION TO DEFENDANT KEN MURPHY** and this

**CERTIFICATE OF SERVICE** was served via email to the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**
Brennan H. Moss
222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

DATED this 7th day of March, 2024**.**

/s/ *Alan S. Mouritsen*

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture Company, LLC*

Michael Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

---

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **CERTIFICATE OF SERVICE OF PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT KYLE CASELLA**<br><br>Civil No. 230902160<br><br><br>Judge: Hon. Robert Faust<br><br>Discovery Tier 3 |

This is to certify that on the 7th day of March, 2024, a true and correct copy of

**PLAINTIFF WALKER EDISON FURNITURE COMPANY, LLC'S FIRST SET OF**

**REQUESTS FOR PRODUCTION TO DEFENDANT KYLE CASELLA** and this

**CERTIFICATE OF SERVICE** was served via email to the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**
Brennan H. Moss
222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

DATED this 7th day of March, 2024**.**

/s/ Alan S. Mouritsen

2

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **CERTIFICATE OF SERVICE OF PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT MATT DAVIS**<br><br>Civil No. 230902160<br><br><br>Judge: Hon. Robert Faust<br><br>Discovery Tier 3 |

This is to certify that on the 7th day of March, 2024, a true and correct copy of

**PLAINTIFF WALKER EDISON FURNITURE COMPANY, LLC'S FIRST SET OF**

**REQUESTS FOR PRODUCTION TO DEFENDANT MATT DAVIS** and this

**CERTIFICATE OF SERVICE** was served via email to the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**
Brennan H. Moss
222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

DATED this 7th day of March, 2024**.**

/s/ Alan S. Mouritsen

2

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture Company, LLC*

Michael Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **CERTIFICATE OF SERVICE OF PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT MB & BB HOLDINGS, LLC**<br><br>Civil No. 230902160<br><br><br>Judge: Hon. Robert Faust<br><br>Discovery Tier 3 |

This is to certify that on the 7th day of March, 2024, a true and correct copy of

**PLAINTIFF WALKER EDISON FURNITURE COMPANY, LLC'S FIRST SET OF**

4895-8663-1596.v1

**REQUESTS FOR PRODUCTION TO DEFENDANT MB & BB HOLDINGS, LLC** and this **CERTIFICATE OF SERVICE** was served via email to the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**
Brennan H. Moss
222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

DATED this 7th day of March, 2024**.**

/s/ Alan S. Mouritsen

4895-8663-1596.v1

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **CERTIFICATE OF SERVICE OF PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT PHIL DAMIANO** <br><br> Civil No. 230902160 <br><br><br> Judge: Hon. Robert Faust <br><br> Discovery Tier 3 |

This is to certify that on the 7th day of March, 2024, a true and correct copy of

**PLAINTIFF WALKER EDISON FURNITURE COMPANY, LLC'S FIRST SET OF**

4872-3723-1532.v1

**REQUESTS FOR PRODUCTION TO DEFENDANT PHIL DAMIANO** and this

**CERTIFICATE OF SERVICE** was served via email to the following:

| | |
|---|---|
| **PARR BROWN GEE & LOVELESS, P.C.**<br>David C. Reymann<br>Jonathan O. Hafen<br>101 South 200 East, Suite 700<br>Salt Lake City, UT  84111<br>dreymann@parrbrown.com<br>jhafen@parrbrown.com<br><br>*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P. | **SPERLING & SLATER, LLC**<br>Greg Shinall<br>55 West Monroe Street, 32nd Floor<br>Chicago, IL 60603<br>shinall@sperling-law.com<br><br><br><br>*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC |
| **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>Geoffrey Chepiga<br>1285 Avenue of the Americas<br>New York, NY 10019<br>gchepiga@paulweiss.com<br><br>*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P. | **ARMSTRONG TEASDALE LLP**<br>Brennan H. Moss<br>222 South Main St.<br>Suite 1830<br>Salt Lake City, UT 84101<br>bmoss@atllp.com<br><br>*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis |

DATED this 7th day of March, 2024**.**

/s/ Alan S. Mouritsen

4872-3723-1532.v1

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **CERTIFICATE OF SERVICE OF PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT PROSPECT HILL GROWTH PARTNERS, L.P.** <br><br> Civil No. 230902160 <br><br><br> Judge: Hon. Robert Faust <br><br> Discovery Tier 3 |

This is to certify that on the 7th day of March, 2024, a true and correct copy of

**PLAINTIFF WALKER EDISON FURNITURE COMPANY, LLC'S FIRST SET OF**

REQUESTS FOR PRODUCTION TO DEFENDANT PROSPECT HILL GROWTH

PARTNERS, L.P. and this CERTIFICATE OF SERVICE was served via email to the

following:

| | |
|---|---|
| **PARR BROWN GEE & LOVELESS, P.C.**<br>David C. Reymann<br>Jonathan O. Hafen<br>101 South 200 East, Suite 700<br>Salt Lake City, UT  84111<br>dreymann@parrbrown.com<br>jhafen@parrbrown.com<br><br>*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P. | **SPERLING & SLATER, LLC**<br>Greg Shinall<br>55 West Monroe Street, 32nd Floor<br>Chicago, IL 60603<br>shinall@sperling-law.com<br><br><br>*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC |
| **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>Geoffrey Chepiga<br>1285 Avenue of the Americas<br>New York, NY 10019<br>gchepiga@paulweiss.com<br><br>*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P. | **ARMSTRONG TEASDALE LLP**<br>Brennan H. Moss<br>222 South Main St.<br>Suite 1830<br>Salt Lake City, UT 84101<br>bmoss@atllp.com<br><br>*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis |

DATED this 7th day of March, 2024.

/s/ Alan S. Mouritsen
_____

2

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **CERTIFICATE OF SERVICE OF PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT WALKER EDISON HOLDING COMPANY, LLC**<br><br>Civil No. 230902160<br><br><br>Judge: Hon. Robert Faust<br><br>Discovery Tier 3 |

This is to certify that on the 7th day of March, 2024, a true and correct copy of

**PLAINTIFF WALKER EDISON FURNITURE COMPANY, LLC'S FIRST SET OF**

REQUESTS FOR PRODUCTION TO DEFENDANT WALKER EDISON HOLDING

COMPANY, LLC and this CERTIFICATE OF SERVICE was served via email to the

following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**
Brennan H. Moss
222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

DATED this 7th day of March, 2024.

*/s/ Alan S. Mouritsen*

4887-9390-8140.v1

Brennan H. Moss (10267)
Michael A. Gehret (11890)
Charles D. Morris (18058)
**ARMSTRONG TEASDALE LLP**
222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
Telephone: (801) 401-1600
Email: bmoss@atllp.com
      mgehret@atllp.com
      cdmorris@atllp.com

*For defendants:* Brad Bonham, MB & BB
Holdings, LLC, and Matt Davis

David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
(801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

*For defendants:* Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino,
Kyle Murphy, Walker Edison Holding Co.,
LLC, Prospect Hill Growth Fund II, L.P.,
Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

---

## IN THE THIRD JUDICIAL DISTRICT COURT
## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br>      Plaintiff, <br><br> v. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br>      Defendants. | **CERTIFICATE OF SERVICE OF JOINT RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** <br><br> Case No: 230902160 <br><br> Judge Robert Faust |

I HEREBY CERTIFY that on April 11, 2024, I caused a true and correct copy of **JOINT**

**RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR**

**PRODUCTION OF DOCUMENTS** to be served by email on the following:

Erik Christiansen
Alan Mouritsen
Brian M. Rothschild
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

Michael Farhang
Michael S. Neumeister
Jeffrey C. Krause
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
ajantzi@gibsondunn.com

I FURTHER CERTIFY that on April 11, 2024, I caused a true and correct copy of this

**CERTIFICATE OF SERVICE** to be electronically filed with the Court, which sent notice to

the above-referenced counsel of record for Plaintiff.

DATED: April 11, 2024.

PARR BROWN GEE & LOVELESS

By: _/s/ Kade N. Olsen_
        Kade N. Olsen

Brennan H. Moss (10267)
Michael A. Gehret (11890)
Charles D. Morris (18058)
**ARMSTRONG TEASDALE LLP**
222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
Telephone: (801) 401-1600
Email: bmoss@atllp.com
        mgehret@atllp.com
        cdmorris@atllp.com

*For defendants:* Brad Bonham, MB & BB
Holdings, LLC, and Matt Davis

David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
(801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

*For defendants:* Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino,
Kyle Murphy, Walker Edison Holding Co.,
LLC, Prospect Hill Growth Fund II, L.P.,
Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

---

## IN THE THIRD JUDICIAL DISTRICT COURT
## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>      Defendants. | **NOTICE OF APPEARANCE OF COUNSEL (KADE N. OLSEN)**<br><br>Case No: 230902160<br><br>Judge Robert Faust |

Kade N. Olsen of the firm PARR BROWN GEE & LOVELESS, P.C. hereby enters his appearance as counsel for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, Walker Edison Holding Co., LLC,  Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P., in this matter and requests inclusion on all certificates of service.

DATED this 11th day of April 2024.

PARR BROWN GEE & LOVELESS, P.C.

/s/ Kade N. Olsen
Kade N. Olsen

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 11th day of April 2024, I electronically filed the

foregoing **NOTICE OF APPEARANCE OF COUNSEL (KADE N. OLSEN)**, which served

all counsel of record.

*/s/ Kade N. Olsen*

Erik A. Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **NOTICE OF INTENT TO SERVE SUBPOENA (FTI CONSULTING, INC.)** <br><br> Civil No. 230902160 <br><br><br> Judge: Hon. Robert Faust <br><br> Discovery Tier 3 |

PLEASE TAKE NOTICE that Plaintiff, through its counsel, has issued and intends to serve the attached subpoena upon FTI Consulting, Inc.

DATED April 18, 2024.

PARSONS BEHLE & LATIMER

/s/ Erik A. Christiansen
Erik A. Christiansen

*Attorneys for Walker Edison Furniture Company, LLC*

4864-3399-7495.v1

## CERTIFICATE OF SERVICE

This is to certify that on the 18th day of April, 2024, I caused a true and correct copy of this **NOTICE OF INTENT TO SERVE SUBPOENA (FTI CONSULTING, INC.)** to be electronically filed using GreenFiling, which serves all counsel of record by email.

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC; and, *for purposes of the Stipulated Motion to Stay Responsive Pleading Deadline, for defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**
Brennan H. Moss
222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

DATED this 18th day of April, 2024**.**

/s/ Madison Tremblay

3

Exhibit 1

Erik A. Christiansen
_____
Name

201 South Main Street, Suite 1800
_____
Address

Salt Lake City, Utah 84111
_____
City, State, Zip

801-532-1234
_____
Phone

EChristiansen@parsonsbehle.com
_____
Email

I am  [ ]  Plaintiff/Petitioner          [ ]  Defendant/Respondent
      [X]  Plaintiff/Petitioner's Attorney  [ ]  Defendant/Respondent's Attorney  (Utah Bar #:<u>7372</u>)
      [ ]  Plaintiff/Petitioner's Licensed Paralegal Practitioner
      [ ]  Defendant/Respondent's Licensed Paralegal Practitioner

In the Third Judicial District Court for the District of Utah, Salt Lake County

Court Address    <u>450 S State Street, Salt Lake City, UT 84111</u>

| | |
|---|---|
| Walker Edison Furniture Company, LLC<br>Plaintiff/Petitioner<br><br>v.<br><br>Brad Bonham, et al.<br>Defendant/Respondent | **Subpoena to FTI Consulting, Inc.**<br>(Utah Rule of Civil Procedure 30 and 45)<br><br>Civil No. 230902160<br><br>Judge Robert Faust |

The following records and forms must be attached to this Subpoena and served with it.
- Notice to Persons Served with a Subpoena.
- Objection to Subpoena.
- Declaration of Compliance with Subpoena.
- Witness fee.
- Application for Subpoena under the Utah Uniform Interstate Depositions and Discovery Act with attachments (for cases from states in which the Uniform Act applies).
- Notice of Deposition and Request for Subpoena in Case Pending Out of State (for cases from states in which the Uniform Act does not apply).

Serve all of these documents by one of the methods described in Utah Rule of Civil Procedure 4(d).

To:    FTI Consulting, Inc., C/o Registered Agent, CT Corporation System
_____
Name and Address

 1108 E. South Union Ave., Midvale, Utah 84047
_____
Name and Address

1.    [ ]    You must appear at:

Address (Dirección):

_____

Date (Fecha): _____    Time (Hora): _____ [ ] a.m. [ ] p.m.

Room (Sala): _____

To:    (Choose all that apply.)

[ ] testify at a trial or hearing.

**Interpretation.** If you do not speak or understand English, the court will provide an interpreter. Contact court staff immediately to ask for an interpreter.

**Interpretación.** Si usted no habla ni entiende el Inglés el tribunal le proveeré un intérprete. Contacte a un empleado del tribunal inmediatamente para pedir un intérprete.

**ADA Accommodation.** If you need an accommodation, including an ASL interpreter, contact court staff immediately to ask for an accommodation.

**Adaptación o Arreglo en Caso de Discapacidad.** Si usted requiere una adaptación o arreglo, que incluye un intérprete de la lengua de signos americana, contacte a un empleado del tribunal inmediatamente para pedir una adaptación.

[ ] testify at a deposition.

[ ] permit inspection of the following premises:

_____ (address)

[ ] produce the following documents or tangible things:

_____

_____

2.    [**X**]    You must copy the documents or electronically stored information listed below. You must email, mail, or deliver the copies to the person at the address at the top of the first page of this Subpoena by **May 7, 2024**.
_____
  See attached Schedule A.
_____

3.    The Notice to Persons Served with a Subpoena must be served with this Subpoena. The notice explains your rights and obligations.

4.    [ ]    This subpoena is for a deposition and is being served on a corporation, partnership, association or governmental agency. (Utah Rule of Civil Procedure 30). You must designate one or more persons who will be questioned on your behalf .

The questions will be about (describe):

_____

_____

_____

5.    [ ]    This Subpoena includes the terms of the attached subpoena issued by

_____ (state).

If you are representing yourself or you checked paragraph 5, only the court clerk may sign this subpoena.

April 18, 2024                                              Signature ►
Date

                                        Printed name of:
                                        Court Clerk [ ]    _____

                                        Attorney for
                                        Plaintiff/Petitioner [x]
                                        Defendant/Respondent [ ]    */s/ Erik A. Christiansen* _____

                        Licensed Paralegal Practitioner for
                                        Plaintiff/Petitioner [ ]
                                        Defendant/Respondent [ ]    _____

# Notice to Persons Served with a Subpoena

A subpoena may require you to copy and mail documents, produce documents or tangible things, appear at a hearing, trial, or deposition, or allow inspection of a location.

A subpoena can be issued by the court clerk or by a licensed attorney. You must do what it says or file an objection. If you don't comply, you can be fined or go to jail.

You can find more information about subpoenas and forms you may need at: www.utcourts.gov/resources/forms/subpoena/

1.      If the subpoena requires you to **appear to at a trial, hearing, deposition, or for inspection of a place,** you must appear at the date, time, and place designated in the subpoena. You will be required to either answer questions under oath or allow inspection of a place.

For a deposition or inspection of premises, you can be commanded to appear in only the following counties:

- If you are a resident of Utah:

    o   where you reside;

    o   where you are employed;

    o   where you transact business in person; or

    o   where the court orders.

- If you are not a resident of Utah:

    o   where you are served with the subpoena; or

    o   where the court orders.

2.      If the subpoena requires you to **copy documents or electronically stored information,** you must:

- organize the copies as you keep them in the ordinary course of business or organize and label them to correspond with the categories in the subpoena; and

- mail or deliver the copies and the Declaration of Compliance with the Subpoena to the attorney or party requesting the documents. You may need to modify the Declaration to fit your circumstances.

The party who requested the documents must pay the reasonable cost of copying the documents.

3.      If the subpoena requires you to **produce documents or tangible things,** you must appear in person with the documents or tangible things so that they may be tested, copied, sampled, or inspected. You must:

- produce the documents or tangible things as you keep them in the ordinary course of business or organize and label them to correspond with the categories in the subpoena; and

- mail or deliver the Declaration of Compliance with the Subpoena to the requesting attorney or party.

The subpoena may require you to produce the documents at the trial, hearing, or deposition or to mail them to the issuing party or attorney.

The subpoena must be served on you at least 14 days before the date designated for compliance.

The party issuing the subpoena must pay the reasonable cost of copying and producing the documents or tangible things.

4.      **Witness fee.** If the subpoena requires you to appear, a one-day witness fee must be served with the subpoena. A one-day witness fee is $18.50 plus mileage. The witness fee for each subsequent day is $49.00 plus mileage. Mileage is $1.00 for each 4 miles you have to travel over 50 miles (one direction).

A subpoena issued on behalf of the United States or Utah does not have to include a witness fee and mileage.

5.      **Objection to a subpoena.** You may object to all or part of the subpoena if :

- it does not give you a reasonable amount of time to comply.

- it creates an undue burden for you.

- it requires you to disclose privileged or other protected matter and no exception or waiver applies.

- it requires you to disclose a trade secret or other confidential research, development, or commercial information.

- it requires you to disclose an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study that was not made at the request of a party.

- you are a Utah resident and it requires you to appear at a deposition or to produce documents, electronic records or tangible things or to permit inspection of premises in a county:

- in which you do not reside,

- are not employed, or

- do not transact business in person,

unless the judge orders otherwise.

- you are not a Utah resident and it requires you to appear at a deposition or to produce documents, electronic records or tangible things or to permit inspection of premises in a county other than the county in which you were served, unless the judge orders otherwise.

You must comply with those parts of the subpoena to which you do not object.

6. **How to object.** To object to the subpoena, complete and serve the Objection to Subpoena on the party or attorney issuing the subpoena before the compliance date.

Once you have filed the objection, you do not have to comply with the subpoena unless ordered to do so by the court.

7. **Motion to compel.** If you serve an Objection to Subpoena on the party or attorney issuing the subpoena, they may file a motion asking the court to make you comply with the subpoena. They may also ask for a hearing on the motion.

If you do not agree with the motion, you can file a Memorandum Opposing the Motion. See the court's Motions web page for information and forms: www.utcourts.gov/howto/filing/motions/.

It is possible to ask the judge to order conditions for complying with the subpoena. Consider talking to an attorney to go over your options. See the Finding Legal Help web page for information about free and low cost ways to get legal help: www.utcourts.gov/howto/legalassist/.

8. **Organizations.** If the subpoena orders  a corporation, partnership, association or governmental agency that is not a party to the suit to appear at a deposition, they must designate one or more persons to answer questions on their behalf. (Utah Rule of Civil Procedure 30).

_____
Name

_____
Address

_____
City, State, Zip

_____
Phone

_____
Email

In the  [x] District  [ ] Justice  Court of Utah

_____Third___ Judicial District _____Salt Lake__ County

Court Address _____

| | |
|---|---|
| Walker Edison Furniture Company, LLC | **Objection to Subpoena** (FTI Consulting, Inc.)<br>(Utah Rule of Civil Procedure 45(e)(3)-(4)) |
| Plaintiff/Petitioner | _Civil No. 230902160_____<br>Case Number |
| v. | |
| Brad Bonham, et al._____ | _Judge Robert Faust_____<br>Judge |
| Defendant/Respondent | _____<br>Commissioner (domestic cases) |

I have been served with a subpoena in this case, and I object because the subpoena:

1.    [ ]    Does not give me a reasonable amount of time to comply (Explain).

_____

_____

_____

2.    [ ]    Creates an undue burden for me (Explain. Attach additional pages if needed).

_____

_____

_____

3.    [ ]    Requires me to disclose privileged or other protected matter and no exception or waiver applies. (Describe the document or thing. Be specific.)

_____

_____

_____

4.    [ ]    Requires me to disclose a trade secret or other confidential research, development, or commercial information. (Describe the document or thing. Be specific.)

_____

_____

_____

5.    [ ]    Requires me to disclose an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study that was not made at the request of a party.

_____

_____

_____

6.    [ ]    Requires me, a resident of Utah, to:

      [ ]   appear at a deposition;
      [ ]   produce documents, electronic records or tangible things; or
      [ ]   permit inspection of a premises

    in a county in which I do not reside, am not employed, and do not transact business in person.

7.    [ ]    Requires me, a non-resident of Utah, to:

      [ ]   appear at a deposition;
      [ ]   produce documents, electronic records or tangible things; or
      [ ]   permit inspection of a premises

    in a county other than the county in which I was served.

8.    [ ]    Other.

_____

_____

**Person subject to subpoena**

I declare under criminal penalty under the law of Utah that everything stated in this document is true.

Signed at _____ (city, and state or country).

_____          Signature ▶ _____
Date
                                        Printed Name _____


**Attorney or Licensed Paralegal Practitioner of record** (if applicable)

_____          Signature ▶ _____
Date
                                        Printed Name _____

## Certificate of Service

I certify that I filed with the court and am serving a copy of this Objection to Subpoena on the following people.

| Person's Name | Service Method | Service Address | Service Date |
|---|---|---|---|
| | [ ] Mail<br>[ ] Hand Delivery<br>[ ] E-filed<br>[ ] Email<br>[ ] Left at business (With person in charge or in receptacle for deliveries.)<br>[ ] Left at home (With person of suitable age and discretion residing there.) | | |
| | [ ] Mail<br>[ ] Hand Delivery<br>[ ] E-filed<br>[ ] Email<br>[ ] Left at business (With person in charge or in receptacle for deliveries.)<br>[ ] Left at home (With person of suitable age and discretion residing there.) | | |
| | [ ] Mail<br>[ ] Hand Delivery<br>[ ] E-filed<br>[ ] Email<br>[ ] Left at business (With person in charge or in receptacle for deliveries.)<br>[ ] Left at home (With person of suitable age and discretion residing there.) | | |

_____        Signature ▶ _____
Date

Printed Name _____

_____
Name

_____
Address

_____
City, State, Zip

_____
Phone

_____
Email

_____

In the   [ ] District   [ ] Justice   Court of Utah

_____ Judicial District _____ County

Court Address _____

_____

| | |
|---|---|
| Walker Edison Furniture Company, LLC<br>Plaintiff/Petitioner<br><br>v.<br><br>Brad Bonham, et al<br>Defendant/Respondent | **Declaration of Compliance with Subpoena (FTI Consulting, Inc.)**<br>(Utah Rule of Civil Procedure 45(f))<br><br>Civil No. 230902160<br><br>Judge Robert Faust |

1.    I am the recipient of the subpoena. I have knowledge of the facts in this declaration.

2.    The documents or tangible things copied or produced are a full and complete response to the subpoena.

3.    The documents or tangible things are:

    [ ] the originals.
    [ ] true copies of the originals.

4.    The reasonable cost of copying or producing the documents or tangible things is

    $_____. Here is how I calculated the cost:

    _____

    _____

_____

_____

**Custodian of the records**

I declare under criminal penalty under the law of Utah that everything stated in this document is true.

Signed at _____ (city, and state or country).

_____    Signature ▶ _____
Date

Printed Name _____

**Attorney or Licensed Paralegal Practitioner of record** (if applicable)

_____    Signature ▶ _____
Date

Printed Name _____

## Certificate of Service

I certify that I filed with the court and am serving a copy of this Declaration of Compliance with Subpoena on the following people.

| Person's Name | Service Method | Service Address | Service Date |
|---|---|---|---|
| | [ ] Mail<br>[ ] Hand Delivery<br>[ ] E-filed<br>[ ] Email<br>[ ] Left at business (With person in charge or in receptacle for deliveries.)<br>[ ] Left at home (With person of suitable age and discretion residing there.) | | |
| | [ ] Mail<br>[ ] Hand Delivery<br>[ ] E-filed<br>[ ] Email<br>[ ] Left at business (With person in charge or in receptacle for deliveries.)<br>[ ] Left at home (With person of suitable age and discretion residing there.) | | |
| | [ ] Mail<br>[ ] Hand Delivery<br>[ ] E-filed<br>[ ] Email<br>[ ] Left at business (With person in charge or in receptacle for deliveries.)<br>[ ] Left at home (With person of suitable age and discretion residing there.) | | |

_____
Date

Signature ▶ _____

Printed Name _____

## SCHEDULE A

1.      "YOU" or "YOUR" means FTI Capital Advisors, LLC and all of YOUR predecessor or successor constituent corporate entities, members, assigns, parents (INCLUDING FTI Consulting, Inc.), subsidiaries, affiliated entities, agents, officers, directors, employees, representatives, consultants, investigators, or other persons acting or purporting to act on YOUR behalf.

2.      "DEFENDANTS" means Brad Bonham, MB & BB Holdings, LLC, Matt Davis, Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, LP, JWC-WE Holdco, LLC, JWC-WE Holdings, LP, Prospect Hill Growth Fund II, LP, Prospect Hill Growth Fund II Co-Invest LP, Phil Damiano, Ken Murphy, Adam Suttin, Kyle Casella, and David Fiorentino.

3.      "COMMUNICATION(S)" means every exchange of information of any nature within the scope of Rule 34(a) of the Utah Rules of Civil Procedure, whether oral or written, from one person or entity to another, and any evidence of such exchange, INCLUDING but not limited to any correspondence, memorandum, messages, postings, notes or logs of meetings, diaries, daily calendars, or other records of exchanges between people or entities.

4.      "DOCUMENT" or "DOCUMENTS" shall mean all documents, writings, electronically stored information, or things within the scope of Rule 34(a) of the Utah Rules of Civil Procedure, INCLUDING the following items: all manners of correspondence; COMMUNICATIONS; memoranda; summaries; statements; records; reports; books; diagrams; photographs; specifications; sketches; contracts; forecasts; plans; appraisals; orders; bills; invoices; checks; statistical statements; books of account; studies; graphs; charts; accounts; indexes; data sheets; data processing cards; analytical records; brochures; lists; periodicals; pamphlets; circulars; trade letters; newspaper clippings; press releases; projections; copies; marginal notations; drawings; tape recordings; calendars; diaries; telegrams; emails; text messages; notes; working papers; drafts; reports and/or opinions of consultants; records, reports, summaries and/or minutes of meetings and conferences; records, reports, and/or  summaries of interviews; records, reports, and/or summaries of negotiations; records, reports, and/or  summaries

of telephone conversations; and records, reports, and/or summaries of personal conversations. "DOCUMENT" includes every copy of a DOCUMENT that is not identical to the original, whether because of notes made on or attached to such copy, or otherwise; and all other handwritten, typed, printed, recorded or graphic matter or sound reproductions, however produced or reproduced, and whether copies or originals, as well as any electronically stored documents, recordings, or files (INCLUDING those stored on laptop computers), such as, for example, emails, and other documents stored on audiotape, magnetic tape, computer disks, computer hard-drives, CD-ROMS, videotapes, or optical forms of storage.

5.      "FTI OPINION" means the opinion and financial analysis YOU prepared for and/or at the request of the board of managers for Walker Edison Intermediate, LLC, which was dated March 31, 2021 (a copy of which is attached hereto as Exhibit A).

6.      "INCLUDE" or "INCLUDING" means "include, but not limited to," or "including, but not limited to."

7.      "PROSPECT HILL" means Prospect Hill Growth Partners, L.P. and its agents, predecessors, partners, associates, employees, representatives, or other persons acting or purporting to act on its behalf, and all of its present or former subsidiaries, divisions, parents, members, affiliates, or funds, INCLUDING JWC-WE Holdco, LLC, JWC-WE Holdings, LP, Prospect Hill Growth Fund II, LP, and Prospect Hill Growth Fund II Co-Invest LP.

8.      "WALKER EDISON" means Walker Edison Furniture Company, LLC, Walker Edison Intermediate, LLC, Walker Edison Holding Company, LLC, and their agents, partners, associates, employees, representatives, or other persons acting or purporting to act on their behalf, and all of their present or former subsidiaries, divisions, parents, members, or affiliates.

## INSTRUCTIONS

1.      These requests should be construed as broadly as possible with all doubts resolved in favor of production. The words "all," "any," "each," "and," and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive. Except as specifically provided in these requests, words imparting the singular shall include the

plural and vice versa, where appropriate. Except as specifically provided in these requests, words imparting the present tense shall also include the past and future tense and vice versa, where appropriate. The words "discussing," "relating to," "referring to," "regarding," "concerning," or any derivative thereof, in addition to their customary and usual meanings, shall mean concerning, containing, identifying, monitoring, constituting, reflecting, discussing, pertaining to, assessing, recording, supporting, negating, refuting, touching upon, and/or summarizing.

2.    Any terms left undefined in the requests shall have their common dictionary meanings and shall be construed as necessary to bring within the scope of this request any information which might otherwise be construed to be outside its scope.  If YOU find the meaning of any term in any requests to be unclear, assume a reasonable meaning, identify YOUR assumed meaning in writing in YOUR response, and respond to the requests on the basis of YOUR assumed meaning.

3.    In responding to these requests, YOU are required to search for and furnish the original and each non-identical copy of each DOCUMENT, COMMUNICATION, or other tangible thing requested herein within YOUR direct, or indirect, actual or constructive, possession, custody, or control, or known or available to YOU, regardless of whether such DOCUMENTS are possessed directly by YOU or any of YOUR predecessor or successor constituent corporate entities, assigns, and any affiliated entities, agents, limited partners, officers, directors, employees, representatives, consultants, or investigators, or by YOUR attorneys or their agents, employees, representatives, consultants, or investigators.

4.    All DOCUMENTS should be produced in the same order as they are kept or maintained by YOU in the ordinary course of business, or the DOCUMENTS should be organized and labeled to correspond to the categories of the DOCUMENTS requested below. If the requested DOCUMENTS are maintained in a file, the file folder is included in the request.

5.    If a requested DOCUMENT is withheld in whole or in part under the claim of privilege, YOU shall provide a statement signed and verified by YOUR attorney (a "privilege log") which sets for as to each DOCUMENT that is withheld, in full or in part, the following

information: (1) the name and address of the person(s) who possess or control the DOCUMENT and each copy of the DOCUMENT; (2) the name of the author of the DOCUMENT; (3) the name of the sender of the DOCUMENT if different from the author; (4) the name of the person(s) to whom copies were sent or otherwise made available; (5) the name of any person(s) known to have seen or have had possession of a copy of the DOCUMENT if not identified above; (6) the business affiliation and job title of every person named in (1)–(5) above; (7) the date on which the DOCUMENT was prepared, created, modified, and/or sent; (8) a brief description of the nature (e.g., letter or memorandum) and subject matter of the DOCUMENT; and (9)  the basis or bases for the privilege claim.

6.      If YOU object to any requests on the ground that it is overly broad, YOU are instructed to produce DOCUMENTS in response as narrowed to conform to YOUR objection and to state in YOUR response (1) how YOU narrowed the request; and (2) all reason(s) why YOU claim the requests is overly broad.

7.      If there are no DOCUMENTS or COMMUNICATIONS responsive to a particular request, YOU shall so state in writing.

8.      All objections to any category of DOCUMENTS to be produced pursuant to these requests must be made in a written response served on counsel for Plaintiff within the time period for responding to these requests.

9.      Plaintiff serves these requests without prejudice to its right to serve additional requests.

10.      Each request seeks information for the time period spanning October 1, 2020 through April 1, 2021 unless the Court orders a different time period, in which case that time period will control.

## REQUESTS FOR PRODUCTION

1.  All DOCUMENTS, including COMMUNICATIONS, YOU received, reviewed, or relied on in connection with the preparation of the FTI OPINION including, but not limited to, the documents identified in paragraphs numbered 1 to 12 on pages 2 to 3 of the FTI OPINION.

2. All DOCUMENTS, including COMMUNICATIONS, reflecting and discussions YOU had with "certain members of Management" regarding "the Proposed Transaction and the operations, financial condition, future projects and projected operations and performance of the Company," as described on page 3, paragraph 11, of the FTI OPINION.

3. All DOCUMENTS, including COMMUNICATIONS, reflecting "the assurances of Management that they are not aware of any facts or circumstances that would make any of the information described in [paragraph 1 on page 3 of the FTI OPINION], taken as a whole, inaccurate, incomplete or misleading in any material respect."

4. All DOCUMENTS, including COMMUNICATIONS, that reflect the "Identified Contingent Liabilities" as "estimate[d] [by] Management" and as described in paragraph 7 on page 4 of the FTI OPINION.

5. All DOCUMENTS, including COMMUNICATIONS, that reflect or formed the basis for YOUR assumptions on pages 3 to 5 of the FTI OPINION.

6. All prior drafts, working papers, or notes prepared in connection with the FTI OPINION.

7. YOUR COMMUNICATIONS with Ropes & Gray relating to the FTI OPINION.

8. YOUR COMMUNICATIONS with any employee, officer, director, or representative of WALKER EDISON relating to the FTI OPINION.

9. YOUR COMMUNICATIONS with PROSPECT HILL and DEFENDANTS relating to the FTI OPINION.

10. All DOCUMENTS related to YOUR retention and compensation by WALKER EDISON.

# Exhibit A



FTI Capital Advisors, LLC is a member of FINRA/SIPC.

<u>CONFIDENTIAL</u>

March 31, 2021

Board of Managers
Walker Edison Intermediate, LLC
1553 West 9000 South
West Jordan, UT 84088

Ladies and Gentlemen:

Ropes & Gray LLP ("Counsel"), on behalf of Walker Edison Intermediate, LLC ("Company") has engaged FTI Capital Advisors, LLC ("FTICA" or "we") to serve as an independent financial advisor to the board of managers of the Company (the "Board") to provide financial advisory services and a possible opinion (the "Opinion") in connection with a proposed transaction (the "Proposed Transaction") described below.

It is FTICA's understanding that the Proposed Transaction involves (a) the issuance of a new syndicated term loan in the aggregate principal amount of $300 million and (b) the application of the proceeds of such loan to (i) the repayment of an existing term loan in the aggregate principal amount of approximately $83 million and (ii) the issuance of a distribution to equity holders in the aggregate amount of approximately $209 million (the "Distribution").

In connection with the Proposed Transaction, the Board has requested FTICA to determine whether, (i) as of the date hereof, which we are informed is the date of the declaration of the Distribution in connection with the Proposed Transaction, and (ii) after giving effect to the consummation of the Proposed Transaction:

(a) The Fair Value of the assets of the Company exceeds its debts (which means all Stated Liabilities and Identified Contingent Liabilities);

(b) The Present Fair Saleable Value of the assets of the Company exceeds the sum of its Stated Liabilities and Identified Contingent Liabilities;

(c) The Company should be able to pay its debts (which means all Stated Liabilities and Identified Contingent Liabilities) as they become due; and

(d) The Company does not have an unreasonably small amount of assets (or capital) for the businesses in which it is engaged.

For purposes of this letter, the terms set forth below are defined as follows:

(a) "Fair Value" means the aggregate amount for which the total assets (including goodwill) of an entity would change hands between an independent willing buyer and an independent willing seller within a commercially reasonable period of time, where both parties are aware of all material facts and neither party is under any compulsion to act;

The Board of Managers of
Walker Edison Intermediate, LLC
March 31, 2021

- 2 -

(b) "Identified Contingent Liabilities" means the maximum reasonably estimated contingent liabilities identified in writing or explained to FTICA by Management in terms of their nature, expected timing and estimated dollar amount, in each case by Management.  Because Identified Contingent Liabilities are estimates of Management, FTICA will not express any opinion as to the completeness or propriety of such items or amounts. FTICA will rely upon the stated amount of the maximum reasonably estimated contingent liabilities identified to FTICA in writing and valued by Management, upon whom FTICA will rely without independent verification, and no other contingent liabilities will be considered;

(c) "Not have an unreasonably small amount of assets (or capital) for the businesses which it is engaged" and "able to pay its debts (including all Stated Liabilities and Identified Contingent Liabilities), as such debts become due."  These phrases mean that the Company should be able to generate or obtain enough cash from operations, asset dispositions, refinancing, other available sources or a combination thereof, to meet its obligations (which includes all Stated Liabilities and Identified Contingent Liabilities) as they become due, in each case as Management has indicated in writing to FTICA such business is now conducted;

(d) "Present Fair Saleable Value" means the aggregate amount of net consideration (as of the date hereof and giving effect to reasonable and customary costs of sale and taxes, where the probable amount of any such costs and taxes is identified in writing to FTICA by the Company) that could be expected to be realized by an independent willing seller from an independent willing buyer if the aggregate or total assets (including goodwill) of the Company are sold with reasonable promptness in an arms-length transaction under present conditions in the current market for the sale of assets of comparable business enterprises, where both parties are aware of all relevant facts and neither party is under any compulsion to act, where such seller is interested in disposing of the entire operation as a going concern, and presuming that business will be continued, except as disclosed to FTICA, in its present form and character; and

(e) "Stated Liabilities" means the liabilities of the Company as are presented on the balance sheet of the Company pro forma, giving effect to the consummation of the Proposed Transaction, as applicable, which balance sheet has been provided to FTICA (the "Balance Sheet"), with such changes, if any, that Management has advised FTICA in writing have occurred since the balance sheet date.

In connection with the Opinion, we have made such reviews, analyses and inquiries as we have deemed necessary and appropriate in the circumstances, which included, but were not limited to, our having:

1. reviewed historical financial statements for the Company for the years ended December 31, 2017 through 2020, which Management has identified as the most current information available;

2. reviewed financial projections for the Company for the years ended December 31, 2021 through 2025, as prepared by Management;

3. reviewed the Company's Confidential Information Presentation dated December 2020;

4. reviewed the Company's Rating Agency Presentation dated February 2021;

The Board of Managers of
Walker Edison Intermediate, LLC
March 31, 2021

- 3 -

5.  reviewed other internal documents and other relevant information relating to the history, current operations and probable future outlook of the Company, including a pro forma schedule of assets and liabilities (including the Stated Liabilities and Identified Contingent Liabilities) prepared by Management and provided to FTICA;

6.  reviewed the letter, dated as of the date hereof, from Management to FTICA containing certain representations as to historical financial statements, financial projections and their underlying assumptions and the pro forma schedule of assets and liabilities (including the Stated Liabilities and  Identified Contingent Liabilities) of the Company (the "Management Representation Letter");

7.  reviewed the draft loan agreement between Walker Edison Furniture Company LLC, Walker Edison Intermediate, LLC, Owl Rock Capital Corporation and Owl Rock Capital Advisors, LLC dated March 23, 2021 and related documents ("Transaction Documents");

8.  reviewed such industry and public company financial data as we have deemed relevant, to the extent available, obtained from public and other resources;

9.  performed certain valuation and comparative analyses using generally accepted valuation and analytical techniques including a discounted cash flow analysis and an analysis of selected public companies and selected transactions that FTICA deemed relevant;

10. performed certain cash flow analyses on the projections provided by Management and a sensitivity analysis using financial assumptions that FTICA believes, based on Management's representations, represent a reasonable downside scenario versus Management's projections;

11. discussed with certain members of Management the Proposed Transaction and the operations, financial condition, future prospects and projected operations and performance of the Company; and

12. conducted such other studies, analyses and investigations and considered such other factors as we have deemed appropriate.

    In rendering the Opinion, FTICA has, with your consent:

1.  relied upon and assumed the accuracy and completeness and fair presentation of all information, data, advice, opinions and representations obtained from public sources or provided to it from private sources, including, without limitation, Management (including, but not limited to, the documents which we identify above as having been reviewed by us), for which  we have not assumed any responsibility for independently verifying;

2.  relied on the assurances of Management that they are not aware of any facts or circumstances that would make any of the information described in the immediately preceding paragraph, taken as a whole, inaccurate, incomplete or misleading in any material respect;

The Board of Managers of
Walker Edison Intermediate, LLC
March 31, 2021

- 4 -

3.   with respect to the historical financial information of the Company (including any combined and consolidated financial statements of the Company) submitted to us, we have assumed that such information (i) is true, correct, accurate and complete in all material respects, (ii) is in accordance with the books and records of the Company, (iii) sets forth fairly the Company's financial condition and the results of its operations as, at and for the dates and periods therein specified, and (iv) has been prepared in accordance with generally accepted accounting principles applied on a basis consistent with prior periods;

4.   relied upon and assumed the fact that the Board and the Company have been advised by counsel as to all legal matters with respect to the Proposed Transaction, including whether all of the procedures required by law to be taken in connection with the Proposed Transaction have been duly, validly and timely taken in accordance with generally applicable law;

5.   with respect to any financial projections, forecasts or other pro-forma or forward-looking financial information concerning the Company submitted to us in connection with the Opinion (which may include, by way of example and if applicable, pro forma balance sheets before and/or after giving effect to the consummation of the Proposed Transaction, cash flow statements, income statements, reconciling journal entries, indications of value for certain assets and/or going-concern businesses, the effect of currency exchange transactions, schedules of inter-company loans and receivables and a schedule of any "debt pushdown" to the Company), we have (i) assumed that such financial projections, forecasts and other data reflect the best currently available estimates and good faith judgments of Management and as to the future financial performance of the Company based on the information reasonably available to Management, (ii) relied on such information in connection with the Opinion, and (iii) not independently verified the assumptions, estimates or judgments forming the basis therefor and, as such, no assurances can be given that such financial projections, forecasts and other pro-forma or forward-looking financial information can be realized or that actual results will not vary materially from those forecasted;

6.   assumed, without independent verification, there has been no material change in the assets, liabilities (including the Stated Liabilities and the Identified Contingent Liabilities), financial condition, results of operation, business or prospects of the Company since the date of the Balance Sheet (after giving effect to the Proposed Transaction), other than as have been identified in writing to us by Management, and that there are no facts or other information that would make any of the information reviewed by FTICA, taken as a whole, inaccurate, incomplete or misleading in any material respect;

7.   because Identified Contingent Liabilities are estimates of Management, FTICA does not express any opinion as to the completeness or propriety of such items or amounts. FTICA has relied upon the stated amount of the maximum reasonably estimated contingent liabilities identified to FTICA in writing and valued by Management, upon whom FTICA has relied without independent verification, and no other contingent liabilities were considered by FTICA in connection with this letter or the Opinion provided for herein;

8.   we have assumed that the final versions of all documents reviewed by us in draft form conform in all material respects to the drafts reviewed;

The Board of Managers of
Walker Edison Intermediate, LLC
March 31, 2021

5 -

9.   we have assumed, without independent verification, all governmental, regulatory or other consents, approvals or procedures required by law to be taken in connection with the Proposed Transaction have been, or will be, duly, validly and timely taken and no delay, limitations, restrictions or conditions will be imposed that would result in the disposition of any material portion of the assets of the Company or otherwise have a material adverse effect on the Company, or any expected benefits of the Proposed Transaction;

10.  we have assumed, without independent verification, that the Proposed Transaction will be consummated in a timely manner in accordance with the terms and conditions set forth in the Transaction Documents and in a manner that complies with all applicable laws, rules and regulations of any and all legal or regulatory authorities;

11.  we have assumed that the Company is in compliance, and will remain in compliance, with any and all applicable laws, rules or regulations of any and all legal or regulatory authorities (except to the extent that such non-compliance would not, of itself or in conjunction with other instances of non-compliance, implicate any determination contained in the Opinion);

12.  we have assumed that (a) all of the conditions required to implement the Proposed Transaction will be satisfied and will be completed substantially in accordance with the Transaction Documents, without any material amendments thereto or any waivers of any material terms or conditions thereof, (b) all representations and warranties in the Transaction Documents, the Management Representation Letter and all other agreements, documents, certificates and instruments described in the Transaction Documents or the Opinion are and will be true, correct and complete in all material respects and (c) that the Company will comply in all material respects with all covenants in the Transaction Documents;

13.  with respect to the Transaction Documents, we have assumed that (a) the Company will be liable for all of its obligations reflected under the Transaction Documents and (b) the applicable Transaction Documents, including, without limitation, any guarantees made by the Company pursuant to the Transaction Documents, will constitute legal, valid and binding obligations of the Company, enforceable against the Company in accordance with their respective terms;

14.  we have assumed the enforceability of the Transaction Documents and of all subrogation, contribution, indemnity, reimbursement and similar rights will not be materially limited by: (a) applicable bankruptcy, insolvency, fraudulent transfer and conveyance, reorganization, moratorium or similar laws, rules, regulations or judicial doctrines affecting creditors' rights and remedies generally including court decisions interpreting such laws, rules, regulations and doctrines; or (b) general principals of equity, including, without limitation, concepts of materiality, reasonableness, good faith and fair dealing, regardless of whether enforcement is sought in a proceeding at law or in equity; and

15.  we have assumed that there will be no events after the date hereof that would materially affect the conclusions set forth in the Opinion.

The Board of Managers of
Walker Edison Intermediate, LLC
March 31, 2021

- 6 -

To the extent that any of the foregoing assumptions or any of the facts on which the Opinion is based prove to be untrue in any material respect, the Opinion cannot and should not be relied upon. Furthermore, in our analysis and in connection with rendering the Opinion, FTICA has made numerous assumptions with respect to industry performance, general business, market and economic conditions, regulatory environment and other matters, many of which are beyond the control of any party involved in the Proposed Transaction.

This Opinion is solely for the benefit of the Board. This Opinion does not address (i) the fairness of the Proposed Transaction, in whole or in part, or any part associated therewith to the Company's creditors or other stakeholders, (ii) the relative risks or merits of the Proposed Transaction or any other business strategies or transactional alternatives that may be available to the Company, (iii) the underlying business decisions of the Company to consummate the Proposed Transaction, (iv) any specific legal, tax, accounting or financial reporting matters related to or associated with the Proposed Transaction, (v) the fair value of the Distribution under any state, federal or international laws relating to appraisal rights or similar matters, (vi) the book value of the assets and liabilities of the Company or (vii) the projections provided by Management. This Opinion should not be construed as creating any fiduciary duty on the part of FTICA to any party.

We have used the same valuation methodologies in determining Fair Value and Present Fair Saleable Value for purposes of rendering the Opinion. Notwithstanding the use of the terms "Fair Value" and "Present Fair Saleable Value," we have not been engaged to and did not initiate any discussions with, or solicit any indications of interest from, any third parties with respect to the Company. Furthermore, because the sale of any business enterprise involves numerous assumptions and uncertainties, not all of which can be quantified or ascertained prior to engaging in an actual selling effort, we express no opinion as to whether the Company could actually be sold for the amount we believe to be within a range of Fair Value and Present Fair Saleable Value for purposes of the Opinion.

We have prepared the Opinion effective as of the date hereof. The Opinion is necessarily based on economic, industry, market, financial and other conditions as they exist and can reasonably be evaluated by FTICA as of the date hereof. Subsequent developments may affect the Opinion, and, except as provided in our engagement letter with the Company dated as of February 24, 2021 (the "Engagement Letter"), we assume no responsibility for updating or revising the Opinion based on circumstances or events occurring or brought to our attention after the date hereof. We will receive a fee for our services, a portion of which is payable upon the delivery of the Opinion.

FTICA did not undertake an independent analysis of any potential or actual litigation, regulatory action, possible unasserted claims or other contingent liabilities to which the Company may be a party or is or may be subject, or of any governmental investigation of any possible unasserted claims or other contingent liabilities to which the Company is or may be a party or is or may be subject and has not conducted an independent appraisal or physical inspection of any specific assets of the Company.

This Opinion is only valid with respect to the capital structure of the Company as of the date hereof and on a pro forma basis as of immediately after, and giving effect to, the consummation of the Proposed Transaction, and is not valid for any subsequent business acquisition, distribution, equity interest repurchase, debt or equity financing, recapitalization, restructuring or other actions or events not specifically referred to herein.

The Board of Managers of
Walker Edison Intermediate, LLC
March 31, 2021

- 7 -

Based upon the foregoing, and in reliance thereon, it is our opinion that (i) as of the date hereof and, (ii) assuming the Proposed Transaction has been consummated in the manner described above, as of immediately after giving effect to the consummation of the Proposed Transaction:

(a) The Fair Value of the assets of the Company exceeds its debts (which means all Stated Liabilities and Identified Contingent Liabilities);

(b) The Present Fair Saleable Value of the assets of the Company exceeds the sum of its Stated Liabilities and Identified Contingent Liabilities;

(c) The Company should be able to pay its debts (which means all Stated Liabilities and Identified Contingent Liabilities) as they become due; and

(d) The Company does not have unreasonably small amount of assets (or capital) for the businesses in which it is engaged.

This Opinion is delivered to you subject to the conditions, scope of engagement, limitations and understandings set forth in the Opinion and the Engagement Letter.

Respectfully submitted,

*FTI Capital Advisors, LLC*

FTI Capital Advisors, LLC

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Attorneys for Blue Owl Capital Corporation*

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| BLUE OWL CAPITAL CORPORATION, | **NOTICE OF RELATED CASE** |
| Plaintiff, | |
| v. | Civil No. 240903251 |
| BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, | Judge Coral Sanchez<br><br>Discovery Tier 3<br><br>**JURY DEMAND** |
| Defendants. | |

Please take NOTICE that a related case—involving the same circumstances, many of the

same operative facts, and some overlapping legal issues—is currently being litigated in *Walker*

*Edison Furniture Co. v. Brad Bonham et al.*, case no. 230902160, a case filed in the Third Judicial

District Court, State of Utah, before the Honorable Judge Robert Faust.

      Dated this 24th day of April, 2024.

<div align="right">

/s/ Erik A. Christiansen
_____
ERIK A. CHRISTIANSEN
ALAN S. MOURITSEN
BRIAN M. ROTHSCHILD
PARSONS BEHLE & LATIMER
*Attorneys for Plaintiff*

</div>

## RETURN OF SERVICE

| | | |
|---|---|---|
| **State of Utah** | **County of WASATCH** | **Fourth District Court** |

Case Number: 240903251

Plaintiff: **BLUE OWL CAPITAL CORPORATION**
vs.
Defendant: **BRAD BONHAM; MB & BB HOLDINGS,**
**LLC; MATT DAVIS; WALKER EDISON**
**HOLDING COMPANY, LLC; PROSPECT**
**HILL GROWTH PARTNERS, L.P.; JWCWE**
**HOLDCO, LLC; JWC-WE**
**HOLDINGS, L.P.; PROSPECT HILL**
**GROWTH FUND II, L.P.; PROSPECT**
**HILL GROWTH FUND II CO-INVEST,**
**L.P.; PHIL DAMIANO; KEN MURPHY;**
**ADAM SUTTIN; KYLE CASELLA;**
**DAVID FIORENTINO; AND DOES 1-100**

For:
Erik A. Christiansen
PARSONS, BEHLE & LATIMER
201 South Main Street
Suite 1800
Salt Lake City, UT 84111

Received by ANDERSON ATTORNEY SERVICES L.L.C. on the 24th day of April, 2024 at 12:44 pm to be
served on **MB & BB HOLDINGS, LLC % GRADEN P. JACKSON, 9350 South 150 East, Suite 500,**
**SANDY, UT 84070**.

I, AUBRI ALM, do hereby affirm that on the **24th day of April, 2024** at **1:42 pm, I:**

Served the within named **CORPORATION** by delivering a true copy of the **SUMMONS & COMPLAINT**
**DISCOVERY TIER 3; JURY DEMAND; and Bilingual Notice;** with the date and hour of service endorsed
thereon by me to GRADEN P. JACKSON/JEANNE BARLOW as **Registered Agent** of the within named
corporation, in compliance with state statutes.

I am over the age of 21 and have no interest in the above action.  I certify that I have no interest in the
above action, am of legal age and have proper authority in the jurisdiction in which this service was
executed.  Pursuant to Utah Code Annotated 78B-18a-101 et seq., with the statutory declaration
statement form as set forth in 78B-18a-106, I declare under criminal penalty that the foregoing is true and
correct.

_____

**AUBRI ALM**
Process Server

**ANDERSON ATTORNEY SERVICES L.L.C.**
**P.O. BOX 535**
**Salt Lake City, UT 84110**
**(801) 619-1110**

Our Job Serial Number: AND-2024001633

Copyright © 1992-2024 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0a

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Attorneys for Blue Howl Capital Corporation*

---

IN THE FOURTH JUDICIAL DISTRICT COURT

FOR THE COUNTY OF WASATCH, STATE OF UTAH

| | |
|---|---|
| BLUE OWL CAPITAL CORPORATION, | **SUMMONS – MB & BB HOLDINGS** |
| Plaintiff, | |
| | Civil No. 240903251 |
| vs. | |
| BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID IORENTINO; AND DOES 1-100, | Judge Coral Sanchez |
| | Discovery Tier 3 |
| | **JURY DEMAND** |
| Defendants. | |

**THE STATE OF UTAH TO THE DEFENDANT:**

**MB & BB HOLDINGS, LLC**
Graden P. Jackson

9350 South 150 East, Suite 500
Sandy, Utah 84070

You are hereby summoned and required to file an Answer in writing to the attached Complaint with the above-entitled Court and to serve upon or mail to plaintiff's attorneys, Erik A. Christiansen, Alan S. Mouritsen and Brian M. Rothschild of Parsons Behle & Latimer, 201 South Main Street, Suite 1800, Salt Lake City, Utah 84111, a copy of said Answer within 21 days after service of this Summons on you.  If you fail to do so, judgment by default will be taken against you for the relief demanded in said Complaint, which has been filed with the Court and a copy of which is hereto annexed and herewith served upon you.

DATED April 24, 2024.

PARSONS BEHLE & LATIMER

/s/ Erik A. Christiansen
Erik A. Christiansen
Alan S. Mouritsen
Brian M. Rothschild

Attorneys for Plaintiff Blue Own Capital Corporation

2

Bilingual Notice to Responding Party for In-State Summons (for compliance with URCP 4)

| | |
|---|---|
| A lawsuit has been filed against you. You must respond in writing by the deadline for the court to consider your side. The written response is called an Answer. | Se ha presentado una demanda en su contra. Si desea que el juez considere su lado, deberá presentar una respuesta por escrito dentro del periodo de tiempo establecido. La respuesta por escrito es conocida como la Respuesta. |
| **Deadline!** <br> Your Answer must be filed with the court and served on the other party **within 21 days** of the date you were served with this Summons. <br> If you do not file and serve your Answer by the deadline, the other party can ask the court for a default judgment. A default judgment means the other party can get what they asked for, and you do not get the chance to tell your side of the story. | **¡Fecha límite para contestar!** <br> Su Respuesta debe ser presentada en el tribunal y también con la debida entrega formal a la otra parte **dentro de 21 días** a partir de la fecha en que usted recibió la entrega formal del Citatorio. <br><br> Si usted no presenta una respuesta ni hace la entrega formal dentro del plazo establecido, la otra parte podrá pedirle al juez que asiente un fallo por incumplimiento. Un fallo por incumplimiento significa que la otra parte recibe lo que pidió, y usted no tendrá la oportunidad de decir su versión de los hechos. |
| **Read the complaint/petition** <br> The Complaint or Petition has been filed with the court and explains what the other party is asking for in their lawsuit. Read it carefully. | **Lea la demanda o petición** <br> La demanda o petición fue presentada en el tribunal y ésta explica lo que la otra parte pide. Léala cuidadosamente. |
| **Answer the complaint/petition** <br> Scan QR code to this page. You must file your Answer in writing with the court **within 21 days** of the date you were served with this Summons. You can find an Answer form on the court's website: utcourts.gov/ans | **Cómo responder a la demanda o petición** <br>  Para accesar esta página escanee el código QR. Usted debe presentar su Respuesta por escrito en el tribunal **dentro de 21 días** a partir de la fecha en que usted recibió la entrega formal del Citatorio. Puede encontrar el formulario para la presentación de la Respuesta en la página del tribunal: utcourts.gov/ans-span |

7015GEJ Approved January 22, 2018 / Revised January 21, 2021     **Bilingual Notice to Responding Party for In-State Summons (for compliance with URCP 4)**     Page 1 of 2

3

4883-9596-9209.v1

**Serve the Answer on the other party**
You must email, mail or hand deliver a copy of your Answer to the other party (or their attorney or licensed paralegal practitioner, if they have one) at the address shown at the top left corner of the first page of this Summons.

**Entrega formal de la respuesta a la otra parte**
Usted deberá enviar por correo electrónico, correo o entregar personalmente una copia de su Respuesta a la otra parte (o a su abogado o asistente legal, si tiene) a la dirección localizada en la esquina izquierda superior de la primera hoja del citatorio.

**Finding help**



Scan QR code to visit page

The court's Finding Legal Help web page (utcourts.gov/help) provides information about the ways you can get legal help, including the Self-Help Center, reduced-fee attorneys, limited legal help and free legal clinics.

**Cómo encontrar ayuda legal**



Para accesar esta página escanee el código QR

Para información sobre maneras de obtener ayuda legal, vea nuestra página de Internet Cómo Encontrar Ayuda Legal. (utcourts.gov/help-span) Algunas maneras de obtener ayuda legal son por medio de una visita a un taller jurídico gratuito, o mediante el Centro de Ayuda. También hay ayuda legal a precios de descuento y consejo legal breve.



قم بالمسح الضوئي
للرمز لزيارة الصفحة

An Arabic version of this document is available on the court's website:
نسخة عربية من هذه الوثيقة على موقع المحكمة على الإنترنت.توجد
utcourts.gov/arabic



请扫描QR码访
问网页

A Simplified Chinese version of this document is available on the court's website:
本文件的简体中文版可在法院网站上找到：
utcourts.gov/chinese

A Vietnamese version of this document is available on the court's website:
Một bản tiếng Việt của tài liệu này có sẵn trên trang web của tòa:
utcourts.gov/viet



Xin vui lòng quét mã QR (Trả lời nhanh)để viếng trang

Brennan H. Moss (10267)
Michael A. Gehret (11890)
Charles D. Morris (18058)
**ARMSTRONG TEASDALE LLP**
222 S. Main Street, Ste. 1830
Salt Lake City, Utah 84101
Office: (801) 401-1608
Email: bmoss@atllp.com
        mgehret@atllp.com
        cdmorris@atllp.com

*Attorneys for Defendants Brad Bonham,*
*MB & BB Holdings, LLC, and Matt Davis*

---

## IN THE THIRD JUDICIAL DISTRICT COURT
## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, | **CERTIFICATE OF SERVICE – FOUNDER DEFENDANTS' FIRST SET OF DISCOVERY REQUESTS TO PLAINTIFF** |
|       Plaintiff, | |
| v. | Case No: 230902160 |
| BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, | Judge Robert Faust |
|       Defendants. | |

I hereby certify that on April 24, 2024, a true and correct copy of *Founder Defendant's*

*First Set Discovery Requests to Plaintiff* , were served via Electronic mail on the following:

| | |
|---|---|
| Erik Christiansen<br>Alan Mouritsen<br>Brian M. Rothschild<br>PARSONS BEHLE & LATIMER<br>201 South Main Street, Ste. 1800<br>Salt Lake City, Utah 84111<br>echristiansen@parsonsbehle.com<br>amouritsen@parsonsbehle.com<br>brothschild@parsonsbehle.com<br><br>*Attorneys for Plaintiff, Walker Edison*<br>*Furniture Company, LLC* | Michael M. Farhang<br>Michael S. Neumeister<br>Jeffrey C. Krause<br>GIBSON, DUNN & CRUTCHER LLP<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>mfarhang@gibsondunn.com<br>mneumeister@gibsondunn.com<br>jkrause@gibsondunn.com<br><br>*Attorneys for Plaintiff, Walker Edison*<br>*Furniture Company, LLC* |
| Adam J. Jantzi<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York 10166<br>ajantzi@gibsondunn.com<br><br>*Attorneys for Plaintiff, Walker Edison*<br>*Furniture Company, LLC* | David C. Reymann<br>Kade N. Olsen<br>Tammy M. Frisby<br>PARR BROWN GEE & LOVELESS<br>101 South 200 East, Ste. 700<br>Salt Lake City, Utah 84111<br>dreymann@parrbrown.com<br>kolsen@parrbrown.com<br>tfrisby@parrbrown.com<br><br>*Attorneys for Defendants Adam Suttin, Phil*<br>*Damiano, Kyle Casella, David Fiorentino,*<br>*Kyle Murphy, Walker Edison Holding Co.,*<br>*LLC, Prospect Hill Growth Fund II, L.P.,*<br>*Prospect Hill Growth Fund II Co-Invest, L.P.,*<br>*Prospect Hill Growth Partners, L.P. JWC-WE*<br>*Holdco, LLC, and JWC-WE Holdings, L.P.* |

| | |
|---|---|
| Greg Shinall<br>Matthew Rice<br>Sean M. Koller<br>SPERLING & SLATER, LLC<br>55 West Monroe Street, 32nd Floor<br>Chicago, Illinois 6063<br>shinall@sperling-law.com<br>mrice@sperling-law.com<br>skoller@sperling-law.com<br><br>*Attorneys for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC* | Geoffrey Chepiga<br>William Clareman<br>PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>1285 Avenue of the Americas<br>New York, New York 10019<br>gchepiga@paulweiss.com<br>wclareman@paulweiss.com<br><br>*Attorneys for Defendants Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.* |

DATED this 25th day of April, 2024.

ARMSTRONG TEASDALE LLP

  /s/ *Brennan H. Moss*
Brennan H. Moss
Michael A. Gehret
Charles D. Morris

*Attorneys for Defendants Brad Bonham, MB & BB Holdings, LLC, and Matt Davis*

David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
PARR BROWN GEE & LOVELESS
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
(801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

Brennan Moss (10267)
Michael Gehret (11890)
ARMSTRONG TEASDALE LLP
222 South Main St., Suite 1830
Salt Lake City, Utah 84101
(801) 401-1600
bmoss@atllp.com
mgehret@atllp.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, Walker Edison Holding Co., LLC, Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

*For defendants*: Brad Bonham, MB & BB Holdings, LLC, and Matt Davis

Additional counsel listed in signature block

---

## IN THE THIRD JUDICIAL DISTRICT COURT
## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **CERTIFICATE OF SERVICE OF DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFF WALKER EDISON FURNITURE COMPANY, LLC** <br><br> Civil No. 230902160 <br><br><br> Judge Robert Faust <br><br> Discovery Tier 3 |

I HEREBY CERTIFY that on May 9, 2024, a true and correct copy of Defendants' First

Set of Interrogatories to Plaintiff Walker Edison Furniture Company, LLC, was served via email

on the following:

Erik Christiansen
Alan Mouritsen
Brian M. Rothschild
PARSONS BEHLE & LATIMER
201 South Main Street, Ste. 1800
Salt Lake City, Utah 84111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

Michael M. Farhang
Michael S. Neumeister
Jeffrey C. Krause
Ryan S. Appleby
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com
rappleby@gibsondunn.com

*Attorneys for Plaintiff, Walker Edison Furniture Company, LLC*

DATED this 9th day of May 2024.

**PARR BROWN GEE & LOVELESS**

/s/ David C. Reymann
David C. Reymann
Kade N. Olsen
Tammy M Frisby

101 South 200 East, Suite 700
Salt Lake City, Utah 84111
(801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

*For defendants:* Adam Suttin, Phil Damiano,
Kyle Casella, David Fiorentino, Kyle
Murphy, Walker Edison Holding Co., LLC,
Prospect Hill Growth Fund II, L.P., Prospect
Hill Growth Fund II Co-Invest, L.P., Prospect
Hill Growth Partners, L.P., JWC-WE Holdco,
LLC, and JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**

/s/ Brennan H. Moss
Brennan H. Moss
Michael Gehret

222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
(801) 401-1600
bmoss@atllp.com
mgehret@atllp.com

*For defendants*: Brad Bonham; MB & BB
Holdings, LLC, and Matt Davis

**SPERLING & SLATER, LLC**

/s/ Greg Shinall
Greg Shinall
Matthew Rice

55 West Monroe Street, 32nd Floor
Chicago, Illinois 60603
(312) 641-3200
shinall@sperling-law.com
mrice@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano,
Kyle Casella, David Fiorentino, Kyle
Murphy, and Walker Edison Holding Co.,
LLC

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga
William Clareman

1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000
gchepiga@paulweiss.com
wclareman@paulweiss.com

*For defendants*: Prospect Hill Growth Fund
II, L.P., Prospect Hill Growth Fund II Co-
Invest, L.P., Prospect Hill Growth Partners,
L.P., JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 9th day of May 2024, I electronically filed the

foregoing **CERTIFICATE OF SERVICE OF DEFENDANTS' FIRST SET OF**

**INTERROGATORIES TO PLAINTIFF WALKER EDISON FURNITURE COMPANY,**

**LLC**, which served all counsel of record.

/s/ David C. Reymann

Brennan H. Moss (10267)
Michael A. Gehret (11890)
Charles D. Morris (18058)
**ARMSTRONG TEASDALE LLP**
222 S. Main Street, Ste. 1830
Salt Lake City, Utah 84101
Office: (801) 401-1608
Email: bmoss@atllp.com
        mgehret@atllp.com
        cdmorris@atllp.com

*Attorneys for Defendants Brad Bonham,*
*MB & BB Holdings, LLC, and Matt Davis*

---

## IN THE THIRD JUDICIAL DISTRICT COURT
## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, | |
| Plaintiff, | **NOTICE OF WITHDRAWAL OF COUNSEL** |
| v. | Case No: 230902160 |
| BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, | Judge Robert Faust |
| Defendants. | |

Charles D. Morris of the law firm of Armstrong Teasdale, LLP, hereby gives notice of his withdrawal as counsel of record for Defendants Brad Bonham, MB & BB Holdings, LLC, and Matt Davis ("**Defendants**") in the above-entitled matter. Defendants will continue to be represented by Brennan H. Moss and Michael A. Gehret of Armstrong Teasdale, LLP.

DATED this 9th day of May, 2024.

ARMSTRONG TEASDALE LLP

/s/ *Charles D. Morris*
Brennan H. Moss
Michael A. Gehret
Charles D. Morris

*Attorneys for Defendants Brad Bonham,*
*MB & BB Holdings, LLC, and Matt Davis*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of May, 2024, I caused a true and correct copy of the foregoing to be served via the Court's electronic notification system to all counsel of record.

 /s/ *Yasmine Murphy*

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Counsel for Blue Owl Capital Corporation*

---

### IN THE THIRD JUDICIAL DISTRICT COURT

### FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| BLUE OWL CAPITAL CORPORATION, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **PLAINTIFF'S NOTICE OF UNOPPOSED MOTION TO CONSOLIDATE FILED IN CASE NO. 230902160** <br><br> Civil No. 240903251 <br><br><br> Judge: Hon. Carol Sanchez <br><br> Discovery Tier 3 |

## **NOTICE OF MOTION**

PLEASE TAKE NOTICE that Walker Edison Furniture Company, LLC ("Walker Edison") and Blue Owl Capital Corporation ("Blue Owl") filed a motion to consolidate for discovery and pretrial purposes the instant action with the earlier-filed action, *Walker Edison Furniture Company, LLC v. Brad Bonham, et al.*, Case No. 230902160, pending before Judge Robert Frost, pursuant to Utah Rule of Civil Procedure 42.  Walker Edison and Blue Owl filed the motion to consolidate in Case No. 230902160 and file the Notice of Motion in this case as required by Rule 42(a)(2).  Walker Edison and Blue Owl have consulted with Defendants in both actions regarding this motion, and all Defendants agree to Plaintiffs' motion to consolidate.


DATED        May 9, 2024

PARSONS BEHLE & LATIMER

/s/ Erik A. Christiansen
Erik Christiansen

*Attorneys for Walker Edison Furniture
Company, LLC and Blue Owl Capital Corporation*

## CERTIFICATE OF SERVICE

I certify that on this 9th day of May, 2024, I caused to be served via email a true and correct copy of the **PLAINTIFF'S NOTICE OF UNOPPOSED MOTION TO CONSOLIDATE FILED IN CASE NO. 230902160**, on the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**ARMSTRONG TEASDALE LLP**
Brennan H. Moss
222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

_/s/ Sue Fiefia_

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael M. Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **PLAINTIFF'S UNOPPOSED MOTION TO CONSOLIDATE RELATED CASES** <br><br> Civil No. 230902160 <br><br><br> Judge Robert Faust <br><br> Discovery Tier 3 |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that Walker Edison Furniture Company, LLC ("Walker Edison") and Blue Owl Capital Corporation ("Blue Owl") hereby jointly move this Court pursuant to Utah Rule of Civil Procedure 42 for an order consolidating the later-filed related case titled *Blue Owl Capital Corporation v. Brad Bonham, et al.*, Case No. 240903251, currently pending before the Honorable Coral Sanchez, with the above-captioned matter for discovery and pretrial purposes. Walker Edison and Blue Owl have consulted with Defendants regarding this motion, and all Defendants agree to Plaintiffs' motion to consolidate.

The motion is based on this notice of motion; the accompanying memorandum of points and authorities in support thereof that follows; the pleadings, records, and papers on file in this action; and any other matters properly before the court.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### INTRODUCTION

Plaintiff Walker Edison brings this unopposed motion to consolidate this action with the related case titled *Blue Owl Capital Corporation v. Brad Bonham et al.*, Case No. 240903251, filed on April 24, 2024 and currently pending before Judge Coral Sanchez.  A Notice of Related Case was filed in the *Blue Owl* action on April 24, 2024.  Plaintiffs Walker Edison and Blue Owl have consulted with counsel for Defendants in both actions, and all Defendants agree to Plaintiffs' motion to consolidate.

This action, which is related to Case No. 240903251, involves common allegations that Defendants improperly extracted nearly $210 million in cash from Walker Edison for their own benefit by misusing their former control positions as the owners, board members, and founders of the Company.  According to the Amended Complaint in this action, Defendants caused Walker Edison Furniture Company, LLC ("Walker Edison") to distribute that money to themselves at a time when Walker Edison was insolvent, amounting to both a breach of Defendants' fiduciary duties and an avoidable wrongful distribution.  As alleged in the Amended Complaint, Defendants were only able to extract the $210 million from Walker Edison by fraudulently inducing several institutional lenders, including Blue Owl Capital Corporation ("Blue Owl"), into funding an underlying $300 million term loan under the guise of false and misleading representations, financial statements, and material omissions.

Blue Owl, which now owns Walker Edison, has now separately sued the same Defendants in the related action, Case No. 240903251, on behalf of itself and the other lenders to that loan, *Blue Owl Capital Corporation v. Brad Bonham, et al.*, pending before Judge Coral Sanchez of this Court, for recovery of the proceeds of the loan and resulting dividend based on claims for fraud, fiduciary duty, and fraudulent transfer.  Because these two actions, which are against the exact same group of Defendants and are based on similar operative facts and overlapping legal theories, discovery and other proceedings can be conducted more efficiently in a consolidated action to avoid duplication of resources and unnecessary burdens on the courts' time and attention.  For

reasons of judicial economy, therefore, Plaintiffs in both actions request consolidation of these cases before this Court, and Defendants agree to Plaintiffs' motion to consolidate.

These related cases concern "a common question of law or fact" and arise "from the same transaction or occurrence" and are therefore appropriate for consolidation. Utah R. Civ. P. 42(a). Both cases involve the exact same group of Defendants and the same alleged overall pattern of conduct. The operative facts underlying the claims in both cases are related and overlapping, involving both the dividend and underlying loan transaction that supplied the funds for the dividend, both occurring in March 2021. There are common causes of action, including actual fraudulent transfer, constructive fraudulent transfer, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil conspiracy, and unjust enrichment. Both actions will require resolution of certain common questions of law and fact, including Walker Edison's solvency at the time of the challenged transactions. Consolidation will work no prejudice on any party and will provide benefits in terms of judicial efficiency. Because of the overlap between this action and *Blue Owl*, the Court should order the related cases consolidated for discovery and pretrial purposes. Consolidation—which all Parties agree to—will conserve judicial and party resources and promote judicial economy.[1]

## BACKGROUND

Plaintiff Walker Edison, which is owned by Plaintiff Blue Owl, filed this action against Defendants, alleging that Defendants wrongfully took nearly $210 million in cash from Walker Edison in the form of a dividend in March 2021, at a time where Walker Edison did not have $210 million to spare. Defendants were the then-majority owners, managers, and executives of Walker Edison at the time of the dividend in March 2021, and the Amended Complaint alleges they knew that Walker Edison was facing a substantial liquidity problem that rendered Walker Edison insolvent. According to the Amended Complaint, Defendants knew that the transfer "would

---

[1] Statements in this motion to consolidate is without prejudice to any arguments Defendants may make on a motion to dismiss in the *Blue Owl* case, and Plaintiffs will not cite Defendants' agreement to the motion to consolidate as a basis to oppose any relief sought by Defendants.

exacerbate the Company's liquidity problems and put its survival at risk." *Walker Edison* Compl.
¶ 2. The Amended Complaint alleges that, despite Defendants' awareness of Walker Edison's
financial straits, their desire to extract hundreds of millions of dollars to line their own pocketbooks
overrode their obligations to Walker Edison.

Recently, Plaintiff Blue Owl filed an action against the same Defendants in this Court
relating to similar acts and transactions underlying the *Walker Edison* case. *Blue Owl Capital
Corporation* Dkt. No. 1 ("*Blue Owl* Compl.," attached hereto as Exhibit A). In its Complaint, Blue
Owl alleges that Defendants intentionally defrauded it and other lenders into funding the $300
million loan to Walker Edison, which was then used to fund the $210 million dividend paid to the
same Defendants. *Id.* ¶ 2. The Complaint alleges that Defendants induced Blue Owl and the other
lenders into entering into the loan agreement through material misrepresentations and omissions
about Walker Edison's financial status. *Id.*

The allegations in both matters are substantially similar. For example, each complaint
alleges that:

- In at least as early as 2020, seeking to capitalize on [Walker Edison's] explosive growth,
  the existing shareholders—Defendants Bonham, Davis, and Prospect Hill—decided it was
  the right time to launch an effort to extract cash from the business. *Walker Edison* Compl.
  ¶ 40; *Blue Owl* Compl. ¶ 45;

- Without the loan, Defendants could not have paid such a large dividend to themselves, and
  with the loan, the Company's debt load would increase tremendously. *Walker Edison*
  Compl. ¶ 42; *Blue Owl* Compl. ¶ 46;

- Defendants knew that the Company's financial statements—which understated costs and
  thereby overstated EBITDA . . . and net income—did not reflect the Company's true
  financial position. *Walker Edison* Compl. ¶ 49; *Blue Owl* Compl. ¶ 53;

- In contrast to the rosy portrayal of the Company that Defendants presented . . . , Defendants
  had begun internally to express decidedly pessimistic views of the Company's financial
  position, none of which were disclosed. *Walker Edison* Compl. ¶ 58; *Blue Owl* Compl.

¶ 68; and

- Defendants were well aware that the Company's financial projections were unreasonably high and ignored reality in order to justify the [d]ividend. *Walker Edison* Compl. ¶ 61; *Blue Owl* Compl. ¶ 76.

The complaints in this case and *Blue Owl* also advance several similar causes of action—including fraudulent transfer, breach of fiduciary duty, civil conspiracy, and unjust enrichment. *See Walker Edison* Compl. ¶¶ 102–33; *Blue Owl* Compl. ¶¶ 129–56.

Both related actions also are in the early stages of litigation. Blue Owl very recently filed its Complaint in the *Blue Owl* litigation. The Parties in this action have completed their initial disclosures, and the Parties have recently begun serving discovery requests, but no document productions have yet occurred, and no depositions have taken place.

## LEGAL STANDARD

"Trial courts have rather broad discretion in determining the outcome of a motion to consolidate." *Sullivan v. Sullivan*, 105 P.3d 963, 966 (Utah Ct. App. 2004). "When actions involving a common question of law or fact or arising from the same transaction or occurrence are pending before the court in one or more judicial districts, the court may . . . order that the actions are consolidated in whole or in part for any purpose." Utah R. Civ. P. 42(a). The purpose of the rule is to "avoid unnecessary costs or delay." *Id.* As such, courts consolidate actions when it is "in the interests of efficient judicial administration." *Westgate Resorts, Ltd. v. Consumer Prot. Grp., LLC*, 285 P.3d 1219, 1226 (Utah 2012) (quoting *Lignell v. Berg*, 593 P.2d 800, 806 (Utah 1979)).

Utah Rule of Civil Procedure 42 spells out a host of factors for courts to consider in determining whether to consolidate: the complexity of the actions; the importance of any common question of fact or law to the determination of the actions; the risk of duplicative or inconsistent rulings, orders, or judgments; the relative procedural postures of the actions; the risk that consolidation may unreasonably delay the progress, increase the expense, or complicate the processing of any action; prejudice to any party that far outweighs the overall benefits of

consolidation; the convenience of the parties, witnesses, and counsel; and the efficient utilization of judicial resources and the facilities and personnel of the court.  Utah R. Civ. P. 42(a)(1).  In addition, for the analogous Federal Rule 42(a), federal courts in this jurisdiction evaluate similar factors.  *Dreger v. Progressive Leasing LLC*, 2024 WL 115854, at *2 (D. Utah Jan. 10, 2024) (considering whether the matters "arise from substantially the same transaction or event;" "involve substantially the same parties or property," or "call for determination of substantially the same questions of law.").  Consolidation is improper if judicial economy is outweighed by "substantial prejudice" to the nonmovant.  *Westgate Resorts, Ltd.*, 285 P.3d at 1226; *see also Raggenbuck v. Suhrmann*, 325 P.2d 258, 259 (Utah 1958) (holding that consolidation is an abuse of discretion when it is "likely to be prejudicial" to the nonmovant).

## ARGUMENT

The Court should consolidate the newly filed and related *Blue Owl* action with the instant case because both are based on similar allegations, involve similar legal questions, and are asserted against the same Defendants.  Consolidation will best advance judicial efficiency, reduce unnecessary burdens or costs, and will not prejudice any Party (all of whom agree to this motion).

### A.    Both Cases Involve Common Questions Of Law And Fact

Consolidation of *Blue Owl* with this related action is appropriate because both cases involve "common questions of law or fact."  Utah R. Civ. P. 42(a).  Both complaints revolve around a single set of transactions: the March 31, 2021 loan agreement between the lenders and Walker Edison and the immediate $210 million dividend payment to certain Defendants.  *See, e.g.*, *Walker Edison* Compl. ¶¶ 1–5, 42, 70–71; *Blue Owl* Compl. ¶¶ 1–2, 58, 99–100.  And both cases implicate key fact questions regarding Walker Edison's financial conditions leading up to, and at the time of, the loan agreement and dividend.  *See, e.g.*, *Walker Edison* Compl. ¶¶ 38–90; *Blue Owl* Compl. ¶¶ 43–124.

Both cases will also require resolution of common questions of law and fact, such as questions relating to Walker Edison's solvency at the time of the $210 million dividend and

whether Defendants' decisions regarding the authorization of the dividend were improper. Whether and when Walker Edison was insolvent, and Defendants' knowledge of that insolvency, will need to be resolved in both matters. *See, e.g.*, *Walker Edison* Compl. ¶¶ 83–86, 97–98, 100, 116; *Blue Owl* Compl. ¶¶ 108–124. And Defendants' intent and knowledge at the time of the loan and dividend will be implicated in both matters, particularly as they relate to the fraud claim in the *Blue Owl* case, the fiduciary duty claims in both cases, and the actual fraudulent transfer claims in both cases. *See, e.g.*, *Walker Edison* Compl. ¶¶ 38–90; *Blue Owl* Compl. ¶¶ 43–124. Further, whether Defendants breached their fiduciary duties as members of the board governing the affairs of Walker Edison will also need to be resolved in both matters. *Walker Edison* Compl. ¶¶ 119–133; *Blue Owl* Compl. ¶¶ 148–156.

Finally, there is close overlap of Parties and claims. Both related actions are brought against the exact same group of Defendants. And both related actions assert claims for actual fraudulent transfer, constructive fraudulent transfer, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil conspiracy, and unjust enrichment—all premised on similar allegations. As a result, the numerous common questions of law and fact warrant consolidation.

### B.    Judicial Efficiency From Consolidation Outweighs Any Potential Prejudice

Although no one factor is dispositive or necessary, the factors courts consider in determining whether to order consolidation weigh in favor of consolidation. Utah R. Civ. P. 42(a)(1).

**Complexity of the Actions**. Both actions involve claims that center on Defendants' knowledge and conduct in authorizing and receiving a $210 million distribution from Walker Edison and their knowledge and conduct in inducing Blue Owl and the other lenders into issuing a $300 million loan to fund the dividend. Such conduct and knowledge are issues that will be decided based on documentation, witness testimony, and expert witness analysis, evidentiary sources with which courts and juries routinely deal. Although the actions will involve analysis of financial data and questions regarding solvency, there are no specialized issues unique to either

case. Rather, any complexity that exists is present in both actions. This factor favors consolidation.

**Importance of Any Common Question of Law or Fact**. As discussed above, the questions of law or fact in the actions are both common *and* centrally important. The harms giving rise to the claims brought by Walker Edison and Blue Owl originate from one series of transactions and those claims are asserted against the same Defendants. The causes of action—such as fraudulent transfer, breach of fiduciary duty, conspiracy, and unjust enrichment—are common across the two related cases as well. This factor squarely points toward consolidation.

**The Relative Procedural Postures of the Actions**. Both related cases are still in relatively early stages, further weighing in favor of consolidation. The *Blue Owl* action was recently filed, and Defendants have yet to file an answer or other responsive pleading. In *Walker Edison*, the Parties have not begun producing documents beyond those required by the Parties' initial disclosures and no depositions have been scheduled or taken place. The Court has also made no substantive rulings in either case. Given that both related cases are in the early stages, this factor favors consolidation.

**Consolidation Will Not Unreasonably Delay the Progress, Increase the Expense, or Complicate the Processing of the Action**. Because both related cases are in their very early stages, there is no risk of unreasonable delay by consolidating the actions.[2] Moreover, consolidation will only serve to reduce expenses on the Parties because there are likely to be significant amounts of overlapping discovery and litigation over common issues. Without consolidation for example, the Parties would likely need to complete two depositions of many fact witnesses, one for each action, on similar issues. This would mean twice the time spent on deposition preparation and participation and any discovery matters that require the Court's attention would risk duplication.

---

[2] The Parties have reached agreement on a proposed consolidated fact discovery schedule that will be jointly submitted to the Court if consolidation is granted. Each Party reserves the right to later seek consolidation for all purposes, including for a trial.

The limited discovery to date underscores the value of consolidating both matters. Days before Blue Owl filed the *Blue Owl* case, Defendants served a subpoena *duces tecum* on Blue Owl in the *Walker Edison* case that seeks many categories of information that would be relevant to the issues in the *Blue Owl* matter, such as Walker Edison financial models provided to Blue Owl, communications between Blue Owl and Walker Edison relating to Walker Edison's financial performance, and certain Blue Owl documents relating to Walker Edison. Consolidation here would help *minimize* any potential confusion or complication by ensuring that the Parties would not need to duplicate efforts and increase costs just to get similar information. This factor weighs in favor of consolidation.

**There Is No Prejudice that "Far Outweighs" the Benefits of Consolidation**. The required prejudice that could justify non-consolidation is not present here, and to the contrary the prejudice would occur if the cases were not consolidated. Consolidation would not prejudice, let alone "substantial[ly] prejudice" any Party. *Westgate Resorts, Ltd.*, 285 P.3d at 1226. To start, all Parties agree to this motion, and therefore there can be no claims of prejudice. Moreover, Defendants can still raise the same arguments and defenses, now without being forced to litigate similar allegations in two separate cases. There is also no danger of prejudice from confusion. To the contrary, consolidation will likely reduce any confusion because the same discovery and other pretrial procedures will be handled in one case. *Cf. Lignell*, 593 P.2d at 806 (affirming consolidation despite the defendants' argument that the increased number of claims would "exceed a jury's capacity for comprehension"). Nor is there a risk of unreasonable delay in this case given that the Parties have only just begun conducting discovery. This factor justifies consolidation as well.

**The Convenience to the Parties, Witnesses, and Counsel**. Convenience is maximized through consolidation. The Parties, who agree that consolidation is warranted, will save time and expense by avoiding duplicative efforts in parallel cases on common issues of law and fact. Consolidation would save witnesses from sitting for duplicative depositions, and responding to duplicative subpoenas and requests for production, particularly given discovery is still in its very

early stages in the *Walker Edison* matter. And because the same counsel for Plaintiffs and Defendants, respectively, are involved in both matters, counsel will undoubtedly be able to proceed more efficiently and save time and expense for their clients by proceeding with the matters in consolidated fashion.

**The Efficient Utilization of Judicial Resources and the Facilities and Personnel of the Court**. There is substantial efficiency to be gained through consolidation. It is undoubtedly impractical for courts to devote twice the amount of time and attention to handling discovery and merits issues on two litigations that are centered around similar acts and transactions and overlapping legal issues. Consolidation would allow the Court to address these issues more efficiently and with far less burden imposed. This factor bolsters the argument for consolidation.

## CONCLUSION

Both related cases involve common questions of law and fact and the factors courts consider weigh in favor of consolidation. Plaintiffs respectfully request that the Court order the consolidation of the related *Blue Owl* action, Case No. 240903251, with this case.

DATED       May 9, 2024

PARSONS BEHLE & LATIMER

/s/ Erik A. Christiansen
Erik Christiansen

*Attorneys for Walker Edison Furniture*
*Company, LLC and Blue Owl Capital Corporation*

# **Certificate of Service**

I HEREBY CERTIFY that on the 9th of May 2024, I electronically filed the foregoing **PLAINTIFF'S UNOPPOSED MOTION TO CONSOLIDATE RELATED CASES**, which served all counsel of record.

*/s/ Sue Fiefia*

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael M. Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, | |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION TO CONSOLIDATE RELATED CASES** |
| vs. | |
| BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, | Civil No. 230902160<br><br>Judge Robert Faust<br><br>Discovery Tier 3 |
| Defendants. | |

Before the Court is the Unopposed Motion to Consolidate Related Cases, filed on May 9,

2024. Based on the unopposed motion, and for good cause appearing,

**IT IS HEREBY ORDERED** that the motion is GRANTED.  Case 240903251, currently pending before Judge Sanchez, shall be transferred to this Court and shall be consolidated with Case 230902160 for discovery and pretrial purposes.  The Parties shall submit a joint proposed consolidated case schedule by July 1, 2024.

**In accordance with the Utah State District Courts E-filing Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

Agreed as to form by:

**PARSONS BEHLE & LATIMER**

/s/ Erik A. Christiansen
Erik Christiansen
Alan Mouritsen
Brian M. Rothschild

201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*For Plaintiff Walker Edison Furniture Company, LLC*

**GIBSON, DUNN & CRUTCHER LLP**

/s/ Michael M. Farhang
Michael M. Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)

333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

*For Plaintiff Walker Edison Furniture Company, LLC*

1

# <u>Certificate of Service</u>

I HEREBY CERTIFY that on the 9th of May 2024, I electronically filed the foregoing **ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION TO CONSOLIDATE RELATED CASES**, which served all counsel of record.

*/s/ Sue Fiefia*



Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Counsel for Blue Owl Capital Corporation*

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| BLUE OWL CAPITAL CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **ORDER GRANTING STIPULATED MOTION TO EXTEND RESPONSIVE PLEADING DEADLINE**<br><br>Civil No. 240903251<br><br>Judge: Hon. Carol Sanchez<br><br>Discovery Tier 3 |

Before the Court is the Parties' Stipulated Motion to Extend Responsive Pleading

Deadline, filed on May 9th, 2024. Based on the stipulation, and for good cause appearing,

**IT IS HEREBY ORDERED** that the request is GRANTED.  Defendants' responsive pleadings shall be due on or before June 24, 2024.  If Defendants file any motion, Plaintiff shall have until July 24, 2024 to file an opposition.

**In accordance with the Utah State District Courts Efiling Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

Agreed as to form by:

**PARR BROWN GEE & LOVELESS, P.C.**

/s/ David C. Reymann
David C. Reymann
Jonathan O. Hafen

101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**SPERLING & SLATER, LLC**

/s/ Greg Shinall
Greg Shinall

55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga

1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II,

**ARMSTRONG TEASDALE LLP**

/s/ Brennan H. Moss
Brennan H. Moss

222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

2

L.P., Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.,
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.


**PARSONS BEHLE & LATIMER**


/s/ Erik A. Christiansen
Erik Christiansen
Alan S. Mouritsen
Brian M. Rothschild

201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*For Plaintiff Blue Owl Capital Corporation*

3

## CERTIFICATE OF SERVICE

I certify that on this 9th day of May, 2024, I caused to be served via email a true and correct copy of the **ORDER GRANTING STIPULATED MOTION TO EXTEND RESPONSIVE PLEADING DEADLINE**, on the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

*/s/ Erik A. Christiansen*

4

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Counsel for Blue Owl Capital Corporation*

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| BLUE OWL CAPITAL CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **STIPULATED MOTION TO EXTEND RESPONSIVE PLEADING DEADLINE AND STIPULATION RE: ACCEPTANCE OF SERVICE**<br><br>Civil No. 240903251<br><br><br>Judge: Hon. Carol Sanchez<br><br>Discovery Tier 3 |

Plaintiff Blue Owl Capital Corporation ("Blue Owl") and Defendants Brad Bonham; MB

& BB Holdings, LLC; Matt Davis; Walker Edison Holding Company, LLC; Prospect Hill Growth

Partners, LP; JWC-WE Holdco, LLC; JWC-WE Holdings, L.P.; Prospect Hill Growth Fund II,

L.P.; Prospect Hill Growth Fund II Co-Invest, L.P.; Phil Damiano; Ken Murphy; Adam Suttin; Kyle Casella; and David Fiorentino (collectively, "Defendants" and together with Blue Owl, the "Parties") hereby stipulate and agree to the following, and jointly move the Court for an extension of time for Defendants to respond to the Complaint through and until June 24, 2024 and Blue Owl to respond to any motion filed in response to the Complaint.

In support of this Stipulated Motion, the Parties jointly stipulate and agree as follows:

1.      Blue Owl filed the Complaint on April 24, 2024. Blue Owl served MB & BB Holdings, LLC on April 24, 2024, making its responsive pleading deadline May 17, 2024.

2.      Defendants Brad Bonham and Matt Davis (collectively, with MB & BB Holdings, LLC, the "Founder Defendants"), by and through their undersigned counsel, hereby accept service of the Complaint and Summonses in the above-captioned matter as if they had been served pursuant to Rule 4 of the Utah Rules of Civil Procedure on the date below.  The Founder Defendants waive any defects in service of the Complaint and Summonses, but otherwise retain all defenses and objections in accordance with Utah Rules of Civil Procedure 4(d)(3)(D).

3.      Defendants Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, LP, JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Phil Damiano, Ken Murphy, Adam Suttin; Kyle Casella, and David Fiorentino (collectively, the "Prospect Hill Defendants"), by and through their undersigned counsel, hereby accept service of the Complaint and Summonses in the above-captioned matter as if they had been served pursuant to Rule 4 of the Utah Rules of Civil Procedure on the date below.  The Prospect Hill Defendants waive any defects in service of the First Amended Complaint and Summonses, but otherwise retain all defenses and objections in accordance with Utah Rules of Civil Procedure 4(d)(3)(D).

4.      As part of Defendants' acceptance of service of process, the Parties have met and conferred and have come to an agreement to extend the deadline for Defendants to respond to the Complaint and for Blue Owl to file an opposition to any motion by Plaintiffs.

5.      The Parties agree, subject to the approval of the Court, that Defendants' responsive pleading deadline shall be extended to June 24, 2024.  If Defendants file a motion in response to Blue Owl's Complaint, Blue Owl shall have until July 24, 2024 to file any opposition.

6.      Therefore, pursuant to Rule 6(b) of the Utah Rules of Civil Procedure, the parties respectfully request entry of an order reflecting the stipulation above; extending the time for Defendants to file a responsive pleading until June 24, 2024; and extending the time for Blue Owl to file an opposition to any motion by Defendants until July 24, 2024.

DATED May 9, 2024.

**PARR BROWN GEE & LOVELESS, P.C.**

/s/ David C. Reymann
David C. Reymann
Jonathan O. Hafen

101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**SPERLING & SLATER, LLC**

/s/ Greg Shinall
Greg Shinall

55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga

**ARMSTRONG TEASDALE LLP**

/s/ Brennan H. Moss
Brennan H. Moss

1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund
II,
L.P., Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.,
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB
Holdings, LLC; Matt Davis


**PARSONS BEHLE & LATIMER**


/s/ Erik A. Christiansen
Erik A. Christiansen
Alan S. Mouritsen
Brian M. Rothschild

201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*For Plaintiff Blue Owl Capital Corporation*

## CERTIFICATE OF SERVICE

I certify that on this 9th day of May, 2024, I caused to be served via email a true and correct

copy of the **STIPULATED MOTION TO EXTEND RESPONSIVE PLEADING DEADLINE**

**AND STIPULATION RE: ACCEPTANCE OF SERVICE**, on the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**ARMSTRONG TEASDALE LLP**
Brennan H. Moss
222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

    /s/ Erik A. Christiansen

EXHIBIT A

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Counsel for Blue Owl Capital Corporation*

---

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| BLUE OWL CAPITAL CORPORATION, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **PLAINTIFF'S NOTICE OF UNOPPOSED MOTION TO CONSOLIDATE FILED IN CASE NO. 230902160** <br><br> Civil No. 240903251 <br><br><br> Judge: Hon. Coral Sanchez <br><br> Discovery Tier 3 |

## <u>NOTICE OF MOTION</u>

PLEASE TAKE NOTICE that Walker Edison Furniture Company, LLC ("Walker Edison") and Blue Owl Capital Corporation ("Blue Owl") filed a motion to consolidate for discovery and pretrial purposes the instant action with the earlier-filed action, *Walker Edison Furniture Company, LLC v. Brad Bonham, et al.*, Case No. 230902160, pending before Judge Robert P. Faust, pursuant to Utah Rule of Civil Procedure 42. Walker Edison and Blue Owl filed the motion to consolidate in Case No. 230902160 and file the Notice of Motion in this case as required by Rule 42(a)(2). Walker Edison and Blue Owl have consulted with Defendants in both actions regarding this motion, and all Defendants agree to Plaintiffs' motion to consolidate.

DATED        May 9, 2024

<div style="margin-left: 40%;">

PARSONS BEHLE & LATIMER

/s/ Erik A. Christiansen
Erik A. Christiansen

*Attorneys for Walker Edison Furniture Company, LLC and Blue Owl Capital Corporation*

</div>

## CERTIFICATE OF SERVICE

I certify that on this 9th day of May, 2024, I caused to be served via email a true and correct copy of the **PLAINTIFF'S NOTICE OF UNOPPOSED MOTION TO CONSOLIDATE FILED IN CASE NO. 230902160**, on the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**
Brennan H. Moss
222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

_/s/ Sue Fiefia_____

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Counsel for Blue Owl Capital Corporation*

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| BLUE OWL CAPITAL CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **NOTICE OF ERRATA**<br><br>Civil No. 240903251<br><br><br>Judge: Hon. Coral Sanchez<br><br>Discovery Tier 3 |

**NOTICE OF ERRATA**

Plaintiff respectfully submits this erratum to one of the filings it submitted yesterday.

Please find attached at Exhibit A a corrected version of Plaintiff's Notice of Unopposed Motion to

Consolidate Filed in Case No. 230902160.

DATED        May 10, 2024

PARSONS BEHLE & LATIMER

/s/ Erik A. Christiansen
Erik A. Christiansen

*Attorneys for Walker Edison Furniture
Company, LLC and Blue Owl Capital Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 10th day of May, 2024, I caused to be served via email a true and

correct copy of the **NOTICE OF ERRATA**, on the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**
Brennan H. Moss
222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

_____/s/ Susan Helier_____

The Order of the Court is stated below:
**Dated:** May 10, 2024          /s/  CORAL SANCHEZ
              09:38:16 AM              District Court Judge

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Counsel for Blue Owl Capital Corporation*

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| BLUE OWL CAPITAL CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **ORDER GRANTING STIPULATED MOTION TO EXTEND RESPONSIVE PLEADING DEADLINE**<br><br>Civil No. 240903251<br><br>Judge: Hon. Carol Sanchez<br><br>Discovery Tier 3 |

Before the Court is the Parties' Stipulated Motion to Extend Responsive Pleading

Deadline, filed on May 9th, 2024.  Based on the stipulation, and for good cause appearing,

**IT IS HEREBY ORDERED** that the request is GRANTED.  Defendants' responsive

pleadings shall be due on or before June 24, 2024.  If Defendants file any motion, Plaintiff shall

have until July 24, 2024 to file an opposition.

**In accordance with the Utah State District Courts Efiling Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

Agreed as to form by:

**PARR BROWN GEE & LOVELESS, P.C.**

/s/ David C. Reymann
David C. Reymann
Jonathan O. Hafen

101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga

1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II,
L.P., Prospect Hill Growth Fund II Co-Invest,

**SPERLING & SLATER, LLC**

/s/ Greg Shinall
Greg Shinall

55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**ARMSTRONG TEASDALE LLP**

/s/ Brennan H. Moss
Brennan H. Moss

222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

2

L.P., Prospect Hill Growth Partners, L.P.,
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.


**PARSONS BEHLE & LATIMER**


/s/ Erik A. Christiansen
Erik Christiansen
Alan S. Mouritsen
Brian M. Rothschild

201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*For Plaintiff Blue Owl Capital Corporation*

3

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 9th day of May, 2024, I caused to be served via email a true and correct copy of the **ORDER GRANTING STIPULATED MOTION TO EXTEND RESPONSIVE PLEADING DEADLINE**, on the following:

| | |
|---|---|
| **PARR BROWN GEE & LOVELESS, P.C.** | **SPERLING & SLATER, LLC** |
| David C. Reymann | Greg Shinall |
| Jonathan O. Hafen | 55 West Monroe Street, 32nd Floor |
| 101 South 200 East, Suite 700 | Chicago, IL 60603 |
| Salt Lake City, UT  84111 | shinall@sperling-law.com |
| dreymann@parrbrown.com | |
| jhafen@parrbrown.com | |

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

*/s/ Erik A. Christiansen*

4



The Order of the Court is stated below:
**Dated:** May 10, 2024          /s/   CORAL SANCHEZ
              09:38:16 AM                    District Court Judge

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Counsel for Blue Owl Capital Corporation*

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| BLUE OWL CAPITAL CORPORATION, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **ORDER GRANTING STIPULATED MOTION TO EXTEND RESPONSIVE PLEADING DEADLINE** <br><br> Civil No. 240903251 <br><br><br> Judge: Hon. Carol Sanchez <br><br> Discovery Tier 3 |

Before the Court is the Parties' Stipulated Motion to Extend Responsive Pleading

Deadline, filed on May 9th, 2024.  Based on the stipulation, and for good cause appearing,

**IT IS HEREBY ORDERED** that the request is GRANTED.  Defendants' responsive

pleadings shall be due on or before June 24, 2024.  If Defendants file any motion, Plaintiff shall

have until July 24, 2024 to file an opposition.

**In accordance with the Utah State District Courts Efiling Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

Agreed as to form by:

**PARR BROWN GEE & LOVELESS, P.C.**

/s/ David C. Reymann
David C. Reymann
Jonathan O. Hafen

101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**SPERLING & SLATER, LLC**

/s/ Greg Shinall
Greg Shinall

55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga

1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II,
L.P., Prospect Hill Growth Fund II Co-Invest,

**ARMSTRONG TEASDALE LLP**

/s/ Brennan H. Moss
Brennan H. Moss

222 South Main St.
Suite 1830
Salt Lake City, UT 84101
bmoss@atllp.com

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

2

L.P., Prospect Hill Growth Partners, L.P.,
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.


**PARSONS BEHLE & LATIMER**


/s/ Erik A. Christiansen
Erik Christiansen
Alan S. Mouritsen
Brian M. Rothschild

201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*For Plaintiff Blue Owl Capital Corporation*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on this 9th day of May, 2024, I caused to be served via email a true and correct copy of the **ORDER GRANTING STIPULATED MOTION TO EXTEND RESPONSIVE PLEADING DEADLINE**, on the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

*/s/ Erik A. Christiansen*

4

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael M. Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
Ryan S. Appleby (pro hac vice pending)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Ángeles, California 90071
Telephone: 213.229.7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com
rappleby@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

### FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>    Defendants. | **CERTIFICATE OF SERVICE - RESPONSES AND OBJECTIONS TO FOUNDER DEFENDANTS' FIRST SET OF DISCOVERY REQUESTS TO PLAINTIFF**<br><br>Civil No. 230902160<br><br>Judge Robert Faust<br><br>Discovery Tier 3 |

I hereby certify that on May 22, 2024, a true and correct copy of the plaintiff's Responses

and Objections to Founder Defendant's First Set of Discovery Requests to Plaintiff was served

Via Electronic Mail on the Following:


Brennan H. Moss (10267)
 Michael A. Gehret (11890)
Charles D. Morris (18058)
ARMSTRONG TEASDALE LLP
222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
Telephone: (801) 401-1600
 Email: bmoss@atllp.com
        mgehret@atllp.com
        cdmorris@atllp.com
*Attorneys for Defendants Brad Bonham, MB & BB Holdings, LLC, and Matt Davis*

David C. Reymann
Kade N. Olsen
Tammy M. Frisby
PARR BROWN GEE & LOVELESS
101 South 200 east, Suite 700
Salt lake City, Utah 84111
Email: dreymann@parrbrown.com
        kolsen@parrbrown.com
        tfrisby@parrbrown.com
*Attorneys for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, Walker Edison Holding Co., LLC, Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P. JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P*

Greg Shinall
Matthew Rice
Sean M. Koller
SPERLING & SLATER, LLC
55 West Monroe Street, 32nd Floor
Chicago, Illinois 6063
Email shinall@sperling-law.com
        mrice@sperling-law.com
        skoller@sperling-law.com
*Attorneys for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC*

Geoffrey Chepiga
William Clareman
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Email: gchepiga@paulweiss.com
        wclareman@paulweiss.com
*Attorneys for Defendants Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P*

DATED: May 22, 2024

PARSONS BEHLE & LATIMER

*/s/ Erik A. Christiansen*
Erik A. Christiansen

*Attorneys for Walker Edison Furniture Company, LLC*

3

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

Michael M. Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

*Co-Counsel for Walker Edison Furniture Company, LLC*

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, | |
| Plaintiff, | **MOTION AND CONSENT OF SPONSORING LOCAL COUNSEL FOR PRO HAC VICE ADMISSION OF RYAN S. APPLEBY** |
| vs. | |
| BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, | Civil No. 230902160  Judge Robert Faust  Discovery Tier 3 |
| Defendants. | |

Pursuant to Rule 14-806 of the Utah Code of Judicial Administration, Erik A. Christiansen moves the court for an order admitting Ryan S. Appleby pro hac vice to act as counsel in the above-captioned matter on the following basis:

Plaintiff Walker Edison Furniture Company, LLC has retained the services of Ryan S. Appleby, who is neither licensed to practice law in the State of Utah nor a resident of Utah. Ryan S. Appleby is admitted to practice in the State of California, where he is an attorney in good standing, as evidenced by the original Certificate of Good Standing and Application submitted to the Utah State Bar.

As required by Rule 14-806, both a filing fee and Ryan S. Appleby's Application and Certificate of Good Standing have been submitted to the Utah State Bar. Copies of the Application, the Certificate of Good Standing and Acknowledgment from the Utah State Bar showing payment of the required $425 fee are attached hereto as Exhibit A.

Erik A. Christiansen hereby agrees to serve as designated local counsel for the subject case. He agrees to comply with all applicable provisions of the Utah Rules of Civil Procedure and the Utah Code of Judicial Administration, and to readily communicate with opposing counsel and the court regarding the conduct of this case. He also agrees to accept papers when served as well as recognizes the responsibility to act for and on behalf of the clients in all case-related proceedings, including hearings, pretrial conferences, and trials, should Ryan S. Appleby fail to respond to any court order.

DATED        May 22, 2024

PARSONS BEHLE & LATIMER

/s/ Erik A. Christiansen
Erik A. Christiansen

*Attorneys for Walker Edison Furniture Company, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 22nd day of May, 2024 that a true and correct copy of the foregoing **MOTION AND CONSENT OF SPONSORING LOCAL COUNSEL FOR PRO HAC VICE ADMISSION OF RYAN S. APPLEBY** was filed with the Court using the Court's e-filing system which sent notice to those registered to receive notice in the above-captioned matter.


    /s/ Madison Tremblay

# Exhibit A

# Pro Hac Vice Application - Pro Hac Vice

**Application Submitted on 05.20.2024**

**Personal Information**

**Personal Information**

| | |
|---|---|
| Applicant Full Name | Ryan Stephen Appleby |
| Applicant Firm Name | Gibson, Dunn & Crutcher LLP |
| Applicant Firm Address | 333 South Grand Avenue |
| Applicant Firm Address | |
| Applicant City | Los Angeles |
| Applicant State | California |
| Applicant Zip Code | 90071 |
| Applicant Mobile Number | 8587742507 |
| Applicant Office Number | 2132297353 |
| Pro Hac Vice Applicant Email | rappleby@gibsondunn.com |

**Local Counsel Information**

| | |
|---|---|
| Local Counsel Name | Erik Christiansen |
| Local Counsel Bar Number | 7372 |
| Local Counsel Firm Name | Parson Behle & Latimer |
| Local Counsel Firm Address 1 | 201 South Main Street |
| Local Counsel Firm Address 2 | Suite 1800 |
| Local Counsel City | Salt Lake City |
| **Local Counsel State** | UTAH |
| Local Counsel Zip Code | 84111 |
| Local Counsel Telephone Number | 801.532.1234 |
| Local Counsel Email | echristiansen@parsonsbehle.com |

**Case Information**

| | |
|---|---|
| Case Name | Walker Edison Furniture Company, LLC v. Brad Bonham, et al. |
| Case Number | 230902160 |
| Party on whose behalf Applicant seeks to appear | Plaintiff |
| Will you be appearing before a court? | Yes |
| Name of Court and County | Third Judicial District, Salt Lake County |

**Bar Membership**

**Bar Membership**

List every state in which you hold a license to practice law.

NOTE: Please upload <u>separately</u>, a certificate of good standing from the licensing entity of each state that you have been admitted to.

| | |
|---|---|
| Jurisdiction | CA |
| Bar Number | 293008 |
| Date of Admission | 12-2-2013 |

**Disciplinary Actions**

| | |
|---|---|
| Have you ever been the subject of disciplinary action by any bar? | No |
| Are you (the Applicant) the subject of any pending disciplinary proceedings by any state's or court's disciplinary agency? | No |

**Prior Pro Hac in Utah**

List previous Pro Hac Vice Admissions in the State of Utah. If not applicable, enter N/A.

| | |
|---|---|
| Case Name | N/A |
| Case Number | N/A |

**Attestation**

**Attestation**

| | |
|---|---|
| Applicant certifies that they are a member in good standing of all bars to which they have been admitted | Yes |
| Applicant is familiar with the rules of procedure and evidence, including applicable local rules | Yes |
| Applicant will be available for all depositions, hearings and conferences | Yes |
| Applicant will comply with the rulings and orders of the court | Yes |
| Applicant certifies that they have read and will comply with the Utah Rules of Professional Conduct and the Utah Standards of Professionalism and Civility | Yes |
| Applicant hereby certifies that they are not a resident of Utah and that the foregoing is true and correct and is subject to the penalty of perjury | Yes |
| Require Electronic Signature / Date | |

By typing your name, you are signing this document electronically and demonstrating your intent to use this electronic signature as your verification that you have read, understood and agreed to the terms and conditions listed in the Release of Liability and Acknowledgement and Acceptance of Testing Conditions.

| | |
|---|---|
| Type your name in the box to sign electronically: | Ryan Stephen Appleby |

**Signed on this date: 05/20/2024 09:46:51**

# THE STATE BAR OF CALIFORNIA
# CERTIFICATE OF STANDING

May 13, 2024

TO WHOM IT MAY CONCERN:

This is to certify that according to the records of the State Bar, RYAN STEPHEN APPLEBY, #293008 was admitted to the practice of law in this state by the Supreme Court of California on December 2, 2013 and has been since that date, and is at date hereof, an ACTIVE licensee of the State Bar of California; and that no recommendation for discipline for professional or other misconduct has ever been made by the Board of Trustees or a Disciplinary Board to the Supreme Court of the State of California.

THE STATE BAR OF CALIFORNIA

Alex Calderon
Custodian of Records

**Utah Bar Admissions**
**645 South 200 East**
**Salt Lake City, UT 84111**
**TELEPHONE 801 531-9077**



# Utah State Bar ®

645 South 200 East, Suite 310 • Salt Lake City, Utah 84111-3834
Telephone: 801-531-9077
http://www.UtahBar.org

## ACKNOWLEDGEMENT OF SUPPORTING DOCUMENTATION
## AND RECEIPT OF PRO HAC VICE FILING FEE

| | |
|---|---|
| Date Issued: | May 21, 2024 |
| Case Name: | Walker Edison Furniture Company, LLC v. Brad Bonham, et al. |
| Court Name: | In The Third Judicial District, Salt Lake County, State of Utah |
| Case Number: | 230902160 |

This letter serves as an acknowledgement that the $425.00 pro hac vice filing fee for **Ryan Stephen Appleby** in the above-referenced case has been paid to the Utah State Bar and that the required supporting documentation is complete and in good order. If you have any questions, please call the Bar at (801) 531-9077.

Maribeth LeHoux
General Counsel

**Note to Counsel:** An original motion signed by a member of the Utah State Bar who expressly consents to appearing as local counsel should be filed with the court along with: (1) copies of the Application and Certificate of Good Standing which were provided to the Bar; (2) this Acknowledgement of Supporting Documentation and Receipt of Pro Hac Vice Filing Fee; and (3) a proposed order.

*Attorneys admitted Pro Hac Vice must file an "Annual Renewal with the Bar on or before the anniversary date of the filing of the[ir] initial application with the Bar... certify[ing] to the Bar that [they will] continue to act as counsel in the cause or that the cause has been finally adjudicated... And remit to the Bar an annual fee equal to the current dues paid by active members of the Utah State Bar. See Rule 14-806(n). and Rule 14-806(o) for failure to renew.

**For annual renewal information visit: https://www.utahbar.org/pro-hac-vice/

Serving the public. Working for justice.

The Order of the Court is stated below:
**Dated:** May 22, 2024          /s/  ROBERT FAUST
          05:10:35 PM          District Court Judge

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael M. Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
Ryan S. Appleby (pro hac vice pending)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com
rappleby@gibsondunn.com

---

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, | **ORDER ADMITTING RYAN S. APPLEBY FOR PRO HAC VICE ADMISSION** |
| Plaintiff, | |
| vs. | |
| BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, | Civil No. 230902160

Judge Robert Faust

**DISCOVERY TIER 3** |
| Defendants. | |

Based upon the Motion for Admission Pro Hac Vice of Ryan S. Appleby and the consent

to appear as associate counsel by Erik E. Christiansen, it is hereby ordered that Ryan S. Appleby

be admitted pro hac vice as counsel for Plaintiff Walker Edison Furniture Company, LLC in the

above-entitled matter.

IT IS SO ORDERED.

**In accordance with the Utah State District Courts E-filing Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

2

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael M. Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
Ryan S. Appleby (pro hac vice pending)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com
rappleby@gibsondunn.com

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, | |
|     Plaintiff, | **ORDER ADMITTING RYAN S. APPLEBY FOR PRO HAC VICE ADMISSION** |
| vs. | |
| BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, | Civil No. 230902160<br><br>Judge Robert Faust<br><br>Discovery Tier 3 |
|     Defendants. | |

Based upon the Motion for Admission Pro Hac Vice of Ryan S. Appleby and the consent to appear as associate counsel by Erik E. Christiansen, it is hereby ordered that Ryan S. Appleby be admitted pro hac vice as counsel for Plaintiff Walker Edison Furniture Company, LLC in the above-entitled matter.

IT IS SO ORDERED.

**In accordance with the Utah State District Courts E-filing Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

The Order of the Court is stated below:
Dated:   May 23, 2024                 /s/   ROBERT FAUST
              10:21:40 AM                     District Court Judge

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture Company, LLC*

Michael M. Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com

Adam J. Jantzi (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
ajantzi@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION TO CONSOLIDATE RELATED CASES** <br><br> Civil No. 230902160 <br><br><br> Judge Robert Faust <br><br> Discovery Tier 3 |

Before the Court is the Unopposed Motion to Consolidate Related Cases, filed on May 9, 2024.  Based on the unopposed motion, and for good cause appearing,

**IT IS HEREBY ORDERED** that the motion is GRANTED.  Case 240903251, currently pending before Judge Sanchez, shall be transferred to this Court and shall be consolidated with

Case 230902160 for discovery and pretrial purposes.  The Parties shall submit a joint proposed

consolidated case schedule by July 1, 2024.


**In accordance with the Utah State District Courts E-filing Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**


Agreed as to form by:


**PARSONS BEHLE & LATIMER**                     **GIBSON, DUNN & CRUTCHER LLP**


/s/ Erik A. Christiansen                                      /s/ Michael M. Farhang

Erik Christiansen                                                Michael M. Farhang (admitted pro hac vice)

Alan Mouritsen                                                   Michael S. Neumeister (admitted pro hac vice)

Brian M. Rothschild                                           Jeffrey C. Krause (admitted pro hac vice)


201 South Main Street, Suite 1800                    333 South Grand Avenue

Salt Lake City, Utah 84111                                Los Angeles, CA 90071

Telephone: 801.532.1234                                   Telephone: (213) 229-7000

Facsimile: 801.536.6111                                    mfarhang@gibsondunn.com

echristiansen@parsonsbehle.com                       mneumeister@gibsondunn.com

amouritsen@parsonsbehle.com                         jkrause@gibsondunn.com

brothschild@parsonsbehle.com


*For Plaintiff Walker Edison Furniture*               *For Plaintiff Walker Edison Furniture*
*Company, LLC*                                                   *Company, LLC*

May 23, 2024 10:21 AM                                                                                    2 of 3

# <u>Certificate of Service</u>

I HEREBY CERTIFY that on the 9th of May 2024, I electronically filed the foregoing **ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION TO CONSOLIDATE RELATED CASES**, which served all counsel of record.

*/s/ Sue Fiefia*

David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
PARR BROWN GEE & LOVELESS
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
(801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

Brennan Moss (10267)
Michael Gehret (11890)
ARMSTRONG TEASDALE LLP
222 South Main St., Suite 1830
Salt Lake City, Utah 84101
(801) 401-1600
bmoss@atllp.com
mgehret@atllp.com

*For defendants*: Adam Suttin, Phil Damiano,
Kyle Casella, David Fiorentino, Kyle Murphy,
Walker Edison Holding Co., LLC, Prospect
Hill Growth Fund II, L.P., Prospect Hill
Growth Fund II Co-Invest, L.P., Prospect Hill
Growth Partners, L.P., JWC-WE Holdco,
LLC, and JWC-WE Holdings, L.P.

*For defendants*: Brad Bonham, MB & BB
Holdings, LLC, and Matt Davis

Additional counsel listed in signature block

IN THE THIRD JUDICIAL DISTRICT COURT
FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **CERTIFICATE OF SERVICE OF DEFENDANTS' RESPONSE TO PLAINTIFF WALKER EDISON FURNITURE COMPANY, LLC'S FIRST SET OF INTERROGATORIES**<br><br>Civil No. 230902160<br><br>Judge Robert Faust<br><br>Discovery Tier 3 |

I HEREBY CERTIFY that on June 5, 2024, a true and correct copy of Defendants'
Response to Plaintiff Walker Edison Furniture Company, LLC's First Set of Interrogatories was
served via email on the following:

Erik Christiansen
Alan Mouritsen
Brian M. Rothschild
PARSONS BEHLE & LATIMER
201 South Main Street, Ste. 1800
Salt Lake City, Utah 84111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

Michael M. Farhang
Michael S. Neumeister
Jeffrey C. Krause
Ryan S. Appleby
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com
rappleby@gibsondunn.com

*Attorneys for Plaintiff, Walker Edison Furniture Company, LLC*

DATED this 5th day of June 2024.

**PARR BROWN GEE & LOVELESS**

/s/ David C. Reymann
David C. Reymann
Kade N. Olsen
Tammy M Frisby

101 South 200 East, Suite 700
Salt Lake City, Utah 84111
(801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

*For defendants:* Adam Suttin, Phil Damiano,
Kyle Casella, David Fiorentino, Kyle
Murphy, Walker Edison Holding Co., LLC,
Prospect Hill Growth Fund II, L.P., Prospect
Hill Growth Fund II Co-Invest, L.P., Prospect
Hill Growth Partners, L.P., JWC-WE Holdco,
LLC, and JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**

/s/ Brennan H. Moss
Brennan H. Moss
Michael Gehret

222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
(801) 401-1600
bmoss@atllp.com
mgehret@atllp.com

*For defendants*: Brad Bonham; MB & BB
Holdings, LLC, and Matt Davis

**SPERLING & SLATER, LLC**

/s/ Greg Shinall
Greg Shinall
Matthew Rice

55 West Monroe Street, 32nd Floor
Chicago, Illinois 60603
(312) 641-3200
shinall@sperling-law.com
mrice@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano,
Kyle Casella, David Fiorentino, Kyle
Murphy, and Walker Edison Holding Co.,
LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga
William Clareman

1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000
gchepiga@paulweiss.com
wclareman@paulweiss.com

*For defendants*: Prospect Hill Growth Fund
II, L.P., Prospect Hill Growth Fund II Co-
Invest, L.P., Prospect Hill Growth Partners,
L.P., JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 5th day of June 2024, I electronically filed the

foregoing **CERTIFICATE OF SERVICE OF DEFENDANTS' RESPONSE TO PLAINTIFF**

**WALKER EDISON FURNITURE COMPANY, LLC'S FIRST SET OF**

**INTERROGATORIES**, which served all counsel of record.

<div align="right">/s/ David C. Reymann          </div>

David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
PARR BROWN GEE & LOVELESS
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
(801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano,
Kyle Casella, David Fiorentino, Kyle Murphy,
Walker Edison Holding Co., LLC, Prospect
Hill Growth Fund II, L.P., Prospect Hill
Growth Fund II Co-Invest, L.P., Prospect Hill
Growth Partners, L.P., JWC-WE Holdco,
LLC, and JWC-WE Holdings, L.P.

Additional counsel listed in signature block

---

IN THE THIRD JUDICIAL DISTRICT COURT
FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **CERTIFICATE OF SERVICE OF DEFENDANTS' REQUESTS FOR PRODUCTION TO WALKER EDISON FURNITURE COMPANY, LLC** <br><br> Civil No. 230902160 <br><br> Judge Robert Faust <br><br> Discovery Tier 3 |

I HEREBY CERTIFY that on June 14, 2024, a true and correct copy of Defendants' Requests for Production to Walker Edison Furniture Company, LLC was served via email on the following:

Erik Christiansen
Alan Mouritsen
Brian M. Rothschild
PARSONS BEHLE & LATIMER
201 South Main Street, Ste. 1800
Salt Lake City, Utah 84111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

Michael M. Farhang
Michael S. Neumeister
Jeffrey C. Krause
Ryan S. Appleby
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com
rappleby@gibsondunn.com

*Attorneys for Plaintiff Walker Edison Furniture Company, LLC*

Brennan Moss
Michael Gehret
ARMSTRONG TEASDALE LLP
222 South Main St., Suite 1830
Salt Lake City, Utah 84101
(801) 401-1600
bmoss@atllp.com
mgehret@atllp.com

*Attorneys for Defendants Brad Bonham, MB & BB Holdings, LLC, and Matt Davis*

DATED this 14th day of June 2024.

**PARR BROWN GEE & LOVELESS**

/s/ David C. Reymann
David C. Reymann
Kade N. Olsen
Tammy M Frisby

101 South 200 East, Suite 700
Salt Lake City, Utah 84111
(801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

*For defendants:* Adam Suttin, Phil Damiano,
Kyle Casella, David Fiorentino, Kyle
Murphy, Walker Edison Holding Co., LLC,
Prospect Hill Growth Fund II, L.P., Prospect
Hill Growth Fund II Co-Invest, L.P., Prospect
Hill Growth Partners, L.P., JWC-WE Holdco,
LLC, and JWC-WE Holdings, L.P.

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga
William Clareman

1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000
gchepiga@paulweiss.com
wclareman@paulweiss.com

*For defendants*: Prospect Hill Growth Fund
II, L.P., Prospect Hill Growth Fund II Co-
Invest, L.P., Prospect Hill Growth Partners,
L.P., JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

**SPERLING & SLATER, LLC**

/s/ Greg Shinall
Greg Shinall
Matthew Rice

55 West Monroe Street, 32nd Floor
Chicago, Illinois 60603
(312) 641-3200
shinall@sperling-law.com
mrice@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano,
Kyle Casella, David Fiorentino, Kyle
Murphy, and Walker Edison Holding Co.,
LLC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 14th day of June 2024, I electronically filed the

foregoing **CERTIFICATE OF SERVICE OF DEFENDANTS' REQUESTS FOR**

**PRODUCTION TO WALKER EDISON FURNITURE COMPANY, LLC**, which served all

counsel of record.

/s/ David C. Reymann

**This motion requires you to respond.**
**Please see the Notice to Responding Party.**

David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
(801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano,
Kyle Casella, David Fiorentino, Kyle
Murphy, Walker Edison Holding Co., LLC,
Prospect Hill Growth Fund II, L.P., Prospect
Hill Growth Fund II Co-Invest, L.P.,
Prospect Hill Growth Partners, L.P., JWC-
WE Holdco, LLC, and JWC-WE Holdings,
L.P.

Additional counsel listed in signature block

Brennan Moss (10267)
**ARMSTRONG TEASDALE LLP**
222 South Main Street, Ste. 1830
Salt Lake City, Utah 84111
(801) 401-1608
bmoss@atllp.com

*For defendants: Brad Bonham, MB &*
*BB Holdings, LLC; Matt Davis*

---

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| BLUE OWL CAPITAL CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>    Defendants. | **DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**<br><br>**(Hearing Requested)**<br><br>Consolidated Case No. 230902160<br><br>Judge Robert P. Faust<br><br>Discovery Tier 3 |

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT AND GROUNDS ......................................................... 1

FACTUAL BACKGROUND ................................................................................... 4

LEGAL STANDARD ........................................................................................... 8

ARGUMENT ...................................................................................................... 9

    I.     The Complaint Should Be Dismissed on *Forum Non Conveniens* Grounds. ......... 9

    II.    The Fraudulent Transfer Claims Should Be Dismissed ....................................... 11

        A.     Blue Owl Has Not Pleaded That It Is a Current Creditor ......................... 12

        B.     No "Asset" Was Transferred, Precluding any Fraudulent Transfer Claim as a Matter of Law ......................................................................... 14

        C.     Blue Owl Ratified the Dividend, Barring its Fraudulent Transfer Claims ...................................................................................................... 14

    III.    The Fiduciary Duty Claims Are Improper and Should Be Dismissed ................. 16

        A.     Blue Owl Has Not Met the Procedural Requirements For Asserting a Derivative Claim for Breach of Fiduciary Duty ................................... 17

        B.     Blue Owl Lacks Standing to Assert its Derivative Claim ........................ 18

        C.     Blue Owl's Aiding and Abetting Fiduciary Duty Breach Claim Also Fails ................................................................................................. 19

    IV.    The Fraud Claim Should Be Dismissed ............................................................. 20

        A.     Blue Owl's Fraud Claim is Barred by the Loan Agreement ..................... 20

        B.     Blue Owl Ratified the Loan Agreement, Defeating any Claim of Fraud ...................................................................................................... 21

        C.     Blue Owl's Fraud Claim Is Not Pleaded with Particularity ..................... 22

        D.     This Claim Must Be Brought as Breach of Contract Claims .................... 23

    V.    The Ancillary Fraud Claims Likewise Fail ........................................................ 24

    VI.    The Unjust Enrichment Claim Fails ................................................................... 25

CONCLUSION ................................................................................................... 26

By this motion (the "Motion"), defendants Brad Bonham, MB & BB Holdings, LLC, Matt Davis, Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Phil Damiano, Ken Murphy, Adam Suttin, Kyle Casella, and David Fiorentino (together, "Defendants") move this Court to dismiss the complaint (the "Complaint"[1]) filed by plaintiff Blue Owl Capital Corporation ("Plaintiff" or "Blue Owl"). Pursuant to Utah R. Civ. P. 7(h), Defendants request a hearing on this Motion. In support of this Motion, Defendants respectfully state as follows:

## PRELIMINARY STATEMENT AND GROUNDS

Blue Owl's Complaint is a copycat action of a case already pending in this Court. But Blue Owl is the wrong plaintiff, the Complaint alleges legally deficient claims against the wrong defendants, and the Complaint was filed in the wrong court. It should be dismissed at the pleading stage.

Walker Edison Furniture Company LLC ("Walker Edison" or the "Company"), is a furniture business that manufactures ready-to-assemble furniture which it sells (primarily) through a "drop-ship" process in which furniture is shipped directly to consumers. Walker Edison experienced significant growth for years, until the middle of 2021, when it fell victim to macroeconomic trends that hit the online furniture industry especially hard.

Blue Owl—a sophisticated private equity firm that is in the business of lending money to private companies—loaned Walker Edison $300 million, $210 million of which was earmarked for a dividend to Walker Edison's owners. As part of the loan, Blue Owl acknowledged that it

---

[1]    Citations to "¶ __" are to paragraphs in the Complaint filed on April 24, 2024. Unless otherwise noted, all emphasis is added, internal citations are omitted, and quotes are cleaned up.

conducted an independent investigation of Walker Edison's financial health and agreed that the loan agreement superseded any oral or written representations from Defendants. Moreover, Blue Owl acknowledged, and approved, that the loan would be used to fund a dividend, and Blue Owl agreed to litigate any disputes related to the loan only in New York courts.

Since that dividend was paid in March 2021, Walker Edison underwent an out-of-court restructuring, and Blue Owl now indirectly owns the Company through its ownership of Walker Edison Intermediate, LLC. Defendants are former indirect owners of the Company.

On March 30, 2023, and no doubt at Blue Owl's bidding, Walker Edison sued Defendants in a case pending before this Court, *Walker Edison Furniture Company, LLC v. Brad Bonham, et al.* (Civil No. 230902160). Defendants dispute the allegations in the Walker Edison complaint, and discovery is underway. Thirteen months after Walker Edison initiated its lawsuit, and with no good explanation for the delay, Blue Owl—which has indirectly owned Walker Edison since before the first lawsuit was initiated—filed this copy-cat action asserting its own duplicative claims against Defendants, seeking an apparent double-recovery. Blue Owl is represented by the same counsel as Walker Edison, and—rather than asserting breach of contract claims against a company it owns—Blue Owl asserts nearly identical claims against Defendants as those asserted by Walker Edison itself. This Court should not countenance such gamesmanship.

As an initial matter, the Complaint should be dismissed on *forum non conveniens* grounds because Blue Owl expressly agreed to litigate any claims "arising out of or relating to any Loan Document" in New York courts. Absent some showing as to why the forum selection clause should not be enforced—and there is none—Blue Owl should not be able to sue in this Court.

Even beyond that threshold issue, Blue Owl's claims against these Defendants are improper, and the Complaint does not state a single claim upon which relief may be granted.

*First*, Blue Owl asserts claims for actual and constructive fraudulent transfer and seeks avoidance of the dividend (Counts I and II).  Utah's fraudulent transfer laws require a creditor-debtor relationship at the time the claims are asserted, and transfers may be avoided "to the extent necessary to satisfy the creditor's claims."  But Blue Owl does not plead that it is a current creditor of Walker Edison or that it currently has an unpaid claim.  In addition, under the plain text of Utah's fraudulent transfer statute, the dividend cannot give rise to a fraudulent transfer claim because the cash used to fund it was encumbered.  Moreover, Blue Owl ratified the dividend—the supposed fraudulent transfer—by lending Walker Edison funds explicitly required to be used for purposes of the dividend.  Blue Owl cannot now seek to avoid that very same transfer.  Further, even though Blue Owl claims to have learned of the supposed fraud only four months after the initial loan, rather than bring a fraud claim to rescind the Loan Agreement, Blue Owl continued to accept its benefits and exercised its remedies under the agreement (which is why Blue Owl now owns Walker Edison).  Blue Owl should not be permitted to have its cake and eat it too, and the Court should reject this belated attempt to avoid the transfer.

*Second*, Blue Owl attempts to bring claims for breach of fiduciary duty (Count III).  But fiduciary breach claims based on duties owed *to* Walker Edison can be brought only *by* Walker Edison.  Blue Owl would otherwise need, but does not have, standing to bring this claim derivatively.  For the same reasons, Blue Owl does not have standing to pursue a claim for aiding and abetting a breach of fiduciary duty (Count IV).

*Third*, Blue Owl attempts to bring a claim for fraud against all Defendants for allegedly preparing and providing Blue Owl with materially false and misleading financial statements (Count VI).  But Blue Owl expressly agreed that it "conducted its own independent investigation of the [Company's] financial condition" and that the Loan Agreement constitutes "the entire

3

contract among the parties . . . and supersede[s] any and all previous agreements and understandings, oral or written, relating to the subject matter hereof."  In light of these detailed and specific provisions and disclaimers, Blue Owl cannot plead that it relied on any purported misrepresentation from any individual Defendant, let alone all of them.  Blue Owl also has not pleaded fraud with the requisite "particularity," and the Complaint utterly fails to identify who said what to whom that was fraudulent.  Even more troubling, Blue Owl's fraud claim is really a claim for breach of contract, which should be asserted against Walker Edison.

*Fourth*, given the deficiency in Blue Owl's fraud claim, Blue Owl's claims for civil conspiracy (Count V) and aiding and abetting fraud (Count VII) should also be dismissed, as they both require an adequately pleaded underlying claim of fraud.

*Finally*, Blue Owl's unjust enrichment claim (Count VIII) should be dismissed because Blue Owl has not pleaded that there are no adequate remedies at law.  The use of cash to fund the dividend was expressly governed by the Loan Agreement and therefore cannot form the basis of a quasi-contractual theory.  Further, Blue Owl has already exercised its remedies, and can pursue any other ordinary breach of contract claims against Walker Edison it may have.

## FACTUAL BACKGROUND

Pursuant to Rules 12(b) and 10(c) of the Utah Rules of Civil Procedure, the following factual background is derived from the Complaint and documents central to the same.  The facts alleged therein are accepted as true only for purposes of this Motion.

Walker Edison is a Utah corporation founded in 2006 by Brad Bonham and Matthew Davis. ¶ 35.  In September 2018, the PHGP Defendants acquired an approximately 55% ownership in

Walker Edison, and the Founder Defendants retained a 45% ownership interest in the Company. ¶ 40.[2]

Walker Edison is in the business of supplying "affordable, ready to assemble home furnishing products through e-commerce channels to consumers worldwide." ¶ 35. Walker Edison "benefited from the significant and immediate growth in the online furniture industry" in the years leading up to and during the beginning of the COVID-19 pandemic. ¶ 44. From 2017 to 2020, its EBITDA increased by six times. ¶ 44.

In late 2020, seeking to capitalize on the Company's historically strong financial position, Defendants began considering ways to return capital to its investors. ¶ 45. This ultimately culminated in Defendants settling on a dividend recapitalization transaction (the "Dividend Recapitalization"), whereby it obtained a loan, secured by interests in the Company's assets, and used the loan proceeds to, among other things, issue a dividend (the "Dividend"). ¶¶ 45–46.

On March 10, 2021, Defendants began engaging in discussions with Blue Owl regarding the Dividend Recapitalization. ¶ 60. To facilitate Blue Owl's extensive due diligence of the proposed transaction, Defendants provided Blue Owl with actual and projected financials (the "Financial Statements"), and engaged in multiple due diligence discussions. ¶ 61. Blue Owl claims that Defendants provided "fraudulent projections" that "contemplated that Walker Edison would continue its earlier strong performance despite known and knowable facts to the contrary." ¶ 62. Blue Owl does not, however, plead with particularity the amount of any purported over- or under-statement in the Financial Statements.

---

[2]    In the Complaint, Brad Bonham, MB & BB Holdings, LLC, and Matt Davis are collectively referred to as the "Founder Defendants," with the remaining defendants referred to as the "PHGP Defendants." ¶¶ 16, 17.

Following a three-week period of due diligence, on March 31, 2021, Blue Owl entered into a loan agreement with Walker Edison (Borrower), Walker Edison Intermediate, LLC (Holdings/Guarantor), and EW Furniture, LLC (Guarantor) (the "Loan Agreement"). ¶ 97; *see also* Ex. A. None of these entities—who, with Blue Owl, are the only parties to the Loan Agreement—is named as a defendant in the instant action.

In the Loan Agreement, Walker Edison represented that the Financial Statements were prepared in accordance with GAAP (Ex. A § 3.04(a)), that "[s]ince the Closing Date, there has been no event, change, circumstance or occurrence that . . . has had or would reasonably be expected to result in a Material Adverse Effect" (Ex. A § 3.04(b)), and that no projections "contained or contains any material misstatement of fact or omitted or omits to state any material fact" (Ex. A § 3.13).

Also in the Loan Agreement, Blue Owl acknowledged that it "conducted its own independent investigation of the financial condition and affairs of the Credit Parties and their Subsidiaries and made its own credit analysis and decision to enter into this [Loan] Agreement." Ex. A § 9.07. Blue Owl also agreed that the Loan Agreement and related loan documents "constitute the entire contract among the parties relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof." Ex. A § 10.06.

Further, the Loan Agreement provides that each party to it "irrevocably and unconditionally submits" to the "Supreme Court of the state of New York" in "any action or proceeding arising out of or relating to any Loan Document." Ex. A § 10.09(b).

Pursuant to the Loan Agreement, the Company received approximately $295 million in net cash, roughly $83 million of which was used to repay existing debt, and roughly $210 million of

which was used to pay a dividend (the "<u>Dividend</u>").  ¶¶ 99–100.  The use of the proceeds was no secret.  In fact, as is evident from the very first page of the Loan Agreement, Walker Edison—with Blue Owl's express consent and agreement—intended to use the proceeds to "make a cash Dividend . . . in an amount up to $210,000,000."  Ex. A at 1.  And use of the loan proceeds for this purpose was an express requirement of the Loan Agreement.  Ex. A § 3.11

Blue Owl now alleges that Walker Edison was rendered immediately insolvent as a result of the Dividend.  ¶¶ 109, 116.  Nevertheless, a second "New York-based private equity growth firm" invested an additional $250 million in equity into Walker Edison Holding Company, LLC—the Company's indirect owner—*after* the Dividend.[3]  ¶ 114.  Blue Owl alleges, without any supporting facts, that "Defendants presented unreasonable and inflated projections to the private equity growth firm in order to induce it to enter into the equity transaction."  *Id.*  The private equity firm in question is not a plaintiff in this action and has never asserted any claims against any Defendants or Walker Edison.

Though Blue Owl alleges that "anticipated problems were borne out as the months passed" following the Dividend Recapitalization, including that "the Company's ability to borrow cash under its ABL Facility was limited," the Company was able to borrow the full amount available under the ABL Facility by year end 2021.  ¶¶ 119–20.  In September and December 2021, Defendants themselves made a further equity investment of $60 million into the Company.  ¶ 121.

Walker Edison underwent an out-of-court restructuring over a year later, and Blue Owl and other lenders took indirect ownership of the Company (through taking ownership of the Company's 100% owner, Walker Edison Intermediate, LLC) pursuant to a Restructuring Support

---

[3]    The Complaint contains a typographical error that suggests this further investment occurred in May 2020.  However, the Complaint recognizes that this transaction occurred "just a few months later" following the March 2021 Dividend Recapitalization.  As such, Plaintiff obviously intended to plead that the additional $250 million private equity investment occurred in May 2021.

Agreement dated January 27, 2023 (the "RSA").  ¶ 125.  The Complaint alleges that Walker Edison entered into the RSA, to "satisfy the Company's ongoing obligations," among other reasons. ¶ 126.

On March 30, 2023, Walker Edison—by that time controlled by Blue Owl and its affiliates—filed an action against Defendants in Salt Lake County, Utah, and filed an amended complaint on May 8, 2023 (the "Walker Edison Complaint").  Walker Edison asserted claims for wrongful distribution, constructive fraudulent transfer, actual fraudulent transfer, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, aiding and abetting a breach of fiduciary duty, civil conspiracy, and unjust enrichment.  The Walker Edison Complaint alleges substantially identical facts as alleged in the Complaint and seeks similar relief.

Blue Owl filed this action on April 24, 2024.  But rather than asserting claims against Walker Edison (which it now indirectly owns) for breach of contract, Blue Owl asserts a host of improper claims against the wrong parties.

## LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), courts must "accept the factual allegations in the complaint as true and interpret those facts, and all reasonable inferences drawn therefrom, in a light most favorable to the plaintiff as the nonmoving party." *Val Peterson Inc. v. Tennant Metals Pty. Ltd.*, 2023 UT App 115, ¶ 20, 537 P.3d 660.  The sufficiency of the complaint "must be determined by the facts pleaded rather than the conclusions stated." *Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶ 60, 70 P.3d 17.  Therefore, "mere conclusory allegations in a pleading, unsupported by a recitation of relevant surrounding facts, are insufficient to preclude dismissal." *Howard v. PNC Mortg.*, 2012 UT App 19, ¶ 2, 269 P.3d 995.  Allegations of fraud must be pleaded with particularity.  *See* Utah R. Civ. P. 9(c).

8

Documents attached to the Complaint or referred to in the Complaint and central to Plaintiff's claim "may properly be considered by the district court in deciding a motion to dismiss, even when they contain statements contrary to those averred in the complaint." *Kocherhans v. Orem City*, 2011 UT App 399, ¶ 3 n.3, 266 P.3d 190; *see also Oakwood Village LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 13, 104 P.3d 1226.

## ARGUMENT

### I.    The Complaint Should Be Dismissed on *Forum Non Conveniens* Grounds.

In assessing a motion to dismiss on *forum non conveniens* grounds, the Court must "determine whether the plaintiff's choice of forum is entitled to deference" and then "whether an adequate alternative forum exists." *Diversified Striping Sys., Inc. v. Kraus*, 2014 UT App 287, ¶ 8, 341 P.3d 932.  Where there is an adequate alternate forum, the Court must analyze the "*Summa* factors," which include:  (1) "the location of the primary parties"; (2) "the place where the fact situation creating the controversy arose"; (3) "the ease of access to proof, including the availability and costs of obtaining witnesses"; (4) "the enforceability of any judgment that may be obtained"; (5) "the burdens that may be imposed upon the court in question in litigating matters which may not be of local concern"; (6) "the practical burden plaintiffs will face in filing a new action after dismissal for *forum non conveniens*"; and (7) "any other relevant considerations."  *Id.* (quoting *Summa Corp. v. Lancer Indus. Inc.*, 559 P.2d 544, 546 (Utah 1977)).  All of these factors weigh in favor of dismissal here:

*First*, Blue Owl's decision to file this action in Utah should not be entitled to deference because Blue Owl "irrevocably and unconditionally" agreed to litigate "any action or proceeding arising out of or relating to any Loan Document" in the state or federal courts in New York.  Ex. A § 10.09(b).  "[T]he primary focus of the step-one analysis is whether the plaintiff's choice was motivated by legitimate reasons" (such as "when the plaintiff has brought suit in its home

jurisdiction") or if the choice of forum was intended to "harass[] or annoy[] the defendant . . . or for tactical advantage." *Edwards v. Carey*, 2019 UT App 182, ¶ 23, 454 P.3d 73.  As set forth above, the claims at issue here are really disguised breach of contract claims based on covenants in the Loan Agreement, which contained a forum selection clause.  Courts in Utah have made clear that where there is an enforceable contract with a forum selection clause, the "forum selection clause should be weighed in the district court's *forum non conveniens* analysis," and Blue Owl bears the burden of "showing that there is an acceptable reason not to enforce the clause." *Energy Claims Ltd. v. Catalyst Inv. Grp. Ltd.*, 2014 UT 13, ¶¶ 44, 54, 325 P.3d 70.

Here, Blue Owl is a Maryland corporation headquartered in New York, and the filing of this Complaint in Utah in contravention of the Loan Agreement's forum selection clause was clearly motivated by a desire to gain a "tactical advantage." *Edwards*, 2019 UT App 182, ¶ 23. Blue Owl does not claim that the Loan Agreement is unenforceable nor has Blue Owl made any showing as to why the forum selection clause therein should not be enforced.  Absent an "acceptable reason not to enforce the clause," *Energy Claims*, 2014 UT 13, ¶ 54, Blue Owl's choice of forum should not be entitled to deference.

*Second*, the state and federal courts in New York, New York provide an "adequate alternative forum" for these claims.  *Diversified*, 2014 UT App 287, ¶ 8.

*Third*, none of the *Summa* factors caution against dismissal here: (1) the primary parties— Blue Owl and the PHGP Defendants—are based on the East Coast; that the Founder Defendants and the non-defendant Company are located in Utah should not counsel against dismissal; (2) the Complaint centers on communications among individuals in New York or Massachusetts, not the Founder Defendants located in Utah; (3) a majority of the relevant witnesses known to date are located on the East Coast, making New York a convenient central forum (and discovery will

otherwise involve electronically stored information, which is equally accessible from either forum); (4) there are no known impediments to Blue Owl enforcing a judgment in New York; (5) the Loan Agreement is to be construed under New York law, and New York's interest in enforcing a duly agreed upon forum selection clause outweighs any burden that may result from considering ancillary issues under Utah law; (6) without waiving any other defenses, all Defendants consent to suit in New York, so Blue Owl will not face any significant burden in filing an action in New York; and (7) the fact that the claims asserted in the Complaint are disguised breach of contract claims weigh in favor of holding Blue Owl to litigate in the contractually agreed-upon forum.

For all of these reasons, the Complaint should be dismissed without prejudice, and Blue Owl may refile against the proper defendants in the appropriate forum: New York.

\*      \*      \*

If the Court declines to dismiss on *forum non conveniens* grounds, the Complaint should be dismissed in any event because Blue Owl has failed to plead a claim upon which relief can be granted, as set forth in detail below.

## II.    The Fraudulent Transfer Claims Should Be Dismissed

Blue Owl alleges that the Dividend was a fraudulent transfer that should be avoided. Count I alleges that Walker Edison did not receive reasonably equivalent value in exchange for issuing the Dividend, and that as a result of the Dividend, Walker Edison was insolvent, "unable to pay its debts as they came due," and "had unreasonably small assets"—*i.e.*, a "constructively" fraudulent transfer. ¶¶ 129–40. Count II alleges that the Dividend was designed to "hinder, delay, and/or defraud creditors of Walker Edison"—*i.e.*, an "actually" fraudulent transfer. ¶¶ 141–46.

Rule 9(c)'s particularity requirement—which applies to all allegations of "fraud or mistake"—applies to actual fraudulent transfer claims. Utah R. Civ. P. 9(c); *see also*, *Hanks v. Anderson*, No. 219CV00999DBBDAO, 2021 WL 6428041, at \*8 (D. Utah Dec. 16, 2021),

*adopted*, No. 219CV00999DBBDAO, 2022 WL 111160 (D. Utah Jan. 12, 2022) (noting that "courts generally apply Rule 9(b)'s requirements to intentional fraudulent transfer claims").[4] Nonetheless, Blue Owl fails to state a viable fraudulent transfer claim under any pleading standard.

Blue Owl failed to plead that it is a current creditor of Walker Edison or that it currently has any unpaid claim. This is not surprising as Walker Edison, which has never filed for bankruptcy, is currently operating as a going concern and Blue Owl is a secured party that has already exercised remedies and taken control of the Company. Accordingly, Blue Owl has not alleged any "injury" that the Court can redress. Further, Blue Owl has not properly alleged any fraudulent transfer because the loan proceeds were fully encumbered while in Walker Edison's possession and therefore expressly fall outside the purview of Utah's fraudulent transfer statute. And in any event, Blue Owl consented to the Dividend—which was specifically required by the Loan Agreement—and Blue Owl cannot now seek to avoid it.

### A.    Blue Owl Has Not Pleaded That It Is a Current Creditor

Utah's fraudulent transfer laws "afford remedies for 'creditors' against 'debtors' who have engaged in fraudulent transfers of property," allowing creditors to "seek to undo or void a debtor's transfer, for example, that fraudulently 'plac[es] assets beyond [the] creditors' reach." *Eskelsen v. Theta Inv. Co.*, 2019 UT App 1, ¶ 24, 437 P.3d 1274, 1281; *see also Asphalt Trader Ltd. v. Beall*, No. 1:17-CV-15-HCN-DBP, 2022 WL 3138215, at *16 (D. Utah Aug. 5, 2022), *aff'd*, No. 22-4085, 2024 WL 698313 (10th Cir. Feb. 21, 2024) (the UFTA "provides a remedy for creditors who are ***actually harmed*** when a debtor transfers property; it does not provide a remedy in cases of only theoretical harm") (quoting *Rupp v. Moffo*, 2015 UT 71, ¶ 17, 358 P.3d 1060). Given its

---

[4]    Utah Rule of Civil Procedure 9(c) states the heightened pleading requirements for alleging fraud and is substantively identical in all relevant respects to Federal Rule of Civil Procedure 9(b).

remedial purpose, a fraudulent transfer claim "first requires a creditor-debtor relationship" and a "creditor" is someone with a "claim" or a "right to payment." *Eskelsen*, 2019 UT App 1, ¶ 25. Blue Owl did not plead that it is a ***current*** creditor of Walker Edison (the borrower under the Loan Agreement). *See, e.g.*, ¶ 130 (alleging that "Blue Owl . . . ***was*** a creditor of Walker Edison"). Blue Owl's prior status as a creditor is insufficient, as Utah law "require[s] an ongoing debtor-creditor relationship when a claim under the UFTA is filed." *Timothy v. Pia, Anderson, Dorius, Reynard & Moss, LLC*, 2019 UT 69, ¶ 18, 456 P.3d 731, 735; *see also* Utah Code § 25-6-202 (a transfer is voidable "as to a creditor"); *Hanks*, 2021 WL 6428041, at *7 (denying leave to amend where "the proposed amended pleading does not plausibly allege any underlying claim or 'right to payment' against entities which would give rise to a debtor-creditor relationship.").

Moreover, a creditor may only seek to avoid a transfer "to the extent necessary to satisfy the creditor's claim[s]." Utah Code § 25-6-303. But Blue Owl does not claim that Walker Edison is ***presently*** unable to satisfy any current obligations or is currently insolvent. To the contrary: the Complaint alleges that the Company restructured its liabilities by entering the RSA, one purpose of which was to "satisfy the Company's ongoing obligations." ¶¶ 125–27. Even if Blue Owl had been harmed by the Dividend, any such harm has already been remedied when Blue Owl exercised its contractual remedies as a secured party. *See Timothy*, 2019 UT 69, ¶¶ 18, 26 (where debt had been satisfied, plaintiffs were "not creditors with a claim" and could "no longer obtain a remedy under the UFTA."). Blue Owl's blatant attempt to obtain a windfall should not be permitted. *See Asphalt*, 2022 WL 3138215, at *16 (denying fraudulent transfer claim where there is no clear injury to plaintiff and where recovery would result in a "windfall" for plaintiff).

13

**B.    No "Asset" Was Transferred, Precluding any Fraudulent Transfer Claim as a Matter of Law**

Blue Owl's fraudulent transfer claims also fail because the Dividend was not an "asset" transfer under Utah law.  Utah's fraudulent transfer law requires a "transfer," which is defined to include any mode of disposing of an "asset."  Utah Code §§ 25-6-202; 25-6-203; 25-6-102(16). An "asset" is defined as "property of a debtor" but "***not . . . property to the extent it is encumbered by a valid lien***." Utah Code § 25-6-102(2); *see also Rupp*, 2015 UT 71, ¶ 17 (holding "that the transfer of fully-encumbered property does not constitute a fraudulent transfer").

The Security Agreement executed in connection with the Dividend Recapitalization, Ex. B § 2.1(j), makes clear that the loan proceeds were, while in possession of Walker Edison, subject to a valid lien.  *See Thermo Credit, LLC v. DCA Servs., Inc.*, 755 F. App'x 450, 456 (6th Cir. 2018) ("The proper time to evaluate whether the property was encumbered is prior to the transfer, when it was in [the debtor's] possession and control."); *Am. Fed. Bank v. W. Cent. Ag Servs.*, 530 F. Supp. 3d 780, 788 (D. Minn. 2021) (the "definition of 'asset' requires determining whether the property at issue is encumbered before transfer, when it is property of the debtor"). Because the loan proceeds were fully encumbered until the Dividend was issued, there was no "transfer" of an "asset" for purposes of Utah's fraudulent transfer statute.

**C.    Blue Owl Ratified the Dividend, Barring its Fraudulent Transfer Claims**

Even if Blue Owl could state a claim under the Utah fraudulent transfer statute, it is black letter law that a party to a transaction is estopped from challenging its validity when it acquiesces or otherwise affirms the act in question.  *See, e.g.*, *Tanner v. Provo Reservoir Co.*, 289 P. 151, 154 (Utah 1930) ("It has been repeatedly held that a person by acceptance of benefits may be estopped from questioning the existence, validity and effect of a contract.").

Here, the Loan Agreement **explicitly provided** that Walker Edison Furniture would "use the proceeds . . . to finance (i) the Closing Date Refinancing, (ii) **the Closing Date Dividends** and (iii) the payment of related fees, costs and expenses related to the foregoing transactions and the other Transactions." *See* Ex. A § 3.11; *see also* ¶ 6 (acknowledging Defendants disclosed plan to take Dividend out of the Company well before execution of Loan Agreement). Blue Owl cannot now complain about a transfer that was the **very purpose** of its loan to the Company. *See In re Lyondell Chem. Co.*, 503 B.R. 348, 385 (Bankr. S.D.N.Y. 2014), *abrogated on other grounds by In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98 (2nd Cir. 2016) (to establish ratification, "it is more than sufficient here for the LBO lenders to have known—as the documents themselves establish—that they were lending for the purposes of an LBO, and that the proceeds of their loans were going to stockholders").

Blue Owl's allegation that Defendants fraudulently induced it to enter the Loan Agreement does not change this outcome. As described in Part IV, *infra*, the fraud allegations are woefully deficient and do not satisfy Blue Owl's pleading burden. And even if Defendants had made materially false or misleading statements in connection with the Loan Agreement, Blue Owl explicitly acknowledged that it (and every other lender) conducted its own investigation into the Company's financial condition and agreed that the Loan Agreement constituted the parties' entire agreement. *See* Ex. A §§ 9.07, 10.06.

Moreover, Blue Owl claims to have known of Walker Edison's financial troubles "less than four months after" the issuance of the Dividend, yet Blue Owl continued to reap the benefits of the Loan Agreement, including by exercising its rights as a secured creditor, further ratifying the contract in January 2023 when it entered into the RSA. *See* ¶¶ 23, 123, 125. In addition, Blue Owl itself admits that its misapprehensions regarding Walker Edison's financial status were

corrected shortly after closing.  *See* ¶¶ 91, 123.  Therefore, the delay in bringing these claims constitutes "an implied or de facto ratification."  *Lowe v. April Indus., Inc.*, 531 P.2d 1297, 1299 (Utah 1974); *see also Frailey v. McGarry*, 211 P.2d 840, 844–45 (Utah 1949) ("Moreover, a defrauded party, after learning the truth will not be permitted to go on deriving benefits from the transaction and later elect to rescind.").

Permitting Blue Owl to proceed with its fraudulent transfer claims, after Blue Owl ratified the Dividend—both before ***and*** after its issuance—would be contrary to "over a hundred years of Utah case law" that recognizes the equitable principle of ratification.  *Swan Creek Vill. Homeowners v. Warne*, 2006 UT 22, ¶¶ 33–34, 134 P.3d 1122.  Indeed, given the myriad references to the Loan Agreement throughout the Complaint, "the existence of the affirmative defense . . . appear[s] within the complaint itself,"  and ratification on this basis is a proper ground for dismissal.  *HKS Architects Inc. v. MSM Enters. LTD*, 2021 UT App 70, ¶ 20, 496 P.3d 228.

## III.    The Fiduciary Duty Claims Are Improper and Should Be Dismissed

Blue Owl asserts a claim for breach of fiduciary duty against the "Controlling Defendants" for causing Walker Edison to enter the Loan Agreement when it was allegedly insolvent.  Blue Owl alleges that Defendants owed fiduciary duties to Walker Edison, and once Walker Edison was insolvent, "these fiduciary duties extended to Walker Edison's creditors."  ¶¶ 148–49.  Blue Owl similarly asserts a claim for aiding and abetting breach of fiduciary duty against all Defendants. ¶¶ 157–63.

These claims fail as a matter of law for at least three reasons:  *First*, any fiduciary duty claim relating to the approval of a Walker Edison dividend belongs to Walker Edison, not Blue Owl.  Blue Owl has not even attempted to meet the procedural requirements that are necessary to bring such a claim derivatively in Walker Edison's name.  *Second*, Blue Owl lacks standing to assert this claim, even derivatively, as the clear language of the Utah Limited Liability Company

Act (the "Utah LLC Act") does not permit a "creditor" to bring a fiduciary breach claim on behalf of a Utah LLC. *Third*, for these same reasons, Blue Owl lacks standing to assert its aiding and abetting fiduciary duty breach claim.

### A.    Blue Owl Has Not Met the Procedural Requirements For Asserting a Derivative Claim for Breach of Fiduciary Duty

The Complaint improperly attempts to assert a direct breach of fiduciary duty claim. Claims for breach of fiduciary duty owed to a limited liability company belong to that company, and Blue Owl has not ***even attempted*** to meet the procedural requirements for asserting a derivative claim. This alone warrants dismissal of this claim.

Pursuant to Walker Edison's Operating Agreement, the Utah LLC Act governs this fiduciary breach claim. *See* Ex. C § 1.1. Fiduciary breach claims fall "squarely in the category of claims that Utah law recognizes as classically derivative." *GLFP, Ltd. v. CL Mgmt., Ltd.*, 2007 UT App 131, ¶ 9, 163 P.3d 636. This is clear from the face of the Utah LLC Act, which provides that a "member of a member-managed limited liability company ***owes to the limited liability company***" duties of loyalty and care. Utah Code § 48-3a-409. It is these duties of "loyalty and care" to the Company that Blue Owl alleges were breached here. *See, e.g.*, ¶¶ 147–56 (alleging defendants breached the "fiduciary duties of care, loyalty, and good faith"). There are no fiduciary duties owed by any Defendant directly to Blue Owl or any other lender and Blue Owl does not attempt to plead one. And the Complaint makes clear that any harm from the alleged breach was harm ***to Walker Edison***, which could have only derivatively harmed Blue Owl. *See, e.g.*, ¶ 153. This cannot be asserted as a direct claim.

Accordingly, to bring a claim for breach of fiduciary duty, Blue Owl is required to either (i) make a demand on other members and plead "with particularity, the plaintiff's efforts, if any, to obtain the desired action," or (ii) show why the demand "would be futile." Utah Code § 48-3a-

802; *see also* Utah R. Civ. P. 23A.  Blue Owl does not attempt to make either showing, so cannot bring a derivative claim.[5]

### B.    Blue Owl Lacks Standing to Assert its Derivative Claim

Even if Blue Owl had pleaded the procedural requirements for bringing a derivative claim, Blue Owl lacks standing to bring its fiduciary duty claim.  The Utah LLC Act expressly specifies who may bring this claim—and a creditor ***is not*** a "proper plaintiff" under the Utah LLC Act.  *See* Utah Code § 48-3a-803.[6]  Rather, the Utah LLC Act makes clear that a derivative action can be maintained "***only by*** a person that is a member at the time the action is commenced" and (1) "was a member when the conduct giving rise to the action occurred"; or (2) "whose status as a member devolved on the person by operation of law or pursuant to the terms of the operating agreement from a person that was a member at the time of the conduct."  *Id.*  Blue Owl does not allege that it was ***ever*** a member of Walker Edison.  Nor could it—Walker Edison's Operating Agreement, which according to the Complaint, was "in effect at all times relevant," ¶ 150, provides that Walker Edison Holding is Walker Edison's "sole member."  Ex. C § 1.8.  Blue Owl does not plead that it is a member, so there is no basis for derivative standing.

Faced with this same question, the Delaware Supreme Court denied derivative standing to creditors of an insolvent Delaware LLC because the "plain language" of the Delaware LLC Act "limits derivative standing in LLCs exclusively to 'member[s]' or 'assignee[s].'"  *CML V, LLC v. Bax*, 28 A.3d 1037, 1041 (Del. 2011), as corrected (Sept. 6, 2011); *see also In re PennySaver USA Publ'g, LLC*, 587 B.R. 445, 467 (Bankr. D. Del. 2018) ("Creditors of an LLC have no standing to

---

[5]    Blue Owl certainly could not show that demand would be futile, as Walker Edison has already asserted fiduciary breach claims premised on the ***exact same facts*** in the Walker Edison Complaint.

[6]    Even if a creditor *were* a "proper plaintiff," as discussed above, Plaintiff has not made any attempt to plead that it is a current creditor.  *See supra* Part III.B.

bring a derivative breach of fiduciary duty claim against an LLC even if it is insolvent."). The Utah LLC Act is similar to the Delaware LLC Act, and should similarly be construed as barring Plaintiff's claim; accordingly, there is simply no legal basis for Blue Owl's assertion of a breach of fiduciary duty claim, regardless of Walker Edison's solvency.

### C. Blue Owl's Aiding and Abetting Fiduciary Duty Breach Claim Also Fails

Plaintiff's aiding and abetting breach of fiduciary duty claim fails for at least three reasons. *First*, it is also, necessarily, a derivative claim—it is premised on the exact same alleged breach underlying Blue Owl's fiduciary breach claim. *See Stephenson v. Citco Grp. Ltd.*, 700 F.Supp.2d 599, 610 (S.D.N.Y. 2010) (aiding and abetting fiduciary duty, like underlying breach, is derivative claim). Moreover, as with Blue Owl's fiduciary breach claim, the Complaint is clear that any harm flowing from this alleged aiding and abetting was harm *to the Company*. *See* ¶ 159 (alleging that Defendants' aiding and abetting of fiduciary duty breach "render[ed] *Walker Edison* insolvent"). Accordingly, the Court should also dismiss this claim for lack of standing. *See* Utah Code § 48-3a-803 (providing that only a limited liability company's "member" may bring a claim to enforce rights of the limited liability company). *Second*, the Utah LLC Act's requirement that a plaintiff make a demand or show why it is futile is equally applicable to Blue Owl's aiding and abetting claim, an independent ground for dismissal. *See, e.g.*, *Askenazy v. Tremont Grp. Holdings, Inc.*, No. 2010-04801-BLS2, 2012 WL 440675, at *10 (Mass. Super. Jan. 26, 2012) (failure to make demand required dismissal of aiding and abetting claim). *Third*, even putting Blue Owl's procedural failings aside, an aiding and abetting claim "may be summarily dismissed based upon the failure of the breach of fiduciary duty claims." *In re KKR Fin. Holdings. LLC S'holder Litig.*, 101 A.3d 980, 1003 (Del. Ch. 2014), *aff'd sub nom.*, *Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304 (Del. 2015).

IV.    **The Fraud Claim Should Be Dismissed**

Blue Owl asserts a claim of fraud against "all Defendants" based upon the preparation and transmission of the Financial Statements, which allegedly contained material misstatements and omissions. ¶ 177. This claim should be dismissed for several reasons:

A.    **Blue Owl's Fraud Claim is Barred by the Loan Agreement**

To plead fraud under Utah law, Blue Owl must allege "(1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage." *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 53 n.38, 201 P.3d 966. Blue Owl cannot claim that it "did in fact rely upon" any such representations (regardless of which Defendant made them) because Blue Owl specifically acknowledged that it "conducted its own independent investigation of the financial condition and affairs" of the Company. Ex. A § 9.07. In a detailed and specific integration clause, Blue Owl also agreed that "[t]his Agreement and the other Loan Documents . . . constitute the entire contract among the parties relating to the subject matter hereof and ***supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof***." Ex. A § 10.06.

"While general merger clauses are ineffective to exclude parol evidence of fraud in the inducement, a specific disclaimer destroys allegations that the agreements were executed in reliance upon contrary oral misrepresentations." *Cohan v. Sicular*, 214 A.D.2d 637 (N.Y. App. Div. 1995). Even a merger clause that is "general in nature" can "put the [party] on notice as to its intended effect." *Id.* For example, in *Daly v. Kochanowicz*, the court dismissed the plaintiff's

fraud claim because the contract specified that the buyer was entering the contract based on his own inspection and was not relying on any "information, data, statements or representations, written or oral" made by the seller. 67 A.D.3d 78, 95 (N.Y. App. Div. 2009). Where, as here, a plaintiff "stipulated in the contract that it was not relying upon any representations as to the very matter as to which it now claims it was defrauded, such specific disclaimer destroys the allegations in the plaintiff's complaint that the agreement was executed in reliance upon the defendant's . . . representations." *Mahn Real Est. Corp. v. Shapolsky*, 178 A.D.2d 383, 385–86 (N.Y. App. Div. 1st Dept. 1991); *see also HSH Nordbank AG v. UBS AG*, 95 A.D.3d 185, 199 (N.Y. App. Div. 1st Dept. 2012) (no fraud claim where plaintiff "expressly disclaimed any reliance upon representations by [the defendant]" and represented that "it was relying only on its own judgment and on the views of any advisors of its own choosing whom it had seen fit to consult.").

Blue Owl should be precluded from claiming that it was defrauded after expressly acknowledging in the Loan Agreement that it conducted its own investigation of Walker Edison's financial condition, and that the Loan Agreement superseded any oral or written representations. To credit Blue Owl's assertion that Defendants' alleged misrepresentations induced its assent "would in effect condone [Blue Owl's] own fraud in deliberately misrepresenting [its] true intention when it disclaimed reliance on any such representations at the time of contracting." *HSH Nordbank AG*, 95 A.D.3d at 201.

### B.  Blue Owl Ratified the Loan Agreement, Defeating any Claim of Fraud

Blue Owl ratified the Loan Agreement by accepting its benefits for over a year after the alleged misrepresentations had been discovered and cured. Utah courts consistently hold that a party "cannot go along with a contract for the purpose of enjoying benefits" and then seek to avoid the contract when it "discovers the benefits . . . will not be great enough to compensate him for the

loss he will sustain by reason of the fraud." *Fidelity & Deposit Co. of Maryland v. Goran, LLC*, No. 2:17-cv-00604-TC-PMW, 2020 WL 7401628, at *8 (D. Utah Dec. 17, 2020).

Blue Owl does not claim that any Defendant made any misrepresentations after the closing of the Loan Agreement. To the contrary, by its own admission, Blue Owl was quickly disabused of its claimed misapprehensions of the Company's financial status. ¶¶ 91, 123. Blue Owl does not allege that Walker Edison failed to make payments due to Blue Owl under the Loan Agreement, *see, e.g.,* Ex. A § 2.09 (requiring quarterly payments to Blue Owl of 0.25% of the principal), nor does Blue Owl allege any effort to rescind the Loan Agreement. And, of course, almost two years after executing the Loan Agreement, Blue Owl exercised its remedies and took full indirect ownership of Walker Edison under the RSA, further ratifying the Loan Agreement. *See* ¶¶ 125–126.

Once Blue Owl knew of the purported misrepresentations, it was required, "with all reasonable diligence, to disaffirm the contract[.]" *Thurston* v. *Block United LLC*, 2021 UT App 80, ¶ 17, 469 P.3d 268. Its failure to do so "gives rise to an implied or de facto ratification." *See Lowe*, 531 P.2d at 1299.

## C.    Blue Owl's Fraud Claim Is Not Pleaded with Particularity

To allege fraud under Utah law, "a party must state with particularity the circumstances constituting fraud[.]" Utah R. Civ. P. 9(c). "To satisfy this particularity requirement, a plaintiff must set forth the relevant surrounding facts . . . with sufficient particularity to show what facts are claimed to constitute such charges." *11500 Space Ctr. LLC v. Private Cap. Grp. Inc.*, 2022 UT App 92, ¶ 57, 516 P.3d 750. "The relevant surrounding facts must typically include the who, what, when, where, and how." *Id.* Critically, "one requirement for pleading fraud with particularity is to identify the offender." *Coroles v. Sabey*, 2003 UT App 339, ¶ 28, 79 P.3d 974; *see also 11500 Space Ctr.*, 2022 UT App 92, ¶ 59 (dismissing fraud claims where plaintiff "did

not plead with particularity who said what to whom.").  Blue Owl has not come close to satisfying this demanding burden.

Although Blue Owl alludes to a handful of instances where specific Defendants discussed the increase in freight and shipping costs and supply chain disruptions, *see* ¶¶ 52, 54–55, as well as a handful of anodyne conversations between Blue Owl and Defendants and the transmission of the Financial Statements to Plaintiff, ¶¶ 60–61, the Complaint does not connect any particular Defendant to any specific fraudulent representations made to any particular person at Blue Owl. Even if viewed collectively, the allegations in the Complaint do not give rise to particularized allegations of fraud, and they certainly do not "supply . . . information regarding [each defendant's] personal participation in fraud." *Fid. Nat'l Title Ins. v. Worthington*, 2015 UT App 19, ¶ 12, 344 P.3d 156 (quoting *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 21, 70 P.3d 35).

### D.    This Claim Must Be Brought as Breach of Contract Claims

Although Blue Owl attempts to style this claim as one sounding in fraud, "[i]n actuality[,] it is a cause of action to recover damages for breach of contract, inasmuch as the alleged falsity was a provision of the contract[.]" *Ka Foon Lo v. Curis*, 29 A.D.3d 525, 526 (N.Y. App. Div. 2006).  As is clear under New York law—which governs the Loan Agreement at issue here— "[m]erely alleging scienter in a cause of action to recover damages for breach of contract, unless the representations alleged to be false are collateral or extraneous to the terms of the agreement, does not convert a breach of contract cause of action into one sounding in fraud." *Id.*; *see also W.B. David & Co., Inc. v. DWA Commc'ns, Inc.*, No. 02 Civ. 8479(BSJ), 2004 WL 369147, at *3 (S.D.N.Y. Feb. 26, 2004) (New York law does not "recognize claims that are essentially contract claims masquerading as claims of fraud").[7]  In the Loan Agreement, Walker Edison represented

---

[7]    Utah courts similarly recognize that "when a party is merely suing to recover the benefit of its contractual bargain, there is no inherent unfairness in limiting that party to a breach-of-contract claim."  *HealthBanc Int'l, LLC v.*

that the Financial Statements "present fairly in all material respects the financial condition" of the Company, Ex. A § 3.04(a), and the entire theory of fraud relates to a purported breach of this covenant. To the extent Blue Owl has a viable breach of contract claim, the proper defendant is Walker Edison, as party to the Loan Agreement.

## V.    The Ancillary Fraud Claims Likewise Fail

Plaintiff asserts two additional claims, the success of which depends upon the viability of Plaintiff's fraud allegations. Both claims should be dismissed:

**Civil Conspiracy.** Blue Owl alleges that "Defendants had a meeting of the minds to accomplish their object by providing and causing to be provided materially false, misleading, and fraudulent financial projections, statements, and omission that would induce Blue Owl to invest in the Company[.]"   ¶ 167.  "In order to plead a claim for civil conspiracy, a complaint must allege sufficient facts to establish (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Harvey v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 2017 UT 75, ¶ 70, 416 P.3d 401.  This claim thus requires "***as one of [its] essential elements***, an underlying tort." *Estrada v. Mendoza*, 2012 UT App 82, ¶ 13, 275 P.3d 1024 (quoting *Puttuck v. Gendron*, 2008 UT App 362, ¶ 21, 199 P.3d 971) (alteration in original).  As such, "[w]here plaintiffs have not adequately pleaded any of the basic torts they allege . . . dismissal of their civil conspiracy claim is appropriate." *Id.*  Further, "insofar as the underlying tort is fraud, the fraud must be pleaded with particularity." *Coroles*, 2003 UT App 339,

---

*Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 21, 435 P.3d 193; *see also 100 Mt. Holly Bypass v. Axos Bank*, No. 2:20-CV-00856, 2024 WL 1722557, at *10–*11 (D. Utah Apr. 22, 2024) (holding that the economic loss doctrine barred asserted fraud claims where the allegedly fraudulent terms were "explicitly included in the terms of the written financing documents that [p]laintiffs signed and returned," and "[t]he claims all relate[d] to the terms and performance of the finance agreements").

¶ 36.  Here, Blue Owl explicitly relies on the tort of fraud in support of its civil conspiracy claim. *See* ¶¶ 166–67.  Because Blue Owl has failed to adequately plead a fraud claim with particularity, its claim for civil conspiracy must also be dismissed.

**Aiding and Abetting Fraud.**  Blue Owl also asserts that "[e]ach Defendant aided and abetted the wrongful conduct perpetrated against Blue Owl and the other Lenders by every other Defendant."  ¶ 183.  This claim fails because "Utah does not recognize a claim for aiding and abetting fraud." *Pope v. Wells Fargo Bank, N.A.*, No. 2:23-cv-86 JNP DBP, 2023 WL 9604555, at *5 (D. Utah Dec. 27, 2023)*, report and recommendation adopted*, 2024 WL 555133 (D. Utah Feb. 9, 2024); *see also DiTucci v. Ashby*, No. 2:19-cv-277-TC-PMW, 2020 WL 956890, at *5 (D. Utah Feb. 27, 2020) ("But setting aside the issue of adequate pleading, the court is not convinced that aiding and abetting fraud is even a permissible cause of action.  As the [defendants] pointed out in their motion, no Utah court has ever recognized such a claim.").  And, even if Blue Owl's aiding and abetting claim was cognizable under Utah law, "the aiding and abetting fraud claim as a whole (as opposed to only the 'underlying fraud' element of the claim) . . . [is] subject to rule 9(b)." *Coroles*, 2003 UT App 339, ¶ 39.  This claim therefore fails.

## VI.    The Unjust Enrichment Claim Fails

Finally, and in the alternative, Blue Owl asserts an unjust enrichment claim against all Defendants, claiming that they were unjustly enriched by the Dividend at Blue Owl's expense. ¶ 192.  "Unjust enrichment is designed to provide an equitable remedy where one does not exist at law." *AGTC Inc. v. CoBon Energy LLC*, 2019 UT App 124, ¶ 19, 447 P.3d 123.  To pursue an equitable remedy, Blue Owl "must affirmatively show a lack of an adequate remedy at law on the face of the pleading." *BMF Advance, LLC v. Litiscape, LLC*, No. 2:21-cv-00103-DBB, 2022 WL 1307830, at *5 (D. Utah May 2, 2022) ("[T]he complaint must contain some kind of averment that [plaintiff] lacks an adequate remedy at law, whether it states so expressly or in some other clear

way (e.g., by stating that no valid contract exists)."); *see also Thorpe v. Washington City*, 2010 UT App 297, ¶ 28, 243 P.3d 500 (similar).  In fact, "where 'an express contract covering the subject matter of the litigation' exists, recovery for unjust enrichment is not available."  *Selvig v. Blockbuster Enters.*, LC, 2011 UT 39, ¶ 30, 266 P.3d 691; *see also Ashby v. Ashby*, 2010 UT 7, ¶ 14, 227 P.3d 246 ("[A] prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue.").

Blue Owl has not sufficiently pleaded that there is no adequate remedy at law; rather, the entire premise of the Complaint is a series of contracts under which Blue Owl can sue if it believes it has been damaged.  And, the mere fact that Defendants benefited in some way from the Loan Agreement does not give rise to a claim for unjust enrichment.  *Com. Fixtures & Furnishings, Inc. v. Adams*, 564 P.2d 773, 774 (Utah 1977) ("The mere fact that a third person benefits from a contract between two others does not make such third person liable in quasi-contract, unjust enrichment, or restitution[.]").  This claim should be dismissed.

## <u>CONCLUSION</u>

The Complaint should be dismissed in its entirety on *forum non conveniens* grounds.  In the alternative, the Complaint should be dismissed in its entirety for failure to state a viable claim for relief.

DATE: June 24, 2024

**PARR BROWN GEE & LOVELESS**

/s/ David C. Reymann
David C. Reymann
Kade N. Olsen
Tammy M. Frisby

101 South 200 East, Suite 700
Salt Lake City, Utah 84111
(801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

*For defendants*: Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino,
Kyle Murphy, Walker Edison Holding Co.,
LLC, Prospect Hill Growth Fund II, L.P.,
Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.,
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

**SPERLING & SLATER, LLC**

/s/ Greg Shinall
Greg Shinall
Matthew H. Rice

55 West Monroe Street, 32nd Floor
Chicago, Illinois 60603
(312) 641-3200
shinall@sperling-law.com
mrice@sperling-law.com

*For defendants*: Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino,
Kyle Murphy, and Walker Edison Holding
Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga
William Clareman

1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000
gchepiga@paulweiss.com
wclareman@paulweiss.com

*For defendants*: Prospect Hill Growth
Fund II, L.P., Prospect Hill Growth Fund
II Co-Invest, L.P., Prospect Hill Growth
Partners, L.P., JWC-WE Holdco, LLC, and
JWC-WE Holdings, L.P.

**ARMSTRONG TEASDALE LLP**

/s/ Brennan H. Moss
Brennan H. Moss

222 South Main Street, Suite 1830
Salt Lake City, UT 84101
(801) 401-1608
bmoss@atllp.com
mgehret@atllp.com

*For defendants*: Brad Bonham, MB & BB
Holdings, LLC, and Matt Davis

27

## CERTIFICATE OF COMPLIANCE

Pursuant to Utah R. Civ. P. 7(q)(3), I hereby certify that the foregoing **DEFENDANTS'**

**MOTION TO DISMISS THE COMPLAINT** complies with the word limits in Utah R. Civ. P.

7(q)(1) and contains 8,670 words, excluding the items identified in Utah R. Civ. P. 7(q)(2).

/s/ David C. Reymann

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of June 2024, I electronically filed the foregoing

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**, which served all counsel of

record.

/s/ David C. Reymann

**Notice to responding party**

You have a limited amount of time to respond to this motion. In most cases, you must file a written response with the court and provide a copy to the other party:

- within 14 days of this motion being filed, if the motion will be decided by a judge, or
- at least 14 days before the hearing, if the motion will be decided by a commissioner.

In some situations a statute or court order may specify a different deadline.

If you do not respond to this motion or attend the hearing, the person who filed the motion may get what they requested.

See the court's Motions page for more information about the motions process, deadlines and forms: utcourts.gov/motions



Scan QR code to visit page

**Finding help**

The court's Finding Legal Help web page (utcourts.gov/help) provides information about the ways you can get legal help, including the Self-Help Center, reduced-fee attorneys, limited legal help and free legal clinics.



Scan QR code to visit page

**Aviso para la parte que responde**

Su tiempo para responder a esta moción es limitado. En la mayoría de casos deberá presentar una respuesta escrita con el tribunal y darle una copia de la misma a la otra parte:

- dentro de 14 días del día que se presenta la moción, si la misma será resuelta por un juez, o
- por lo menos 14 días antes de la audiencia, si la misma será resuelta por un comisionado.

En algunos casos debido a un estatuto o a una orden de un juez la fecha límite podrá ser distinta.

Si usted no responde a esta moción ni se presenta a la audiencia, la persona que presentó la moción podría recibir lo que pidió.

Vea la página del tribunal sobre Mociones para encontrar más información sobre el proceso de las mociones, las fechas límites y los formularios:



Para accesar esta página escanee el código QR

utcourts.gov/motions-span

**Cómo encontrar ayuda legal**

La página de la internet del tribunal Cómo encontrar ayuda legal (utcourts.gov/help-span)

Para accesar esta página escanee el código QR

tiene información sobre algunas maneras de encontrar ayuda legal, incluyendo el Centro de Ayuda de los Tribunales de Utah, abogados que ofrecen descuentos u ofrecen ayuda legal limitada, y talleres legales gratuitos.

Erik Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

Michael M. Farhang (admitted pro hac vice)
Michael S. Neumeister (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
Ryan S. Appleby (pro hac vice pending)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Ángeles, California 90071
Telephone: 213.229.7000
mfarhang@gibsondunn.com
mneumeister@gibsondunn.com
jkrause@gibsondunn.com
rappleby@gibsondunn.com

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **CERTIFICATE OF SERVICE - RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFF** <br><br> Civil No. 230902160 <br><br> Judge Robert Faust <br><br> Discovery Tier 3 |

I hereby certify that on June 27, 2024, a true and correct copy of plaintiff's Responses and Objections to Defendants' First Set of Interrogatories to Plaintiff was served Via Electronic Mail on the Following:

Brennan H. Moss (10267)
Michael A. Gehret (11890)
Charles D. Morris (18058)
ARMSTRONG TEASDALE LLP
222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
Telephone: (801) 401-1600
 Email: bmoss@atllp.com
        mgehret@atllp.com
        cdmorris@atllp.com
*Attorneys for Defendants Brad Bonham, MB & BB Holdings, LLC, and Matt Davis*

David C. Reymann
Kade N. Olsen
Tammy M. Frisby
PARR BROWN GEE & LOVELESS
101 South 200 east, Suite 700
Salt lake City, Utah 84111
Email: dreymann@parrbrown.com
        kolsen@parrbrown.com
        tfrisby@parrbrown.com
*Attorneys for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, Walker Edison Holding Co., LLC, Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P. JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P*

Greg Shinall
Matthew Rice
Sean M. Koller
SPERLING & SLATER, LLC
55 West Monroe Street, 32nd Floor
Chicago, Illinois 6063
Email shinall@sperling-law.com
        mrice@sperling-law.com
        skoller@sperling-law.com
*Attorneys for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC*

2

Geoffrey Chepiga
William Clareman
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Email: gchepiga@paulweiss.com
          wclareman@paulweiss.com
*Attorneys for Defendants Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P*


DATED: June 27, 2024

<div style="text-align:center">PARSONS BEHLE & LATIMER</div>

*/s/ Erik A. Christiansen*
Erik A. Christiansen

*Attorneys for Walker Edison Furniture Company, LLC*

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Blue Owl Capital
Corporation and Walker Edison Furniture
Company, LLC*

Michael M. Farhang (admitted pro hac vice)
Ryan S. Appleby (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
rappleby@gibsondunn.com
jkrause@gibsondunn.com

*Co-Counsel for Blue Owl Capital
Corporation and Walker Edison Furniture
Company, LLC*

## IN THE THIRD JUDICIAL DISTRICT COURT

### FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **ORDER GRANTING JOINT CONSOLIDATED CASE SCHEDULE** <br><br> Civil No. 230902160 <br><br><br> Judge Robert Faust <br><br> Discovery Tier 3 |

Before the Court is the Parties' Joint Consolidated Case Schedule, filed on July 1, 2024.

For good cause appearing:

**IT IS HEREBY ORDERED** that the Joint Consolidated Case Schedule is GRANTED.

The deadlines in the consolidated cases shall be as follows:

| Case Event | Date |
|---|---|
| Deadline to Meet & Confer Re: Expert Discovery & Extraordinary Discovery | 7/8/2024 |
| Deadline for Blue Owl to Respond to any Responsive Pleading in Case 240903251 | 7/24/2024 |
| Deadline for Defs. to Begin Production of Documents in Response to First Set of RFPs | 7/26/2024 |
| Deadline for Walker Edison to Begin Production of Documents in Response to First Set of RFPs by Founder Defendants | 8/16/2024 |
| Deadline for Blue Owl to Begin Production of Documents in Response to Subpoena | 8/16/2024 |
| Deadline for Defs. to Substantially Complete Production of Documents in Response to First Set of RFPs | 9/27/2024 |
| Deadline for Walker Edison to Substantially Complete Production of Documents in Response to First Set of RFPs by Founder Defendants | 10/18/2024 |
| Deadline for Blue Owl to Substantially Complete Production of Documents in Response to Subpoena | 10/18/2024 |
| Deadline for Blue Owl to Serve Initial Disclosures in Case 240903251 | 14 days after Defendants file Answer |
| Deadline for Defendants to Serve Initial Disclosures in Case 240903251 | 42 days after Defendants file Answer |
| Deadline to Complete Any Document Productions | 190 Days After Defendants Serve Initial Disclosures in Case No. 240903251 |
| Close of Fact Discovery | 270 Days After Defendants Serve Initial Disclosures in Case No. 240903251 |

| Case Event | Date |
|---|---|
| Close of Expert Discovery | 150 Days After Close of Fact Discovery |
| Deadline to File any MSJs | 50 Days After Close of Expert Discovery |

**In accordance with the Utah State District Courts Efiling Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

Agreed as to form by:

**PARR BROWN GEE & LOVELESS, P.C.**

*/s/ David C. Reymann*
David C. Reymann
Jonathan O. Hafen

101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**SPERLING & SLATER, LLC**

*/s/ Greg Shinall*
Greg Shinall

55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

2

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga

1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II,
L.P., Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.,
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

**PARSONS BEHLE & LATIMER**

/s/ Erik A. Christiansen
Erik A. Christiansen
Alan S. Mouritsen
Brian M. Rothschild

201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*For Plaintiffs Walker Edison Furniture
Company, LLC and Blue Owl Capital
Corporation*

**PARKINSON | BENSON | POTTER**

/s/ Brenna H. Moss
Brennan H. Moss

2750 Rasmussen Rd., Suite H-107
Park City, UT 84098
brenna@pbp.law

*For defendants*: Brad Bonham; MB & BB
Holdings, LLC; Matt Davis

**GIBSON, DUNN & CRUTCHER LLP**

/s/ Michael M. Farhang
Michael M. Farhang (admitted pro hac vice)
Ryan S. Appleby (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)

333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
rappleby@gibsondunn.com
jkrause@gibsondunn.com

*For Plaintiffs  Walker Edison Furniture
Company, LLC and Blue Owl Capital
Corporation*

# <u>Certificate of Service</u>

I HEREBY CERTIFY that on the 1st of July 2024, I electronically filed the foregoing **ORDER GRANTING JOINT CONSOLIDATED CASE SCHEDULE**, which served all counsel of record.

_/s/ Erik A. Christiansen_

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Blue Owl Capital
Corporation and Walker Edison Furniture
Company, LLC*

Michael M. Farhang (admitted pro hac vice)
Ryan S. Appleby (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
rappleby@gibsondunn.com
jkrause@gibsondunn.com

*Co-Counsel for Blue Owl Capital
Corporation and Walker Edison Furniture
Company, LLC*

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **JOINT CONSOLIDATED CASE SCHEDULE**<br><br>Civil No. 230902160<br><br>Judge: Robert Faust<br><br>Discovery Tier 3 |

Pursuant to the Court's May 20, 2024 order, Plaintiff Blue Owl Capital Corporation ("Blue

Owl"), Plaintiff Walker Edison Furniture Company, LLC ("Walker Edison"), and Defendants

Brad Bonham; MB & BB Holdings, LLC; Matt Davis; Walker Edison Holding Company, LLC;

Prospect Hill Growth Partners, LP; JWC-WE Holdco, LLC; JWC-WE Holdings, L.P.; Prospect

Hill Growth Fund II, L.P.; Prospect Hill Growth Fund II Co-Invest, L.P.; Phil Damiano; Ken

Murphy; Adam Suttin; Kyle Casella; and David Fiorentino (collectively, "Defendants" and

together with Blue Owl and Walker Edison, the "Parties") hereby stipulate and agree to the

following joint proposed consolidated case schedule:

| Case Event | Date |
|---|---|
| Deadline to Meet & Confer Re: Expert Discovery & Extraordinary Discovery | 7/8/2024 |
| Deadline for Blue Owl to Respond to any Responsive Pleading in Case 240903251 | 7/24/2024 |
| Deadline for Defs. to Begin Production of Documents in Response to First Set of RFPs | 7/26/2024 |
| Deadline for Walker Edison to Begin Production of Documents in Response to First Set of RFPs by Founder Defendants | 8/16/2024 |
| Deadline for Blue Owl to Begin Production of Documents in Response to Subpoena | 8/16/2024 |
| Deadline for Defs. to Substantially Complete Production of Documents in Response to First Set of RFPs | 9/27/2024 |
| Deadline for Walker Edison to Substantially Complete Production of Documents in Response to First Set of RFPs by Founder Defendants | 10/18/2024 |
| Deadline for Blue Owl to Substantially Complete Production of Documents in Response to Subpoena | 10/18/2024 |
| Deadline for Blue Owl to Serve Initial Disclosures in Case 240903251 | 14 days after Defendants file Answer |
| Deadline for Defendants to Serve Initial Disclosures in Case 240903251 | 42 days after Defendants file Answer |
| Deadline to Complete Any Document Productions | 190 Days After Defendants Serve Initial Disclosures in Case No. 240903251 |
| Close of Fact Discovery | 270 Days After Defendants Serve Initial Disclosures in Case No. 240903251 |
| Close of Expert Discovery | 150 Days After Close of Fact Discovery |
| Deadline to File any MSJs | 50 Days After Close of Expert Discovery |

The parties respectfully request entry of an order reflecting the Joint Consolidated Case Schedule above.

DATED July 1, 2024.

**PARR BROWN GEE & LOVELESS, P.C.**

/s/ David C. Reymann
David C. Reymann
Jonathan O. Hafen

101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**SPERLING & SLATER, LLC**

/s/ Greg Shinall
Greg Shinall

55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga

1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II,
L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**PARKINSON | BENSON | POTTER**

/s/ Brenna H. Moss
Brennan H. Moss

2750 Rasmussen Rd., Suite H-107
Park City, UT 84098
brenna@pbp.law

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

**PARSONS BEHLE & LATIMER**

/s/ Erik A. Christiansen
Erik A. Christiansen
Alan S. Mouritsen
Brian M. Rothschild

201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*For Plaintiffs Walker Edison Furniture
Company, LLC and Blue Owl Capital
Corporation*

**GIBSON, DUNN & CRUTCHER LLP**

/s/ Michael M. Farhang
Michael M. Farhang (admitted pro hac vice)
Ryan S. Appleby (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)

333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
rappleby@gibsondunn.com
jkrause@gibsondunn.com

*For Plaintiffs Walker Edison Furniture
Company, LLC and Blue Owl Capital
Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of July, 2024, I electronically filed the foregoing **JOINT CONSOLIDATED CASE SCHEDULE**, which served all counsel of record.

/s/ Erik A. Christiansen

Michael A. Gehret (11890)
**DENTONS DURHAM JONES PINEGAR, P.C.**
111 S. Main, Suite 2400
Salt Lake City, UT  84110-4050
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
mike.gehret@dentons.com

*Attorney for Brad Bonham, MB & BB Holdings LLC & Matt Davis*

---

## IN THE THIRD JUDICIAL DISTRICT COURT

## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **NOTICE OF WITHDRAWAL OF COUNSEL** <br><br> Case No.: 230902160 <br><br> Judge Robert Faust |

Please take notice that Michael A. Gehret, of the law firm DENTONS DURHAM JONES PINEGAR, P.C. hereby withdraws as counsel of record for defendants Brad Bonham, MB & BB Holdings LLC & Matt Davis in the above-captioned action.  No motion is pending and no hearing or trial has been set.

Michael E. Gehret also request that his name be removed from the service list for this case.

DATED this 2nd day of July, 2024.

**DENTONS DURHAM JONES PINEGAR**

/s/ *Mike Gehret*
Michael A. Gehret
*Attorney for Brad Bonham, MB & BB Holdings*
*LLC & Matt Davis*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of July, 2024, I filed via the Courts automatically electronic filing system, a true and correct copy of the foregoing **NOTICE OF WITHDRAWAL OF COUNSEL**, which sent notice to all counsel of record.

/s/ *Doug J. Layne*
DOUG J. LAYNE
Legal Assistant

UC_6742101.1

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

Michael M. Farhang (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
Ryan S. Appleby (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Ángeles, California 90071
Telephone: 213.229.7000
mfarhang@gibsondunn.com
jkrause@gibsondunn.com
rappleby@gibsondunn.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

---

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>    Defendants. | **NOTICE OF WITHDRAWAL OF COUNSEL MICHAEL S. NEUMEISTER AND REMOVAL FROM SERVICE LIST**<br><br>Civil No. 230902160<br><br><br>Judge Robert Faust<br><br>Discovery Tier 3 |

4870-6315-2845.v2

Pursuant to Rule 74 of the Utah Rules of Civil Procedure, notice is hereby given that Michael S. Neumeister, pro hac vice counsel in the above-captioned matter, withdraws as counsel for Plaintiff Walker Edison Furniture Company, LLC.  Plaintiff will continue to be represented by Erik A. Christiansen, Alan S. Mouritsen and Brian M. Rothschild of PARSONS BEHLE & LATIMER, along with Michael M. Farhang, Jeffrey C. Krause and Ryan S. Appleby of GIBSON, DUNN & CRUTCHER, LLP.

Further, the undersigned respectfully requests that the Clerk of the Court remove Mr. Neumeister's name from the list of the persons authorized to receive notice in this case.

DATED: July 2, 2024

PARSONS BEHLE & LATIMER

*/s/ Erik A. Christiansen*
Erik A. Christiansen

*Attorneys for Walker Edison Furniture*
*Company, LLC*

2

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 2nd day of July, 2024, a true and correct cop of the foregoing

**NOTICE OF WITHDRAWAL OF COUNSEL MICHAEL S. NEUMEISTER AND**

**REMOVAL FROM SERVICE LIST** was filed with the Court using the Court's e-filing

system which sent notification to all counsel of record.


/s/ Erik A. Christiansen_____

4870-6315-2845.v2

The Order of the Court is stated below:
Dated:  July 02, 2024          /s/  ROBERT FAUST
        11:00:46 AM          District Court Judge

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Blue Owl Capital
Corporation and Walker Edison Furniture
Company, LLC*

Michael M. Farhang (admitted pro hac vice)
Ryan S. Appleby (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
rappleby@gibsondunn.com
jkrause@gibsondunn.com

*Co-Counsel for Blue Owl Capital
Corporation and Walker Edison Furniture
Company, LLC*

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC,<br><br>  Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>  Defendants. | **ORDER GRANTING JOINT CONSOLIDATED CASE SCHEDULE**<br><br>Civil No. 230902160<br><br>Judge Robert Faust<br><br>Discovery Tier 3 |

Before the Court is the Parties' Joint Consolidated Case Schedule, filed on July 1, 2024.

For good cause appearing:

**IT IS HEREBY ORDERED** that the Joint Consolidated Case Schedule is GRANTED.

The deadlines in the consolidated cases shall be as follows:

| Case Event | Date |
|---|---|
| Deadline to Meet & Confer Re: Expert Discovery & Extraordinary Discovery | 7/8/2024 |
| Deadline for Blue Owl to Respond to any Responsive Pleading in Case 240903251 | 7/24/2024 |
| Deadline for Defs. to Begin Production of Documents in Response to First Set of RFPs | 7/26/2024 |
| Deadline for Walker Edison to Begin Production of Documents in Response to First Set of RFPs by Founder Defendants | 8/16/2024 |
| Deadline for Blue Owl to Begin Production of Documents in Response to Subpoena | 8/16/2024 |
| Deadline for Defs. to Substantially Complete Production of Documents in Response to First Set of RFPs | 9/27/2024 |
| Deadline for Walker Edison to Substantially Complete Production of Documents in Response to First Set of RFPs by Founder Defendants | 10/18/2024 |
| Deadline for Blue Owl to Substantially Complete Production of Documents in Response to Subpoena | 10/18/2024 |
| Deadline for Blue Owl to Serve Initial Disclosures in Case 240903251 | 14 days after Defendants file Answer |
| Deadline for Defendants to Serve Initial Disclosures in Case 240903251 | 42 days after Defendants file Answer |
| Deadline to Complete Any Document Productions | 190 Days After Defendants Serve Initial Disclosures in Case No. 240903251 |
| Close of Fact Discovery | 270 Days After Defendants Serve Initial Disclosures in Case No. 240903251 |
| Close of Expert Discovery | 150 Days After Close of Fact Discovery |

2

| Deadline to File any MSJs | 50 Days After Close of Expert Discovery |
|---|---|
|  |  |

**In accordance with the Utah State District Courts Efiling Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

Agreed as to form by:

**PARR BROWN GEE & LOVELESS, P.C.**

*/s/ David C. Reymann* _____
David C. Reymann
Jonathan O. Hafen

101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**SPERLING & SLATER, LLC**

*/s/ Greg Shinall* _____
Greg Shinall

55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

**PARKINSON | BENSON | POTTER**

3

/s/ Geoffrey Chepiga
Geoffrey Chepiga

1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund
II,
L.P., Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.,
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

/s/ Brenna H. Moss
Brennan H. Moss

2750 Rasmussen Rd., Suite H-107
Park City, UT 84098
brenna@pbp.law

*For defendants*: Brad Bonham; MB & BB
Holdings, LLC; Matt Davis

**PARSONS BEHLE & LATIMER**

/s/ Erik A. Christiansen
Erik A. Christiansen
Alan S. Mouritsen
Brian M. Rothschild

201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*For Plaintiffs Walker Edison Furniture
Company, LLC and Blue Owl Capital
Corporation*

**GIBSON, DUNN & CRUTCHER LLP**

/s/ Michael M. Farhang
Michael M. Farhang (admitted pro hac vice)
Ryan S. Appleby (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)

333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
rappleby@gibsondunn.com
jkrause@gibsondunn.com

*For Plaintiffs  Walker Edison Furniture
Company, LLC and Blue Owl Capital
Corporation*

4

# <u>Certificate of Service</u>

I HEREBY CERTIFY that on the 1st of July 2024, I electronically filed the foregoing **ORDER GRANTING JOINT CONSOLIDATED CASE SCHEDULE**, which served all counsel of record.

*/s/ Erik A. Christiansen*

Erik A. Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

Michael M. Farhang (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
Ryan S. Appleby (admitted pro hac vice)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Ángeles, California 90071
Telephone: 213.229.7000
mfarhang@gibsondunn.com
jkrause@gibsondunn.com
rappleby@gibsondunn.com

*Co-Counsel for Walker Edison Furniture
Company, LLC*

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| WALKER EDISON FURNITURE COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, <br><br> Defendants. | **CERTIFICATE OF SERVICE - RESPONSES AND OBJECTIONS TO DEFENDANTS' REQUEST FOR PRODUCTION TO WALKER EDISON FURNITURE COMPANY, LLC** <br><br> Civil No. 230902160 <br><br><br> Judge Robert Faust <br><br> Discovery Tier 3 |

I hereby certify that on July 12, 2024, a true and correct copy of Plaintiff's Responses and Objections to Defendants' Request for Production to Walker Edison Furniture Company, LLC was served Via Electronic Mail on the Following:

Brennan H. Moss (10267)
Michael A. Gehret (11890)
Charles D. Morris (18058)
ARMSTRONG TEASDALE LLP
222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
Telephone: (801) 401-1600
 Email: bmoss@atllp.com
        mgehret@atllp.com
        cdmorris@atllp.com
*Attorneys for Defendants Brad Bonham, MB & BB Holdings, LLC, and Matt Davis*

David C. Reymann
Kade N. Olsen
Tammy M. Frisby
PARR BROWN GEE & LOVELESS
101 South 200 east, Suite 700
Salt lake City, Utah 84111
Email: dreymann@parrbrown.com
        kolsen@parrbrown.com
        tfrisby@parrbrown.com
*Attorneys for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, Walker Edison Holding Co., LLC, Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P. JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P*

Greg Shinall
Matthew Rice
Sean M. Koller
SPERLING & SLATER, LLC
55 West Monroe Street, 32nd Floor
Chicago, Illinois 6063
Email shinall@sperling-law.com
        mrice@sperling-law.com
        skoller@sperling-law.com
*Attorneys for Defendants Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC*

Geoffrey Chepiga
William Clareman
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Email: gchepiga@paulweiss.com
        wclareman@paulweiss.com
*Attorneys for Defendants Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P*


DATED: July 12, 2024


                        PARSONS BEHLE & LATIMER

                        */s/ Erik A. Christiansen*
                        Erik A. Christiansen

                        *Attorneys for Walker Edison Furniture Company, LLC*

4857-1754-1328.v1

Erik A. Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Blue Owl Capital*
*Corporation*

Michael M. Farhang (admitted pro hac vice)
Ryan S. Appleby (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
rappleby@gibsondunn.com
jkrause@gibsondunn.com

*Co-Counsel for Blue Owl Capital*
*Corporation*

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| BLUE OWL CAPITAL CORPORATION, | |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | Civil No. 240903251 |
| BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, | Judge Robert Faust  Discovery Tier 3 |
| Defendants. | |

## FIRST AMENDED COMPLAINT

Plaintiff Blue Owl Capital Corporation ("**Blue Owl**," f/k/a Owl Rock Capital Corporation) brings this Amended Complaint against Defendants pursuant to Utah R. Civ. P. 15(a)(1)(B) for constructive fraudulent transfer, actual fraudulent transfer, civil conspiracy, fraud, aiding and abetting fraud, and unjust enrichment and alleges as follows:

## INTRODUCTION

1.      This action arises from Defendants' intentional and fraudulent scheme to extract $300 million in loan proceeds from Plaintiff and other lenders by obtaining new secured debt using the Utah company they controlled, Walker Edison Furniture Company, LLC ("**Walker Edison**" or the "**Company**"), as the borrower, and then causing the Company to make a nearly $210 million dividend distribution (the "**Dividend**") to themselves and their related entities and affiliates. Defendants induced Plaintiff and the lenders to provide this liquidity and extracted it for their own benefit while the Company was experiencing substantial profit and cash flow degradation, lacked adequate capital, and could not satisfy its debts as they came due.  Plaintiff and the lenders have since been forced to extend at least $66.5 million in additional loans to the Company to maintain operations.

2.      Walker Edison, a Utah-based furniture retailer headquartered in West Jordan, was managed and controlled by Defendants for much of the time relevant to this Complaint.  In 2020 and 2021, Defendants—who at the time controlled the Company, its board, and its senior management—had sought to extract hundreds of millions of dollars from their holdings in Walker Edison despite the Company's challenges.  In March 2021, Defendants used their positions of power to materially misrepresent and misstate Walker Edison's financial position in order to

4864-8601-9280.v1

induce Plaintiff Blue Owl and other financial institutions under the Loan Agreement (defined below) (the "**Lenders**") to loan $300 million in secured debt to Walker Edison. Defendants then immediately used their positions of control to direct that the vast majority of the loan proceeds received by Utah-based Walker Edison—nearly $210 million in cash—be paid to themselves[1] as a Dividend with nearly all of the rest used to replace the Company's existing debt. Had Defendants provided Plaintiff and the other Lenders with accurate financial information and projections for the Company rather than the materially false and misleading information they did provide, the Lenders would not have agreed to provide the financing Defendants used to fund the Dividend to themselves.

3.      At the time of the Dividend transaction, the Company was insolvent. Nevertheless, the Defendants moved forward with a transaction that increased the Company's debt by 3.5 times, from $83 million to $300 million, without providing a single dollar of cash to support the business. Defendants' Dividend exacerbated the Company's ongoing financial struggles and left the Company insolvent, with unreasonably small capital and an inability to pay its debts as they became due as a result of an existential liquidity crisis centered around increased costs, negative cash flow, and numerous inventory problems. Defendants' actions, meanwhile, unlawfully enriched themselves at both the Company's and the Lenders' expense, constituting an egregious fraud on the Lenders, a serious breach of Defendants' fiduciary duties to Walker Edison, and an improper fraudulent transfer.

---

[1] Approximately $1.2 million was distributed to certain employees of the Company as payment on profits interests. Blue Owl does not presently seek to recover from the recipients of these profits interests.

**Defendants' Efforts to Extract Value from Their Investment**

4.      The Dividend was a disastrous decision by the Defendants that harmed the Company and the Lenders, and it was aimed exclusively at extracting as much value as possible for Defendants before they could no longer hide the Company's dire circumstances from existing and would-be investors (including the Lenders).  In 2020, seeking to capitalize on a short-term trend of increased revenue prior to late 2020, Defendants first actively sought to monetize their longtime holdings in the Company through a Special Purpose Acquisition Company ("**SPAC**") or other equity transaction.  Defendants were unsuccessful, however, and by late 2020, supply chain difficulties caused by the COVID-19 pandemic began to negatively impact the Company's costs and profitability.  Beginning no later than late 2020 and early 2021, the Company's ocean freight costs were skyrocketing, profitability was down, and Walker Edison was quickly running out of cash.  During this period, it became clear to Defendants that Walker Edison was facing serious financial difficulties.  Given the severity of this situation, senior management and the board regularly discussed the gravity of the Company's financial difficulties and continuously demanded updates from the Company's finance and operational departments.

5.      After a SPAC or equity transaction proved elusive in late 2020 and early 2021, and rather than seeking a transaction that would generate much-needed liquidity and stability for the Company, Defendants settled on a different way to monetize their holdings in the challenging financial environment—a dividend recapitalization, or "recap," a transaction that would involve using their positions of control to cause the Company to take on new (and significantly more) debt in order to simultaneously pay a special dividend to themselves and their affiliates as the Company's equity owners.

6.    In the first quarter of 2021, Defendants made contact with Plaintiff Blue Owl, a specialty finance and business development company that provides loans to U.S. middle market companies and also ultimately served as the administrative agent to the Lenders (including itself) under the new $300 million term loan.  Defendants proposed a potential dividend recapitalization and began providing to Blue Owl the Company's financial results, projections, and models as part of pre-loan diligence.  Critically, while Defendants and others within the Company were focused on the Company's unrelenting financial difficulties, Defendants knowingly provided Blue Owl and the other Lenders with materially false, misleading, and erroneous financial statements and projections that lacked any reasonable basis and did not reflect the actual known current conditions facing the Company.  Because they concealed material issues regarding the Company's spiraling costs and worsening profitability and liquidity position, the projections and financial information Defendants provided to Blue Owl and the other Lenders were materially false and misleading.

**Defendants Conceal and Misrepresent Walker Edison's Financial Condition**

7.    Moreover, at the same time that Blue Owl, Defendants, and Walker Edison were in discussions about a new loan, Defendants were aware of a material accounting error that resulted in dramatic understatement of the Company's freight expenses and was resulting in substantial overstatements of Walker Edison's financial health and performance.  Worse, in March 2021, leading up to the completion of the dividend recap transaction, internal Company projections and models not provided to Blue Owl showed that the Company was severely undercapitalized and did not have the liquidity to pay debts as they came due.  One projection, in fact, showed that the Company would burn through more than $100 million in cash—which it did not have—by December 2021.  Things were so bad at Walker Edison that Defendants were already discussing

the need to start short paying the Company's critical suppliers and to implement immediate and drastic hiring cuts because based on projections not provided to Blue Owl or the other Lenders, the Company would run out of availability under its bank line of credit within weeks.

8.      Defendants were aware of sufficient facts to know at the time of the Dividend, among other things, that (i) the Company had substantial cash flow problems and problems meeting its EBITDA forecasts, would be unable to pay its suppliers on time, and was internally discussing slashes to hiring and other measures to address its liquidity shortage; (ii) the historical financial statements for the Company overstated profitability by failing to properly account for incurred freight expenses that were rapidly increasing; (iii) the Company would be unable to meet the financial covenants required under the Loan Agreement; and (iv) the financial projections used by Defendants to justify the $210 million Dividend were materially inflated and failed to account for the massive increase in expenses the Company had experienced during the preceding months that were expected to persist for the foreseeable future.  Had Defendants disclosed any of this to Blue Owl and the other Lenders, Lenders would not have provided $300 million in new money loans that Defendants used to pay themselves a $210 million Dividend.  Instead, despite full knowledge of the circumstances making the dividend recap transaction wholly improper under such dire circumstances, Defendants plowed ahead undeterred with their material misrepresentations about the Company's condition in order to obtain the Dividend they sought. Even the Company's own President lamented several weeks after Defendants took their nearly $210 million Dividend that "we were saying from the very beginning that the forecast for this year was way too high and no one listened."

**Defendants' Extraction of $210 Million in Cash Leaves Walker Edison Insolvent**

9.      On March 31, 2021, the Loan Agreement closed, and Defendants caused Walker Edison to immediately pay out the $210 million Dividend to Defendants.  At the time of, and as a result of, the Dividend transaction, Walker Edison was insolvent, undercapitalized, and unable to pay its debts as they became due.

10.      The already dire circumstances at Walker Edison only intensified after Defendants withdrew their windfall Dividend payment, consistent with what Defendants knew about market conditions and the Company's situation at the time of the transaction.  In the span of only one year—the very year Defendants decided to take approximately $210 million in badly needed cash out of the Company that could have been used to weather difficult times—the Company burned through over $100 million of cash due in large part to the same spiraling costs and inventory challenges that were known to Defendants prior to the Dividend.  Within just months of receiving their Dividend, Defendants discussed the Company's financial position with statements like "the house is on fire" and "the precarious situation we are in," as they discussed firing all employees who were not "mission critical," and questioned whether the Company would have "the cash and profitability to actually survive this."

11.      The Company's performance never recovered from Defendants' actions.  In fact, by early 2023, unable to reverse the effects of their misconduct, Defendants abandoned the Company in a change-of-control transaction and exited the disaster they had created.  The Lenders assumed ownership and control of the Company and have been forced to lend approximately $66.5 million of new capital to support operations.  Plaintiff Blue Owl and the Lenders are current creditors of the Company.  Plaintiff Blue Owl brings the instant suit on its own behalf as a current lender of the Company and on behalf of the other current Lenders to right this egregious wrong

7

and to address Defendants' fraudulent transfer of $210 million and to recoup the amount of the loan fraudulently induced by Defendants as well as the amounts of Blue Owl's and the other Lenders' subsequent loans to the Company following the fraudulent transfer.  Pursuant to an Assignment and Assumption Agreement, the other Lenders have assigned their claims and causes of action relating to the matters alleged herein to Blue Owl.

## JURISDICTION, VENUE, AND DISCOVERY TIER

12.     Jurisdiction is proper under Utah Code § 78A-5-102(1).

13.     Venue is proper in this Court under Utah Code § 78B-3-307(1)(a) because this is the county in which the causes of action arose, and Utah Code § 78B-3-307(1)(b) because this is the county in which one or more Defendants reside at the commencement of this action.

14.     Defendants Brad Bonham and Matt Davis are residents of Utah and are therefore subject to the general personal jurisdiction of this Court.

15.     Defendant MB & BB Holdings, LLC is subject to the general personal jurisdiction of this Court because it is a Utah limited liability company with its principal place of business in Utah.

16.     Collectively, Brad Bonham, MB & BB Holdings, LLC, and Matt Davis are referred to as the "**Founder Defendants**."

17.     Defendants Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Damiano, Murphy, Suttin, Casella, and Fiorentino (collectively, the "**PHGP Defendants**" and with the Founder Defendants, the

8

"**Defendants**") are subject to personal jurisdiction in this Court pursuant to Utah Code § 78B-3-201 et seq.

18.    This case involves claims for more than $300,000 and therefore falls within Tier 3 of Rule 26(c)(3) of the Utah Rules of Civil Procedure.

## THE PARTIES

### I.    PLAINTIFF BLUE OWL.

19.    Blue Owl is a Maryland corporation, with its principal place of business at 399 Park Avenue, New York, New York.  Blue Owl is the Administrative Agent and a Lender under the Loan Agreement dated March 31, 2021.  Blue Owl has continuously been a lender and creditor to the Company since shortly before the challenged dividend and remains a current lender and creditor to the Company.  Blue Owl, and the Lenders who have assigned their claims to Blue Owl, are currently owed over $160 million by the Company.

### II.    DEFENDANTS.

20.    Brad Edison Bonham is the former Chief Executive Officer and co-owner of Walker Edison, as well as a member of the board that controlled Walker Edison at all times relevant to this Complaint ("**Board**").  On information and belief, he resides in Salt Lake City, Utah.

21.    MB & BB Holdings, LLC is a Utah limited liability company with its principal place of business at 4350 West 2100 South, Suite A, Salt Lake City, Utah.  On information and belief, Defendant Brad Bonham owns, manages, and is a member of MB & BB Holdings, and Defendant Bonham directly or indirectly benefited from MB & BB Holdings' receipt of its portion of the Dividend.

22.     Matthew Brown Davis is the former Chief Operating Officer and co-owner of Walker Edison, as well as a member of the Board that controlled Walker Edison at all times relevant to this Complaint.  On information and belief, he resides in Salt Lake City, Utah.

23.     Walker Edison Holding Company, LLC ("**Walker Edison Holding**") is a Delaware limited liability company.  On information and belief, its principal place of business is in West Jordan, Utah.

24.     Prospect Hill Growth Partners, L.P. ("**Prospect Hill**") is a Delaware limited partnership, with its principal place of business at 500 Totten Pond Road, 6th Floor, Waltham, Massachusetts.

25.     JWC-WE Holdco, LLC is a Delaware limited liability company.  On information and belief, its principal place of business is in Waltham, Massachusetts.  On information and belief, it is an entity owned and/or controlled by Prospect Hill.

26.     JWC-WE Holdings, L.P. is a Delaware limited partnership.  On information and belief, its principal place of business is in Waltham, Massachusetts.  On information and belief, it is an entity owned and/or controlled by Prospect Hill.

27.     Prospect Hill Growth Fund II, L.P. is a Delaware limited partnership.  On information and belief, its principal place of business is in Waltham, Massachusetts.  On information and belief, it is an entity owned and/or controlled by Prospect Hill.

28.     Prospect Hill Growth Fund II Co-Invest, L.P. is a Delaware limited partnership.  On information and belief, its principal place of business is in Waltham, Massachusetts.  On information and belief, it is an entity owned and/or controlled by Prospect Hill.

29.    Phil Damiano is an Operating Partner at Prospect Hill and was the non-executive chairman of the Board that controlled Walker Edison at all times relevant to this Complaint.  On information and belief, he resides in or around Waltham, Massachusetts.

30.    Ken Murphy is CEO of a Prospect Hill portfolio company and a member of the Board that controlled Walker Edison at all times relevant to this Complaint.  On information and belief, he resides in or around Philadelphia, Pennsylvania.

31.    Adam Suttin is Managing Partner of Prospect Hill and was a member of the Board that controlled Walker Edison at all times relevant to this Complaint.  On information and belief, he resides in or around Newton, Massachusetts.

32.    Kyle Casella is a Principal at Prospect Hill and was a member of the Board that controlled Walker Edison at all times relevant to this Complaint.  On information and belief, he resides in or around Boston, Massachusetts.

33.    David Fiorentino is a former Partner at Prospect Hill and was a member of the Board that controlled Walker Edison at all times relevant to this Complaint.  On information and belief, he resides in or around Winchester, Massachusetts.

34.    Does 1 through 100 are individuals who received unlawful distributions or transfers or participated in some manner in the events described in this Complaint and therefore proximately caused or are otherwise liable for the injuries and damages that this Complaint describes.  The true names and capacities of Does 1 through 100 are not now known to Blue Owl, who therefore sues these Defendants by fictitious names.  Blue Owl will amend this Complaint to show their true names and capacities as it learns this information.

4864-8601-9280.v1

**FACTUAL ALLEGATIONS**

III.    **WALKER EDISON'S BUSINESS AND ORGANIZATION.**

   A.    **Operations.**

35.    Walker Edison is a supplier of affordable, ready-to-assemble home furnishing products through e-commerce channels to consumers worldwide. Defendants Brad Bonham and Matthew Davis founded the Company in or around 2006. Defendant Bonham served as Walker Edison's Chief Executive Officer until June 2022 and served on the Board that controlled Walker Edison until the Company changed owners in 2023. Defendant Davis served as Walker Edison's Chief Operating Officer until April 2022 and continued to serve on the Board that controlled Walker Edison until the Company changed owners in 2023. In the years leading up to 2020, Walker Edison was a profitable company with an impressive track record.

36.    Unlike traditional brick-and-mortar furniture stores, at all relevant times Walker Edison operated exclusively through e-commerce channels, in which orders are placed on platforms such as Wayfair and Amazon. The vast majority of its products are shipped from Walker Edison's manufacturing suppliers in Asia and South America to the Company's own distribution centers or to the distribution centers of its e-commerce channel partners. From these distribution centers, orders are then drop-shipped directly to consumers.

37.    In order to meet customer demands for prompt delivery, Walker Edison must carefully manage its network of distribution centers and maintain a sophisticated inventory management system and a dedicated logistics team. E-commerce platforms therefore monitor the performance of suppliers like Walker Edison to ensure prompt and satisfactory deliveries to consumers. If Walker Edison fails to meet expectations, its listings on e-commerce platforms will

12

drop lower in the platform's search results, which reduces the visibility of Walker Edison's products and negatively impacts sales.

**B.**    **Corporate Structure.**

38.    Walker Edison is, and has been at all times relevant to this Complaint, fully owned by Walker Edison Intermediate, LLC ("**Walker Edison Intermediate**").  In turn, during the relevant period, Walker Edison Intermediate was fully owned by Defendant Walker Edison Holding.  On information and belief, at all relevant times, the Board for Walker Edison Holding controlled all material decisions of Walker Edison Intermediate and Walker Edison.  On information and belief, at all relevant times, the Board was controlled and dominated by Defendants Davis, Bonham, and Prospect Hill and its representatives, including Defendants Damiano, Murphy, Suttin, Casella, and Fiorentino, all of whom represented the ownership group of Walker Edison at the time of the events relevant to the Plaintiff's claims alleged herein.  On information and belief, the Board did not have a single independent director, and was comprised solely of insiders.

**C.**    **Prospect Hill and the Founder Defendants Owned and Controlled Walker Edison.**

39.    Prior to September 2018, Walker Edison was jointly owned by the Founder Defendants and a California-based private equity and mezzanine debt provider.

40.    In or around September 2018, the PHGP Defendants, comprising a Massachusetts-based private equity firm and family of funds now known as Prospect Hill, but then known as J.W. Childs Associates, acquired an approximately 55% majority share of the Utah-based Company from the Founder Defendants and the California-based firm, with the Founder Defendants retaining a 45% ownership interest.

41.     Prospect Hill is a private equity investor that has invested over $2.8 billion in 37 portfolio companies.

42.     Following Prospect Hill's 2018 investment, Defendant Brad Bonham continued to serve as CEO, and Defendant Matt Davis continued to serve as COO at the Company's headquarters in Utah.  Both Defendants Bonham and Davis also continued to serve on the Board.  Upon acquiring a majority share of the Company, Prospect Hill added its own Board members, including non-executive chairman Defendant Damiano (Operating Partner at Prospect Hill), Defendant Murphy (CEO of a Prospect Hill portfolio company), Defendant Suttin (Managing Partner of Prospect Hill), Defendant Casella (then-Vice President and now Principal at Prospect Hill), and Defendant Fiorentino (then-Partner at Prospect Hill).  Defendants Bonham, Davis, Damiano, Murphy, Suttin, Casella, and Fiorentino (collectively, the "**Board Defendants**") comprised the Board that governed Walker Edison at all times relevant to this Complaint.  On information and belief, there were no independent directors between September 2018 and early 2023.

IV.    **DEFENDANTS FALSELY PORTRAYED WALKER EDISON'S FINANCIAL HEALTH TO ATTRACT FINANCING FOR A MASSIVE DIVIDEND.**

   A.    **Defendants Sought to Cash Out of the Business Following a Period of Explosive Growth.**

43.     The Company experienced significant growth in the years leading up to and including portions of 2020 amid the COVID-19 pandemic.  During that period, e-commerce furniture sellers experienced increased sales growth as brick-and-mortar competitors shut their doors while consumer demand rose as people were forced to spend more time at home.  Industry-

wide, the share of all furniture sales conducted online grew from only 21% pre-COVID-19 to 71% of all furniture sales during the peak of the COVID-19 pandemic from March 19 to May 20, 2020.

44.    Walker Edison benefited from the significant and immediate growth in the online furniture industry.  From 2017 to 2020, Walker Edison saw EBITDA grow from $13 million to $84 million.  EBITDA stands for earnings before interest, taxes, depreciation, and amortization. It is one of the most widely used measures of a company's overall financial performance.  And while such growth peaked during the pandemic, online furniture sales overall remained above pre-pandemic levels even after brick-and-mortar competitors began to reopen.

45.    In at least as early as 2020, seeking to capitalize on this explosive growth, the existing Walker Edison shareholders—Defendants Bonham, Davis, and Prospect Hill—decided it was the right time to launch an effort to extract cash from the business for themselves.  On information and belief, in order to finance their desired payout, Defendants considered a number of options to allow them to monetize their ownership in the Company, including an acquisition by a SPAC, a large equity investment, or a debt financing.  After failing to sell the business or complete a SPAC transaction, Defendants settled on a strategy to finance their payout through a dividend recap transaction.

46.    The dividend recap transaction required the Company to incur $300 million of additional debt (the "**New Secured Loan**") in order to both clear out existing term loan debt and fund the approximately $210 million Dividend to themselves.  Without the loan, Defendants could not have paid such a large dividend to themselves, and with the loan, the Company's debt load would increase tremendously (without the capital to pay debt service as a result of the Dividend and the Company's dire but concealed financial circumstances).  Defendants began soliciting

potential lenders on behalf of the Company in or around March 2021.  On information and belief, the efforts to fund this dividend recap were led by Defendants Bonham, Davis, and representatives of Defendant Prospect Hill, including Defendants Fiorentino, Damiano, Casella, and others.

**B.**     **The Company Began to Experience Financial Distress before Defendants Received the Dividend.**

47.     In late 2020, while Defendants were strategizing on ways to fund their payout, Walker Edison management discovered that overseas freight and shipping costs had been skyrocketing due to pandemic-related supply chain issues and that the Company's accrual accounting method had been inappropriately understating freight costs.

48.     From March 2020 to March 2021, the cost of a single ocean freight container used to transport Walker Edison's products from its overseas manufacturers nearly tripled, rising from approximately $2,600 to $7,300, with management anticipating that elevated ocean freight rates would persist.

49.     Not later than October 2020, Defendants knew that the Company's ocean freight and shipping expenses were rising rapidly and that their accounting methods were not accurately reflecting real-time increases.  On October 9, 2020, for example, the Company's Controller notified the CFO that in working on the month-end closing process for the Company's financial statements, he had noticed an "area of significant concern" relating to a substantial increase in ocean freight and shipping expenses that he could not explain, including that the cost of shipping had grown 57% since the previous month, and that was five times higher than the previous January. The CFO reviewed the income statement figures and replied "my biggest concern is the shipping expenses.  Would really like to know what's going on there.  Seems like maybe the cost allocations for capitalizing freight are being understated potentially?"  In fact, the Company's accounting at

the time was significantly understating freight costs in violation of Generally Accepted Accounting Principles ("**GAAP**") due to a failure to reconcile actual freight costs with capitalized prepaid costs.  The Founder Defendants and the PHGP Defendants were notified of this accounting problem between late 2020 and February 2021 and failed to remediate or disclose it prior to the Dividend.

50.    A few days after the October 9 communication, Defendant Bonham spoke with the Company's CFO, who told him that the Company had seen an $800,000 increase in shipping charges from the prior month, "but no revenue offset of that expense which we would expect to see."  A month later, on November 11, the CFO told Defendants Bonham and Davis that shipping charges continued to rise month-over-month and that the Company would miss budgeted EBITDA in part because "we are getting killed by FedEx peak season charges."

51.    Almost immediately, the Founder Defendants began discussing the precipitous increases in shipping and ocean freight expenses affecting the Company with the PHGP Defendants.  The Founder Defendants and PHGP Defendants were well aware of the risk to the Company's forecasted performance posed by freight and shipping price increases and the impact it would have on the Company's ability to meet its forecast.  On October 15, 2020, Defendant Fiorentino recounted that the PHGP Defendants had been told in a management presentation that ocean freight costs were "way up" and advised that "[a]t the least, we should calculate the hit we have taken vs. last year," noting that Defendant Davis would be following up with information on this point.

52.    Defendants understood the serious problem posed by rising freight and shipping charges (and the Company's improper understatement of freight charges in its financial

statements) by not later than December 2020, and they quickly realized that it could spook potential investors and therefore jeopardize their desired payout. Accordingly, the Founder Defendants and PHGP Defendants discussed the need to suppress mention of these issues in Company promotional materials.

- On December 2, 2020, Defendants Fiorentino, Casella, and Damiano were told that "[freight] rates are increasing all over the map due to capacity limitations." Defendant Fiorentino then told Defendants Casella and Damiano that he had hoped the ocean freight market would improve but that "doesn't seem to be the case."

- On December 8, 2020, a PHGP representative told the Founder Defendants that "[we] thought not ideal to call out ocean freight at this point as the market dynamics are still fluctuating and we might not want buyers scrutinizing this." (Emphasis added).

- Two weeks later, Defendant Fiorentino reinforced his concern about highlighting freight prices to buyers, saying "I don't think we want to open the ocean freight can of worms."

- On December 21, a Walker Edison employee sent an email to Defendant Fiorentino noting concerns about an "increase in ocean freight charges" and stating that, upon discussions with Defendant Casella and Defendant Fiorentino, they had concluded that "there doesn't seem to be relief on the horizon and forecasts for the future rates are up in the air." Defendant Bonham relayed similar comments to Defendants Damiano and Casella, stating "everyone knows ocean freight isn't abating anytime soon."

- On information and belief, Defendants continued to investigate, monitor, and discuss the increased freight and shipping costs—and the Company's failure to properly account for freight costs—over the next two months, including during the Company's closing of its year-end financial statements in February 2021, when the Company again confirmed that there were, in fact, significant errors with the Company's freight accounting that had the effect of understating freight expenses and materially overstating gross profit and EBITDA.

53.     By early March 2021, Defendants knew that the Company's financial statements—which understated costs and thereby overstated EBITDA, profit margins, and net income—did not reflect the Company's true financial position, and that Blue Owl and the other Lenders were relying on those financial statements in deciding whether to extend a $300 million term loan to the Company.  But Defendants chose not to rectify the accounting misstatements until after the closing of the New Secured Loan.

54.     Rising freight and shipping costs and delays were not the only problem that the Company was beginning to face.  The same supply chain disruptions that were causing increased freight and shipping costs were also causing a spike in Walker Edison's out-of-stock rates and on-time delivery rates, both of which directly impact Walker Edison's sales.  High out-of-stock rates lead to lost revenue because Walker Edison cannot sell what it does not have.  And both high out-of-stock rates and low on-time delivery rates negatively impact a seller's relationship with e-commerce platforms and can cause their listings to appear lower in the platform's search results. As Defendant Bonham acknowledged in February 2021, "[i]nventory seems like it underperforms every month," leading to "[m]issing $40 million in revenue from the last four months."

55.    By December 2020, shipping delays had become so pronounced that they caused one of Walker Edison's largest e-commerce platform customers to shut off the Company's sales on the platform entirely for much of the month of December as punishment, causing the loss of millions of dollars in revenue.  Referring to the negative impacts on the Company's performance caused by the shipping problems, Defendant Bonham told Defendant Davis and his management team, "I expect all of us to ask ourselves how did we [expletive] December this badly . . . if we don't take drastic action right now, we can kiss January goodbye as well."  In combination, these problems were also creating significant cash flow problems for the Company.

56.    Defendants knew that problems were mounting with their out-of-stock and on-time delivery rates, which would cause problems down the road prior to Defendants paying themselves the Dividend.  But as with freight expenses, Defendants caused to be prepared, prepared, and reported financial information that did not reflect the realities that the business was facing.

57.    All of these issues, among others, meant that Defendants knew that the financial projections did not properly reflect the Company's circumstances prior to the issuance of the Dividend.  Defendants knew that the Company's cash flow challenges would worsen as a result of the significant headwinds impacting the business and that the Company would be undercapitalized and unable to pay debts as they came due.  And that is exactly what happened.  As subsequent months played out, and as a result of these known circumstances, the Company did in fact hemorrhage cash to such an extent that it faced challenges in funding ongoing operations.

**C.    Defendants Fraudulently Portrayed a Financially Healthy Company When Walker Edison Was Actually in Crisis.**

58.    To induce Blue Owl and the other Lenders to enter into a loan agreement (the "**Loan Agreement**") and fund the $300 million New Secured Loan, and to justify taking the

Dividend out of the Company despite the imminent cash flow problems that Defendants knew were on the horizon, Defendants disclosed to Blue Owl and the other Lenders erroneous financial data through February 2021 and projections that they knew were not reasonable or realistic under the circumstances.  Defendants represented in forecasts that the Company's explosive growth— including the "bump" in sales that the Company and industry experienced during the first year of the COVID-19 pandemic—would continue without disruption.  In other words, Defendants premised their efforts to solicit $300 million in the New Secured Loan on (a) knowingly unwarranted assumptions that the Company would continue the substantial growth it experienced as a result of the COVID-19 pandemic; and (b) fraudulent projections that they knew falsely misrepresented and omitted the material impact of increased freight, shipping, and other costs, all of which negatively impacted profitability, liquidity, and the Company's ability to pay its debts as they became due.

59.    The reality was that Defendants knew by no later than early March 2021 that the Company was experiencing decreased profits and sales, increased expenses, and a substantial liquidity shortage.  Undeterred in their mission to gain financing in order to extract the Dividend from the Company, Defendants knowingly provided materially false, misleading, and inaccurate information to induce Blue Owl and the other Lenders into providing the New Secured Loan.

60.    On March 10, 2021, the PHGP Defendants, led by Defendant Fiorentino, reached out to principals at Blue Owl about a potential investment in Walker Edison.  On March 11, 2021, Defendant Casella had an introductory call with a Blue Owl representative regarding this investment.

61.    On March 13, 2021, following the introductory call, Defendant Casella sent a financial model that captured both historical and estimated future modeling for Walker Edison (the "**Financial Projections**").    The PHGP Defendants and Founder Defendants (among others) prepared and approved the Financial Projections and, upon information and belief, authorized Defendant Casella to send the financial projection to Blue Owl.    The Financial Projections were relied upon by Blue Owl in its evaluation of the Walker Edison transaction.    But the Financial Projections contained multiple material misrepresentations or omissions and Defendants had full knowledge of these material inaccuracies.

62.    More specifically, the Financial Projections that Defendant Casella sent to Blue Owl and the other Lenders in March 2021 contemplated that Walker Edison would continue its earlier strong performance despite known and knowable facts to the contrary.    The fraudulent projections included the below.

- Cost of Goods Sold:  Despite months of increased costs, including the increasing ocean freight costs, Defendants projected the same Costs of Good Sold as a percentage of net sales for 2021 through 2025 as they had in earlier projections as of November 2020.

- Cost of Shipping:  Despite awareness of rapidly spiraling shipping costs for at least five months prior, Defendants also projected the same Cost of Shipping as a percentage of net sales for 2021 as they had in earlier projections.

- Gross Profit:  Defendants projected increased gross profit of $197.2 million in 2021, which was higher than the Company's last-twelve-month ("**LTM**") gross profit of $146.5 million.

- <u>Reported EBITDA</u>:  Defendants projected reported EBITDA of $104.4 million for 2021. Because the Financial Projections understated increased costs, they overstated EBITDA growth.

- <u>Adjusted EBITDA</u>:  Defendants projected adjusted EBITDA of $111.6 million for 2021. Adjusted EBITDA is a measure of EBITDA that adds back into EBITDA what the Company considers to be nonrecurring or one-time expense items.  Because the Financial Projections understated the known higher costs that were recurring, they overstated Adjusted EBITDA growth.

63.     The next day, March 14, the PHGP Defendants, including Defendant Casella, participated in a sponsor diligence call with Blue Owl.  During that call, Defendant Casella, on behalf of the PHGP and Founder Defendants and consistent with the Financial Projections, falsely represented that they were confident that EBITDA would continue to demonstrate strong growth in 2021.  Defendants were aware of, and authorized and aided, Defendant Casella's false statements despite all Defendants' contemporaneous knowledge that there was no reasonable basis to project EBITDA and profitability growth under the Company's then-current circumstances. These circumstances, as reflected in meetings, discussions, and communications among the Defendants, included rapidly spiraling freight and shipping costs and internal assessments from the Company's management that reduced profitability and an EBITDA decline was likely, as alleged below and herein.  Despite Defendants' awareness by this time that the Company would be forced to short pay its vendors in order to avoid running out of liquidity, Defendant Casella did not disclose this serious situation but instead misrepresented Walker Edison's position by

emphasizing its purported success due to quick sourcing from vendors. None of the Defendants ever corrected the material omissions and misrepresentations in the Financial Projections.

64.    On March 16, Defendant Casella, with the knowledge and authorization of all Defendants, sent further data to Blue Owl, including actual financial data through February 2021 (the "**Original Actuals**"). Blue Owl and the other Lenders justifiably relied upon the Original Actuals in deciding whether to extend the $300 million loan to the Company. And as stated above, at the time the Original Actuals were transmitted to Blue Owl, Walker Edison management, the Founder Defendants, and the PHGP Defendants were all aware of a material accounting error that adversely impacted Walker Edison's historical financial performance as reflected in the Original Actuals, rendering them materially false and fraudulent as to, among other things, Walker Edison's gross profit, gross margin, EBITDA, and EBITDA margin. Specifically, the financial statements provided to Blue Owl failed to account for material freight expenses the Company had already incurred, thus causing the Company to appear significantly more profitable than it actually was and causing the fraudulent Financial Projections to appear more reasonable. The Original Actuals misrepresented all of these figures due to its reliance on the known accounting errors. These accounting errors resulted in an actual EBITDA that was $6.6 million lower than represented in the October 2020 to February 2021 financial information provided to, and relied on by, Blue Owl.

65.    Despite knowledge of these accounting errors that rendered the Original Actuals, Financial Projections, and other financial data presented materially false and misleading, Defendants Bonham, Davis, and the other Defendant Board members never notified Blue Owl of this material discrepancy or alerted Blue Owl that the financial statements or projections themselves were materially false and misleading and should not be relied upon before the Loan

24

Agreement closed.  Once Walker Edison's CFO further confirmed the accounting errors no later than February 2021 and before the closing of the New Secured Loan, Walker Edison's CFO immediately notified Defendants Bonham and Davis about the material accounting error.  Walker Edison's CFO, Defendant Bonham, and Defendant Davis thereafter promptly raised this issue with the rest of the Board members.  Had Defendants disclosed that the financial results materially understated freight costs, Blue Owl and the other Lenders would also have been in a position to conclude that the Financial Projections and other projections were completely unrealistic and inaccurate.  Defendants' fraud prevented this from happening.

66.    To the contrary, Defendants continued to knowingly present a materially false and misleading picture of the Company's financial situation.  In addition to the March 14 call described above wherein Defendants made numerous material misrepresentations and omissions, Blue Owl also met with Defendants and Walker Edison's CFO on March 19, during which discussion Blue Owl was told, with Defendants' authorization and awareness, that the Company would be shocked if 2021 growth was even as low as the Financial Projections, and that internally Walker Edison had a higher target, an expression of optimism that Defendants knew was materially false and misleading for all the reasons alleged herein, and that echoed Defendant Casella's false statements on March 14.

67.    Blue Owl and the other Lenders justifiably relied upon these financial statements and projections and statements that Defendants made about them in connection with entering into the Loan Agreement and funding the New Secured Loan.  On information and belief, Defendants decided not to correct these misstatements because correcting the accounting information and modifying the projections to reflect known facts could impair Defendants' chances of achieving a

large payday through a new equity investment or dividend recap transaction.  In reliance on the Original Actuals and the Financial Projections, Blue Owl and the other Lenders agreed to enter into the Loan Agreement and fund the New Secured Loan to their detriment.

68.    But before Defendants presented these rosy and false assessments of the Company's financial position and prospects to Blue Owl and the other Lenders throughout March 2021, Defendants had already been made aware of Company management's decidedly pessimistic assessment of the Company's financial position that made Defendants' statements materially false and fraudulent.  Defendants discussed and accepted these negative assessments, none of which were disclosed to Blue Owl and the other Lenders.  When these internal and external statements are compared, they make clear that Defendants' fraud was not accidental but was intentional and motivated by financial gain.

69.    On March 9, 2021, for example, Walker Edison's President told Defendants Bonham and Davis that "FedEx fees will continue to increase and raw material costs may also increase."  Further, on March 11, 2021—approximately three weeks before closing the new $300 million loan and causing the Dividend to be issued—Defendant Bonham told Defendant Davis and other Walker Edison employees that they "just had a meeting with the P[rospect] H[ill] guys," where the Company's CFO "shared <u>an erosion happening in our profit profile due to inbound freight and outbound increased FedEx charges</u>."  (Emphasis added).  On the same day, the CFO warned Defendants Bonham and Davis that "I know we 'think' we will see relief in May or June on the ocean freight, but I wouldn't count on it and I'm really worried about the raw materials market."  There was no disagreement from Defendant Bonham, who, in another email, expressly stated that he did not "see ocean freight or fedex costs reverting."

70.     That day, unbeknownst to Blue Owl and the other Lenders, tempers were flaring inside the Company as Defendants tried to deal with the Company's financial woes.  On March 11, 2021, the Company's Controller put it bluntly:  "cash is short right now."  On the same day, Defendants had attended a meeting to discuss the Company's "recent underperformance."  The Company's President expressed regrets that "the meeting did not go well and could have been better managed," alluding to Defendants' frustration with the management team that had brought them more bad news without providing any reassurance.  The Company's President then provided the Founder Defendants and PHGP Defendants a summary of next steps that were necessary to address the Company's "reduced profitability, increased costs, and the impact on the FY21 EBITDA forecast."

71.     Two days later, Defendants presented Blue Owl and the other Lenders with the Financial Projections showing freight and shipping costs remaining stable and the Company gaining dramatically increased EBITDA and profit margins throughout 2021.  Thus, despite receiving all of this alarmingly bad news on March 11, 2021 regarding the Company's "reduced profitability," "underperformance," the "impact on the FY21 EBITDA forecast," and the "erosion happening in our profit profile due to inbound freight and outbound increased FedEx charges," the Founder and PHGP Defendants just two days later presented Blue Owl with a misleadingly bullish picture of the Company's prospects, providing the false and misleading Financial Projections that reflected increased gross profit and EBITDA for 2021 and assumed no significant increase in cost of goods sold due to freight charges and no significant increase in cost of shipping.  These projections were completely at odds with material undisclosed facts of which Defendants were already aware.  The very next day, on March 14, 2021, Defendant Casella and the other Defendants

27

reinforced this unwarranted optimism, misrepresenting to Blue Owl that Defendants were "very confident" the Company's EBITDA performance would be "bigger this year."

72.     On March 16, 2021, just two days after communicating the falsely positive outlook to Blue Owl on March 14, Defendant Fiorentino privately wrote to Defendants Bonham, Davis, Casella, and Damiano that there were "very high hurdles for gross margin/EBITDA year over year starting in April."

73.     On March 19, Blue Owl met with Defendants and the Company CFO and was told that the Company would be shocked if 2021 growth was even as low as the Financial Projections, and that internally Walker Edison had a higher target, an expression of optimism that Defendants knew was materially false and misleading, and that echoed Defendant Casella's false statements on March 14.

74.     The highly material negative information was ***never*** disclosed to Blue Owl or the other Lenders; in fact, the opposite was conveyed by Defendants through their statements to Blue Owl and the other Lenders, and through the distribution of false and misleading financial statements and projections for the Company.  These material facts and others were not disclosed because, as Defendant Fiorentino put it, the focus was still on a "dividend path to private deal," meaning the Dividend following the closing of the New Secured Loan.

75.     As the days passed, other management-level employees shared concerns that the Company would continue to suffer from spiraling freight costs well beyond March 2021.  On March 19, 2021, the very same day that Blue Owl was being told that the Company's performance had been outstanding and was expected to be higher than the Financial Projections, a Company vice president complained internally that "ocean freight increases will be persistent," and that the

increasing freight costs plaguing the Company and the global supply chain would not be "short term/temp." The Company's Treasurer told the CFO that "it seems like [freight expenses] ha[ve] been going up every month since the first of the year." On information and belief, the Founder Defendants and PHGP Defendants began holding "all hands" meetings to discuss how to handle the soaring freight and shipping costs, which were quickly burning up the Company's cash resources and were making the Company's financial position untenable. Defendants never even told Blue Owl and the other Lenders about the remarkable fact, as alleged above, that ongoing shipping problems had recently disrupted one of its most significant customer relationships in December 2020 when the Company was kicked off of the customer's e-commerce platform as punishment for delays, an event that caused Defendant Bonham to say, "I expect all of us to ask ourselves how did we [expletive] December this badly." Again, none of these material facts were disclosed to Plaintiff and the other Lenders.

76.     Despite these regular internal discussions, the Company's projections that Defendants used to justify and support the incurrence of the Loan Agreement and New Secured Loan did not reflect Defendants' actual knowledge that the Company would continue to suffer from increased freight and shipping costs and that costs would continue to increase after consummation of the transaction. In fact, Defendants knew that the projections they used to promote and justify the Loan Agreement and New Secured Loan failed to account for the increased freight and shipping expenses the Company had encountered since at least as early as October 2020 and failed to account for the resulting erosion in EBITDA that Defendants knew would continue to occur. Defendants did not even properly account for the EBITDA misses that they knew had already resulted from these issues and other performance challenges. Moreover,

Defendants were well aware that the Company's financial projections were unreasonably high and ignored reality in order to justify the Dividend.  Walker Edison's own President lamented weeks after the Dividend was issued that "we were saying from the beginning that the forecast for this year was way too high and no one listened."

77.    To the contrary, Defendants sought to downplay the Company's margin, profitability, and liquidity problems as potential issues.  At the same time that Defendants and Walker Edison management were internally discussing the "persistent" and "inevitable" increases in freight and shipping costs and the "erosion in our profit profile"—as Defendant Bonham put it—caused by those increases that were not accounted for in the Financial Projections, Defendants were telling prospective lenders that freight and shipping issues had been resolved.

78.    For example, in the March 3, 2021 memorandum titled "Confidential Information Memorandum – Public Lender Information" (the "**March 2021 Confidential Memo**") and given by the Board Defendants to Blue Owl and the other Lenders in March 2021, Defendants told Plaintiff and the Lenders that although Walker Edison had "experienced unprecedented supply chain challenges" in November 2020, it "has since worked through the supply chain challenges, which no longer pose an issue" and that "[t]he Company's January 2021 performance recovered well from December 2020, as the supply chain challenges subsided and Walker Edison continued to experience increased demand."  Upon information and belief, the Board Defendants—who constituted the entire Board and several key leadership positions—caused or approved this false representation to be placed in the March 2021 Confidential Memo, which itself "represent[ed] and warrant[ed] . . . that the information contained in [the March 2021 Confidential Memo] . . . does not contain any untrue statement of a material fact or omit to state a material fact necessary to

30

make the statements contained herein not materially misleading in light of the circumstances under which such statements are made."

79.    These materially false and misleading statements came at the same time that Defendant Bonham was telling management internally, "I don't see ocean freight or fedex costs reverting" and the Company's president was warning Bonham, Davis, and the PHGP Defendants of "reduced profitability, increased costs, and the impact on the FY21 EBITDA forecast."  In addition, on March 22 and 24, 2021, just days before closing the New Secured Loan, employees of Walker Edison were still grappling with the related errors with the Company's freight accounting, noting that there had been "$6.4 million of freight costs" that were "not being allocated to inventory timely," which had been known since year-end 2020.  Again, this was never conveyed to Blue Owl or the other Lenders prior to closing of the New Secured Loan, despite Defendants' knowledge.

80.    As problems mounted, the Company was forced to take drastic steps to deal with its lack of liquidity to pay ongoing debts due to its deteriorating financial condition.  On information and belief, not later than March 2021, the Company started to discuss intentionally short paying invoices to certain critical vendors, *i.e.*, paying less than the invoiced amount due and delaying payment, to manage its cash liquidity.  While helpful on paper to slow cash burn, this strategy of underpaying and delaying critical vendor payments would cause material risk to the Company's relationships and business going forward.  Delaying and short paying critical vendor payables was not part of the Company's regular and normal working capital management.  Defendants made this intentional decision because the Company would be running precariously low on money soon without such a strategy, and the Company modeled various percentages of

31

vendor short paying so that it could preserve liquidity and remain in compliance under its asset-based loan facility ("**ABL Facility**").  Yet, when cash did become available through the Loan Agreement, Defendants did not leave a single dollar of cash in the Company and rather siphoned off the cash for their own benefit through the Dividend.

81.     The Founder Defendants and PHGP Defendants were fully aware of the liquidity crisis faced by the Company and were advised of various measures Company management was proposing to deal with the Company's growing inability to pay its debts.  Between March 3 and 8, 2021, for example, the Company's CFO requested that a four-week cash flow forecast be drawn up showing that the Company would only be able to pay 86% of what it was scheduled to pay to its suppliers in China and Brazil and stated that he was "going to talk to [Defendant Bonham], [Walker Edison's President], and [Defendant Davis] today about pushing orders out," *i.e.*, delaying critical orders from suppliers, "since we aren't hitting sales goals."  According to an internal cash flow forecast dated March 16, 2021, the Company had determined that it could not pay its debts to vendors and suppliers as they came due without running out of availability on its bank line of credit and being in breach of its credit requirements within five weeks.

82.     As of at least March 17, 2021, management expressed concern that the Company's factory relationships—absolutely essential to the Company's business and survival—could be seriously jeopardized if the Company stretched payments beyond due dates and short paid for orders that it had placed.  They also debated which part of the Company was better positioned to "weather this storm."

83.     Defendant Bonham also started pushing the idea of slashing hiring at the Company given the dire financial conditions, telling Defendant Davis and others on the management team,

"revenue miss plus increasing expenses = stop hiring." However, this formula did not stop Defendants from, just days later at the end of March 2021, causing the Company to incur $300 million via the New Secured Loan (resulting in increased debt service costs) or funding an approximately $210 million distribution to line their own pockets. And as Walker Edison's CFO told Defendants Bonham and Davis, a hiring freeze would not resolve the financial problems alone, and other factors like costs of goods and shipping costs "are the more significant drive[r]s of future performance."

84.     By March 16, 2021—the same day Defendants provided Blue Owl and the other Lenders with the inflated Original Financials—the Company had completed an internal 16-week projection showing that in order to preserve capacity under its current $55 million ABL Facility— the Company's key source of liquidity—the Company would only be able to pay a portion of invoices owed to suppliers for the two weeks preceding the Dividend and through at least June 2021.

85.     Two days later, on March 18, the Company had completed another internal projection showing that it would exceed its borrowing capacity under its ABL by May 2021. It also showed that the Company would burn through more than $100 million in cash—which it did not have—by December 2021. Upon information and belief, Defendants were aware of these projections that reaffirmed the on-the-ground reality yet failed to disclose this information to the Lenders.

86.     On March 18, the day before Defendants communicated to Blue Owl and the other Lenders that 2021 growth was expected to surpass even current expectations, the Company's President advised Defendants Bonham, Davis, Fiorentino, Damiano, and Casella as members of

the Walker Edison Board that the Company should delay certain critical hiring and implement a 31% reduction in hiring of non-critical roles "immediately" and not reintroduce non-critical hiring until "performance improves." These discussions and others alleged herein reflect that all of the Defendants were fully aware and in regular communication regarding the Company's lack of adequate capital and inability to pay its debts as they came due while they continued to plan the consummation of the dividend recap transaction.

87.     The Company's actual performance with respect to freight and shipping delays and increased costs not only impacted its cash liquidity in the form of reduced profits, but it also reduced the Company's ability to access the bank borrowing that was essential for it to meet its debts. Specifically, the freight and shipping issues had an immediate impact on the Company's ability to borrow cash under its ABL Facility. In connection with incurrence of the debt financing, on March 31, 2021, the ABL Facility was also amended to increase the available loan capacity from $55 million to $75 million. But the increased loan capacity did not mean that the Company was able to actually access that full capacity. Indeed, even prior to the amendment of the ABL Facility, the Company's ability to access the full capacity of the ABL was uncertain.

88.     On March 26, 2021—and consistent with the March 16 and 18 internal forecasts about the difficulties with retaining availability under the ABL Facility while continuing to pay the Company's obligations to its vendors and suppliers—the Company's CFO sent an email to representatives of Prospect Hill and to the Company's lender under the ABL Facility telling them that the Company's projections (which were used to justify the new loan and the issuance of the Dividend) depended on the Company having access to the full $75 million available under the ABL Facility, but that delays in shipments of the Company's inventory would preclude the

34

Company from borrowing the full amount it needed under the ABL Facility because the inventory necessary to supply the necessary collateral had been averaging in-transit times far beyond the lender's permitted 45-day time limits. Defendants ultimately declined to make a request to the ABL lender to increase the limits because Defendant Casella responded that he did not want such a request to "slow down the process," meaning the "process" by which Defendants were to cause Walker Edison within the next few days to incur $300 million in new debt so that Defendants could take the $210 million Dividend out of the Company. Again, Defendants did not disclose the Company's liquidity problems to Blue Owl or the other Lenders prior to the closing of the loan transaction.

  **D.**  **Defendants' Fraudulent Representations Caused the Lenders to Fund a $300 Million Term Loan and Caused the Company to Fund an Approximately $210 Million Dividend to Defendants.**

  89.  All of these issues, among others, meant that Defendants knew the Company, prior to closing on the New Secured Loan, was facing disruptions to its business that made its financial reporting and financial projections inaccurate and unreliable and would impact the Company's ability to pay debts as they came due. None of these facts caused Defendants to refrain from using their knowledge and control over Walker Edison to wrongfully (and fraudulently) induce Blue Owl and the other Lenders to enter into the Loan Agreement and provide $300 million in added funds in the form of the New Secured Loan, which Defendants knew Walker Edison could not repay.

Defendants Continue Their Fraud in the Loan Agreement

  90.  In the Loan Agreement and in written and oral communications during the loan diligence process in March 2021, the Board Defendants made, and caused to be made, additional

4864-8601-9280.v1

numerous materially false and misleading representations and warranties to Blue Owl and the other Lenders. Defendants' misrepresentations in the Loan Agreement and elsewhere were belied by the facts on the ground that were known to Defendants but not to Blue Owl or the other Lenders. In addition to the oral and written misrepresentations and omissions made by Defendants as alleged herein, below is a description of certain further material misrepresentations and omissions made, and authorized to be made, by Defendants in the Loan Agreement itself.

91.     The Board Defendants caused the making of a representation in Section 3.04(a) of the Loan Agreement that historical financial statements were prepared in accordance with GAAP and presented fairly the financial condition of the Company and Section 3.13(a) provided that no written information, report, or financial statement furnished to the Lenders contained a material misstatement of fact. These representations were materially false because among other things, the Company's historical financial statements actually violated GAAP, materially misstated the Company's freight costs, costs of goods sold, gross margin, EBITDA, and other metrics, and had to be restated for 2018 and 2019 as a result of the 2020 audit completed in July 2021, and the October 2020 to February 2021 financial statements that had been provided to Blue Owl and the other Lenders had to be corrected.

92.     In Section 3.04(b), the Board Defendants caused the making of a representation that there had been no event, change, circumstance, or occurrence that was or was expected to be a material adverse effect. This representation was materially false because in reality, there continued to be materially adverse changes in the financial state of the Company—including reduced profitability, increased costs, and imminent inability to pay critical vendors—that rendered the

Company unable to pay its debts as they came due and lacking adequate capital through the date of the dividend recap transaction.

93.     In Section 3.13(b), the Board Defendants caused the making of a representation that any projections were prepared in good faith and "utilized only assumptions believed by it to be reasonable when made in light of the then current circumstances."  The Financial Projections delivered by Defendants to the Lenders were known by Defendants to be unreasonable and false in that the Financial Projections, among other things, projected a decrease in shipping and freight costs, even though the Board Defendants internally acknowledged they did not "see ocean freight or fedex costs reverting."  The Board Defendants likewise were aware of reduced profitability, increased costs, and the impact of those issues on the Company's forecasts.  The projections provided to Blue Owl and the other Lenders were therefore not made in good faith and did not utilize assumptions believed by Defendants to be reasonable when made in light of the then-current circumstances.

94.     In Section 3.15 (Solvency), the Board Defendants caused the making of a representation that as of the closing date, and after giving effect to the refinancing, Dividend, and payment of fees under the Loan Agreement, the Company "on a consolidated basis" would be solvent.  In reality, the Company was not solvent under any standard, as alleged herein.  Notably, the Company was already unable to pay ongoing debts, internal projections suggested the Company would soon exceed its borrowing capacity, and the Board Defendants recommended slashing critical hiring in order to deal with the lack of liquidity.

95.     The Loan Agreement further contained no provision disclaiming reliance by Blue Owl or the Lenders on any representations made by the Board Defendants either outside of the

4864-8601-9280.v1

Loan Agreement or inside it (in the form of the representations and warranties made).  In all respects, Plaintiff Blue Owl and the Lenders were legally entitled to, and did rely, on the material false representations and omissions by Defendants in connection with the Loan Agreement.

96.    Upon information and belief, Defendants—who constituted the governing board of, and substantially all of the equity ownership interests in, Walker Edison—made and caused to be made the material misrepresentations and omissions in the Loan Agreement and those otherwise communicated to Blue Owl and the other Lenders during the loan transaction diligence. Defendants knowingly made, and caused Walker Edison and its affiliates, employees, and representatives to make, these material misrepresentations and omissions, on which Blue Owl and the other Lenders reasonably and justifiably relied, in order to induce Blue Owl and the other Lenders to enter into the Loan Agreement, which allowed Defendants to extract hundreds of millions of dollars.

97.    Defendants controlled Walker Edison (both the Board and its top management positions).  The Founder Defendants and PHGP Defendants who served on the Walker Edison Board caused and authorized Walker Edison (through its corporate CFO) to sign the Loan Agreement on behalf of the relevant Walker Edison entities.  Corporate authorizations for the Loan Agreement confirm that Defendants knowingly caused, approved, authorized, and ratified the illegal acts and fraud in connection with the loan transaction and financially benefited thereby and are therefore liable for them.

98.    Because Defendants arranged and caused the Company, Walker Edison Intermediate, and another subsidiary (EW Furniture, LLC) to serve as the only borrower/guarantor signatories to the Loan Agreement, Defendants arranged to avoid having themselves serve as

4864-8601-9280.v1

signatories or parties to the Loan Agreement in order to further distance themselves from the fraud they had committed.  As a result, Defendants cannot avail themselves of or otherwise invoke any of the Loan Agreement's provisions (including the choice-of-law or venue provisions) in their defense, as the Loan Agreement expressly prohibits this.  Pursuant to Section 10.04(a), the Loan Agreement provides that "[n]othing in this Agreement or any other Loan Document . . . shall be construed to confer upon any person (other than the parties hereto, their respective successors and assigns permitted hereby . . . ) any legal or equitable right, remedy or claim under or by reason of this Agreement or any other Loan Document."

<u>Agency Allegations</u>

99.    In connection with the Loan Agreement, the Board Defendants caused to be created, executed, and delivered to Blue Owl and the other Lenders, in connection with an Omnibus Officer's Certificate dated March 31, 2021 (the same date as the signing and closing of the Loan Agreement), an Omnibus Written Consent by Defendant Walker Edison Holding Company LLC, the Utah-based entity owned and controlled by the Defendants:  (1) stating that Blue Owl and the other Lenders were entitled to rely upon the terms (including the materially false and misleading representations and omissions) of the executed Loan Agreement as having been authorized by Defendant Walker Edison Holding Company, LLC; (2) falsely representing that Walker Edison would not be rendered insolvent as a result of the Term Loan or transactions contemplated by the Term Loan guaranties (including the Dividend); and (3) stating that any acts by any manager, officer, employee, or agent of each Walker Edison affiliate in connection with the Term Loan transaction were "in all respects ratified, approved, confirmed, and adopted as acts and deeds by and on behalf of" Walker Edison Holding Company, LLC.

100.    Defendants, as members of the controlling board and equity owners (or their representatives) of Defendant Walker Edison Holding, Walker Edison Intermediate, and Walker Edison, knowingly caused, approved, authorized, and ratified the acts undertaken by Defendant Walker Edison Holding and the other companies (including Plaintiff Walker Edison, Walker Edison Intermediate, and EW Furniture LLC as borrowers/guarantors) and their affiliates, employees, and representatives, all of whom acted as Defendants' agents within the course and scope of such agency in connection with the Loan Agreement and acts and transactions relating thereto for Defendants' benefit.  Based on the facts alleged herein and to be proven at trial, Defendants are themselves liable for those acts directly and also vicariously as principals, and their acts and knowledge are thereby imputed to Defendants.

101.    In addition, each of the Board Defendants at all times acted on his own behalf and on behalf of the other entity Defendants that had the remaining direct or indirect ownership interests in Walker Edison.  Defendant Brad Bonham acted at all times alleged herein both in his own personal interest and as an authorized agent and representative of Defendant MB & BB Holdings, which was the Utah-based investment vehicle through which he held ownership in Walker Edison and whose interests were aligned with his own.  In undertaking the acts alleged herein, Defendant Bonham acted within the scope of his authority and agency to pursue the interests of Defendant MB & BB Holdings in causing the New Secured Loan and the Dividend, the proceeds of which were paid to MB & BB Holdings.  Defendants Damiano, Murphy, Suttin, Casella, and Fiorentino, who were all affiliated with Prospect Hill, acted at all times alleged herein both in their own individual personal interests and as authorized agents and representatives of Defendants Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings,

L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P. (collectively, the "Prospect Hill Entities"), which constituted the various Prospect Hill-related entities with direct or indirect ownership interests in Walker Edison and whose interests aligned with their own.  In undertaking the acts alleged herein, Defendants Damiano, Murphy, Suttin, Casella, and Fiorentino acted within the scope of their authority to pursue the interests of the Defendant Prospect Hill Entities in causing the New Secured Loan and the Dividend, the proceeds of which were paid to the Prospect Hill Entities.  In addition, all of the Board Defendants served as managers and directors of Defendant Walker Edison Holding Company, LLC, which controlled Walker Edison Intermediate and Walker Edison.  As a result of these relationships, each of the Board Defendants and Defendant Walker Edison Holding was an agent of the remaining Defendants and the conduct and knowledge of the Board Defendants and Walker Edison Holding LLC as alleged herein are imputed to the remaining Defendant entities, on whose behalf they acted within the scope of their authority and which are equally liable both directly and vicariously as principals.

Defendants Use the Loan Proceeds to Pay Themselves the $210 Million Dividend

102.    As explained above, the representations and warranties contained in the Loan Agreement and the related financial statements and projections and the omissions therefrom were materially false and misleading.  Defendants had exclusive and unique knowledge of the true material facts and information such that the exercise of reasonable diligence would not have uncovered the fraud, and Defendants fraudulently concealed, misrepresented, and omitted to disclose the true material facts in order to induce and cause Blue Owl and the other Lenders to

fund $300 million under the New Secured Loan, the majority of which went directly to Defendants' pockets.

103.     In reasonable reliance on the financial statements and projections prepared and provided by Defendants, as well as the representations and warranties in the Loan Agreement and Omnibus Written Consent, Blue Owl and the other Lenders executed the Loan Agreement on March 31, 2021.  This transaction resulted in the New Secured Loan, which provided $294,921,250 in net cash for the Company.  Defendants, however, did not permit the Company to retain a single dollar of the New Secured Loan to fund its ongoing operating costs or to solve the known liquidity issues.  Rather, 100% of the proceeds of the New Secured Loan was used to pay transaction fees, to repay existing debt of $82,874,156.25, and to fund the Dividend and various employee profit interests of $209,320,503.41.  The liens under the Loan Agreement on the Company's cash were not perfected prior to the Dividend (which was paid on the same day), and the funds used for the Dividend were not fully encumbered by valid liens when transferred from the Company's accounts.

104.     Defendants also caused the Company to increase its loan capacity under the ABL Facility from $55 million to $75 million, notwithstanding the $300 million term loan debt they had just caused the Company to incur, but projections and internal emails showed that even this increased loan capacity under the ABL Facility would either not be available or would be insufficient given the Company's substantial liquidity needs and cash burn.

105.     Had Defendants observed corporate formalities, the Dividend would have been distributed through the Company's corporate structure—(i) first to Walker Edison Intermediate, (ii) then to Walker Edison Holding, and (iii) then to the beneficial owners of Walker Edison

Holding.  The Dividend, however, was not distributed in accordance with this corporate structure. Rather, it was paid in cash directly by Walker Edison to Defendants JWC-WE Holdco, Inc. (on information and belief, an entity owned and/or controlled by Prospect Hill), MB & BB Holdings, LLC (on information and belief, an entity owned and controlled by Brad Bonham), and Matthew Davis (collectively, the "**Transfer Recipients**").  The cash amounts of the Dividend transferred to the Transfer Recipients (the "**Transfers**") are reflected in the below chart and represent 99.4% of the total Dividend amount above.

| Transfer Recipient | Transfer Amount |
|---|---|
| JWC-WE Holdco, Inc. | $119,895,590.37 |
| MB & BB Holdings, LLC | $66,143,473.13 |
| Matthew Davis | $22,049,157.32 |

106.    In addition to the Transfers to the Transfer Recipients, the Company also distributed a very minor amount of the Dividend, $1,232,282.60 (representing 0.6% of the Dividend Amount) for certain senior employee profit interests.  As with the Dividend payouts, the Company did not receive any of the funds distributed to these employee recipients.

107.    The Transfers were made to and for the benefit of the Transfer Recipients, each of which were either insiders and controlling owners of Walker Edison or controlled by insiders or controlling owners of Walker Edison.  Walker Edison received no consideration in return for the Transfers.

108.    On information and belief, after completion of the Transfers by Walker Edison, the Transfer Recipients subsequently transferred some or all of the proceeds of the Dividend to additional persons and entities, including Defendants Brad Bonham, Matt Davis, Walker Edison Holding Company, LLC, the remaining Defendant Prospect Hill Entities, and certain Doe defendants who have not yet been identified.

109.    Not only did the Dividend strip the Company of loan proceeds that should have been used to address its liquidity and performance issues, but the $300 million New Secured Loan left the Company with massively increased debt and monthly costs of debt service.  Prior to the consummation of the Loan Agreement and Dividend, the Company had less than $83 million in funded term loan debt and had approximately $22 million outstanding under the ABL Facility that had a borrowing limit of $55 million.  After consummation of the Loan Agreement and the Dividend at the end of March 2021, however, the Company had $300 million in funded term loan debt under the Loan Agreement, with an increased borrowing limit under the ABL Facility of $75 million.  As a result of the closing of the New Secured Loan, the cost of the Company's monthly debt service had therefore more than tripled, from an average of approximately $640,000 per month in the six months prior to the closing of the New Secured Loan to an average of approximately $2 million per month in the six months following the closing of the New Secured Loan.

110.    In other words, the Loan Agreement substantially increased the required cash necessary to fund the Company's debt by more than $1.4 million per month at a time when the Company was already experiencing liquidity and cash problems and an inability to pay debts as they came due in the ordinary course of the Company's activities and affairs.  At the same time, the Dividend depleted the Company of approximately $210 million of cash that could have been used to mitigate the Company's operating losses and fund its debt payments.  All of this was directed and facilitated by Defendants, who used their positions of power over the Company to misrepresent the state of the Company, to the detriment of Blue Owl and the other Lenders.  Had Blue Owl and the other Lenders known the truth about the financial status of the Company, they

would not have supported a transaction that resulted in approximately $210 million departing the Company when those cash proceeds were sorely needed to fund operations and satisfy debt service.

111.     Blue Owl and the other Lenders justifiably relied upon the financial statements and projections prepared and sent by, or at the direction of, Defendants, as well as other materially false and misleading statements and omissions by Defendants alleged herein, made to induce the Lenders to fund the cash necessary to make the Dividend.  In reliance on the Original Actuals and the Financial Projections, which were materially false and misleading, Blue Owl and the other Lenders agreed to enter into the Loan Agreement.

112.     Blue Owl and the other Lenders were misled by Defendants into lending money to a company whose financial health and cash position was worse than Defendants represented—a company that was already considering drastic cuts to spending and jeopardizing its own vendor relationships due to struggles to pay its debts even before it took out a $300 million loan that would not increase its cash position by a single dollar.  As a result of Defendants' fraud and misconduct, Blue Owl and the other Lenders did not have full knowledge of all material facts surrounding the Loan Agreement and the Dividend or the impacts that such transactions would have on the Company and its ability to perform under the Loan Agreement.  In particular, this is because Defendants concealed and misrepresented that the Company's financial statements and projections were materially inflated, false, and inaccurate due to spiraling costs, inventory challenges, and poor cash flow that would render the Company unable to pay its debts.

113.     Blue Owl and the other Lenders were therefore unaware of the Company's financial struggles, which was a material undisclosed fact, and moreover that the $210 million Dividend the Defendants arranged to pay themselves would render the Company insolvent, including leaving it

with inadequate capital, an inability to pay its debts as they became due, and unreasonably small assets in relation to its business.  Blue Owl and the other Lenders did not intend to loan $300 million to a Company that was struggling financially, nor did they intend to loan to the Company that would be insolvent at the time of the $210 million Dividend and would soon be unable to pay its vendors.  Defendants' fraud prevented Blue Owl and the other Lenders from becoming aware of the true material facts regarding the transaction and the state of the Company so that they could decline to provide the loan that funded the Dividend.  Because of the state of circumstances Defendants' fraud created, Blue Owl and the other Lenders did not have knowledge of all material facts and therefore did not ratify, and cannot be deemed to have ratified, the transfer of the $210 million Dividend to Defendants.

## V.   AS THE DEFENDANTS FORESAW, WALKER EDISON'S ACTUAL PERFORMANCE DID NOT IMPROVE AFTER CLOSING THE NEW SECURED LOAN AND WALKER EDISON WAS INSOLVENT.

114.    Contrary to Defendants' fraudulently positive portrayal of the Company's financial health, the Company's gross profit and EBITDA in the period leading up to the closing of the New Secured Loan were materially lower than the projections Defendants had provided to obtain the New Secured Loan.  In reality, the Company was facing a severe liquidity shortage and significant increases in expenses (primarily freight, shipping, and distribution center costs) that were not likely to dissipate soon.

115.    Defendants were aware that as of the closing of the New Secured Loan, the Company was inadequately capitalized and would not be able to pay its debts as they came due in the ordinary course of the Company's activities and affairs.  This was borne out almost immediately after the closing of the New Secured Loan.  Further, the additional debt caused

Walker Edison's debts to be greater than all of its assets. In other words, as of the closing of the Loan Agreement, the Company was insolvent.

116.    Following the closing of the New Secured Loan on March 31, 2021, the Company missed the projections Defendants had presented to Blue Owl and the other Lenders to justify the New Secured Loan by a material margin. The Company's actual 2021 net sales of $399.6 million fell more than ***$100 million short*** of its projected forecast of $504.2 million. And its 2021 actual reported EBITDA of ***negative*** $1.6 million fell well short of its projected $104.4 million. By the end of 2021, the Company burned through $100 million in cash due substantially to the spiraling costs and inventory challenges that were known prior to the Dividend transaction.

117.    These significant misses reflected the fact that the monthly financials and financial forecasts that Defendants used to justify the Dividend prior to the transaction closing on March 31, 2021 did not reflect the operative reality of the Company due to Defendants' willful and intentional failure to properly allocate freight expenses for accounting purposes, and due to the known persistent increase in freight, shipping, and other costs that the Company experienced in the months preceding and following the issuance of the Dividend.

118.    The Company's actual financial information, which was known to Defendants but intentionally withheld from Blue Owl, showed significant financial and liquidity problems well before the New Secured Loan closed. Based on this, Defendants should not have caused the Company to take on $300 million in new debt and should have refrained from extracting hundreds of millions of dollars from the Company because such actions immediately jeopardized the Company's ability to continue operations and pay its debts on time.

119.    Had Defendants disclosed the true financial information that was available to them, neither Defendants nor the Company could have rationalized borrowing and paying the Dividend of approximately $210 million solely from borrowed funds.  Nor would Blue Owl and the other Lenders have been willing to provide the New Secured Loan.

## VI.    THE COMPANY ENGAGED IN AN ADDITIONAL EQUITY TRANSACTION.

120.    Just a few months later, Defendants sought and obtained from a New York-based private equity growth firm an additional $250 million equity investment in Walker Edison Holding.  Upon information and belief, Defendants did not disclose material facts regarding their actual expectations that freight and shipping costs would continue to increase in 2021 and to pose solvency and liquidity challenges for the Company, and instead Defendants presented unreasonable and inflated projections to the private equity growth firm in order to induce it to enter into the equity transaction.

121.    As with the New Secured Loan, this May 2021 investment was used to fund a second dividend to Defendants.  Thus, although Defendants personally profited from the deal, barely any of this cash infusion was used to help fund the Company's operations and get it back on its feet.  Ultimately, Walker Edison did not receive any of the proceeds from the May 2021 investment other than the amount necessary to cover the associated transaction costs.  This was a *de minimis* amount compared to the $250 million equity investment and the size of the dividends, and to the cash needed by Walker Edison to solve its continued liquidity and operations problems.  Following the additional equity investment, the Company's continuing insolvency only worsened.  Ultimately, the private equity growth firm's investment in Walker Edison came to an end a little

more than a year later in a restructuring transaction made necessary by the Company's deepening liquidity problems.

## VII.   **WALKER EDISON WAS INSOLVENT WHEN THE COMPANY ISSUED THE DIVIDEND.**

122.   As a result of the financial difficulties described above, rational projections of the Company's performance and cash flow based on the information actually known by Defendants would have shown that Walker Edison was insolvent, unable to pay its debts as they came due, and/or would be left with unreasonably small assets at the time of, and as a result of, the Dividend. It was clear internally that the Company would have little cash to help "weather this storm" that it was facing and that the combination of the "erosion in our profit profile" that Defendant Bonham identified and the increase in operating and debt expenses would leave the Company in an untenable financial position.

123.   Defendants, however, refused to correct their materially false and misleading projections to conform to what they knew.  Defendants therefore induced Blue Owl and the other Lenders to enter into the Loan Agreement and Defendants received the Dividend with knowledge that Walker Edison would not be able to pay its debts as they came due in the ordinary course of the Company's activities and affairs, would be left with inadequate capital, and had otherwise unreasonably small assets in relation to its business.

124.   Throughout 2021, based on facts and circumstances that were known to Defendants as of the time of the Company's entry into the Loan Agreement and issuance of the Dividend, Walker Edison experienced a significant cash shortage and failed to pay its vendors on time and in full.  This state of affairs forced the Company to choose which manufacturers would get paid and which ones would have to wait, and which manufacturers would be short paid, including in

situations where this would contravene the Company's legal and contractual obligations.  The Company's liquidity worsened as a result of the New Secured Loan, as the Company's debt service requirements increased tremendously, and no proceeds of that loan were made available to the Company for anything other than distribution of the Dividend, repayment of existing debt, or payment of transaction fees.  After the closing of the New Secured Loan and the Dividend, the Company was only able to fund operations through the later incurrence of more debt, including additional debt provided by Blue Owl and the other Lenders, as well as new infusions of equity capital, neither of which was reasonably certain nor guaranteed to occur when the Dividend was distributed.

125.    As detailed above, the Company's ability to borrow cash under its ABL Facility was limited.  And by March 16, 2021, the Company's internal projections showed that it would exceed its borrowing capacity under its ABL Facility, its key source of liquidity, by April 2021.  This was not disclosed to Blue Owl or the other Lenders prior to the closing of the New Secured Loan.  Therefore, Defendants knew at the time of the funding of the New Secured Loan and Defendants' receipt of the Dividend that the Company would be left with inadequate capital, total assets less than total liabilities, and otherwise unreasonably small assets and capital, and would be unable to pay its debts as they became due.

126.    Such anticipated problems were borne out as the months passed.  As of March 31, 2021, the Company had borrowed approximately $22 million under its $75 million ABL Facility.  Less than five months later, in August 2021, the Company increased the availability under its ABL Facility to $100 million.  By the end of 2021, the Company had fully drawn the amount available under the ABL Facility, made necessary by the Company's continued failure to meet its

4864-8601-9280.v1

projections, which failure was the inevitable consequence of known facts and circumstances, including rising freight and shipping costs, and inventory challenges known to Defendants before commencing discussions with Blue Owl about the dividend recap.

127.    Even the increase in availability under the ABL Facility was not sufficient to prevent the Company from running out of cash in 2021.  Between September and December 2021, the Company obtained an additional $60 million in cash through capital contributions made by Defendants and other shareholders, who upon information and belief were trying to extend the Company's runway to avoid attention being focused on their prior fraud.  During this period, Defendant Bonham told Defendants Damiano and Casella that "everyone knows ocean freight isn't abating anytime soon."  This confirmed what Defendants knew when they caused the fraudulent Financial Projections to be sent to Blue Owl—that there were severe cost and expense issues drastically impacting the Company's bottom line.  Describing the Company's financial position, Defendant Bonham stated that "the house is on fire," the situation was "precarious," and the Company should fire all Company employees not deemed "mission critical."  In the face of the challenges created by Defendants' extraction of $210 million in badly needed liquidity that might have helped avert these disasters, Defendant Bonham simply told Defendants Damiano and Casella that "*honestly, I want to sail off into the sunset*."

128.    Because Defendants negotiated the Loan Agreement without properly taking account of the Company's negative financial condition and performance at that time, within months of issuing the Dividend, the Company was also in danger of breaching the financial covenants under the Loan Agreement that Defendants caused in order to fund their own massive

$210 million Dividend.  Specifically, during the life of the New Secured Loan, the Company was required to maintain a specific "Total Net Leverage Ratio," which was to be tested quarterly.

129.    In fact, by July 2021, less than *four months* after their $210 million Dividend and only two months after their additional equity transaction with a different private equity growth firm, Defendants had informed Blue Owl and the other Lenders that the Company's financial picture was so bleak that it might breach the Total Net Leverage Ratio covenant under the Loan Agreement.  Further, on August 27, 2021, less than *five months* after their $210 million Dividend, Defendants notified Walker Edison's lenders that, due to the additional pressures and an influx of pre-bought inventory from Q4 2020, the Company was facing a severe liquidity crisis and likely only had two to four *weeks* of liquidity left.  By six months after Defendants' $210 million Dividend, the Company was in fact unable to even satisfy the *very first* Total Net Leverage ratio test on September 30, 2021, a disastrous result that Defendants knew and understood was likely before receiving the Dividend, given the "erosion" of the Company's profit profile and the fact that Defendants didn't "see ocean freight and fedex costs reverting," as Defendant Bonham put it.

130.    The Company's insolvency was known and knowable to Defendants at the time of the Dividend and the New Secured Loan.  The failure to satisfy the Total Net Leverage Ratio covenant under the Loan Agreement, if not timely cured, threatened to constitute an "Event of Default" under the Loan Agreement, which would allow the full amount of the New Secured Loan to be accelerated and become immediately due, meaning that the full, approximately $300 million New Secured Loan would have been immediately due and payable, a consequence that would have caused the Company to fall into bankruptcy.  The Company did not have sufficient cash or refinancing capability to pay such debt when due.  Based on the facts and circumstances known

by Defendants but concealed from Blue Owl and the other Lenders when Defendants induced them to enter into the Loan Agreement and fund the New Secured Loan, the Company did not have a realistic chance of satisfying the Total Net Leverage Ratio covenant under the Loan Agreement and was otherwise unable to satisfy its debts as they came due in the ordinary course of business.

## VIII.   DEFENDANTS EXECUTE A RESTRUCTURING SUPPORT AGREEMENT AND CHANGE OF CONTROL.

131.   By January 2023, it became clear that because of Defendants' misuse of Walker Edison's financial resources, Walker Edison would not be able to survive without more drastic action.  Unable to fix the problems they had created, Defendants decided to turn over ownership of the Company to Blue Owl and the other Lenders.  Accordingly, Walker Edison, its investors, Blue Owl, and the other Lenders entered into a Restructuring Support Agreement, dated January 27, 2023 (the "**RSA**").

132.   The purpose of the RSA was to (i) preserve and maximize the value of the Company by improving its balance sheet, (ii) provide necessary liquidity to address the Company's operating needs by providing for an additional $13 million loan under the Loan Agreement, (iii) preserve employee jobs, and (iv) satisfy certain of the Company's ongoing obligations.  Pursuant to the transactions attendant to the RSA, the Lenders assumed ownership and control over Walker Edison Intermediate, and, in turn, Walker Edison and its subsidiaries.  The Lenders, including Blue Owl, retained a significant portion of their loans to Walker Edison following the RSA.  The RSA also expressly preserved the Lenders' claims against Defendants.  The RSA would not have been necessary had Defendants acted properly in exercising their fiduciary and managerial duties, and had Defendants not imposed added debt obligations that Defendants knew Walker Edison could not pay.

133.    By early 2023, Defendants' wasteful and unnecessary looting of Walker Edison, a once-successful Utah-based global furniture business, had jeopardized the long-term survival of the Company.  Defendants, in the face of this disastrous result and having improperly caused a massive liquidity event at the worst possible time simply to line their own pockets, exited the Company hundreds of millions of dollars richer and left Blue Owl and the other Lenders to pick up the pieces and rebuild.

134.    Following the RSA, in 2023, Blue Owl and the other Lenders have been forced to extend an additional $66.5 million in loans to the Company to fund ongoing operations, in addition to their pre-existing loans.  Therefore, as of the date of this Amended Complaint, the Company has issued at least $366.5 million of debt to Blue Owl and the other Lenders.

135.    Until the transfer of ownership in early 2023, Defendants were able to conceal the full extent of their fraud and the existence of Walker Edison's solvency from Blue Owl and the other Lenders.  Once Defendants relinquished control over Walker Edison and access to its books and records and employees, their wrongdoing became apparent.

136.    On July 24, 2023, Blue Owl (as administrative agent and on behalf of the Lenders) and Defendants entered into a tolling agreement, whereby the parties agreed that the statute of limitations for any claims brought by Blue Owl or the other Lenders shall be tolled and extended through dates subsequent to the date of the original and amended Complaints.

## CAUSES OF ACTION

**COUNT I:  Constructive Fraudulent Transfer Under Utah Code §§ 25-6-202, 203, 304, And Other Equivalent State Laws**
*(Against Defendants Brad Bonham, Matthew Davis, MB & BB Holdings, LLC, Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., and Does 1-100)*

137.    Blue Owl restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

138.    Blue Owl, on its own behalf and on behalf of the Lenders, was a creditor of Walker Edison before the Transfers were distributed to the Transfer Recipients.

139.    Blue Owl and the other Lenders have been, and remain, creditors of Walker Edison at all subsequent times and are current creditors of Walker Edison.

140.    On or around March 31, 2021, following the closing of the New Secured Loan, Walker Edison made the Transfers to the Transfer Recipients (JWC-WE Holdco, Inc., MB & BB Holdings, LLC, and Davis).  On information and belief, Walker Edison Holding also received a legal right to some or all of the Transfers pursuant to its operating agreement or other governance documents and therefore can be considered a recipient of the Transfers.

141.    On information and belief, after completion of the Transfers by Walker Edison, the Transfer Recipients subsequently transferred some or all of the proceeds of the Dividend (collectively, the "**Uptier Transfers**") to persons or entities, including Brad Bonham, Matt Davis, Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., and certain Doe defendants who have not yet been identified (collectively, the "**Uptier Transfer Defendants**").

142.    On information and belief, Walker Edison did not receive reasonably equivalent value for the Transfers.

143.    At the time of and after completion of the Transfers, Walker Edison was unable to pay its debts as they came due in the ordinary course of Walker Edison's activities and affairs, including payments to manufacturers and suppliers and its obligations under the Loan Agreement. To continue operations in 2021, the Company required an additional $60 million in equity contributions and an additional $20 million in availability under the ABL Facility.

144.    At the time of and after the Transfers, Walker Edison's financial statements showed that its total assets were less than the sum of its total liabilities.

145.    At the time of and after the Transfers, Walker Edison was engaged, or was about to be engaged, in a business or a transaction for which its remaining assets were unreasonably small in relation to their business or transaction.

146.    At the time of and after the Transfers, Walker Edison intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they came due.

147.    Walker Edison was insolvent at the time of the Transfers, and became insolvent as a result of the Transfers, which were eventually distributed by the Transfer Recipients to the Uptier Transfer Defendants via the Uptier Transfers.

148.    The Transfer Recipients and any immediate or mediate transferee of the Transfer Recipients, including but not limited to the Uptier Transfer Defendants, did not receive any interests or proceeds of the Transfers in good faith or for value.

149.    The Transfers and the Uptier Transfers are avoidable as constructive fraudulent transfers under both Utah Code §§ 25-6-202 and 203.  Under Utah Code § 25-6-304, Blue Owl is entitled to a judgment against the Transfer Recipients and the Uptier Transfer Defendants for the lesser of the value of the Transfers or the amount necessary to satisfy Blue Owl's and the other Lenders' claims, both those incurred before and after the Transfers, together with prejudgment interest from the date of such transfers, costs, all other relief set forth in Utah Code § 25-6-303 (including avoidance of the full value of the Transfers), or compensatory damages in an amount to be determined for the value thereof, and any further relief that this Court deems just, fair, and equitable.

**COUNT II:  Actual Fraudulent Transfer Under Utah Code § 25-6-202 And Other Equivalent State Laws**
***(Against Defendants Brad Bonham, Matthew Davis, MB & BB Holdings, Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., and Does 1-100)***

150.    Blue Owl restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

151.    Blue Owl, on its own behalf and on behalf of the other Lenders, was a creditor of Walker Edison before the Transfers were distributed to the Transfer Recipients.

152.    Blue Owl and the other Lenders have been, and remain, creditors of Walker Edison at all subsequent times and are current creditors of Walker Edison.

153.    On information and belief, after completion of the Transfers by Walker Edison, the Transfer Recipients subsequently made the Uptier Transfers to the Uptier Transfer Defendants.

154.    The Transfer Recipients and any immediate or mediate transferee of the Transfer Recipients, including but not limited to the Uptier Transfer Defendants, did not receive any interests or proceeds of the Transfers in good faith or for value.

155.    The Transfers were made with an actual intent to hinder, delay, and/or defraud creditors of Walker Edison to the detriment and harm of its creditors, including Blue Owl and the other Lenders.  Such intent can be inferred from several badges of fraud, as set forth in Utah Code § 25-6-202(1)(a), including, among other things, on information and belief:  (i) the Transfers were made to and for the benefit of Defendants or their related entities, each of which was an insider of the applicable debtor; (ii) the Transfers were in effect transfers of substantially all of Walker Edison's assets in light of the Company's severe liquidity constraints and operational pressures; (iii) the value of the consideration received by Walker Edison was not reasonably equivalent to the value of the Transfers; (iv) Walker Edison was insolvent or became insolvent as a result of the Transfers that were made; and (v) the Transfers occurred shortly after a substantial debt was incurred in the form of the obligation under the Loan Agreement.

156.    The Transfers and the Uptier Transfers are avoidable as actual fraudulent transfers under both Utah Code §§ 25-6-202 and 203.  Under Utah Code § 25-6-304, Blue Owl is entitled to a judgment against the Transfer Recipients and the Uptier Transfer Defendants for the lesser of the value of the Transfers or the amount necessary to satisfy Blue Owl's and the other Lenders' claims, both those incurred before and after the Transfers, together with prejudgment interest from the date of such transfers, costs, all other relief set forth in Utah Code § 25-6-303 (including avoidance of the full value of the Transfers), or compensatory damages in an amount to be

4864-8601-9280.v1

determined for the value thereof, and any further relief that this Court deems just, fair, and equitable.

### COUNT III:  Civil Conspiracy
### (*Against All Defendants*)

157.    Blue Owl restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

158.    Defendants and their representatives formed a combination of two or more persons.

159.    Defendants each sought to accomplish the object of committing fraud in order to cause Blue Owl to provide the New Secured Loan, which would enable Defendants to cause Walker Edison pay out the Dividend for their own benefit and for the benefit of their affiliates and assigns.

160.    Defendants had a meeting of the minds to accomplish their object by providing and causing to be provided materially false, misleading, and fraudulent financial projections, statements, and omissions that would induce Blue Owl to invest in the Company in order to finance the New Secured Loan.

161.    As alleged herein, Defendants conspired and participated in the commission of one or more unlawful, overt acts in furtherance of their object, as alleged herein, including but not limited to making and causing to be made fraudulent and false statements to Blue Owl and its representatives during the course of the diligence leading up to the Loan Agreement; distributing erroneous and fraudulent financial reports and projections to Blue Owl and its representatives; failing to notify Blue Owl of the materially false and fraudulent financial reports and projections; omitting material information regarding the rising freight and shipping costs, declining margin, and declining EBITDA that made the financial reports and forecasts materially false and

fraudulent; and causing the Company to enter into the Loan Agreement and distribute the Dividend to the Transfer Recipients.

162.    Blue Owl has suffered damages as a direct result of these actions.  As a result, Blue Owl is entitled to a judgment of liability against the Defendants for civil conspiracy.

## COUNT IV:  Fraud
### (*Against All Defendants*)

163.    Blue Owl restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

164.    As alleged herein, Defendants prepared and caused to be prepared the Original Actuals and the Financial Projections, both of which contained material misstatements and omissions, and caused them to be provided to Blue Owl and the Lenders.  Defendants knew that the Original Actuals and Financial Projections were materially false, misleading, and incorrect when they were sent to Blue Owl, and at no point before the closing of the New Secured Loan did they attempt to notify Blue Owl or the other Lenders of any errors or omissions.  Further, Defendant Casella, acting on behalf of all the Defendants and with their prior authorization and knowledge, transmitted those documents to Blue Owl.

165.    Defendants made, and caused to be made, material misrepresentations in oral and written communications with Blue Owl during the course of Blue Owl's diligence, as alleged herein.  In addition, Defendants made, caused, and authorized material misrepresentations and omissions to Blue Owl during the course of its diligence and in the Loan Agreement, as alleged herein.  At no point did Defendants attempt to notify Blue Owl or the other Lenders of any errors or omissions.

166.     Defendants made, caused to be made, authorized, ratified, and approved materially false and misleading representations and omissions in the Loan Agreement on March 31, 2021, including but not limited to the representations in sections 3.04(a) (Financial Statements), 3.04(b) (Absence of a Material Adverse Effect), 3.13(a) (No Material Misstatements), 3.13(b) (Projections), and 3.15 (Solvency) of the Loan Agreement.    Defendants knew these representations, and the other representations alleged herein, were materially false and misleading or contained material omissions when they caused and authorized the Loan Agreement to be executed on Walker Edison's behalf.    In addition to being directly liable for fraud based on Defendants' knowingly causing to be made, and making, material misrepresentations and omissions, Defendants as principals are vicariously liable for the actions and imputed knowledge of their authorized agents, including but not limited to Walker Edison, Walker Edison Intermediate, and members of Walker Edison's management acting within the course and scope of their authority in transmitting those material misrepresentations and omissions to Blue Owl at Defendants' direction and for Defendants' benefit, as alleged herein.

167.     As alleged herein, Defendants authorized and ratified an Omnibus Officer's Certificate and an Omnibus Written Consent on behalf of Defendant Walker Edison Holding Co. LLC dated March 31, 2021 that authorized Walker Edison to enter into the Loan Agreement and authorized the acts undertaken by their agents in connection with the Loan Agreement, thereby causing, approving, and adopting all of the material false statements contained within the Loan Agreement and in the diligence leading up to the execution of the Loan Agreement.    The Omnibus Written Consent also falsely represented that Walker Edison would not be rendered insolvent, lack adequate capital, be unable to pay its debts, or have assets with a saleable value less than its

liabilities as a result of the Loan Agreement, materially false representations that were a material inducement to Blue Owl and the other Lenders to enter into the Loan Agreement. For all the reasons alleged herein, these representations were knowingly false when made. The Board (which includes Defendants) oversaw and controlled Defendant Walker Edison Holding Company LLC, and the Board Defendants authorized the Loan Agreement, and caused Walker Edison, its affiliates, and its employees and agents to execute the Loan Agreement, and are therefore liable for the material misrepresentations and omissions made to Blue Owl and the other Lenders in the Loan Agreement and during the loan diligence process, which they knowingly caused, approved, authorized, and ratified.

168. Defendants made these misrepresentations and caused the misrepresentations to be prepared and made to Blue Owl and the Lenders. Defendants did so with the intent to fraudulently induce Blue Owl and the Lenders to enter into the Loan Agreement, thereby allowing Defendants to extract hundreds of millions of dollars from Blue Owl and the Lenders to enrich themselves.

169. Defendants knew these material misrepresentations and omissions were false. Defendants also made, and caused these statements to be made recklessly, knowing that there was insufficient basis for these representations.

170. These misrepresentations and omissions were made for the purpose of inducing Blue Owl and the other Lenders to enter into the Loan Agreement and provide $300 million in New Secured Loan, approximately $210 million of which was paid as a Dividend to line Defendants' pocketbooks.

171. When these misrepresentations and omissions were made, Blue Owl and the other Lenders were not aware of their falsity. These fraudulent misrepresentations and omissions

concealed the truth about Walker Edison and prevented Blue Owl and the other Lenders from being able to determine the true state of Walker Edison's financials and future business outlook.

172.    Blue Owl and the other Lenders did, in fact, reasonably rely upon these materially false, misleading, and fraudulent statements and omissions by, among other things, entering into the Loan Agreement and funding the New Secured Loan, which allowed Defendants to extract the Dividend from Walker Edison.

173.    As a direct and proximate result of Defendants' fraudulent statements, Blue Owl and the other Lenders have been damaged by, among other things, providing $300 million to Walker Edison under the Loan Agreement that Defendants subsequently used to pay themselves the Dividend.  Had Blue Owl and the other Lenders known the true material facts that were concealed and misrepresented by Defendants and their agents, they would not have entered into the Loan Agreement.

174.    Blue Owl and the other Lenders have suffered at least $300 million in damages as a result of Defendants' fraud.  Blue Owl is entitled to:  (1) damages and restitution of the amounts that Defendants extracted from Blue Owl and the other Lenders as a result of Defendants' fraudulent statements; (2) disgorgement of all ill-gotten gains to the Controlling Defendants as a result of their fraudulent conduct; and (3) punitive damages by reason of the fraudulent, wanton, willful, reckless, and malicious acts of the Controlling Defendants.

### COUNT V:  Aiding And Abetting Fraud
### (*Against All Defendants*)

175.    Blue Owl restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

176.    Each Defendant aided and abetted the wrongful conduct perpetrated against Blue Owl and the other Lenders by every other Defendant.

177.    As alleged herein, every Defendant thereby aided and abetted the fraudulent conduct described above, including that each Defendant counseled, induced, commanded, assisted, aided, abetted, and provided substantial assistance to every other Defendant in:  (1) preparing and causing to be prepared the Original Actuals and the Financial Projections that contained material misstatements and omissions that they knew would be provided by Blue Owl and the Lenders to induce them to enter into the loan transaction; (2) making and causing to be made material misrepresentations in oral and written communications with Blue Owl during the course of Blue Owl's diligence; (3) making, causing to be made, authorizing, ratifying, and approving material misrepresentations and omissions to Blue Owl and the other Lenders in the Loan Agreement; and (4) authorizing and ratifying an Omnibus Officer's Certificate and Omnibus Written Consent dated March 31, 2021 that authorized Walker Edison to enter into the Loan Agreement, approved and adopted all of the false statements contained within the Loan Agreement and elsewhere, and falsely represented that the Company would not be rendered insolvent as a result of the transactions contemplated by the Loan Agreement.

178.    Each and every Defendant knowingly counseled, induced, commanded, assisted, aided, abetted, and provided substantial assistance and encouragement to the other Defendants to commit fraud, and each and every Defendant knew the true facts regarding the fraudulent statements, materially false or misleading statements, and statements containing material omissions and acted intentionally to induce Blue Owl and the other Lenders to enter into the Loan Agreement.  Defendants nonetheless kept their knowledge of these problems concealed from Blue

Owl and other Lenders and thereby aided and abetted the fraud perpetrated against Blue Owl and the other Lenders.

179.    As a result of Defendants' bad acts, Defendants are jointly responsible for the damages to Blue Owl and the other Lenders resulting from the fraud.

## COUNT VI:  Unjust Enrichment
### (*Against All Defendants*)

180.    Blue Owl restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

181.    This unjust enrichment claim is asserted in the alternative, in the event the remedies asserted in the preceding claims do not provide an adequate remedy at law.

182.    Defendants received benefits when they wrongfully received the Transfers and/or the Uptier Transfers.

183.    Defendants knowingly and voluntarily accepted and retained benefits in the form of the Transfers and/or the Uptier Transfers.

184.    The circumstances alleged in this Complaint render Defendants' retention of those benefits unjust and inequitable.

185.    Defendants have been unjustly enriched at the expense of Blue Owl in the amount of the Transfers and/or the Uptier Transfers, and Blue Owl is entitled to judgment in those amounts.

186.    Blue Owl is entitled to the return of the Transfers and/or the Uptier Transfers through disgorgement or any other applicable remedy and judgment against Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Blue Owl respectfully requests the Court enter judgment as follows:

a.      On its first Cause of Action, for judgment in favor of Blue Owl and against Defendants Brad Bonham, Matthew Davis, MB & BB Holdings, LLC, Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., and Does 1-100:

i.      Pursuant to Utah Code § 25-6-303(1)(a), to avoid and recover all fraudulent transfers until all funds, assets, and property are recovered by Blue Owl and the other Lenders;

ii.      Pursuant to Utah Code § 25-6-303(1)(c)(ii), appointing a receiver; and

iii.      Granting the remedies provided for avoidance and recovery under Utah Code § 25-6-303(1):

(a)      avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claims;

(b)      avoidance of the full value of the transfer or obligation as the circumstances may require;

(c)      an attachment or other provisional remedy against the asset transferred or other property of the transferee if available under applicable law; and

(d)      subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

(i)      an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(ii)      appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

66

(iii)    any other relief the circumstances may require;

b.    On its second Cause of Action, for judgment in favor of Blue Owl and against Defendants Brad Bonham, Matthew Davis, MB & BB Holdings, LLC, Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., and Does 1-100:

i.    Pursuant to Utah Code § 25-6-303(1)(a), to avoid and recover all fraudulent transfers until all funds, assets, and property are recovered by Blue Owl and the other Lenders;

ii.    Pursuant to Utah Code § 25-6-303(1)(c)(ii), appointing a receiver; and

iii.    Granting the remedies provided for avoidance and recovery under Utah Code § 25-6-303(1):

(a)    avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claims;

(b)    avoidance of the full value of the transfer or obligation as the circumstances may require;

(c)    an attachment or other provisional remedy against the asset transferred or other property of the transferee if available under applicable law; and

(d)    subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

(i)    an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(ii)     appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(iii)     any other relief the circumstances may require;

c.     On its third Cause of Action, for judgment in favor of Blue Owl and against Defendants, awarding Blue Owl and the other Lenders damages sustained as a result of the civil conspiracy and an amount of punitive damages, together with attorneys' fees and prejudgment interest, in an amount to be decided at trial;

d.     On its fourth and fifth Cause of Actions, for judgment in favor of Blue Owl and against Defendants, awarding Blue Owl and the other Lenders damages sustained as a result of fraud and an amount of punitive damages, together with attorneys' fees and prejudgment interest, in an amount to be decided at trial;

e.     On its sixth Cause of Action, for judgment in favor of Blue Owl and against Defendants, awarding disgorgement and Blue Owl and the other Lenders damages for such unjust enrichment, together with prejudgment interest, in an amount to be decided at trial; and

f.     On all Causes of Action, for:

i.     Restitution;

ii.     Disgorgement of the Transfers and/or the Uptier Transfers;

iii.     Preliminary and permanent injunctive relief;

iv.     Attorneys' fees and costs;

v.     Prejudgment interest; and

vi.     Other further relief as is just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Blue Owl hereby demands a jury trial of all issues in this action triable of right by a jury.

DATED July 12, 2024.

<div align="right">

PARSONS BEHLE & LATIMER

*/s/ Erik A. Christiansen*
_____

Erik A. Christiansen

Attorneys for Blue Owl Capital Corporation

</div>

4864-8601-9280.v1

**CERTIFICATE OF SERVICE**

I certify that on this 12th day of July, 2024, a true and correct copy of the foregoing **FIRST AMENDED COMPLAINT** was filed electronically through the court's electronic filing system, which caused all counsel appearing in the case to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Sarah Jenkins Dewey*

4864-8601-9280.v1

Erik A. Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

Michael M. Farhang (admitted pro hac vice)
Ryan S. Appleby (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
rappleby@gibsondunn.com
jkrause@gibsondunn.com

*Co-Counsel for Blue Owl Capital
Corporation*

*Co-Counsel for Blue Owl Capital
Corporation*

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| BLUE OWL CAPITAL CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>    Defendants. | **MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Civil No. 240903251<br><br><br>Judge Robert Faust<br><br>Discovery Tier 3 |

Plaintiff Blue Owl Capital Corporation, by and through its undersigned counsel, hereby submits this Memorandum in Opposition to the Motion to Dismiss Plaintiff's Complaint.

Defendants' Motion is moot because the complaint they seek to dismiss is no longer operative. This is because Blue Owl has, concurrently with this Opposition, timely filed its Amended Complaint before this Court pursuant to Utah Rule of Civil Procedure 15(a)(1)(B). Rule 15 of the Utah Rules of Civil Procedure provides that "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Utah R. Civ. P. 15(a)(1)(B). "Once a party has amended a pleading, the amended pleading supersedes the original pleading, and the original pleading performs no function in the case." *Banyan Inv. Co. v. Evans*, 2012 UT App 333, 292 P.3d 698, 701; *see Campbell, Maack & Sessions v. Debry*, 2001 UT App 397, 38 P.3d 984, 990 n.4 (same). Thus, when an amended complaint is filed, "there is no longer a live dispute about the propriety or merit of the claims asserted therein; therefore, any motion to dismiss such claims is moot." *Brumfiel v. U.S. Bank*, 2013 WL 12246738, at *1 (D. Colo. May 16, 2013) (citations omitted); *see also Unmasked Mgm't Inc. v. Century-Nat'l Ins. Co.*, 2020 WL 6684914, at *1 (S.D. Cal. Nov. 10, 2020) (denying motion to dismiss as moot because plaintiffs "filed an amended complaint in lieu of responding to defendant's motion to dismiss); *Mohammed v. Holder*, 2009 WL 529549, at *3 (D. Colo. Mar. 2, 2009) (denying motion to dismiss as moot because plaintiff's amended complaint superseded his original complaint to which motion to dismiss was directed);

*Howeth v. Aramark Corp.*, 2011 WL 1428087, at *2 (D. Utah Apr. 13, 2011) (motion to dismiss is moot when complaint has been amended).[1]

Here, Defendants moved to dismiss the original complaint on June 24, 2024 under Rule 12(b)(6). Under Rule 15(a)(1)(B), Blue Owl can amend "as a matter of course" by July 15, 2024—21 days later. Blue Owl has, concurrently with this Opposition, filed its Amended Complaint within the required time period. Without waiver of its right to address any arguments raised by Defendants, the Amended Complaint (i) adds additional allegations that further address the arguments in Defendants' Motion and (ii) removes two causes of action challenged by Defendants' motion.[2] The original complaint is therefore inoperative, Defendants' Motion challenging that Complaint is moot, and the Motion should be denied in its entirety.

While Blue Owl's Amended Complaint moots Defendants' motion to dismiss, Blue Owl notes that Defendants' *forum non conveniens* argument is without merit, and Blue Owl reserves the right to oppose this argument should Defendants choose to file a new motion to dismiss on this ground. Blue Owl, as the plaintiff, is entitled to great deference in its choice of forum because this choice was "motivated by legitimate reasons"—namely, this action's "bona fide connection" to Utah. *Energy Claims Ltd. v. Catalyst Inv. Grp. Ltd.*, 2014 UT 13, ¶¶ 32–33 325 P.3d 70, 77. This

---

[1] Federal Rule 15(a)(1)(B) and Utah Rule 15(a)(1)(B) are identical and "[i]nterpretations of the Federal Rules of Civil Procedure are persuasive where the Utah Rules of Civil Procedure are substantially similar to the federal rules." *Tucker v. State Farm Mut. Auto. Ins.*, 2002 UT 54, 53 P.3d 947, 950 n.2.

[2] The amended complaint removes the Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty claims alleged in the original Complaint, which claims are already being pursued directly by Plaintiff Walker Edison against the same Defendants in this consolidated action. *See Walker Edison Furniture Co., LLC v. Brad Bonham, et al.*, Case No. 230902160.

action is based on the alleged conduct of Defendants (a number of whom are Utah residents) who owned and managed a Utah-based company, Walker Edison.  Defendants' conduct in Utah and elsewhere resulted in Blue Owl extending a loan to Walker Edison in Utah.  After the proceeds were paid to Walker Edison in Utah, Defendants then used the funds to pay themselves dividend proceeds, which were received by several Defendants based in Utah and elsewhere.  Moreover, this case has already been consolidated with the related action (*Walker Edison Furniture Company, LLC v. Brad Bonham et al.*, Case No. 230902160) filed by Utah-based Walker Edison before this Utah court against the same Defendants, including the Utah-based Defendants.

Defendants' belated attempt to suggest that New York is a better forum is unavailing.  None of the Defendants is a New York resident.  Further, Defendants cannot invoke the forum selection clause in the Loan Agreement because they were not signatories to the Loan Agreement and the Loan Agreement expressly precludes any third parties like Defendants from invoking any "legal or equitable right, remedy, or claim under or by reason of [the Loan] Agreement."  Mot., Ex. A § 10.04(a).  Accordingly, the Loan Agreement precludes Defendants from availing themselves of the benefits of the forum selection clause.  Additionally, all the remaining factors that courts consider in a *forum non conveniens* analysis favor Utah as the proper forum, do not favor moving the matter to New York, and fail to "*strongly* outweigh the deference owed to [Blue Owl's] choice" of Utah. *Edwards v. Carey*, 2019 UT App 182, ¶ 29, 454 P.3d 73, 81 (emphasis in original).  This case has already been consolidated with Case No. 230902160, which is already pending before this Utah district court.  Therefore, even if Defendants attempt to re-raise a *forum non conveniens* argument on a subsequent motion to dismiss, that argument will fail on the merits.

4856-5902-0496.v1

Plaintiff therefore respectfully requests that the Court deny Defendants' motion in its entirety as moot.  As noted above, Blue Owl reserves the right to respond more fully to this and any other arguments Defendants may raise on a subsequent motion to dismiss the amended complaint.

DATED:        July 12, 2024

PARSONS BEHLE & LATIMER

*/s/ Erik A. Christiansen*
Erik A. Christiansen

*Attorneys for Blue Owl Capital Corporation*

GIBSON, DUNN & CRUTCHER LLP

*/s/ Michael Farhang*
Michael Farhang

*Attorneys for Blue Owl Capital Corporation*

4856-5902-0496.v1

**CERTIFICATE OF SERVICE**

I certify that on this 12th day of July, 2024, a true and correct copy of the foregoing **MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT** was filed electronically through the court's electronic filing system, which caused all counsel appearing in the case to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Sarah Jenkins Dewey*

4856-5902-0496.v1

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Blue Owl Capital
Corporation*

 Michael M. Farhang (admitted pro hac vice)
Ryan S. Appleby (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
rappleby@gibsondunn.com
jkrause@gibsondunn.com

*Co-Counsel for Blue Owl Capital
Corporation*

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| BLUE OWL CAPITAL CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **ORDER GRANTING STIPULATED MOTION TO EXTEND RESPONSIVE PLEADING DEADLINE**<br><br>Civil No. 230902160<br><br><br>Judge: Hon. Robert Faust<br><br>Discovery Tier 3 |

Before the Court is the Parties' Stipulated Motion to Extend Responsive Pleading

Deadline, filed on July 25, 2024.  Based on the stipulation, and for good cause appearing,

**IT IS HEREBY ORDERED** that the request is GRANTED.  Defendants' responsive pleadings shall be due on or before August 12, 2024.  If Defendants file any motion, Plaintiff Blue Owl shall have until September 11, 2024 to file an opposition, and Defendants shall have until September 25, 2024 to file a reply.

**In accordance with the Utah State District Courts Efiling Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

Agreed as to form by:

**PARR BROWN GEE & LOVELESS, P.C.**

*/s/ David C. Reymann*
David C. Reymann
Jonathan O. Hafen

101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**SPERLING & SLATER, LLC**

*/s/ Greg Shinall*
Greg Shinall

55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

*/s/ Geoffrey Chepiga*
Geoffrey Chepiga

1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

**PARKINSON | BENSON | POTTER**

*/s/ Brennan H. Moss*
Brennan H. Moss

2750 Rasmussen Rd., Suite H-107
Park City, UT 84098
brenna@pbp.law

2

*For defendants*: Prospect Hill Growth Fund II,
L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

**PARSONS BEHLE & LATIMER**

*/s/ Erik A. Christiansen*
Erik A. Christiansen
Alan S. Mouritsen
Brian M. Rothschild

201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*For Plaintiff Blue Owl Capital Corporation*

**GIBSON, DUNN & CRUTCHER LLP**

*/s/ Michael M. Farhang*
Michael M. Farhang (admitted pro hac vice)
Ryan S. Appleby (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)

333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
rappleby@gibsondunn.com
jkrause@gibsondunn.com

*For Plaintiff Blue Owl Capital Corporation*

## CERTIFICATE OF SERVICE

I certify that on this 25th day of July, 2024, I caused a true and correct copy of the

**ORDER GRANTING STIPULATED MOTION TO EXTEND RESPONSIVE PLEADING**

**DEADLINE**, to be filed with the Court's efiling system which sent notification to the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II,
L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PARKINSON | BENSON | POTTER**
Brennan H. Moss
2750 Rasmussen, Rd. Suite H-107
Park City, UT 84098
brennan@pbp.law

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

   /s/ Erik A. Christiansen

Erik A. Christiansen, USB #7372
Alan S. Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*Co-Counsel for Blue Owl Capital
Corporation*

Michael M. Farhang (admitted pro hac vice)
Ryan S. Appleby (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
rappleby@gibsondunn.com
jkrause@gibsondunn.com

*Co-Counsel for Blue Owl Capital
Corporation*

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| BLUE OWL CAPITAL CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **STIPULATED MOTION TO EXTEND RESPONSIVE PLEADING DEADLINE**<br><br>Consolidated Case No. 230902160<br><br><br>Judge: Hon. Robert Faust<br><br>Discovery Tier 3 |

Plaintiff Blue Owl Capital Corporation ("Blue Owl") and Defendants Brad Bonham; MB

& BB Holdings, LLC; Matt Davis; Walker Edison Holding Company, LLC; Prospect Hill Growth

Partners, LP; JWC-WE Holdco, LLC; JWC-WE Holdings, L.P.; Prospect Hill Growth Fund II,

L.P.; Prospect Hill Growth Fund II Co-Invest, L.P.; Phil Damiano; Ken Murphy; Adam Suttin; Kyle Casella; and David Fiorentino (collectively, "Defendants" and together with Blue Owl, the "Parties") hereby stipulate and agree to the following, and jointly move the Court for an extension of time for Defendants to respond to the First Amended Complaint through and until August 26, 2024 and Blue Owl to respond to any motion filed in response to the Complaint. There is good cause for the extension. Defendants need additional time to consider the Amended Complaint, to consult with each other, and to investigate the amended allegations. The additional time is necessary due to the complexity of the allegations and the voluminous documents involved.

The Parties stipulate and jointly request the responsive pleading deadlines be set in accordance with the as following:

1.      Defendants filed a motion to dismiss the Complaint on June 24, 2024.

2.      Pursuant to Utah Rule of Civil Procedure 15(a)(1)(B), Blue Owl filed a First Amended Complaint on July 12, 2024, making Defendants responsive pleading due July 26, 2024.

3.      The Parties have met and conferred and have come to an agreement to extend the deadline for Defendants to respond to the Complaint, for Blue Owl to file an opposition to any motion by Defendants, and for Defendants to file any reply in support of such motion.

4.      The Parties agree, subject to the approval of the Court, that Defendants' responsive pleading deadline shall be extended to August 12, 2024.  If Defendants file a motion in response to Blue Owl's First Amended Complaint; Blue Owl shall have until September 11, 2024 to file any opposition; and Defendants shall have until September 25, 2024 to file any reply.

5.      Therefore, pursuant to Rule 6(b) of the Utah Rules of Civil Procedure, the Parties respectfully request entry of an order reflecting the stipulation above; extending the time for Defendants to file a responsive pleading until August 12, 2024; extending the time for Blue Owl

to file any opposition until September 11, 2024 to file any opposition; and extending the time for

Defendants to file any reply until September 25, 2024.

       6.      A proposed order is filed concurrently herewith.

      DATED July 25, 2024.

**PARR BROWN GEE & LOVELESS, P.C.**

/s/ David C. Reymann
David C. Reymann
Jonathan O. Hafen

101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano,
Kyle Casella, David Fiorentino, Kyle
Murphy, and Walker Edison Holding Co.,
LLC

**SPERLING & SLATER, LLC**

/s/ Greg Shinall
Greg Shinall

55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano,
Kyle Casella, David Fiorentino, Kyle
Murphy, and Walker Edison Holding Co.,
LLC

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga

1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund
II,
L.P., Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.,

**PARKINSON | BENSON | POTTER**

/s/ Brennan H. Moss
Brennan H. Moss

2750 Rasmussen Rd., Suite H-107
Park City, UT 84098
brenna@pbp.law

*For defendants*: Brad Bonham; MB & BB
Holdings, LLC; Matt Davis

3

JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.


**PARSONS BEHLE & LATIMER**

*/s/ Erik A. Christiansen*
Erik A. Christiansen
Alan S. Mouritsen
Brian M. Rothschild

201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

*For Plaintiff Blue Owl Capital Corporation*


**GIBSON, DUNN & CRUTCHER LLP**

*/s/ Michael M. Farhang*
Michael M. Farhang (admitted pro hac vice)
Ryan S. Appleby (admitted pro hac vice)
Jeffrey C. Krause (admitted pro hac vice)

333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
mfarhang@gibsondunn.com
rappleby@gibsondunn.com
jkrause@gibsondunn.com

*For Plaintiff Blue Owl Capital Corporation*

## CERTIFICATE OF SERVICE

I certify that on this 25th day of July, 2024, I caused a true and correct copy of the

**STIPULATED MOTION TO EXTEND RESPONSIVE PLEADING DEADLINE**, to be filed

with the court's efiling system which sent notification to the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PARKINSON | BENSON | POTTER**
Brennan H. Moss
2750 Rasmussen, Rd. Suite H-107
Park City, UT 84098
brennan@pbp.law

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

   /s/ Erik A. Christiansen

The Order of the Court is stated below:
**Dated:**    July 26, 2024              /s/  ROBERT FAUST
              09:41:09 AM                District Court Judge

Erik A. Christiansen, USB #7372

Alan S. Mouritsen, USB #13558

Brian M. Rothschild, USB #15316

**PARSONS BEHLE & LATIMER**

201 South Main Street, Suite 1800

Salt Lake City, Utah 84111

Telephone: 801.532.1234

Facsimile: 801.536.6111

echristiansen@parsonsbehle.com

amouritsen@parsonsbehle.com

brothschild@parsonsbehle.com

*Co-Counsel for Blue Owl Capital
Corporation*

Michael M. Farhang (admitted pro hac vice)

Ryan S. Appleby (admitted pro hac vice)

Jeffrey C. Krause (admitted pro hac vice)

**GIBSON, DUNN & CRUTCHER LLP**

333 South Grand Avenue

Los Angeles, CA 90071

Telephone: (213) 229-7000

mfarhang@gibsondunn.com

rappleby@gibsondunn.com

jkrause@gibsondunn.com

*Co-Counsel for Blue Owl Capital
Corporation*

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| BLUE OWL CAPITAL CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>Defendants. | **ORDER GRANTING STIPULATED MOTION TO EXTEND RESPONSIVE PLEADING DEADLINE**<br><br>Civil No. 230902160<br><br>Judge: Hon. Robert Faust<br><br>Discovery Tier 3 |

Before the Court is the Parties' Stipulated Motion to Extend Responsive Pleading

Deadline, filed on July 25, 2024. Based on the stipulation, and for good cause appearing,

**IT IS HEREBY ORDERED** that the request is GRANTED. Defendants' responsive

pleadings shall be due on or before August 12, 2024. If Defendants file any motion, Plaintiff

Blue Owl shall have until September 11, 2024 to file an opposition, and Defendants shall have until September 25, 2024 to file a reply.

**In accordance with the Utah State District Courts Efiling Standard No. 4, and URCP Rule 10(e), this Order does not bear the handwritten signature of the Judge, but instead displays an electronic signature at the upper right-hand corner of the first page of this Order.**

Agreed as to form by:

**PARR BROWN GEE & LOVELESS, P.C.**

/s/ David C. Reymann _____
David C. Reymann
Jonathan O. Hafen

101 South 200 East, Suite 700
Salt Lake City, UT 84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**SPERLING & SLATER, LLC**

/s/ Greg Shinall _____
Greg Shinall

55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ Geoffrey Chepiga _____
Geoffrey Chepiga

1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund

**PARKINSON | BENSON | POTTER**

/s/ Brennan H. Moss _____
Brennan H. Moss

2750 Rasmussen Rd., Suite H-107
Park City, UT 84098
brenna@pbp.law

*For defendants*: Brad Bonham; MB & BB

2

II,                                                    Holdings, LLC; Matt Davis
L.P., Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.,
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.


**PARSONS BEHLE & LATIMER**                            **GIBSON, DUNN & CRUTCHER LLP**


*/s/ Erik A. Christiansen*                             */s/ Michael M. Farhang*
Erik A. Christiansen                                   Michael M. Farhang (admitted pro hac vice)
Alan S. Mouritsen                                      Ryan S. Appleby (admitted pro hac vice)
Brian M. Rothschild                                    Jeffrey C. Krause (admitted pro hac vice)

201 South Main Street, Suite 1800                      333 South Grand Avenue
Salt Lake City, Utah 84111                             Los Angeles, CA 90071
Telephone: 801.532.1234                                Telephone: (213) 229-7000
Facsimile: 801.536.6111                                mfarhang@gibsondunn.com
echristiansen@parsonsbehle.com                         rappleby@gibsondunn.com
amouritsen@parsonsbehle.com                            jkrause@gibsondunn.com
brothschild@parsonsbehle.com

*For Plaintiff Blue Owl Capital Corporation*           *For Plaintiff Blue Owl Capital Corporation*

3

## CERTIFICATE OF SERVICE

I certify that on this 25th day of July, 2024, I caused a true and correct copy of the

**ORDER GRANTING STIPULATED MOTION TO EXTEND RESPONSIVE PLEADING**

**DEADLINE**, to be filed with the Court's efiling system which sent notification to the following:

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Jonathan O. Hafen
101 South 200 East, Suite 700
Salt Lake City, UT  84111
dreymann@parrbrown.com
jhafen@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Geoffrey Chepiga
1285 Avenue of the Americas
New York, NY 10019
gchepiga@paulweiss.com

*For defendants*: Prospect Hill Growth Fund II,
L.P., Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.,
JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**
Greg Shinall
55 West Monroe Street, 32nd Floor
Chicago, IL 60603
shinall@sperling-law.com

*For defendants*: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Kyle Murphy, and Walker Edison Holding Co., LLC

**PARKINSON | BENSON | POTTER**
Brennan H. Moss
2750 Rasmussen, Rd. Suite H-107
Park City, UT 84098
brennan@pbp.law

*For defendants*: Brad Bonham; MB & BB Holdings, LLC; Matt Davis

    /s/ Erik A. Christiansen

# Exhibit C to Defendants' Motion to Dismiss the First Amended Complaint

## UCC Financing Statement dated as of March 31, 2021

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT FILER (optional)<br>**Wolters Kluwer Lien Solutions   800-331-3282** | |
| B. E-MAIL CONTACT AT FILER (optional)<br>**uccfilingreturn@wolterskluwer.com** | |
| C. SEND ACKNOWLEDGEMENT TO:  (Name and Address)<br><br>**Lien Solutions**<br>**P.O. Box 29071**<br>**Glendale, CA 91209-9071 USA** | |

| Filed in the Office of | Initial Filing Number<br>**2021761035-0** |
|---|---|
| *[signature]*<br>Director, Division of<br>Corporations and<br>Commercial Code | Filed On<br>**3/31/2021 10:56:22 AM** |
| | Lapse Date<br>**3/31/2026** |
| | Number of Pages<br>**1** |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME<br>**Walker Edison Furniture Company LLC** | | | | | |
| OR | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS<br>**1553 West 9000 South** | CITY<br>**West Jordan** | STATE<br>**UT** | POSTAL CODE<br>**84088** | COUNTRY<br>**USA** |

2. DEBTOR'S NAME: Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | | |
| OR | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):  Provide only <u>one</u> Secured Party name (3a or 3b)

| | | | | | |
|---|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME<br>**Owl Rock Capital Corporation, as Collateral Agent** | | | | | |
| OR | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS<br>**399 Park Avenue, 38th Floor** | CITY<br>**New York** | STATE<br>**NY** | POSTAL CODE<br>**10022** | COUNTRY<br>**USA** |

4. COLLATERAL:  This financing statement covers the following collateral:
**All assets of the Debtor, wherever located, and whether now existing or hereafter arising or acquired.**

5. Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check <u>only</u> if applicable and check <u>only</u> one box:<br>☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | 6b. Check <u>only</u> if applicable and check <u>only</u> one box:<br>☐ Agricultural Lien  ☐ Non-UCC Filing |
|---|---|

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**79730302**

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# Exhibit D to Defendants' Motion to Dismiss the First Amended Complaint

# UCC Financing Statement
# dated as of September 26, 2018

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT FILER (optional) | |
| B. E-MAIL CONTACT AT FILER (optional) | |
| C. SEND ACKNOWLEDGEMENT TO: (Name and Address) | |

| Filed in the Office of | Initial Filing Number **551413201831** |
|---|---|
| Director, Division of Corporations and Commercial Code | Filed On **9/26/2018 3:23:00 PM** |
| | Lapse Date **9/26/2023** |
| | Number of Pages **1** |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ⬜ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **WALKER EDISON FURNITURE COMPANY LLC** | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS **4350 WEST 2100 SOUTH,** | CITY **SALT LAKE CITY** | STATE **UT** POSTAL CODE **84120** | COUNTRY **USA** |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ⬜ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **WELLS FARGO BANK, NATIONAL ASSOCIATION** | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS **333 SOUTH GRAND AVENUE, 12TH FLOOR** | CITY **LOS ANGELES** | STATE **CA** POSTAL CODE **90071** | COUNTRY **USA** |

4. COLLATERAL: This financing statement covers the following collateral:
**ALL PRESENT AND FUTURE ASSETS OF DEBTOR, WHEREVER LOCATED, TOGETHER WITH ALL PROCEEDS AND PRODUCTS THEREOF.**

5. Check only if applicable and check only one box: Collateral is ⬜ held in a Trust (see UCC1Ad, item 17 and Instructions) ⬜ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
⬜ Public-Finance Transaction ⬜ Manufactured-Home Transaction ⬜ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
⬜ Agricultural Lien ⬜ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ⬜ Lessee/Lessor ⬜ Consignee/Consignor ⬜ Seller/Buyer ⬜ Bailee/Bailor ⬜ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**UT-0-66686010**

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| **Wolters Kluwer Lien Solutions   800-331-3282** |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| **uccfilingreturn@wolterskluwer.com** |

C. SEND ACKNOWLEDGEMENT TO:  (Name and Address)

**Lien Solutions**
**P.O. Box 29071**
**Glendale, CA 91209-9071 USA**

| Filed in the Office of | Document Number |
|---|---|
| Director, Division of Corporations and Commercial Code | **2020706229-2** |
| | Filed Date and Time |
| | **8/19/2020 6:32:46 AM** |
| | Number of Pages |
| | **1** |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|
| **551413201831** | (or recorded) in the REAL ESTATE RECORDS<br>Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ **TERMINATION:**  Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial):  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
   For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                          AND Check one of these three boxes to:

This Change affects ☑ Debtor or ☐ Party of record        ☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c        ☐ ADD name: Complete item 7a or 7b, and item 7c        ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **WALKER EDISON FURNITURE COMPANY LLC** | | | |
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | |
|---|---|---|
| **WALKER EDISON FURNITURE COMPANY LLC** | | |
| 7b. INDIVIDUAL'S SURNAME | | |
| | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | |
| | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **1553 WEST 9000 SOUTH** | **WEST JORDAN** | **UT** | **84088** | **USA** |

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes:  ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral
   Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
   If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **WELLS FARGO BANK, NATIONAL ASSOCIATION** | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:

**76378690- Debtor: WALKER EDISON FURNITURE COMPANY LLC**

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) | | Filed in the Office of | Document Number |
|---|---|---|---|
| **Wolters Kluwer Lien Solutions   800-331-3282** | | *L. Veillette* | **2023950683-3** |
| B. E-MAIL CONTACT AT FILER (optional) | | Director, Division of | Filed Date and Time |
| **uccfilingreturn@wolterskluwer.com** | | Corporations and | **4/3/2023 7:54:11 AM** |
| C. SEND ACKNOWLEDGEMENT TO:  (Name and Address) | | Commercial Code | Number of Pages |
| **Lien Solutions**<br>**P.O. Box 29071**<br>**Glendale, CA 91209-9071 USA** | | | **1** |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|
| **551413201831** | (or recorded) in the REAL ESTATE RECORDS<br>Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ **TERMINATION:**  Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial):  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
  For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☑ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                          AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Party of record

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c

☐ ADD name: Complete item 7a or 7b, and item 7c

☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| OR | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| OR | 7a. ORGANIZATION'S NAME | | |
|---|---|---|---|
| | 7b. INDIVIDUAL'S SURNAME | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:**  Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
  Indicate collateral:

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
  If this is an Amendment authorized by a DEBTOR, check here ☐  and provide name of authorizing Debtor

| OR | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | **WELLS FARGO BANK, NATIONAL ASSOCIATION** | | | |
| | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
  **92193633- Debtor: WALKER EDISON FURNITURE COMPANY LLC**

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# Exhibit F to Defendants' Motion to Dismiss the First Amended Complaint

# Redline for First Amended Complaint

Erik A. Christiansen, USB #7372
Alan Mouritsen, USB #13558
Brian M. Rothschild, USB #15316
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile:     801.536.6111
echristiansen@parsonsbehle.com
amouritsen@parsonsbehle.com
brothschild@parsonsbehle.com

**Michael M. Farhang (admitted pro hac vice)**
**Ryan S. Appleby (admitted pro hac vice)**
**Jeffrey C. Krause (admitted pro hac vice)**
**GIBSON, DUNN & CRUTCHER LLP**
**333 South Grand Avenue**
**Los Angeles, CA 90071**
**Telephone: (213) 229-7000**
**mfarhang@gibsondunn.com**
**rappleby@gibsondunn.com**
**jkrause@gibsondunn.com**

~~Attorneys~~*Co-Counsel* for Blue Owl Capital
Corporation

*Co-Counsel for Blue Owl Capital Corporation*

IN THE THIRD JUDICIAL DISTRICT COURT

FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| BLUE OWL CAPITAL CORPORATION, | |
| Plaintiff, | **FIRST AMENDED** COMPLAINT |
| v. | Civil No. 240903251 |
| BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100, | Judge ~~Coral Sanchez~~**Robert Faust** <br><br> Discovery Tier 3 <br><br> ~~JURY DEMAND~~ |
| Defendants.. | |

## FIRST AMENDED COMPLAINT

Plaintiff Blue Owl Capital Corporation ("**Blue Owl**," f/k/a Owl Rock Capital Corporation) brings this ~~complaint~~**Amended Complaint** against Defendants **pursuant to Utah R. Civ. P. 15(a)(1)(B)** for constructive fraudulent transfer, actual fraudulent transfer, ~~breach of fiduciary duty, aiding and abetting breach of fiduciary duty,~~ civil conspiracy, fraud, aiding and abetting fraud, and unjust enrichment and alleges as follows:

## INTRODUCTION

1.     This action arises from Defendants' intentional and fraudulent scheme to extract $300 million in loan proceeds from Plaintiff and other lenders by obtaining new secured debt using the **Utah** company they controlled, Walker Edison Furniture Company, LLC ("**Walker Edison**" or the "**Company**"), as the borrower, and then causing the Company to make a nearly $210 million dividend distribution (the "**Dividend**") to themselves and their related entities and affiliates. Defendants induced Plaintiff and the lenders to provide this liquidity and extracted it for their own benefit while the Company was experiencing substantial profit and cash flow degradation, lacked adequate capital, and could not satisfy its debts as they came due. **Plaintiff and the lenders have since been forced to extend at least $66.5 million in additional loans to the Company to maintain operations.**

2.     **Walker Edison, a Utah-based furniture retailer headquartered in West Jordan, was managed and controlled by Defendants for much of the time relevant to this Complaint.** In 2020 and 2021, Defendants—who **at the time** controlled the Company, its board, and its senior management—had sought to extract hundreds of millions of dollars

2

from their holdings in Walker Edison despite the Company's challenges. In March 2021, Defendants used their positions of power to materially misrepresent and misstate Walker Edison's financial position in order to induce Plaintiff Blue Owl and other financial institutions under the Loan Agreement (defined below) (the "**Lenders**") to loan $300 million in secured debt to Walker Edison. Defendants then immediately used their positions of control to direct ~~the Company to arrange for~~**that** the vast majority of the loan proceeds **received by Utah-based Walker Edison**—nearly $210 million in cash ~~to~~ be paid to themselves[1] as a Dividend with nearly all of the rest used to replace the Company's existing debt. Had Defendants provided Plaintiff and the other Lenders with accurate financial information and projections for the Company rather than the materially false and misleading information they did provide, the Lenders would not have agreed to provide the financing Defendants used to fund the Dividend to themselves.

3.     At the time of the Dividend transaction, the Company was insolvent. Nevertheless, the Defendants moved forward with a transaction that increased the Company's debt by 3.5 times, from $83 million to $300 million, without providing a single dollar of cash to support the business. Defendants' Dividend exacerbated the Company's ongoing financial struggles and left the Company insolvent, with unreasonably small capital and an inability to pay its debts as they became due as a result of an existential liquidity crisis centered around increased costs, negative cash flow, and numerous inventory problems. Defendants' actions, meanwhile, unlawfully enriched themselves at both the Company's and the Lenders' expense, constituting an egregious fraud on the Lenders, a

---

[1] Approximately $1.2 million was distributed to certain employees of the Company as payment on profits interests. Blue Owl does not presently seek to recover from the recipients of these profits interests.

serious breach of Defendants' fiduciary duties **to Walker Edison**, and an improper fraudulent transfer.

**Defendants' Efforts to Extract Value from Their Investment**

4.      The Dividend was a disastrous decision by the Defendants that harmed the Company and the Lenders, and it was aimed exclusively at extracting as much value as possible for Defendants before they could no longer hide the Company's dire circumstances from existing and would-be investors (including the Lenders). In 2020, seeking to capitalize on a short-term trend of increased revenue prior to late 2020, Defendants first actively sought to monetize their longtime holdings in the Company through a Special Purpose Acquisition Company ("**SPAC**") or other equity transaction. Defendants were unsuccessful, however, and by late 2020, supply chain difficulties caused by the COVID-19 pandemic began to negatively impact the Company's costs and profitability. Beginning no later than late 2020 and early 2021, the Company's ocean freight costs were skyrocketing, profitability was down, and Walker Edison was quickly running out of cash. During this period, it became clear to Defendants that Walker Edison was facing serious financial difficulties. Given the severity of this situation, senior management and the board regularly discussed the gravity of the Company's financial difficulties and continuously demanded updates from the Company's finance and operational departments.

5.      After a SPAC or equity transaction proved elusive in late 2020 and early 2021, and rather than seeking a transaction that would generate much-needed liquidity and stability for the Company, Defendants settled on a different way to monetize their holdings in the challenging financial environment—a dividend recapitalization, or "recap," a transaction that would involve using their positions of control to cause the Company to take

on new (and significantly more) debt in order to simultaneously pay a special dividend to themselves and their affiliates as the Company's equity owners.

6.      In the first quarter of 2021, Defendants made contact with Plaintiff Blue Owl, a specialty finance and business development company that provides loans to U.S. middle market companies and also ultimately served as the administrative agent to the Lenders (including itself) under the new $300 million term loan. Defendants proposed a potential dividend recapitalization and began providing to Blue Owl the Company's financial results, projections, and models as part of pre-loan diligence. Critically, while Defendants and others within the Company were focused on the Company's unrelenting financial difficulties, Defendants knowingly provided Blue Owl and the other Lenders with materially false, misleading, and erroneous financial statements and projections that lacked any reasonable basis and did not reflect the actual known current conditions facing the Company. Because they concealed material issues regarding the Company's spiraling costs and worsening profitability and liquidity position, the projections and financial information Defendants provided to Blue Owl and the other Lenders were materially false and misleading.

**Defendants Conceal and Misrepresent Walker Edison's Financial Condition**

7.      Moreover, at the same time that Blue Owl, Defendants, and Walker Edison were                                                                                           in discussions about a new loan, Defendants were aware of a material accounting error that resulted in dramatic understatement of the Company's freight expenses and was resulting in substantial overstatements of Walker Edison's financial health and performance. Worse, in March 2021, leading up to the completion of the dividend recap transaction, internal

Company projections and models not provided to Blue Owl showed that the Company was severely undercapitalized and did not have the liquidity to pay debts as they came due. One projection, in fact, showed that the Company would burn through more than $100 million in cash—which it did not have—by December 2021. Things were so bad at Walker Edison that Defendants had**were** already decided**discussing the need** to start short paying the Company's critical suppliers and to implement immediate and drastic hiring cuts, absent which, **because** based on projections not provided to Blue Owl or the other Lenders, the Company would run out of availability under its bank line of credit within weeks.

8.      Defendants knew**were aware of sufficient facts to know** at the time of the Dividend, among other things, that (i) the Company had substantial cash flow problems, was **and problems meeting its EBITDA forecasts, would be** unable to pay its suppliers on time, and was internally discussing slashes to hiring and other measures to address its liquidity shortage; (ii) the historical financial statements for the Company overstated profitability by failing to properly account for incurred freight expenses that were rapidly increasing; (iii) the Company would be unable to meet the financial covenants required under the Loan Agreement; and (iv) the financial projections used by Defendants to justify the $210 million Dividend were materially inflated and failed to account for the massive increase in expenses the Company had experienced during the preceding months that were expected to persist for the foreseeable future. Had Defendants disclosed any of this to Blue Owl and the other Lenders, Lenders would not have provided $300 million in new money loans that Defendants used to pay themselves a $210 million Dividend. Instead, despite full knowledge of the circumstances making the dividend recap transaction wholly improper under such dire circumstances, Defendants plowed ahead undeterred with their material

misrepresentations about the Company's condition in order to obtain the Dividend they sought. Even the Company's own President lamented several weeks after Defendants took their nearly $210 million Dividend that "we were saying from the very beginning that the forecast for this year was way too high and no one listened."

**Defendants' Extraction of $210 Million in Cash Leaves Walker Edison Insolvent**

9.      On March 31, 2021, the Loan Agreement closed, and Defendants caused Walker Edison to immediately pay out the $210 million Dividend to Defendants. At the time of, and as a result of, the Dividend transaction, Walker Edison was insolvent, undercapitalized, and unable to pay its debts as they became due.

10.     The already dire circumstances at Walker Edison only intensified after Defendants withdrew their windfall Dividend payment, consistent with what Defendants knew about market conditions and the Company's situation at the time of the transaction. In the span of only one year—the very year Defendants decided to take approximately $210 million in badly needed cash out of the Company that could have been used to weather difficult times—the Company burned through over $100 million of cash due in large part to the same spiraling costs and inventory challenges that were known to Defendants prior to the Dividend. Within just months of receiving their Dividend, Defendants discussed the Company's financial position with statements like "the house is on fire" and "the precarious situation we are in," as they discussed firing all employees who were not "mission critical," and questioned whether the Company would have "the cash and profitability to actually survive this."

11.     The Company's performance never recovered from Defendants' actions. In fact, by early 2023, unable to reverse the effects of their misconduct, Defendants abandoned

the Company in a change-of-control transaction and exited the disaster they had created. The Lenders assumed ownership and control of the Company and ~~provided~~**have been forced to lend** approximately $~~50~~**66.5** million of new capital to support operations**. Plaintiff Blue Owl and the Lenders are current creditors of the Company**. Plaintiff Blue Owl brings the instant suit on its own behalf **as a current lender of the Company** and on behalf of the **other current** Lenders to right this egregious wrong and to address Defendants' fraudulent transfer of $210 million and to recoup the ~~proceeds~~**amount** of the loan fraudulently induced by Defendants **as well as the amounts of Blue Owl's and the other Lenders' subsequent loans to the Company following the fraudulent transfer**. Pursuant to an Assignment and Assumption Agreement, the other Lenders have assigned their claims and causes of action relating to the matters alleged herein to Blue Owl.

## JURISDICTION, VENUE, AND DISCOVERY TIER

12.    Jurisdiction is proper under Utah Code § 78A-5-102(1).

13.    Venue is proper in this Court under Utah Code § 78B-3-307(1)(a) because this is the county in which the causes of action arose, and Utah Code § 78B-3-307(1)(b) because this is the county in which one or more Defendants reside at the commencement of this action.

14.    Defendants Brad Bonham and Matt Davis are residents of Utah and are therefore subject to the general personal jurisdiction of this Court.

15.    Defendant MB & BB Holdings, LLC is subject to the general personal jurisdiction of this Court because it is a Utah limited liability company with its principal place of business in Utah.

16.    Collectively, Brad Bonham, MB & BB Holdings, LLC, and Matt Davis are referred to as the "**Founder Defendants**."

17.    Defendants Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., ~~and~~ Prospect Hill Growth Fund II Co-Invest, L.P.**, Damiano, Murphy, Suttin, Casella, and Fiorentino** (collectively, the "**PHGP Defendants**" and with the Founder Defendants, the "**Defendants**") are subject to personal jurisdiction in this Court pursuant to Utah Code § 78B-~~3-201~~-**3201** et seq.

18.    This case involves claims for more than $300,000 and therefore falls within Tier 3 of Rule 26(c)(3) of the Utah Rules of Civil Procedure.

## THE PARTIES

## I.    PLAINTIFF BLUE OWL.

19.    Blue Owl is a Maryland corporation, with its principal place of business at 399 Park Avenue, New York, New York. Blue Owl is the Administrative Agent and a Lender under the Loan Agreement dated March 31, 2021. **Blue Owl has continuously been a lender and creditor to the Company since shortly before the challenged dividend and remains a current lender and creditor to the Company. Blue Owl, and the Lenders who have assigned their claims to Blue Owl, are currently owed over $160 million by the Company.**

## II.    DEFENDANTS.

20.    Brad Edison Bonham is the former Chief Executive Officer and co-owner of Walker Edison, as well as a member of the board that controlled Walker Edison at all times

relevant to this Complaint ("**Board**"). On information and belief, he resides in Salt Lake City, Utah.

21.     MB & BB Holdings, LLC is a Utah limited liability company with its principal place of business at 4350 West 2100 South, Suite A, Salt Lake City, Utah. On information and belief, Defendant Brad Bonham owns, manages, and is a member of MB & BB Holdings, and Defendant Bonham directly or indirectly ~~benefitted~~**benefited** from MB & BB Holdings' receipt of its portion of the Dividend.

22.     Matthew Brown Davis is the former Chief Operating Officer and co-owner of Walker Edison, as well as a member of the Board that controlled Walker Edison at all times relevant to this Complaint. On information and belief, he resides in Salt Lake City, Utah.

23.     Walker Edison Holding Company, LLC ("**Walker Edison Holding**") is a Delaware limited liability company. On information and belief, its principal place of business is in West Jordan, Utah.

24.     Prospect Hill Growth Partners, L.P. ("**Prospect Hill**") is a Delaware limited partnership, with its principal place of business at 500 Totten Pond Road, 6th Floor, Waltham, Massachusetts.

25.     JWC-WE Holdco, LLC is a Delaware limited liability company. On information and belief, its principal place of business is in Waltham, Massachusetts. On information and belief, it is an entity owned and/or controlled by Prospect Hill.

26.     JWC-WE Holdings, L.P. is a Delaware limited partnership. On information and belief, its principal place of business is in Waltham, Massachusetts. On information and belief, it is an entity owned and/or controlled by Prospect Hill.

27.     Prospect Hill Growth Fund II, L.P. is a Delaware limited partnership. On information and belief, its principal place of business is in Waltham, Massachusetts. On information and belief, it is an entity owned and/or controlled by Prospect Hill.

28.     Prospect Hill Growth Fund II Co-Invest, L.P. is a Delaware limited partnership. On information and belief, its principal place of business is in Waltham, Massachusetts. On information and belief, it is an entity owned and/or controlled by Prospect Hill.

29.     Phil Damiano is an Operating Partner at Prospect Hill and was the non-executive chairman of the Board that controlled Walker Edison at all times relevant to this Complaint. On information and belief, he resides in or around Waltham, Massachusetts.

30.     Ken Murphy is CEO of a Prospect Hill portfolio company and a member of the Board that controlled Walker Edison at all times relevant to this Complaint. On information and belief, he resides in or around Philadelphia, Pennsylvania.

31.     Adam Suttin is Managing Partner of Prospect Hill and was a member of the Board that controlled Walker Edison at all times relevant to this Complaint. On information and belief, he resides in or around Newton, Massachusetts.

32.     Kyle Casella is a Principal at Prospect Hill and was a member of the Board that controlled Walker Edison at all times relevant to this Complaint. On information and belief, he resides in or around Boston, Massachusetts.

33.     David Fiorentino is a former Partner at Prospect Hill and was a member of the Board that controlled Walker Edison at all times relevant to this Complaint. On information and belief, he resides in or around Winchester, Massachusetts.

34.     Does 1 through 100 are individuals who received unlawful distributions or transfers or participated in some manner in the events described in this Complaint and therefore proximately caused or are otherwise liable for the injuries and damages that this Complaint describes. The true names and capacities of Does 1 through 100 are not now known to Blue Owl, who therefore sues these Defendants by fictitious names. Blue Owl will amend this Complaint to show their true names and capacities as it learns this information.

## FACTUAL ALLEGATIONS

### III.     WALKER EDISON'S BUSINESS AND ORGANIZATION.

#### A.     Operations.

35.     Walker Edison is a supplier of affordable, ready-to-assemble home furnishing products through e-commerce channels to consumers worldwide. Defendants Brad Bonham and Matthew Davis founded the Company in or around 2006. Defendant Bonham served as Walker Edison's Chief Executive Officer until June 2022 and served on the Board that controlled Walker Edison until the Company changed owners in 2023. Defendant Davis served as Walker Edison's Chief Operating Officer until April 2022 and continued to serve on the Board that controlled Walker Edison until the Company changed owners in 2023. In the years leading up to 2020, Walker Edison was a profitable company with an impressive track record.

36.     Unlike traditional brick-and-mortar furniture stores, at all relevant times Walker Edison operated exclusively through e-commerce channels, in which orders are placed on platforms such as Wayfair and Amazon. The vast majority of its products are shipped from Walker Edison's manufacturing suppliers in Asia and South America to the Company's own distribution centers or to the distribution centers of its e-commerce channel

12

partners. From these distribution centers, orders are then drop-shipped directly to consumers.

37.    In order to meet customer demands for prompt delivery, Walker Edison must carefully manage its network of distribution centers and maintain a sophisticated inventory management system and a dedicated logistics team. E-commerce platforms therefore monitor the performance of suppliers like Walker Edison to ensure prompt and satisfactory deliveries to consumers. If Walker Edison fails to meet expectations, its listings on e-commerce platforms will drop lower in the platform's search results, which reduces the visibility of Walker Edison's products and negatively impacts sales.

### B.    Corporate Structure.

38.    Walker Edison is, and has been at all times relevant to this Complaint, fully owned by Walker Edison Intermediate, LLC ("**Walker Edison Intermediate**"). In turn, during the relevant period, Walker Edison Intermediate was fully owned by Defendant Walker Edison Holding. On information and belief, at all relevant times, the Board for Walker Edison Holding controlled all material decisions of Walker Edison Intermediate and Walker Edison. On information and belief, at all relevant times, the Board was controlled and dominated by Defendants Davis, Bonham, and Prospect Hill and its representatives, including Defendants Damiano, Murphy, Suttin, Casella, and Fiorentino, all of whom represented the ownership group of Walker Edison at the time of the events relevant to the Plaintiff's claims alleged herein. On information and belief, the Board did not have a single independent director, and was comprised solely of insiders.

### C.    Prospect Hill and the Founder Defendants Owned and Controlled Walker Edison.

13

39.     Prior to September 2018, Walker Edison was jointly owned by the Founder Defendants and a California-based private equity and mezzanine debt provider.

40.     In or around September 2018, the PHGP Defendants, comprising a Massachusetts-based private equity firm and family of funds now known as Prospect Hill, but then known as J.W. Childs Associates, acquired an approximately 55% majority share of the **Utah-based** Company from the Founder Defendants and the California-based firm, with the Founder Defendants retaining a 45% ownership interest.

41.     Prospect Hill is a private equity investor that has invested over $2.8 billion in 37 portfolio companies.

42.     Following Prospect Hill's 2018 investment, Defendant Brad Bonham continued to serve as CEO, and Defendant Matt Davis continued to serve as COO **at the Company's headquarters in Utah**. Both Defendants Bonham and Davis also continued to serve on the Board. Upon acquiring a majority share of the Company, Prospect Hill added its own Board members, including non-executive chairman Defendant Damiano (Operating Partner at Prospect Hill), Defendant Murphy (CEO of a Prospect Hill portfolio company), Defendant Suttin (Managing Partner of Prospect Hill), Defendant Casella (then-Vice President and now Principal at Prospect Hill), and Defendant Fiorentino (then-Partner at Prospect Hill). **Defendants Bonham, Davis, Damiano, Murphy, Suttin, Casella, and Fiorentino (collectively, the "Board Defendants") comprised the Board that governed Walker Edison at all times relevant to this Complaint.** On information and belief, there were no independent directors between September 2018 and early 2023.

IV.    **DEFENDANTS FALSELY PORTRAYED WALKER EDISON'S FINANCIAL HEALTH TO ATTRACT FINANCING FOR A MASSIVE DIVIDEND.**

A.     **Defendants Sought to Cash Out of the Business Following a Period of Explosive Growth.**

43.     The Company experienced significant growth in the years leading up to and including portions of 2020 amid the COVID-19 pandemic. During that period, e-commerce furniture sellers experienced increased sales growth as brick-and-mortar competitors shut their doors while consumer demand rose as people were forced to spend more time at home. ~~Industrywide~~**Industry-wide**, the share of all furniture sales conducted online grew from only 21% pre-COVID-19 to 71% of all furniture sales during the peak of the COVID-19 pandemic from March 19 to May 20, 2020.

44.     Walker Edison benefited from the significant and immediate growth in the online furniture industry. From 2017 to 2020, Walker Edison saw EBITDA grow from $13 million to $84 million. EBITDA stands for earnings before interest, taxes, depreciation, and amortization. It is one of the most widely used measures of a company's overall financial performance. And while such growth peaked during the pandemic, online furniture sales overall remained above pre-pandemic levels even after brick-and-mortar competitors began to reopen.

45.     In at least as early as 2020, seeking to capitalize on this explosive growth, the existing Walker Edison shareholders—Defendants Bonham, Davis, and Prospect Hill—decided it was the right time to launch an effort to extract cash from the business for themselves. On information and belief, in order to finance their desired payout, Defendants considered a number of options to allow them to monetize their ownership in the Company, including an acquisition by a SPAC, a large equity investment, or a debt financing. After failing to sell the business or complete a SPAC transaction, Defendants settled on a strategy to finance their payout through a dividend recap transaction.

46.    The dividend recap transaction required the Company to incur $300 million of additional debt (the "**New Secured Loan**") in order to both clear out existing term loan debt and fund the approximately $210 million Dividend to themselves. Without the loan, Defendants could not have paid such a large dividend to themselves, and with the loan, the Company's debt load would increase tremendously (without the capital to pay debt service as a result of the Dividend and the Company's dire but concealed financial circumstances). Defendants began soliciting potential lenders on behalf of the Company in or around March 2021. On information and belief, the efforts to fund this dividend recap were led by Defendants Bonham, Davis, and representatives of Defendant Prospect Hill, including Defendants Fiorentino, Damiano, Casella, and others.

**B.     The Company Began to Experience Financial Distress before Defendants Received the Dividend.**

47.    In late 2020, while Defendants were strategizing on ways to fund their payout, Walker Edison management discovered that overseas freight and shipping costs had been skyrocketing due to pandemic-related supply chain issues and that the Company's accrual accounting method had been inappropriately understating freight costs.

48.    From March 2020 to March 2021, the cost of a single ocean freight container used to transport Walker Edison's products from its overseas manufacturers nearly tripled, rising from approximately $2,600 to $7,300, with management anticipating that elevated ocean freight rates would persist.

49.    Not later than October 2020, Defendants knew that the Company's ocean freight and shipping expenses were rising rapidly and that their accounting methods were not accurately reflecting real-time increases. On October 9, 2020, for example, the Company's Controller notified the CFO that in working on the month-end closing process

for the Company's financial statements, he had noticed an "area of significant concern" relating to a substantial increase in ocean freight and shipping expenses that he could not explain, including that the cost of shipping had grown 57% since the previous month, and that was five times higher than the previous January. The CFO reviewed the income statement figures and replied "my biggest concern is the shipping expenses. Would really like to know what's going on there. Seems like maybe the cost allocations for capitalizing freight are being understated potentially?" In fact, the Company's accounting at the time was significantly understating freight costs in violation of Generally Accepted Accounting Principles ("**GAAP**") due to a failure to reconcile actual freight costs with capitalized prepaid costs. The Founder Defendants and the PHGP Defendants were notified of this accounting problem between late 2020 and February 2021 and failed to remediate or disclose it prior to the Dividend.

50.     A few days after the October 9 communication, Defendant Bonham spoke with the Company's CFO, who told him that the Company had seen an $800,000 increase in shipping charges from the prior month, "but no revenue offset of that expense which we would expect to see." A month later, on November 11, the CFO told Defendants Bonham and Davis that shipping charges continued to rise month-over-month and that the Company would miss budgeted EBITDA in part because "we are getting killed by FedEx peak season charges."

51.     Almost immediately, the Founder Defendants began discussing the precipitous increases in shipping and ocean freight expenses affecting the Company with the PHGP Defendants. The Founder Defendants and PHGP Defendants were well aware of the risk to the Company's forecasted performance posed by freight and shipping price increases

and the impact it would have on the Company's ability to meet its forecast. On October 15, 2020, Defendant Fiorentino recounted that the PHGP Defendants had been told in a management presentation that ocean freight costs were "way up" and advised that "[a]t the least, we should calculate the hit we have taken vs. last year," noting that Defendant Davis would be following up with information on this point.

52.    Defendants understood the serious problem posed by rising freight and shipping
 charges (and the Company's improper understatement of freight charges in its financial statements) by not later than December 2020, and they quickly realized that it could spook potential investors and therefore jeopardize their desired payout. Accordingly, the Founder Defendants and PHGP Defendants discussed the need to suppress mention of these issues in Company promotional materials.

- On December 2, 2020, Defendants Fiorentino, Casella, and Damiano were told that "[freight] rates are increasing all over the map due to capacity limitations." Defendant Fiorentino then told Defendants Casella and Damiano that he had hoped the ocean freight market would improve but that "doesn't seem to be the case."

- On December 8, 2020, a PHGP representative told the Founder Defendants that "[we] thought not ideal to call out ocean freight at this point as the market dynamics are still fluctuating and <u>we might not want buyers scrutinizing this</u>." (Emphasis added).

- Two weeks later, Defendant Fiorentino reinforced his concern about highlighting freight prices to buyers, saying "I don't think we want to open the ocean freight can of worms."

- On December 21, a Walker Edison employee sent an email to Defendant Fiorentino noting concerns about an "increase in ocean freight charges" and stating that, upon discussions with Defendant Casella and Defendant Fiorentino, they had concluded that "there doesn't seem to be relief on the horizon and forecasts for the future rates are up in the air." Defendant Bonham relayed similar comments to Defendants Damiano and Casella, stating "everyone knows ocean freight isn't abating anytime soon."

- On information and belief, Defendants continued to investigate, monitor, and discuss the increased freight and shipping costs—and the Company's failure to properly account for freight costs—over the next two months, including during the Company's closing of its year-end financial statements in February 2021, when the Company again confirmed that there were, in fact, significant errors with the Company's freight accounting that had the effect of understating freight expenses and materially overstating gross profit and EBITDA.

53.     By early March 2021, Defendants knew that the Company's financial statements—

which understated costs and thereby overstated EBITDA, profit margins, and net income—did not reflect the Company's true financial position, and that Blue Owl and the other Lenders were relying on those financial statements in deciding whether to extend a

$300 million term loan to the Company. But Defendants chose not to rectify the accounting misstatements until after the closing of the New Secured Loan.

54.     Rising freight and shipping costs and delays were not the only problem that the Company was beginning to face. The same supply chain disruptions that were causing increased freight and shipping costs were also causing a spike in Walker Edison's out-of-stock rates and on-time delivery rates, both of which directly impact Walker Edison's sales. High out-of-stock rates lead to lost revenue because Walker Edison cannot sell what it does not have. And both high out-of-stock rates and low on-time delivery rates negatively impact a seller's relationship with e-commerce platforms and can cause their listings to appear lower in the platform's search results. As Defendant Bonham acknowledged in February 2021, "[i]nventory seems like it underperforms every month," leading to "[m]issing $40 million in revenue from the last four months."

55.     By December 2020, shipping delays had become so pronounced that they caused one of Walker Edison's largest e-commerce platform customers to shut off the Company's sales on the platform entirely for much of the month of December as punishment, causing the loss of millions of dollars in revenue. Referring to the negative impacts on the Company's performance caused by the shipping problems, Defendant Bonham told Defendant Davis and his management team, "I expect all of us to ask ourselves how did we [expletive] December this badly . . . if we don't take drastic action right now, we can kiss January goodbye as well." In combination, these problems were also creating significant cash flow problems for the Company.

56.     Defendants knew that problems were mounting with their out-of-stock and on-time delivery rates, which would cause problems down the road prior to Defendants

20

paying themselves the Dividend. But as with freight expenses, Defendants caused to be prepared, prepared, and reported financial information that did not reflect the realities that the business was facing.

57.     All of these issues, among others, meant that Defendants knew that the financial projections did not properly reflect the ~~realities the Company was facing~~**Company's circumstances** prior to the issuance of the Dividend. Defendants knew that the Company's cash flow challenges would worsen as a result of the significant headwinds impacting the business and that the Company would be undercapitalized and unable to pay debts as they came due. And that is exactly what happened. As subsequent months played out, and as a result of these known circumstances, the Company did in fact hemorrhage cash to such an extent that it faced challenges in funding ongoing operations.

### C.     Defendants Fraudulently Portrayed a Financially Healthy Company When Walker Edison Was Actually in Crisis.

58.     To induce Blue Owl and the other Lenders to enter into a loan agreement (the "**Loan Agreement**") and fund the $300 million New Secured Loan, and to justify taking the Dividend out of the Company despite the imminent cash flow problems that Defendants knew were on the horizon, Defendants disclosed to Blue Owl and the other Lenders erroneous financial data through February 2021 and projections that they knew were not reasonable or realistic under the circumstances. Defendants represented in forecasts that the Company's explosive growth— including the "bump" in sales that the Company and industry experienced during the first year of the COVID-19 pandemic—would continue without disruption. In other words, Defendants premised their efforts to solicit $300 million in the New Secured Loan on (a) knowingly unwarranted assumptions that the Company would continue the substantial growth it experienced as a result of the COVID-19 pandemic;

and (b) fraudulent projections that they knew falsely misrepresented and omitted the material impact of increased freight, shipping, and other costs, all of which negatively impacted profitability, liquidity, and the Company's ability to pay its debts as they became due.

59.     The reality was that Defendants knew by no later than early March 2021 that the Company was experiencing decreased profits and sales, increased expenses, and a substantial liquidity shortage. Undeterred in their mission to gain financing in order to extract the Dividend from the Company, Defendants knowingly provided materially false, misleading, and inaccurate information to induce Blue Owl and the other Lenders into providing the New Secured Loan.

60.     On March 10, 2021, the PHGP Defendants, led by Defendant Fiorentino, reached out to principals at Blue Owl about a potential investment in Walker Edison. On March 11, 2021, Defendant Casella had an introductory call with a Blue Owl representative regarding this investment.

61.     On March 13, 2021, following the introductory call, Defendant Casella sent a financial model that captured both historical and estimated future modeling for Walker Edison (the "**Financial Projections**"). The PHGP Defendants and Founder Defendants (among others) prepared and approved the Financial Projections and, upon information and belief, authorized Defendant Casella to send the financial projection to Blue Owl. The Financial Projections were relied upon by Blue Owl in its evaluation of the Walker Edison transaction. But the Financial Projections contained multiple material misrepresentations or omissions and Defendants had full knowledge of these material inaccuracies.

62.    More specifically, the Financial Projections that Defendant Casella sent to Blue Owl and the other Lenders in March 2021 contemplated that Walker Edison would continue its earlier strong performance despite known and knowable facts to the contrary. The fraudulent projections included the below.

- <u>Cost of Goods Sold</u>: Despite months of increased costs, including the increasing ocean freight costs, Defendants projected the same Costs of Good Sold as a percentage of net sales for 2021 through 2025 as they had in earlier projections as of November 2020.

- <u>Cost of Shipping</u>: Despite awareness of rapidly spiraling shipping costs for at least five months prior, Defendants also projected the same Cost of Shipping as a percentage of net sales for 2021 as they had in earlier projections.

- <u>Gross Profit</u>: Defendants projected increased gross profit of $197.2 million in 2021, which was higher than the Company's last-twelve-month ("**LTM**") gross profit of $146.5 million.

- <u>Reported EBITDA</u>: Defendants projected reported EBITDA of $104.4 million for 2021. Because the Financial Projections understated increased costs, ~~it~~**they** overstated EBITDA growth.

- <u>Adjusted EBITDA</u>: Defendants projected adjusted EBITDA of $111.6 million for 2021.

  Adjusted EBITDA is a measure of EBITDA that adds back into EBITDA what the Company considers to be nonrecurring or one-time expense items. Because the Financial Projections understated the known higher costs that were recurring, ~~it~~**they** overstated Adjusted EBITDA growth.

23

63.     The next day, March 14, the PHGP Defendants, including Defendant Casella, participated in a sponsor diligence call with Blue Owl. During that call, Defendant Casella, on behalf of the PHGP **and Founder** Defendants and consistent with the Financial Projections, falsely represented that they were confident that EBITDA would continue to demonstrate strong growth in 2021. **Defendants were aware of, and authorized and aided, Defendant Casella's false statements despite all Defendants' contemporaneous knowledge that there was no reasonable basis to project EBITDA and profitability growth under the Company's then-current circumstances. These circumstances, as reflected in meetings, discussions, and communications among the Defendants, included rapidly spiraling freight and shipping costs and internal assessments from the Company's management that reduced profitability and an EBITDA decline was likely, as alleged below and herein.** Despite Defendants' awareness by this time that the Company ~~was being~~**would be** forced to short pay its vendors in order to avoid running out of liquidity, Defendant Casella did not disclose this serious situation but instead misrepresented Walker Edison's position by emphasizing its purported success due to quick sourcing from vendors. ~~Defendant Casella also represented that the asset-based loan facility (the "**ABL Facility**") balance would be between $30 million to $40 million at closing, even though Defendants knew—and failed to disclose—at or around the same time that even an *increased* ABL Facility amount would be insufficient given the Company's substantial liquidity needs and cash burn.~~ None of the Defendants ever corrected the material omissions and misrepresentations in the Financial Projections.

64.     On March 16, Defendant Casella**, with the knowledge and authorization of all Defendants,** sent further data to Blue Owl, including actual

24

financial data through February 2021 (the "**Original Actuals**"). Blue Owl and the other Lenders justifiably relied upon the Original Actuals in deciding whether to extend the $300 million loan to the Company. And as stated above, at the time the Original Actuals were transmitted to Blue Owl, Walker Edison **management**, the Founder Defendants, and the PHGP Defendants were all aware of a material accounting error that adversely impacted Walker Edison's historical financial performance as reflected in the Original Actuals, rendering them materially false and fraudulent as to, among other things, Walker Edison's gross profit, gross margin, EBITDA, and EBITDA margin. Specifically, the financial statements provided to Blue Owl failed to account for material freight expenses the Company had already incurred, thus causing the Company to appear significantly more profitable than it actually was and causing the fraudulent Financial Projections to appear more reasonable. The Original Actuals misrepresented all of these figures due to its reliance on the known accounting errors. These accounting errors resulted in an actual EBITDA that was $6.6 million lower than represented in the October 2020 to February 2021 financial information provided to, and relied on by, Blue Owl.

65.     Despite knowledge of these accounting errors that rendered the Original Actuals, Financial Projections, and other financial data presented materially false and misleading, Defendants Bonham, Davis, and the other Defendant Board members never notified Blue Owl of this material discrepancy or alerted Blue Owl that the financial statements or projections themselves were materially false and misleading and should not be relied upon before the Loan Agreement closed. Once Walker Edison's CFO further confirmed the accounting errors no later than February 2021 and before the closing of the New Secured Loan, Walker Edison's CFO immediately notified Defendants Bonham and

Davis about the material accounting error. Walker Edison's CFO, Defendant Bonham, and Defendant Davis thereafter promptly raised this issue with the rest of the Board members. Had Defendants disclosed that the financial results materially understated freight costs, Blue Owl and the other Lenders would also have been in a position to conclude that the Financial Projections and other projections were completely unrealistic and inaccurate. Defendants' fraud prevented this from happening.

66.      To the contrary, Defendants continued to knowingly present a materially false and misleading picture of the Company's financial situation. In addition to the March 14 call described above wherein Defendants made numerous material misrepresentations and omissions, Blue Owl also met with Defendants and Walker Edison's CFO on March 19, during which discussion Blue Owl was told**, with Defendants' authorization and awareness,** that the Company would be shocked if 2021 growth was even as low as the Financial Projections, and that internally Walker Edison had a higher target, an expression of optimism that Defendants knew was materially false and misleading **for all the reasons alleged herein**, and that echoed Defendant Casella's false statements on March 14.

67.      Blue Owl and the other Lenders justifiably relied upon these financial statements and projections and statements that Defendants made about them in connection with entering into the Loan Agreement and funding the New Secured Loan. On information and belief, Defendants decided not to correct these misstatements because correcting the accounting information and modifying the projections to reflect known facts could impair Defendants' chances of achieving a large payday through a new equity investment or dividend recap transaction. In reliance on the Original Actuals and the Financial Projections,

Blue Owl and the other Lenders agreed to enter into the Loan Agreement and fund the New Secured Loan to their detriment.

68.     ~~In contrast to the rosy portrayal of the Company that~~**But before** Defendants presented **these rosy and false assessments of the Company's financial position and prospects** to Blue Owl and the other Lenders **throughout March 2021**, Defendants had ~~begun internally to express~~**already been made aware of Company management's** decidedly pessimistic ~~views~~**assessment** of the Company's financial position **that made Defendants' statements materially false and fraudulent. Defendants discussed and accepted these negative assessments**, none of which were disclosed to Blue Owl and the other Lenders. When these internal and external statements are compared, they make clear that Defendants' fraud was not accidental but was intentional and motivated by financial gain.

69.     On March 9, 2021, for example, Walker Edison's President told Defendants Bonham and Davis that "FedEx fees will continue to increase and raw material costs may also increase." Further, on March 11, 2021—approximately three weeks before closing the new $300 million loan and causing the Dividend to be issued—Defendant Bonham told Defendant Davis and other Walker Edison employees that they "just had a meeting with the P[rospect] H[ill] guys," where the Company's CFO "shared <u>an erosion happening in our profit profile due to inbound freight and outbound increased FedEx charges</u>." (Emphasis added). On the same day, the CFO warned Defendants Bonham and Davis that "I know we 'think' we will see relief in May or June on the ocean freight, but I wouldn't count on it and I'm really worried about the raw materials market." There was no disagreement from

Defendant Bonham, who, in another email, expressly stated that he did not "see ocean freight or fedex costs reverting."

70.     That day, unbeknownst to Blue Owl and the other Lenders, tempers were flaring inside the Company as Defendants tried to deal with the Company's financial woes. On March 11, 2021, the Company's Controller put it bluntly: "cash is short right now." On the same day, Defendants had attended a meeting to discuss the Company's "recent underperformance." The Company's President expressed regrets that "the meeting did not go well and could have been better managed," alluding to Defendants' frustration with the management team that had brought them more bad news without providing any reassurance. The Company's President then provided the Founder Defendants and PHGP Defendants a summary of next steps that were necessary to address the Company's "reduced profitability, increased costs, and the impact on the FY21 EBITDA forecast."

71.     Two days later, Defendants presented Blue Owl and the other Lenders with the Financial Projections showing freight and shipping costs remaining stable and the Company gaining dramatically increased EBITDA and profit margins throughout 2021. Thus, despite receiving all of this alarmingly bad news on March 11, 2021 regarding the Company's "reduced profitability," "underperformance," the "impact on the FY21 EBITDA forecast," and the "erosion happening in our profit profile due to inbound freight and outbound increased FedEx charges," **the Founder and PHGP** Defendants just two days later presented Blue Owl with a misleadingly bullish picture of the Company's prospects, providing the false and misleading Financial Projections that reflected increased gross profit and EBITDA for 2021 and assumed no significant increase in cost of goods sold due to freight charges and no significant increase in cost of shipping. These projections were

completely at odds with material undisclosed facts of which Defendants were already aware. The very next day, on March 14, 2021, Defendant Casella and the other Defendants reinforced this unwarranted optimism, misrepresenting to Blue Owl that Defendants were "very confident" the Company's EBITDA performance would be "bigger this year."

72.    On March 16, 2021, just two days after communicating the falsely positive outlook to Blue Owl on March 14, Defendant Fiorentino privately wrote to Defendants Bonham, Davis, Casella, and Damiano that there were "very high hurdles for gross margin/EBITDA year over year starting in April."

73.    On March 19, Blue Owl met with Defendants and the Company CFO and was told that the Company would be shocked if 2021 growth was even as low as the Financial Projections, and that internally Walker Edison had a higher target, an expression of optimism that Defendants knew was materially false and misleading, and that echoed Defendant Casella's false statements on March 14.

74.    The highly material negative information was ***never*** disclosed to Blue Owl or the other Lenders; in fact, the opposite was conveyed by Defendants through their statements to Blue Owl and the other Lenders, and through the distribution of false and misleading financial statements and projections for the Company. These material facts and others were not disclosed because, as Defendant Fiorentino put it, the focus was still on a "dividend path to private deal," meaning the Dividend following the closing of the New Secured Loan.

75.    As the days passed, other management-level employees shared concerns that the Company would continue to suffer from spiraling freight costs well beyond March 2021. On March 19, 2021, the very same day that Blue Owl was being told that the Company's

performance had been outstanding and was expected to be higher than the Financial Projections, a Company vice president complained internally that "ocean freight increases will be persistent," and that the increasing freight costs plaguing the Company and the global supply chain would not be "short term/temp." The Company's Treasurer told the CFO that "it seems like [freight expenses] ha[ve] been going up every month since the first of the year." On information and belief, the Founder Defendants and PHGP Defendants began holding "all hands" meetings to discuss how to handle the soaring freight and shipping costs, which were quickly burning up the Company's cash resources and were making the Company's financial position untenable. Defendants never even told Blue Owl and the other Lenders about the remarkable fact, as alleged above, that ongoing shipping problems had recently disrupted one of its most significant customer relationships **in December 2020** when the Company was kicked off of the customer's e-commerce platform as punishment for delays, an event that caused Defendant Bonham to say, "I expect all of us to ask ourselves how did we [expletive] December this badly." Again, none of these material facts were disclosed to Plaintiff and the other Lenders.

76.    Despite these regular internal discussions, the Company's projections that Defendants used to justify and support the incurrence of the Loan Agreement and New Secured Loan did not reflect Defendants' actual knowledge that the Company would continue to suffer from increased freight and shipping costs and that costs would continue to increase after consummation of the transaction. In fact, Defendants knew that the projections they used to promote and justify the Loan Agreement and New Secured Loan failed to account for the increased freight and shipping expenses the Company had encountered since at least as early as October 2020 and failed to account for the resulting erosion in EBITDA

that Defendants knew would continue to occur. Defendants did not even properly account for the EBITDA misses that they knew had already resulted from these issues and other performance challenges. Moreover, Defendants were well aware that the Company's financial projections were unreasonably high and ignored reality in order to justify the Dividend. Walker Edison's own President lamented weeks after the Dividend was issued that "we were saying from the beginning that the forecast for this year was way too high and no one listened."

77.     To the contrary, Defendants sought to downplay the Company's margin, profitability, and liquidity problems as potential issues. At the same time that Defendants and Walker Edison management were internally discussing the "persistent" and "inevitable" increases in freight and shipping costs and the "erosion in our profit profile"—as Defendant Bonham put it—caused by those increases that were not accounted for in the Financial Projections, Defendants were telling prospective lenders that freight and shipping issues had been resolved.

78.     For example, in the March 3, 2021 memorandum titled "Confidential Information Memorandum – Public Lender Information" (the "**March 2021 Confidential Memo**") and given **by the Board Defendants** to Blue Owl and the other Lenders in March 2021, Defendants told ~~lenders~~**Plaintiff and the Lenders** that although Walker Edison had "experienced unprecedented supply chain challenges" in November 2020, it "has since worked through the supply chain challenges, which no longer pose an issue" and that "[t]he Company's January 2021 performance recovered well from December 2020, as the supply chain challenges subsided and Walker Edison continued to experience increased demand." Upon information and belief, **the Board** Defendants—who constituted the entire Board and

several key leadership positions—caused or approved this **false** representation to be placed in the March 2021 Confidential Memo, which **itself** "represent[ed] and warrant[ed] . . . that the information contained in [the March 2021 Confidential Memo] . . . does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements contained herein not materially misleading in light of the circumstances under which such statements are made."

79.     These materially false and misleading statements came at the same time that Defendant Bonham was telling management internally, "I don't see ocean freight or fedex costs reverting" and the Company's president was warning Bonham, Davis, and the PHGP Defendants of "reduced profitability, increased costs, and the impact on the FY21 EBITDA forecast." In addition, on March 22 and 24, 2021, just days before closing the ~~new loan,~~**New Secured Loan,** employees of Walker Edison were still grappling with the related errors with the Company's freight accounting, noting that there had been "$6.4 million of freight costs" that were "not being allocated to inventory timely," which had been known since year-end 2020. Again, this was never conveyed to Blue Owl or the other Lenders prior to closing of the New Secured Loan, despite Defendants' knowledge.

80.     As problems mounted, the Company was forced to take drastic steps to deal with its lack of liquidity to pay ongoing debts due to its deteriorating financial condition. On information and belief, not later than March 2021, the Company started to **discuss** intentionally ~~delay payments~~**short paying invoices** to certain critical vendors**, _i.e._, paying less than the invoiced amount due and delaying payment,** to manage its cash liquidity. While helpful on paper to slow cash burn, this strategy of **underpaying and** delaying critical vendor payments ~~caused~~**would cause** material risk to the Company's relationships

and business going forward. Delaying **and short paying** critical vendor ~~payments~~**payables** was not part of the Company's regular and normal working capital management. Defendants made this intentional decision because the Company ~~was~~**would be** running precariously low on money **soon without such a strategy**, and the Company modeled various percentages of vendor ~~short paying~~**short paying** so that it could preserve liquidity and remain in compliance under its **asset-based loan facility ("ABL Facility")**. Yet, when cash did become available through the Loan Agreement, Defendants did not leave a single dollar of cash in the Company and rather siphoned off ~~that~~**the** cash for their own benefit through the Dividend.

81.     The Founder Defendants and PHGP Defendants were fully aware of the liquidity crisis faced by the Company and were advised of various measures Company management was proposing to deal with the Company's growing inability to pay its debts. Between March 3 and 8, 2021, for example, the Company's CFO requested that a four-week cash flow forecast be drawn up showing that the Company would only be able to pay 86% of what it was scheduled to pay to its suppliers in China and Brazil and stated that he was "going to talk to [Defendant Bonham], [Walker Edison's President], and [Defendant Davis] today about pushing orders out," *i.e.*, delaying critical orders from suppliers, "since we aren't hitting sales goals." According to an internal cash flow forecast dated March 16, 2021, the Company had determined that it could not pay its debts to vendors and suppliers as they came due without running out of availability on its bank line of credit and being in breach of its credit requirements within five weeks.

82.     As of at least March 17, 2021, management expressed concern that the Company's factory relationships—absolutely essential to the Company's business and

survival—could be seriously jeopardized if the Company ~~continued to stretch~~**stretched** payments beyond due dates **and short paid** for orders that it had placed ~~and~~**. They also** debated which part of the Company was better positioned to "weather this storm."

83.     Defendant Bonham also started pushing the idea of slashing hiring at the Company given the dire financial conditions, telling Defendant Davis and others on the management team, "revenue miss plus increasing expenses = stop hiring." However, this formula did not stop Defendants from, just days later at the end of March 2021, causing the Company to incur $300 million via the New Secured Loan (resulting in increased debt service costs) or funding an approximately $210 million distribution to line their own pockets. And as Walker Edison's CFO told Defendants Bonham and Davis, a hiring freeze would not resolve the financial problems alone, and other factors like costs of goods and shipping costs "are the more significant drive[r]s of future performance."

84.     By March 16, 2021—the same day Defendants provided Blue Owl and the other Lenders with the inflated Original Financials—the Company had completed an internal 16-week projection showing that in order to preserve capacity under its current $55 million ABL Facility— the Company's key source of liquidity—the Company would only be able to pay a portion of invoices owed to suppliers for the two weeks preceding the Dividend and through at least June 2021.

85.     Two days later, on March 18, the Company had completed another internal projection showing that it would exceed its borrowing capacity under its ABL by May 2021. It also showed that the Company would burn through more than $100 million in cash—which it did not have—by December 2021. Upon information and belief, Defendants

34

were aware of these projections that reaffirmed the on-the-ground reality yet failed to disclose this information to the Lenders.

86.     On March 18, the day before Defendants communicated to Blue Owl and the other Lenders that 2021 growth was expected to surpass even current expectations, the Company's President advised Defendants Bonham, Davis, Fiorentino, Damiano, and Casella as members of the Walker Edison Board that the Company should delay certain critical hiring and implement a 31% reduction in hiring of non-critical roles "immediately" and not reintroduce non-critical hiring until "performance improves." These discussions and others alleged herein reflect that all of the Defendants were fully aware and in regular communication regarding the Company's lack of adequate capital and inability to pay its debts as they came due while they continued to plan the consummation of the dividend recap transaction.

87.     The Company's actual performance with respect to freight and shipping delays and increased costs not only impacted its cash liquidity in the form of reduced profits, but it also reduced the Company's ability to access the bank borrowing that was essential for it to meet its debts. Specifically, the freight and shipping issues had an immediate impact on the Company's ability to borrow cash under its ABL Facility. In connection with incurrence of the debt financing, on March 31, 2021, the ABL Facility was also amended to increase the available loan capacity from $55 million to $75 million. But the increased loan capacity does**did** not mean that the Company was able to actually access that full capacity. Indeed, even prior to the amendment of the ABL Facility, the Company's ability to access the full capacity of the ABL was uncertain.

88. On March 26, 2021—and consistent with the March 16 and 18 internal forecasts about the difficulties with retaining availability under the ABL Facility while continuing to pay the Company's obligations to its vendors and suppliers—the Company's CFO sent an email to representatives of Prospect Hill and to the Company's lender under the ABL Facility telling them that the Company's projections (which were used to justify the new loan and the issuance of the Dividend) depended on the Company having access to the full $75 million available under the ABL Facility, but that delays in shipments of the Company's inventory would preclude the Company from borrowing the full amount it needed under the ABL Facility because the inventory necessary to supply the necessary collateral had been averaging in-transit times far beyond the lender's permitted 45-day time limits. Defendants ultimately declined to make a request to the ABL lender to increase the limits because Defendant Casella responded that he did not want such a request to "slow down the process," meaning the "process" by which Defendants were to cause Walker Edison within the next few days to incur $300 million in new debt so that Defendants could take the $210 million Dividend out of the Company. Again, Defendants did not disclose the Company's liquidity problems to Blue Owl or the other Lenders prior to the closing of the loan transaction.

**D.** **Defendants' Fraudulent Representations Caused the Lenders to Fund a $300 Million Term Loan and Caused the Company to Fund an Approximately $210 Million Dividend to Defendants.**

89. All of these issues, among others, meant that Defendants knew the Company, prior to closing on the New Secured Loan, was facing disruptions to its business that made its financial reporting and financial projections inaccurate and unreliable and would impact the Company's ability to pay debts as they came due. None of these facts caused Defendants

to refrain from using their knowledge and control over Walker Edison to wrongfully (and fraudulently) induce Blue Owl and the other Lenders to enter into the Loan Agreement and provide $300 million in added funds in the form of the New Secured Loan, which Defendants knew Walker Edison could not repay.

**Defendants Continue Their Fraud in the Loan Agreement**

90.    In the Loan Agreement and in written and oral communications during the loan diligence process in March 2021, **the Board** Defendants made, and caused to be made, additional numerous materially false and misleading representations and warranties to Blue Owl and the other Lenders. Defendants' misrepresentations in the Loan Agreement and elsewhere were belied by the facts on the ground that were known to Defendants but not to Blue Owl or the other Lenders. In addition to the oral and written misrepresentations and omissions made by Defendants as alleged herein, below is a description of certain further material misrepresentations and omissions made, and authorized to be made, by Defendants in the Loan Agreement **itself**.

91.    **The Board** Defendants caused the making of a representation in Section 3.04(a) of the Loan Agreement that historical financial statements were prepared in accordance with GAAP and presented fairly the financial condition of the Company and Section 3.13(a) provided that no written information, report, or financial statement furnished to the Lenders contained a material misstatement of fact. These representations were materially false because among other things, the Company's historical financial statements actually violated GAAP, materially misstated the Company's freight costs, costs of goods sold, gross margin, EBITDA, and other metrics, and had to be restated for 2018 and 2019 as a result of the 2020 audit completed in July 2021, and the October 2020 to February 2021

37

financial statements that had been provided to Blue Owl and the other Lenders had to be corrected.

92.     In Section 3.04(b), **the Board** Defendants caused the making of a representation that there had been no event, change, circumstance, or occurrence that was or was expected to be a material adverse effect. This representation was materially false because in reality, there continued to be materially adverse changes in the financial state of the Company—including reduced profitability, increased costs, and **imminent** inability to pay critical vendors—that rendered the Company unable to pay its debts as they came due and lacking adequate capital through the date of the dividend recap transaction.

93.     In Section 3.13(b), **the Board** Defendants caused the making of a representation that any projections were prepared in good faith and "utilized only assumptions believed by it to be reasonable when made in light of the then current circumstances." The Financial Projections delivered by Defendants to the Lenders were known by Defendants to be unreasonable and false in that the Financial Projections, among other things, projected a decrease in shipping and freight costs, even though **the Board** Defendants internally acknowledged they did not "see ocean freight or fedex costs reverting." **The Board** Defendants likewise were aware of reduced profitability, increased costs, and the impact of those issues on the Company's forecasts. The projections provided to Blue Owl and the other Lenders were therefore not made in good faith and did not utilize assumptions believed by Defendants to be reasonable when made in light of the then-current circumstances.

94.     In Section 3.15 (Solvency), **the Board** Defendants caused the making of a representation that as of the closing date, and after giving effect to the refinancing,

Dividend, and payment of fees under the Loan Agreement, the Company "on a consolidated basis" would be solvent. In reality, the Company was not solvent under any standard, as alleged herein. Notably, the Company was already unable to pay ongoing debts, internal projections suggested the Company would soon exceed its borrowing capacity, and **the Board** Defendants recommended slashing critical hiring in order to deal with the lack of liquidity.

**95.    The Loan Agreement further contained no provision disclaiming reliance by Blue Owl or the Lenders on any representations made by the Board Defendants either outside of the Loan Agreement or inside it (in the form of the representations and warranties made). In all respects, Plaintiff Blue Owl and the Lenders were legally entitled to, and did rely, on the material false representations and omissions by Defendants in connection with the Loan Agreement.**

95**96**.  Upon information and belief, Defendants—who constituted the governing board of, and substantially all of the equity ownership interests in, Walker Edison—made and caused to be made the material misrepresentations and omissions in the Loan Agreement and those otherwise communicated to Blue Owl and the other Lenders during the loan transaction diligence. Defendants knowingly made, and caused Walker Edison and its affiliates, employees, and representatives to make, these material misrepresentations and omissions, on which Blue Owl and the other Lenders reasonably and justifiably relied, in order to induce Blue Owl and the other Lenders to enter into the Loan Agreement, which allowed Defendants to extract hundreds of millions of dollars.

96**97**.  Defendants controlled Walker Edison (both the Board and its top management positions). The Founder Defendants and PHGP Defendants who served on the

Walker Edison Board caused and authorized Walker Edison (through its corporate CFO) to sign the Loan Agreement on behalf of the relevant Walker Edison entities. Corporate authorizations for the Loan Agreement confirm that Defendants knowingly caused, approved, authorized, and ratified the illegal acts and fraud in connection with the loan transaction and financially benefited thereby and are therefore liable for them.

**98.    Because Defendants arranged and caused the Company, Walker Edison Intermediate, and another subsidiary (EW Furniture, LLC) to serve as the only borrower/guarantor signatories to the Loan Agreement, Defendants arranged to avoid having themselves serve as signatories or parties to the Loan Agreement in order to further distance themselves from the fraud they had committed. As a result, Defendants cannot avail themselves of or otherwise invoke any of the Loan Agreement's provisions (including the choice-of-law or venue provisions) in their defense, as the Loan Agreement expressly prohibits this. Pursuant to Section 10.04(a), the Loan Agreement provides that "[n]othing in this Agreement or any other Loan Document . . . shall be construed to confer upon any person (other than the parties hereto, their respective successors and assigns permitted hereby . . . ) any legal or equitable right, remedy or claim under or by reason of this Agreement or any other Loan Document."**

**Agency Allegations**

~~97~~**99**.    In connection with the Loan Agreement, **the Board** Defendants caused to be created, executed, and delivered to Blue Owl and the other Lenders, in connection with an Omnibus Officer's Certificate dated March 31, 2021 (the same date as the signing and closing of the Loan Agreement), an Omnibus Written Consent by Defendant Walker Edison

Holding Company LLC, the **Utah-based** entity owned and controlled by the Defendants: (1) stating that Blue Owl and the other Lenders were entitled to rely upon the terms (including the materially false and misleading representations and omissions) of the executed Loan Agreement as having been authorized by Defendant Walker Edison Holding Company, LLC; (2) falsely representing that Walker Edison would not be rendered insolvent as a result of the Term Loan or transactions contemplated by the Term Loan guaranties (including the Dividend); and (3) stating that any acts by any manager, officer, employee, or agent of each Walker Edison affiliate in connection with the Term Loan transaction were "in all respects ratified, approved, confirmed, and adopted as acts and deeds by and on behalf of" Walker Edison Holding Company, LLC. ~~Thus,~~

**100.**    Defendants, as members of the controlling board and equity owners (or their representatives) of Defendant Walker Edison Holding ~~Company, LLC~~, Walker Edison Intermediate, ~~LLC,~~ and Walker Edison ~~Furniture Company, LLC~~, knowingly caused, approved, authorized, and ratified the acts undertaken by Defendant Walker Edison Holding ~~LLC~~ and the other companies **(including Plaintiff Walker Edison, Walker Edison Intermediate, and EW Furniture LLC as borrowers/guarantors)** and their affiliates, employees, and representatives, all of whom acted as Defendants' agents within the course and scope of such agency in connection with the Loan Agreement and acts and transactions relating thereto for Defendants' benefit. Based on the facts alleged herein and to be proven at trial, Defendants are themselves liable for those acts directly and also **vicariously** as principals**, and their acts and knowledge are thereby imputed to Defendants**.

**101.    In addition, each of the Board Defendants at all times acted on his own behalf and on behalf of the other entity Defendants that had the remaining direct or**

41

indirect ownership interests in Walker Edison. Defendant Brad Bonham acted at all times alleged herein both in his own personal interest and as an authorized agent and representative of Defendant MB & BB Holdings, which was the Utah-based investment vehicle through which he held ownership in Walker Edison and whose interests were aligned with his own. In undertaking the acts alleged herein, Defendant Bonham acted within the scope of his authority and agency to pursue the interests of Defendant MB & BB Holdings in causing the New Secured Loan and the Dividend, the proceeds of which were paid to MB & BB Holdings. Defendants Damiano, Murphy, Suttin, Casella, and Fiorentino, who were all affiliated with Prospect Hill, acted at all times alleged herein both in their own individual personal interests and as authorized agents and representatives of Defendants Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P. (collectively, the "Prospect Hill Entities"), which constituted the various Prospect Hill-related entities with direct or indirect ownership interests in Walker Edison and whose interests aligned with their own. In undertaking the acts alleged herein, Defendants Damiano, Murphy, Suttin, Casella, and Fiorentino acted within the scope of their authority to pursue the interests of the Defendant Prospect Hill Entities in causing the New Secured Loan and the Dividend, the proceeds of which were paid to the Prospect Hill Entities. In addition, all of the Board Defendants served as managers and directors of Defendant Walker Edison Holding Company, LLC, which controlled Walker Edison Intermediate and Walker Edison. As a result of these relationships, each of the Board Defendants and Defendant Walker Edison Holding was an agent of the remaining Defendants and the conduct and

**knowledge of the Board Defendants and Walker Edison Holding LLC as alleged herein are imputed to the remaining Defendant entities, on whose behalf they acted within the scope of their authority and which are equally liable both directly and vicariously as principals.**

**Defendants Use the Loan Proceeds to Pay Themselves the $210 Million Dividend**

~~98~~**102**. As explained above, the representations and warranties contained in the Loan Agreement and the related financial statements and projections and the omissions therefrom were materially false and misleading. Defendants had exclusive and unique knowledge of the true material facts and information such that the exercise of reasonable diligence would not have uncovered the fraud, and Defendants fraudulently concealed, misrepresented, and omitted to disclose the true material facts in order to induce and cause Blue Owl and the other Lenders to fund $300 million under the New Secured Loan, the majority of which went directly to Defendants' pockets.

~~99~~**103**. In reasonable reliance on the financial statements and projections prepared and

provided by Defendants, as well as the representations and warranties in the Loan Agreement and Omnibus Written Consent, Blue Owl and the other Lenders executed the Loan Agreement on March 31, 2021. This transaction resulted in the New Secured Loan, which provided $294,921,250 in net cash for the Company. Defendants, however, did not permit the Company to retain a single dollar of the New Secured Loan to fund its ongoing operating costs or to solve the known liquidity issues. Rather, 100% of the proceeds of the New Secured Loan ~~were~~**was** used to pay transaction fees, to repay existing debt of $82,874,156.25, and to fund the Dividend and various employee profit interests of

$209,320,503.41. **The liens under the Loan Agreement on the Company's cash were not perfected prior to the Dividend (which was paid on the same day), and the funds used for the Dividend were not fully encumbered by valid liens when transferred from the Company's accounts.**

**104.**    Defendants also caused the Company to increase its loan capacity under the ABL Facility from $55 million to $75 million, notwithstanding the $300 million term loan debt they had just caused the Company to incur, but projections and internal emails showed that even this increased loan capacity under the ABL Facility would either not be available or would be insufficient given the Company's substantial liquidity needs and cash burn.

~~100~~**105**.    Had Defendants observed corporate formalities, the Dividend would have been distributed through the Company's corporate structure—(i) first to Walker Edison Intermediate, (ii) then to Walker Edison Holding, and (iii) then to the beneficial owners of Walker Edison Holding. The Dividend, however, was not distributed in accordance with this corporate structure. Rather, it was paid in cash directly by Walker Edison to Defendants JWC-WE Holdco, Inc. (on information and belief, an entity owned and/or controlled by Prospect Hill), MB & BB Holdings, LLC (on information and belief, an entity owned and/~~or~~ controlled by Brad Bonham), and Matthew Davis (collectively, the "**Transfer Recipients**"). The cash amounts of the Dividend transferred to the Transfer Recipients (the "**Transfers**") are reflected in the below chart and represent 99.4% of the total Dividend amount above.

| Transfer Recipient | Transfer Amount |
|---|---|
| JWC-WE Holdco, Inc. | $119,895,590.37 |
| MB & BB Holdings, LLC | $66,143,473.13 |
| Matthew Davis | $22,049,157.32 |

101106. In addition to the Transfers to the Transfer Recipients, the Company also distributed a very minor amount of the Dividend, $1,232,282.60 (representing 0.6% of the Dividend Amount) for certain senior employee profit interests. As with the Dividend payouts, the Company did not receive any of the funds distributed to these employee recipients.

102107.    The Transfers were made to and for the benefit of the Transfer Recipients, each of which were either insiders and controlling owners of Walker Edison or controlled by insiders or controlling owners of Walker Edison. Walker Edison received no consideration in return for the Transfers.

**108.    On information and belief, after completion of the Transfers by Walker Edison, the Transfer Recipients subsequently transferred some or all of the proceeds of the Dividend to additional persons and entities, including Defendants Brad Bonham, Matt Davis, Walker Edison Holding Company, LLC, the remaining Defendant Prospect Hill Entities, and certain Doe defendants who have not yet been identified.**

103109.    Not only did the Dividend strip the Company of loan proceeds that should have been used to address its liquidity and performance issues, but the $300 million New Secured Loan left the Company with massively increased debt and monthly costs of debt service. Prior to the consummation of the Loan Agreement and Dividend, the Company had less than $83 million in funded term loan debt and had approximately $22 million outstanding under the ABL Facility that had a borrowing limit of $55 million. After consummation of the Loan Agreement and the Dividend at the end of March 2021, however, the Company had $300 million in funded term loan debt under the Loan Agreement, with an increased borrowing limit under the ABL Facility of $75 million. As a result of the closing

45

of the New Secured Loan, the cost of the Company's monthly debt service had therefore more than tripled, from an average of approximately $640,000 per month in the six months prior to the closing of the New Secured Loan to an average of approximately $2 million per month in the six months following the closing of the New Secured Loan.

~~104~~**110**.    In other words, the Loan Agreement substantially increased the required cash necessary to fund the Company's debt by more than $1.4 million per month at a time when the Company was already experiencing liquidity and cash problems and an inability to pay debts as they came due in the ordinary course of the Company's activities and affairs. At the same time, the Dividend depleted the Company of approximately $210 million of cash that could have been used to mitigate the Company's operating losses and fund its debt payments. All of this was directed and facilitated by Defendants, who used their positions of power over the Company to misrepresent the state of the Company, to the detriment of Blue Owl and the other Lenders. Had Blue Owl and the other Lenders known the truth about the financial status of the Company, they would not have supported a transaction that resulted in approximately $210 million departing the Company when those cash proceeds were sorely needed to fund operations and satisfy debt service.

~~105~~**111**.    Blue Owl and the other Lenders justifiably relied upon the financial statements and projections prepared and sent by, or at the direction of, Defendants, as well as other materially false and misleading statements and omissions by Defendants alleged herein, made to induce the Lenders to fund the cash necessary to make the Dividend. In reliance on the Original Actuals and the Financial Projections, which were materially false and misleading, Blue Owl and the other Lenders agreed to enter into the Loan Agreement.

106112.    Blue Owl and the other Lenders were misled by Defendants into lending money to a company whose financial health and cash position was worse than Defendants represented—a company that was already considering drastic cuts to spending and jeopardizing its own vendor relationships due to struggles to pay its debts even before it took out a $300 million loan that would not increase its cash position by a single dollar. As a result of Defendants' fraud and misconduct, Blue Owl and the other Lenders did not have full knowledge of all material facts surrounding the Loan Agreement and the Dividend or the impacts that such transactions would have on the Company and its ability to perform under the Loan Agreement. In particular, this is because Defendants concealed and misrepresented that the Company's financial statements and projections were materially inflated, false, and inaccurate due to spiraling costs, inventory challenges, and poor cash flow that would render the Company unable to pay its debts.

107113.    Blue Owl and the other Lenders were therefore unaware of the Company's financial struggles, which was a material undisclosed fact, and moreover that the $210 million Dividend the Defendants arranged to pay themselves would render the Company insolvent, including leaving it with inadequate capital, an inability to pay its debts as they became due, and unreasonably small assets in relation to its business. Blue Owl and the other Lenders did not intend to loan $300 million to a Company that was struggling financially, nor did they intend to loan to the Company that would be insolvent at the time of the $210 million Dividend and waswould soon be unable to pay its vendors even before closing. Defendants' fraud prevented Blue Owl and the other Lenders from becoming aware of the true material facts regarding the transaction and the state of the Company so that they could decline to provide the loan that funded the Dividend. Because of the state of

47

circumstances Defendants' fraud created, Blue Owl and the other Lenders did not have knowledge of all material facts and therefore did not ratify, and cannot be deemed to have ratified, the transfer of the $210 million Dividend to Defendants.

**V.    AS THE DEFENDANTS FORESAW, WALKER EDISON'S ACTUAL PERFORMANCE DID NOT IMPROVE AFTER CLOSING THE NEW SECURED LOAN AND WALKER EDISON WAS INSOLVENT.**

~~108~~**114**.    Contrary to Defendants' fraudulently positive portrayal of the Company's                                                              financial health, the Company's gross profit and EBITDA in the period leading up to the closing of the New Secured Loan were materially lower than the projections Defendants had provided to obtain the New Secured Loan. In reality, the Company was facing a severe liquidity shortage and significant increases in expenses (primarily freight, shipping, and distribution center costs) that were not likely to dissipate soon.

~~109~~**115**.    Defendants were aware that as of the closing of the New Secured Loan, the Company was inadequately capitalized and would not be able to pay its debts as they came due in the ordinary course of the Company's activities and affairs. This was borne out almost immediately after the closing of the New Secured Loan. Further, the additional debt caused Walker Edison's debts to be greater than all of its assets. In other words, as of the closing of the Loan Agreement, the Company was insolvent. ~~Given the Company's insolvency, Defendants' fiduciary duties required that they consider and not harm the interests of the Company's creditors, including Blue Owl and the other Lenders. Defendants' actions, as alleged herein, breached those fiduciary duties.~~

~~110~~**116**.    Following the closing of the New Secured Loan on March 31, 2021, the Company missed the projections Defendants had presented to Blue Owl and the other

Lenders to justify the New Secured Loan by a material margin. The Company's actual 2021 net sales of $399.6 million fell more than ***$100 million short*** of its projected forecast of $504.2 million. And its 2021 actual reported EBITDA of ***negative*** $1.6 million fell well short of its projected $104.4 million. By the end of 2021, the Company burned through $100 million in cash due substantially to the spiraling costs and inventory challenges that were known prior to the Dividend transaction.

~~111~~**117**.    These significant misses reflected the fact that the monthly financials and financial forecasts that Defendants used to justify the Dividend prior to the transaction closing on March 31, 2021 did not reflect the operative reality of the Company due to Defendants' willful and intentional failure to properly allocate freight expenses for accounting purposes, and due to the known persistent increase in freight, shipping, and other costs that the Company experienced in the months preceding and following the issuance of the Dividend.

~~112~~**118**.    The Company's actual financial information, which was known to Defendants but intentionally withheld from Blue Owl, showed significant financial and liquidity problems well before the New Secured Loan closed. Based on this, Defendants should not have caused the Company to take on $300 million in new debt and should have refrained from extracting hundreds of millions of dollars from the Company because such actions immediately jeopardized the Company's ability to continue operations and pay its debts on time.

~~113~~**119**.    Had Defendants disclosed the true financial information that was available to them, neither Defendants nor the Company could have rationalized borrowing

49

and paying the Dividend of approximately $210 million solely from borrowed funds. Nor would Blue Owl and the other Lenders have been willing to provide the New Secured Loan.

## VI.    THE COMPANY ENGAGED IN AN ADDITIONAL EQUITY TRANSACTION.

~~114~~**120**.    Just a few months later, Defendants sought and obtained from a New York-based private equity growth firm an additional $250 million equity investment in Walker Edison Holding. Upon information and belief, Defendants did not disclose material facts regarding their actual expectations that freight and shipping costs would continue to increase in 2021 and to pose solvency and liquidity challenges for the Company, and instead Defendants presented unreasonable and inflated projections to the private equity growth firm in order to induce it to enter into the equity transaction.

~~115~~**121**.    As with the New Secured Loan, this May ~~2020~~**2021** investment was used to fund a second dividend to Defendants. Thus, although Defendants personally profited from the deal, barely any of this cash infusion was used to help fund the Company's operations and get it back on its feet. Ultimately, Walker Edison did not receive any of the proceeds from the May ~~2020~~**2021** investment other than the amount necessary to cover the associated transaction costs. This was a *de minimis* amount compared to the $250 million equity investment and the size of the dividends, and to the cash needed by Walker Edison to solve its continued liquidity and operations problems. Following the additional equity investment, the Company's continuing insolvency only worsened. Ultimately, the private equity growth firm's investment in Walker Edison came to an end a little more than a year later in a restructuring transaction made necessary by the Company's deepening liquidity problems.

## VII.    WALKER EDISON WAS INSOLVENT WHEN THE COMPANY ISSUED THE DIVIDEND.

116122.    As a result of the financial difficulties described above, rational projections                                          of                                          the Company's performance and cash flow based on the information actually known by Defendants would have shown that Walker Edison was insolvent, unable to pay its debts as they came due, and/or would be left with unreasonably small assets at the time of, and as a result of, the Dividend. It was clear internally that the Company would have little cash to help "weather this storm" that it was facing and that the combination of the "erosion in our profit profile" that Defendant Bonham identified and the increase in operating and debt expenses would leave the Company in an untenable financial position.

117123.    Defendants, however, refused to correct their materially false and misleading projections to conform to what they knew. Defendants therefore induced Blue Owl and the other Lenders to enter into the Loan Agreement and Defendants received the Dividend with knowledge that Walker Edison would not be able to pay its debts as they came due in the ordinary course of the Company's activities and affairs, would be left with inadequate capital, and had otherwise unreasonably small assets in relation to its business.

118124.    Throughout 2021, based on facts and circumstances that were known to Defendants as of the time of the Company's entry into the Loan Agreement and issuance of the Dividend, Walker Edison experienced a significant cash shortage and struggled and failed to pay its manufacturersvendors on time and in full. This state of affairs forced the Company to choose which manufacturers would get paid and which ones would have to wait, and which manufacturers would be short paid, including in situations where this would contravene the Company's legal and contractual obligations. The Company's liquidity worsened as a result of the New Secured Loan, as the Company's debt service requirements

increased tremendously, and no proceeds of that loan were made available to the Company for anything other than distribution of the Dividend, repayment of existing debt, or payment of transaction fees. After the closing of the New Secured Loan and the Dividend, the Company was only able to fund operations through the later incurrence of more debt and**,** **including additional debt provided by Blue Owl and the other Lenders, as well as** new infusions of equity capital, neither of which was reasonably certain nor guaranteed to occur when the Dividend was distributed.

119**125**.    As detailed above, the Company's ability to borrow cash under its ABL Facility was limited. And by March 16, 2021, the Company's internal projections showed that it would exceed its borrowing capacity under its ABL Facility, its key source of liquidity, by April 2021. This was not disclosed to Blue Owl or the other Lenders prior to the closing of the New Secured Loan. Therefore, Defendants knew at the time of the funding of the New Secured Loan and Defendants' receipt of the Dividend that the Company would be left with inadequate capital, total assets less than total liabilities, and otherwise unreasonably small assets and capital, and would be unable to pay its debts as they became due.

120**126**.    Such anticipated problems were borne out as the months passed. As of March 31, 2021, the Company had borrowed approximately $22 million under its $75 million ABL Facility. Less than five months later, in August 2021, the Company increased the availability under its ABL Facility to $100 million. By the end of 2021, the Company had fully drawn the amount available under the ABL Facility, made necessary by the Company's continued failure to meet its projections, which failure was the inevitable consequence of **known** facts and circumstances, including rising freight and shipping costs,

and inventory challenges known to Defendants before commencing discussions with Blue Owl about the dividend recap.

121127.    Even the increase in availability under the ABL Facility was not sufficient to prevent the Company from running out of cash in 2021. Between September and December 2021, the Company was forced to obtain**obtained** an additional $60 million in cash through capital contributions made by Defendants and other shareholders**, who upon information and belief were trying to extend the Company's runway to avoid attention being focused on their prior fraud**. During this period, Defendant Bonham told Defendants Damiano and Casella that "everyone knows ocean freight isn't abating anytime soon." This confirmed what Defendants knew when they caused the fraudulent Financial Projections to be sent to Blue Owl—that there were severe cost and expense issues drastically impacting the Company's bottom line. Describing the Company's financial position, Defendant Bonham stated that "the house is on fire," the situation was "precarious," and the Company should fire all Company employees not deemed "mission critical." In the face of the challenges created by Defendants' extraction of $210 million in badly needed liquidity that might have helped avert these disasters, Defendant Bonham simply told Defendants Damiano and Casella that "***honestly, I want to sail off into the sunset***."

122128.    Because Defendants negotiated the Loan Agreement without properly taking account of the Company's negative financial condition and performance at that time, within months of issuing the Dividend, the Company was also in danger of breaching the financial covenants under the Loan Agreement that Defendants caused in order to fund their own massive $210 million Dividend. Specifically, during the life of the New Secured Loan,

53

the Company was required to maintain a specific "Total Net Leverage Ratio," which was to be tested quarterly.

~~123~~**129**.    In fact, by July 2021, less than *four months* after their $210 million Dividend~~,~~ **and only two months after their additional equity transaction with a different private equity growth firm,** Defendants had informed Blue Owl and the other Lenders that the Company's financial picture was so bleak that it might breach the Total Net Leverage Ratio covenant under the Loan Agreement. Further, on August 27, 2021, less than *five months* after their $210 million Dividend, Defendants notified Walker Edison's lenders that, due to the additional pressures and an influx of pre-bought inventory from Q4 2020, the Company was facing a severe liquidity crisis and likely only had two to four *weeks* of liquidity left. By six months after Defendants' $210 million Dividend, the Company was in fact unable to even satisfy the *very first* Total Net Leverage ratio test on September 30, 2021, a disastrous result that Defendants knew and understood was likely before receiving the Dividend, given the "erosion" of the Company's profit profile and the fact that Defendants didn't "see ocean freight and fedex costs reverting," as Defendant Bonham put it.

~~124~~**130**.    The Company's insolvency was known and knowable to Defendants at the time of the Dividend and the New Secured Loan. The failure to satisfy the Total Net Leverage Ratio covenant under the Loan Agreement, if not timely cured, threatened to constitute an "Event of Default" under the Loan Agreement, which would allow the full amount of the New Secured Loan to be accelerated and become immediately due, meaning that the full, approximately $300 million New Secured Loan would have been immediately due and payable, a consequence that would have caused the Company to fall into

bankruptcy. The Company did not have sufficient cash or refinancing capability to pay such debt when due. Based on the facts and circumstances known by Defendants but concealed from Blue Owl and the other Lenders when Defendants induced them to enter into the Loan Agreement and fund the New Secured Loan, the Company did not have a realistic chance of satisfying the Total Net Leverage Ratio covenant under the Loan Agreement and was otherwise unable to satisfy its debts as they came due in the ordinary course of business.

## VIII.  DEFENDANTS EXECUTE A RESTRUCTURING SUPPORT AGREEMENT AND CHANGE OF CONTROL.

~~125~~**131**.    By January 2023, it became clear that because of Defendants' misuse of Walker Edison's financial resources, Walker Edison would not be able to survive without more drastic action. Unable to fix the problems they had created, Defendants decided to turn over ownership of the Company to Blue Owl and the other Lenders. Accordingly, Walker Edison, its investors, Blue Owl, and the other Lenders entered into a Restructuring Support Agreement, dated January 27, 2023 (the "**RSA**").

~~126~~**132**.    The purpose of the RSA was to (i) preserve and maximize the value of the Company by improving its balance sheet, (ii) provide necessary liquidity to address the Company's operating needs by providing for an additional $13 million loan under the Loan Agreement, (iii) preserve employee jobs, and (iv) satisfy **certain of** the Company's ongoing obligations. ~~Under~~**Pursuant to the transactions attendant to** the RSA, the Lenders assumed ownership and control over Walker Edison Intermediate, and, in turn, Walker Edison and its subsidiaries. ~~This action~~**The Lenders, including Blue Owl, retained a significant portion of their loans to Walker Edison following the RSA. The RSA also expressly preserved the Lenders' claims against Defendants. The RSA** would not have been necessary had Defendants acted properly in exercising their fiduciary and managerial

duties, and had Defendants not imposed added debt obligations that Defendants knew Walker Edison could not pay.

127**133**.    By early 2023, Defendants' wasteful and unnecessary looting of Walker Edison, a once-successful Utah-based global furniture business, had jeopardized the long-term survival of the Company. Defendants, in the face of this disastrous result and having improperly caused a massive liquidity event at the worst possible time simply to line their own pockets, exited the Company hundreds of millions of dollars richer and left Blue Owl and the other Lenders to pick up the pieces and rebuild.

**134.    Following the RSA, in 2023, Blue Owl and the other Lenders have been forced to extend an additional $66.5 million in loans to the Company to fund ongoing operations, in addition to their pre-existing loans. Therefore, as of the date of this Amended Complaint, the Company has issued at least $366.5 million of debt to Blue Owl and the other Lenders.**

**135.    Until the transfer of ownership in early 2023, Defendants were able to conceal the full extent of their fraud and the existence of Walker Edison's solvency from Blue Owl and the other Lenders. Once Defendants relinquished control over Walker Edison and access to its books and records and employees, their wrongdoing became apparent.**

128**136**.    On July 24, 2023, Blue Owl (as administrative agent and on behalf of the Lenders) and Defendants entered into a tolling agreement, whereby the parties agreed that the statute of limitations for any claims brought by Blue Owl or the other Lenders shall be tolled and extended through dates subsequent to the date of this Complaint**the original and amended Complaints**.

## CAUSES OF ACTION

**COUNT I: Constructive Fraudulent Transfer Under Utah Code §§ 25-6-202, 203, 304, And Other Equivalent State Laws**
*(Against Defendants Brad Bonham, Matthew Davis, MB & BB Holdings, LLC, Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., and Does 1-100)*

~~129~~**137**.    Blue Owl restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

~~130~~**138**.    Blue Owl, on its own behalf and on behalf of the Lenders, was a creditor of Walker Edison before the Transfers were distributed to the Transfer Recipients.

**139.    Blue Owl and the other Lenders have been, and remain, creditors of Walker Edison at all subsequent times and are current creditors of Walker Edison.**

~~131~~**140**.    On or around March 31, 2021, following the closing of the New Secured Loan, Walker Edison made the Transfers to the Transfer Recipients (JWC-WE Holdco, Inc., MB & BB Holdings, LLC, and Davis). On information and belief, Walker Edison Holding also received a legal right to some or all of the Transfers pursuant to its operating agreement or other governance documents and therefore can be considered a recipient of the Transfers.

~~132~~**141**.    On information and belief, after completion of the Transfers by Walker Edison, the Transfer Recipients subsequently transferred some or all of the proceeds of the Dividend (collectively, the "**Uptier Transfers**") to persons or entities, including Brad Bonham, Matt Davis, Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., and certain Doe defendants who have not yet been identified (collectively, the "**Uptier Transfer Defendants**").

57

133142.    On information and belief, Walker Edison, did not receive reasonably equivalent value for the Transfers.

134143.    At the time of and after completion of the Transfers, Walker Edison was unable to pay its debts as they came due in the ordinary course of Walker Edison's activities and affairs, including payments to manufacturers and suppliers and its obligations under the Loan Agreement. To continue operations in 2021, the Company required an additional $60 million in equity contributions and an additional $20 million in availability under the ABL Facility.

135144.    At the time of and after the Transfers, Walker Edison's financial statements showed that its total assets were less than the sum of its total liabilities.

136145.    At the time of and after the Transfers, Walker Edison was engaged, or was about to be engaged, in a business or a transaction for which its remaining assets were unreasonably small in relation to their business or transaction.

137146.    At the time of and after the Transfers, Walker Edison intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they came due.

138147.    Walker Edison was insolvent at the time of the Transfers, and became insolvent as a result of the Transfers, which were eventually distributed by the Transfer Recipients to the Uptier Transfer Defendants via the Uptier Transfers.

139148.    The Transfer Recipients and any immediate or mediate transferee of the Transfer Recipients, including but not limited to the Uptier Transfer Defendants, did not receive any interests or proceeds of the Transfers in good faith or for value.

~~140~~**149**.    The Transfers and the Uptier Transfers are avoidable as constructive fraudulent transfers under **both** Utah Code §§ 25-6-202 and 203. Under Utah Code § 25-6-304, Blue Owl is entitled to a judgment against the Transfer Recipients and the Uptier Transfer Defendants for the lesser of the value of the Transfers or the amount necessary to satisfy Blue Owl's and the other Lenders' claims, **both those incurred before and after the Transfers,** together with prejudgment interest from the date of such transfers, costs, all other relief set forth in Utah Code § 25-6-303 **(including avoidance of the full value of the Transfers)**, or compensatory damages in an amount to be determined for the value thereof, and any further relief that this Court deems just, fair, and equitable.

### COUNT II: Actual Fraudulent Transfer Under Utah Code § 25-6-202 And Other Equivalent State Laws
*(Against Defendants Brad Bonham, Matthew Davis, MB & BB Holdings, Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., and Does 1-100)*

~~141~~**150**.    Blue Owl restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

~~142~~**151**.    Blue Owl, on its own behalf and on behalf of the other Lenders, was a creditor of Walker Edison before the Transfers were distributed to the Transfer Recipients.

**152.    Blue Owl and the other Lenders have been, and remain, creditors of Walker Edison at all subsequent times and are current creditors of Walker Edison.**

~~143~~**153**.    On information and belief, after completion of the Transfers by Walker Edison, the Transfer Recipients subsequently made the Uptier Transfers to the Uptier Transfer Defendants.

144**154**.    The Transfer Recipients and any immediate or mediate transferee of the Transfer Recipients, including but not limited to the Uptier Transfer Defendants, did not receive any interests or proceeds of the Transfers in good faith or for value.

145**155**.    The Transfers were made with an actual intent to hinder, delay, and/or defraud creditors of Walker Edison to the detriment and harm of its creditors, including Blue Owl and the other Lenders. Such intent can be inferred from several badges of fraud, as set forth in Utah Code § 25-6-202(1)(a), including, among other things, on information and belief: (i) the Transfers were made to and for the benefit of Defendants or their related entities, each of which was an insider of the applicable debtor; (ii) the Transfers were in effect transfers of substantially all of Walker Edison's assets in light of the Company's severe liquidity constraints and operational pressures; (iii) the value of the consideration received by Walker Edison was not reasonably equivalent to the value of the Transfers; (iv) Walker Edison was insolvent or became insolvent as a result of the Transfers that were made; and (v) the Transfers occurred shortly after a substantial debt was incurred in the form of the obligation under the Loan Agreement.

146**156**.    The Transfers and the Uptier Transfers are avoidable as actual fraudulent transfers under **both** Utah Code §§ 25-6-202 and 203. Under Utah Code § 25-6-304, Blue Owl is entitled to a judgment against the Transfer Recipients and the Uptier Transfer Defendants for the lesser of the value of the Transfers or the amount necessary to satisfy Blue Owl's and the other Lenders' claims, **both those incurred before and after the Transfers,** together with prejudgment interest from the date of such transfers, costs, all other relief set forth in Utah Code § 25-6-303 **(including avoidance of the full value of the**

**Transfers)**, or compensatory damages in an amount to be determined for the value thereof, and any further relief that this Court deems just, fair, and equitable.

<div align="center">

**COUNT III: Breach Of Fiduciary Duty**
(*Against Defendants Walker Edison Holding, JWC-WE Holdco, Inc., MB & BB Holdings, LLC, Brad Bonham, Matthew Davis, Phil Damiano, Ken Murphy, Adam Suttin, Kyle Casella, and David Fiorentino*)

</div>

147.    Blue Owl restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

148.    The Transfer Recipients, Walker Edison Holding, Brad Bonham, Phil Damiano, Ken Murphy, Adam Suttin, Kyle Casella, and David Fiorentino (collectively, the "**Controlling Defendants**"), as members of the Board and/or controlling shareholders of Walker Edison owed fiduciary duties of care, loyalty, and good faith to Walker Edison and its stakeholders.

149.    Once Walker Edison was no longer solvent, these fiduciary duties extended to Walker Edison's creditors, including Blue Owl and the other lenders. In other words, once Walker Edison was insolvent, the Controlling Defendants were required not to plunder Walker Edison for their benefit, or for the benefit of Walker Edison's controlling shareholders and parent limited liability companies, to the detriment of its creditors.

150.    The Walker Edison operating agreement in effect at all times relevant to this Complaint, which was signed by Defendants Bonham and Davis, did not alter or eliminate the duties of loyalty, care, or good faith and fair dealing owed by Controlling Defendants to Walker Edison or its stakeholders (including Blue Owl and the other Lenders) under Utah law and did not specify any method by which a specific act or transaction that would otherwise violate the duty of loyalty could be authorized or ratified by one or more disinterested and independent persons after full disclosure of all material facts.

<div align="center">61</div>

151.   The Controlling Defendants' duty of care obligated them to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law. The Controlling Defendants' duty of loyalty obligated them to refrain from dealing with Walker Edison in the conduct of its activities as a person having an interest adverse to the Company or its creditors.

152.   The Controlling Defendants were obligated to discharge their duties and obligations under applicable law and in accordance with the Walker Edison operating agreement and in the exercise of rights consistent with the contractual obligation of good faith and fair dealing.

153.   The Controlling Defendants caused Walker Edison to incur debt in the form of the New Secured Loan and distribute the Dividend to the Transfer Recipients when Walker Edison was insolvent, inadequately capitalized, and unable to pay its debts as they came due in the ordinary course of its activities and affairs. In so doing, the Controlling Defendants failed to act in the best interest of Walker Edison's creditors (*i.e.*, Blue Owl and the other Lenders). This conduct, based on the intentional and fraudulent misrepresentations by Defendants in connection with the Loan Agreement and the authorization of the Dividend and distribution of the Dividend to the Transfer Recipients in violation of law, was intentional misconduct and a knowing violation of law and, at a minimum, grossly negligent and reckless conduct.

154.   The Controlling Defendants' wrongful conduct in breach of their duties was not ratified or authorized after full disclosure of all material facts. Nor was the Controlling Defendants' wrongful conduct fair to Walker Edison's creditors (*i.e.*, Blue Owl and the other Lenders).

155.    The Controlling Defendants' wrongful conduct in breach of their duties directly and proximately caused damage to Blue Owl and the other Lenders.

156.    Blue Owl is entitled to: (1) damages and restitution of the amounts improperly taken as a result of the Controlling Defendants' wrongful conduct; (2) disgorgement of all ill-gotten gains to the Controlling Defendants as a result of their wrongful conduct; and (3) punitive damages by reason of the fraudulent, wanton, willful, reckless, and malicious acts of the Controlling Defendants.

**COUNT IV: Aiding And Abetting Breach Of Fiduciary Duty III: Civil Conspiracy**
(*Against All Defendants*)

157.    Blue Owl restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

158.    The Controlling Defendants, as members of the Board and/or controlling shareholders of Walker Edison, owed fiduciary duties of care, loyalty, and good faith to Walker Edison and its stakeholders. Once Walker Edison was no longer solvent, these fiduciary duties extended to Walker Edison's creditors, including Blue Owl and the other Lenders.

159.    In causing Walker Edison to distribute the Dividend to the Transfer Recipients and rendering Walker Edison insolvent, inadequately capitalized, and unable to pay its debts as they came due in the ordinary course of its activities and affairs, the Controlling Defendants breached their fiduciary duties of care, loyalty, and good faith to Blue Owl and the other Lenders.

160.    Defendants knew that the Controlling Defendants owed fiduciary duties to Blue Owl and the other Lenders.

161.    Defendants knowingly provided substantial assistance and encouragement to the Controlling Defendants to breach their fiduciary duties to Blue Owl and the other Lenders.

162.    Each Defendant therefore aided and abetted the Controlling Defendants' breach of their fiduciary duties to Blue Owl and the other Lenders.

163.    As a result of Defendants' bad acts, Defendants are jointly responsible with the Controlling Defendants for the damages to Blue Owl and the other Lenders resulting from those breaches.

**COUNT V: Civil Conspiracy**
**(*Against All Defendants*)**

164.    Blue Owl restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

~~165~~**158**.    Defendants and their representatives formed a combination of two or more persons.

~~166~~**159**.    Defendants each sought to accomplish the object of committing fraud in order to cause Blue Owl to provide the New Secured Loan, which would enable Defendants to cause Walker Edison pay out the Dividend for their own benefit and for the benefit of their affiliates and assigns.

~~167~~**160**.    Defendants had a meeting of the minds to accomplish their object by providing and causing to be provided materially false, misleading, and fraudulent financial projections, statements, and omissions that would induce Blue Owl to invest in the Company in order to finance the New Secured Loan.

~~168~~**161**.    As alleged herein, Defendants conspired and participated in the commission of one or more unlawful, overt acts in furtherance of their object, **as alleged herein,** including **but not limited to** making and causing to be made fraudulent and false statements to Blue Owl and its representatives during the course of the diligence leading up to the Loan Agreement; distributing erroneous and fraudulent financial reports and

projections to Blue Owl and its representatives; failing to notify Blue Owl of the materially false and fraudulent financial reports and projections; omitting material information regarding the rising freight and shipping costs, declining margin, and declining EBITDA that made the financial reports and forecasts materially false and fraudulent; and causing the Company to enter into the Loan Agreement and distribute the Dividend to the Transfer Recipients.

169**162**.      Blue Owl has suffered damages as a direct result of these actions. **As a result, Blue Owl is entitled to a judgment of liability against the Defendants for civil conspiracy.**

### COUNT ~~VII~~**IV**: Fraud
### (*Against All Defendants*)

170**163**.      Blue Owl restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

171**164**.      As alleged herein, Defendants prepared and caused to be prepared the Original Actuals and the Financial Projections, both of which contained material misstatements and omissions, and caused them to be provided to Blue Owl and the Lenders. Defendants knew that the Original Actuals and Financial Projections were materially false, misleading, and incorrect when they were sent to Blue Owl, and at no point before the closing of the New Secured Loan did they attempt to notify Blue Owl or the other Lenders of any errors or omissions. Further, Defendant Casella, acting on behalf of all the Defendants **and with their prior authorization and knowledge**, transmitted those documents to Blue Owl.

172**165**.      Defendants made, and caused to be made, material misrepresentations in oral and written communications with Blue Owl during the course of Blue Owl's

diligence, as alleged herein. In addition, Defendants made, caused, and authorized material misrepresentations and omissions to Blue Owl during the course of its diligence and in the Loan Agreement, as alleged herein. At no point did Defendants attempt to notify Blue Owl or the other Lenders of any errors or omissions.

173**166**.       Defendants made, caused to be made, authorized, ratified, and approved materially false and misleading representations and omissions in the Loan Agreement on March 31, 2021, including but not limited to the representations in sections 3.04(a) (Financial Statements), 3.04(b) (Absence of a Material Adverse Effect), 3.13(a) (No Material Misstatements), 3.13(b) (Projections), and 3.15 (Solvency) of the Loan Agreement.          Defendants knew these representations**, and the other representations alleged herein,** were materially false and misleading or contained material omissions when they caused and authorized the Loan Agreement to be executed on Walker Edison's behalf. In addition to being directly liable for fraud based on Defendants' knowingly causing to be made, and making, material misrepresentations and omissions, Defendants as principals are **vicariously** liable for the actions and **imputed** knowledge of their ~~agents~~**authorized agents, including but not limited to Walker Edison, Walker Edison Intermediate, and members of Walker Edison's management** acting within the course and scope of ~~said agency~~**their authority** in transmitting those material misrepresentations and omissions to Blue Owl at Defendants' direction and for Defendants' benefit, as alleged herein.

174**167**.       As alleged herein, Defendants authorized and ratified an Omnibus Officer's Certificate and an Omnibus Written Consent on behalf of Defendant Walker Edison Holding Co. LLC dated March 31, 2021 that authorized Walker Edison to enter into

the Loan Agreement and authorized the acts undertaken by their agents in connection with the Loan Agreement, thereby causing, approving, and adopting all of the material false statements contained within the Loan Agreement and in the diligence leading up to the execution of the Loan Agreement. The Omnibus Written Consent also falsely represented that Walker Edison would not be rendered insolvent, lack adequate capital, be unable to pay its debts, or have assets with a saleable value less than its liabilities as a result of the Loan Agreement, materially false representations that were a material inducement to Blue Owl and the other Lenders to enter into the Loan Agreement. For all the reasons alleged herein, these representations were knowingly false when made. The Board (which includes Defendants) oversaw and controlled Defendant Walker Edison Holding Company LLC, and ~~Defendants on~~ the Board **Defendants** authorized the Loan Agreement, and caused Walker Edison, its affiliates, and its employees and agents to execute the Loan Agreement, and are therefore liable for the material misrepresentations and omissions made to Blue Owl and the other Lenders in the Loan Agreement and during the loan diligence process, which they knowingly caused, approved, authorized, and ratified.

~~175~~**168**.    Defendants made these misrepresentations and caused the misrepresentations to be prepared and made to Blue Owl and the Lenders. Defendants did so with the intent to fraudulently induce Blue Owl and the Lenders to enter into the Loan Agreement, thereby allowing Defendants to extract hundreds of millions of dollars from Blue Owl and the Lenders to enrich themselves.

~~176~~**169**.    Defendants knew these material misrepresentations and omissions were false. Defendants also made, and caused these statements to be made recklessly, knowing that there was insufficient basis for these representations.

67

~~177~~**170**.        These misrepresentations and omissions were made for the purpose of inducing Blue Owl and the other Lenders to enter into the Loan Agreement and provide $300 million in New Secured Loan, approximately $210 million of which was paid as a Dividend to line Defendants' pocketbooks.

~~178~~**171**.        When these misrepresentations and omissions were made, Blue Owl and the other Lenders were not aware of their falsity. These fraudulent misrepresentations and omissions concealed the truth about Walker Edison and prevented Blue Owl and the other Lenders from being able to determine the true state of Walker Edison's financials and future business outlook.

~~179~~**172**.        Blue Owl and the other Lenders did, in fact, **reasonably** rely upon these materially false, misleading, and fraudulent statements and omissions by, among other things, entering into the Loan Agreement and funding the New Secured Loan, which allowed Defendants to extract the Dividend from Walker Edison.

~~180~~**173**.        As a direct and proximate result of Defendants' fraudulent statements, Blue Owl and the other Lenders have been damaged by, among other things, providing $300 million to Walker Edison under the Loan Agreement that Defendants subsequently used to pay themselves the Dividend. Had Blue Owl and the other Lenders known the true material facts that were concealed and misrepresented by Defendants and their agents, they would not have entered into the Loan Agreement.

~~181~~**174**.        Blue Owl and the other Lenders have suffered at least $300 million in damages as a result of Defendants' fraud. Blue Owl is entitled to: (1) damages and restitution of the amounts that Defendants extracted from Blue Owl and the other Lenders as a result of Defendants' fraudulent statements; (2) disgorgement of all ill-gotten gains to the

Controlling Defendants as a result of their fraudulent conduct; and (3) punitive damages by reason of the fraudulent, wanton, willful, reckless, and malicious acts of the Controlling Defendants.

## COUNT ~~VII~~V: Aiding And Abetting Fraud
### (*Against All Defendants*)

~~182~~**175**.    Blue Owl restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

~~183~~**176**.    Each Defendant aided and abetted the wrongful conduct perpetrated against Blue Owl and the other Lenders by every other Defendant.

~~184~~**177**.    As alleged herein, every Defendant thereby aided and abetted the fraudulent conduct described above, including that each Defendant counseled, induced, commanded, assisted, aided, abetted, and provided substantial assistance to every other Defendant in: (1) preparing and causing to be prepared the Original Actuals and the Financial Projections that contained material misstatements and omissions that they knew would be provided by Blue Owl and the Lenders to induce them to enter into the loan transaction; (2) making and causing to be made material misrepresentations in oral and written communications with Blue Owl during the course of Blue Owl's diligence; (3) making, causing to be made, authorizing, ratifying, and approving material misrepresentations and omissions to Blue Owl and the other Lenders in the Loan Agreement; and (4) authorizing and ratifying an Omnibus Officer's Certificate and Omnibus Written Consent dated March 31, 2021 that authorized Walker Edison to enter into the Loan Agreement, approved and adopted all of the false statements contained within the Loan Agreement and elsewhere, and falsely represented that the Company would not be rendered insolvent as a result of the transactions contemplated by the Loan Agreement.

185.    Defendants**178.**    **Each and every Defendant** knowingly counseled, induced, commanded, assisted, aided, abetted, and provided substantial assistance and encouragement to the other Defendants to commit fraud, and each **and every** Defendant knew the true facts regarding the fraudulent statements, materially false or misleading statements, and statements containing material omissions and acted intentionally to induce Blue Owl and the other Lenders to enter into the Loan Agreement. Defendants nonetheless kept their knowledge of these problems concealed from Blue Owl and other Lenders and thereby aided and abetted the fraud perpetrated against Blue Owl and the other Lenders.

186**179**.    As a result of Defendants' bad acts, Defendants are jointly responsible for the damages to Blue Owl and the other Lenders resulting from the fraud.

## COUNT ~~VIII~~**VI**: Unjust Enrichment
### (*Against All Defendants*)

187**180**.    Blue Owl restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

188**181**.    This unjust enrichment claim is asserted in the alternative, in the event the remedies asserted in the preceding claims do not provide an adequate remedy at law.

189**182**.    Defendants received benefits when they wrongfully received the Transfers and/or the Uptier Transfers.

190**183**.    Defendants knowingly and voluntarily accepted and retained benefits in the form of the Transfers and/or the Uptier Transfers.

191**184**.    The circumstances alleged in this Complaint render Defendants' retention of those benefits unjust and inequitable.

~~192~~**185**.        Defendants have been unjustly enriched at the expense of Blue Owl in the amount of the Transfers and/or the Uptier Transfers, and Blue Owl is entitled to judgment in those amounts.

~~193~~**186**.        Blue Owl is entitled to the return of the Transfers and/or the Uptier Transfers through disgorgement or any other applicable remedy and judgment against

Defendants. **PRAYER FOR RELIEF**

WHEREFORE, Blue Owl respectfully requests the Court enter judgment as follows:

a.        On its first Cause of Action, for judgment in favor of Blue Owl and against Defendants Brad Bonham, Matthew Davis, **MB & BB Holdings, LLC,** Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., and Does 1-100:

i.        Pursuant to Utah Code § 25-6-303(1)(a), to avoid and recover all fraudulent transfers until all funds, assets, and property are recovered by Blue Owl and the other Lenders;

ii.        Pursuant to Utah Code § 25-6-303(1)(c)(ii), appointing a receiver; and

iii.        Granting the remedies provided for avoidance and recovery under Utah Code § 25-6-303(1):

(a)        avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's ~~claim~~**claims**;

**(b)        avoidance of the full value of the transfer or obligation as the circumstances may require;**

(b**c**)    an attachment or other provisional remedy against the asset transferred or other property of the transferee if available under applicable law; and

(c**d**)    subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

(i)    an injunction against further disposition by the debtor or                                                                                      a transferee, or both, of the asset transferred or of other property;

(ii)    appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(iii)    any other relief the circumstances may require;

b.    On its second Cause of Action, for judgment in favor of Blue Owl and against Defendants Brad Bonham, Matthew Davis, **MB & BB Holdings, LLC,** Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., and Does 1-100:

i.    Pursuant to Utah Code § 25-6-303(1)(a), to avoid and recover all fraudulent transfers until all funds, assets, and property are recovered by Blue Owl and the other Lenders;

ii.    Pursuant to Utah Code § 25-6-303(1)(c)(ii), appointing a receiver; and

iii.    Granting the remedies provided for avoidance and recovery under Utah Code § 25-6-303(1):

(a)    avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim**claims**;

72

**(b)** **avoidance of the full value of the transfer or obligation as the circumstances may require;**

(b**c**)    an attachment or other provisional remedy against the asset transferred or other property of the transferee if available under applicable law; and

(c**d**)    subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

(i)    an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(ii)    appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(iii)    any other relief the circumstances may require;

c.    On its third Cause of Action, for judgment in favor of Blue Owl and against Defendants JWC WE Holdco, Inc., MB & BB Holdings, LLC, Brad Bonham, Matthew Davis, Walker Edison Holding, Phil Damiano, Ken Murphy, Adam Suttin, Kyle Casella, and David Fiorentino, awarding Blue Owl and the other Lenders damages sustained as a result of the breaches of fiduciary duty and an amount of punitive damages, together with attorneys' fees and prejudgment interest, in an amount to be determined at trial;

d.    On its fourth Cause of Action, for judgment in favor of Blue Owl and against Defendants, awarding Blue Owl and the other Lenders damages sustained as a result of the breaches of fiduciary duty and an amount of punitive damages, together with attorneys' fees and prejudgment interest, in an amount to be decided at trial;

e**c**.    On its fifth**third** Cause of Action, for judgment in favor of Blue Owl and against Defendants, awarding Blue Owl and the other Lenders damages sustained as a result

of the civil conspiracy and an amount of punitive damages, together with attorneys' fees and prejudgment interest, in an amount to be decided at trial;

~~f~~**d**.    On its ~~sixth~~**fourth** and ~~seventh~~**fifth** Cause of Actions, for judgment in favor of Blue Owl and against Defendants, awarding Blue Owl and the other Lenders damages sustained as a result of fraud and an amount of punitive damages, together with attorneys' fees and prejudgment interest, in an amount to be decided at trial;

~~g~~**e**.    On its ~~eighth~~**sixth** Cause of Action, for judgment in favor of Blue Owl and against Defendants, awarding disgorgement and Blue Owl and the other Lenders damages for such unjust enrichment, together with prejudgment interest, in an amount to be decided at trial; and

~~h~~**f**.    On all Causes of Action, for:

     i.    Restitution;

     ii.    Disgorgement of the Transfers and/or the Uptier Transfers;

     iii.    Preliminary and permanent injunctive relief;

     iv.    Attorneys' fees and costs;

     v.    Prejudgment interest; and

     vi.    Other further relief as is just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Blue Owl hereby demands a jury trial of all issues in this action triable of right by a jury.

DATED ~~April 24~~**July 12**, 2024.

PARSONS BEHLE & LATIMER
*/s/ Erik A. Christiansen*
**Erik A. Christiansen**

~~Erik A. Christiansen~~
~~Alan A. Mouritsen~~
~~Brian M. Rothschild~~

74

Attorneys for Blue Owl Capital Corporation

## CERTIFICATE OF SERVICE

I certify that on this 12th day of July, 2024, a true and correct copy of the foregoing FIRST AMENDED COMPLAINT was filed electronically through the court's electronic filing system, which caused all counsel appearing in the case to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Sarah Jenkins Dewey*

| Summary report:<br>**Litera Compare for Word 11.6.0.100 Document comparison done on<br>8/12/2024 6:11:08 PM** | |
|---|---|
| **Style name:** PW Basic | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** 2024.04.24 Complaint (1).docx | |
| **Modified filename:** First Amended Complaint (1).docx | |
| **Changes:** | |
| **Add** | 272 |
| Delete | 216 |
| Move From | 14 |
| **Move To** | 14 |
| **Table Insert** | 0 |
| Table Delete | 0 |
| **Table moves to** | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 516 |

**This motion requires you to respond.**
**Please see the Notice to Responding Party.**

David C. Reymann (8495)
Kade N. Olsen (17775)
Tammy M. Frisby (17992)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
(801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

*For defendants*: Adam Suttin, Phil Damiano,
Kyle Casella, David Fiorentino, Kyle
Murphy, Walker Edison Holding Co., LLC,
Prospect Hill Growth Fund II, L.P., Prospect
Hill Growth Fund II Co-Invest, L.P.,
Prospect Hill Growth Partners, L.P., JWC-
WE Holdco, LLC, and JWC-WE Holdings,
L.P.

Additional counsel listed in signature block

Brennan Moss (10267)
**PARKINSON BENSON POTTER LLP**
2750 Rasmussen Rd, Suite H-107
Park City, Utah 84098
(801) 401-1608
brennan@pbplaw.com

*For defendants:* Brad Bonham, MB &
BB Holdings, LLC; Matt Davis

## IN THE THIRD JUDICIAL DISTRICT COURT

## FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| BLUE OWL CAPITAL CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO; AND DOES 1-100,<br><br>    Defendants. | **DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>**(Hearing Requested)**<br><br>Consolidated Case No. 230902160<br><br>Judge Robert P. Faust<br><br>Discovery Tier 3 |

## <u>TABLE OF CONTENTS</u>

<div align="right"><u>PAGE</u></div>

PRELIMINARY STATEMENT AND GROUNDS ................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 5

LEGAL STANDARD .................................................................................................... 9

ARGUMENT ............................................................................................................. 10

    I.      The FAC Should Be Dismissed on *Forum Non Conveniens* Grounds. ............... 10

    II.     The Fraudulent Transfer Claims Should Be Dismissed ....................................... 13

          A.      Blue Owl Ratified the Dividend, Barring its Fraudulent Transfer Claims ................................................................................................ 14

          B.      Blue Owl Has Not Pleaded Any Injury that the UVTA can Redress ....... 17

          C.      No "Asset" Was Transferred, Precluding any Fraudulent Transfer Claim as a Matter of Law ..................................................................... 18

    III.    The Fraud Claim Should Be Dismissed ............................................................ 19

          A.      Blue Owl Ratified the Loan Agreement, Defeating any Claim of Fraud .................................................................................................... 19

          B.      Blue Owl's Fraud Claim is Barred by the Loan Agreement ................... 20

          C.      Blue Owl's Fraud Claim Is Not Pleaded with Particularity ..................... 22

          D.      This Claim Must Be Brought as a Breach of Contract Claim .................. 24

    IV.    The Ancillary Fraud Claims Likewise Fail ....................................................... 24

    V.     The Unjust Enrichment Claim Fails .................................................................. 26

CONCLUSION .......................................................................................................... 27

<div align="center">i</div>

By this motion (the "Motion"), defendants Brad Bonham, MB & BB Holdings, LLC, Matt Davis, Walker Edison Holding Company, LLC, Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, JWC-WE Holdings, L.P., Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Phil Damiano, Ken Murphy, Adam Suttin, Kyle Casella, and David Fiorentino (together, "Defendants") move this Court to dismiss the First Amended Complaint (the "FAC"[1]) filed by plaintiff Blue Owl Capital Corporation ("Plaintiff" or "Blue Owl").  Pursuant to Utah R. Civ. P. 7(h), Defendants request a hearing on this Motion.  In support of this Motion, Defendants respectfully state as follows:

## PRELIMINARY STATEMENT AND GROUNDS

Blue Owl's lawsuit is a copycat action of a case already pending in this Court.  But Blue Owl is the wrong plaintiff, the FAC alleges legally deficient claims against the wrong defendants, and it was filed in the wrong court.  The FAC does nothing to remedy the defects in Blue Owl's initial complaint, and this case should be dismissed at the pleading stage.  Because Blue Owl has already amended its pleading once in response to Defendants' First Motion, any further amendment would be futile and dismissal should be with prejudice.

Walker Edison Furniture Company LLC ("Walker Edison" or the "Company"), is a furniture business that manufactures ready-to-assemble furniture which it sells (primarily) through a "drop-ship" process in which furniture is shipped directly to consumers.  Walker Edison experienced significant growth for years, until the middle of 2021, when it fell victim to macroeconomic trends that hit the online furniture industry especially hard.

---

[1]    Citations to "¶___" are to paragraphs in the FAC.  Unless otherwise noted, all emphasis is added, internal citations are omitted, and quotations are cleaned up.

Blue Owl—a sophisticated investment firm and industry leader in the business of lending money to private companies—loaned Walker Edison $300 million, $210 million of which was earmarked for a dividend to Walker Edison's owners (the "Dividend"). Blue Owl acknowledged that it conducted an independent investigation of Walker Edison's financial health and agreed that the loan agreement governing the Dividend (the "Loan Agreement") superseded any oral or written representations from Defendants. Moreover, Blue Owl acknowledged, and approved, that the loan would be used to fund the Dividend—the express purpose of the loan under the Loan Agreement. Blue Owl also agreed to litigate any disputes related to the Loan Agreement only in New York courts.

Since the Dividend was paid in March 2021, Walker Edison underwent an out-of-court restructuring, and Blue Owl now indirectly owns the Company through its ownership of Walker Edison Intermediate, LLC. Defendants are former indirect owners of the Company.

On March 30, 2023, no doubt at Blue Owl's bidding, Walker Edison sued Defendants in a case pending before this Court, *Walker Edison Furniture Company, LLC v. Brad Bonham, et al.* (Civil No. 230902160), alleging unlawful dividend, breach of fiduciary duty, and other related claims. Defendants dispute the allegations in the Walker Edison Complaint, and discovery is underway. Thirteen months after Walker Edison initiated its lawsuit, and with no good explanation for the delay, Blue Owl—which has indirectly owned Walker Edison since before the first lawsuit was initiated—filed this copy-cat action asserting its own duplicative claims against Defendants, seeking an apparent double recovery. Blue Owl is represented by the same counsel as Walker Edison, and—rather than asserting claims for breach of the Loan Agreement against its contract counterparty, a company it now owns—Blue Owl asserts nearly identical claims against Defendants as those asserted by Walker Edison itself. While Walker Edison's Complaint is

2

factually baseless, Blue Owl's claims against ***these Defendants*** are incoherent as a matter of law. Blue Owl was party to a contract with Walker Edison. That contract expressly ratified the Dividend about which Blue Owl now complains. Blue Owl again ratified the Dividend and all aspects of the Loan Agreement when it later exercised its contractual remedies and took all of Walker Edison's equity from the Defendants. Blue Owl does not claim that Walker Edison is unable to pay whatever residual obligations it owes to Blue Owl. Blue Owl's attempt to conjure a theory of liability against Walker Edison's former equity owners wholly fails.

As an initial matter, the FAC should be dismissed on *forum non conveniens* grounds because this is not the proper forum in which to litigate Blue Owl's claims. Blue Owl expressly agreed to litigate any claims "arising out of or relating to any Loan Document" in New York. Absent some showing as to why the forum selection clause should not be enforced—and there is none—Blue Owl should not be able to sue in this Court.

Even beyond that threshold issue, Blue Owl's claims against these Defendants are improper, and the FAC does not state a single claim upon which relief may be granted.

*First*, Blue Owl's claims for actual and constructive fraudulent transfer cannot get past the pleading stage for several, independent reasons.

Blue Owl *twice* ratified the Dividend—the supposed fraudulent transfer it now seeks to avoid—first, by lending Walker Edison funds explicitly required to be used for purposes of paying the Dividend, and then by continuing to accept the benefits of the Loan Agreement ***after Blue Owl claims to have learned of the supposed fraud***. If Blue Owl believed it had been fraudulently induced to make the loan, it should have repudiated the Loan Agreement and brought a claim to rescind it. It did the opposite, and chose instead to exercise its remedies under the Loan Agreement (which is why Blue Owl now owns Walker Edison). Blue Owl now wants to have its cake and eat

it too—having accepted the benefits from the Loan Agreement, it now seeks to recover for what amounts to essentially a claim that that Loan Agreement was breached. As a matter of law, a lender cannot challenge the payment of a dividend it contractually ratified in making its loan.

Blue Owl's fraudulent transfer claims fail for the additional reason that Walker Edison is not alleged to be insolvent or under-capitalized today, and there is no allegation that Walker Edison cannot pay its debts to Blue Owl. Utah's fraudulent transfer law provides that transfers may be avoided only "to the extent necessary to satisfy the [plaintiff] creditor's claims." Utah Code § 25-6-303(1)(a). But Blue Owl does not plead that it currently has an unpaid claim, or that Blue Owl cannot now pay its debts as they come due in the future—a fatal flaw identified in Defendants' First Motion but not cured in the FAC.

A further defect in Blue Owl's fraudulent transfer claims is that the Dividend does not qualify as a transfer of assets that can be permissibly challenged under the plan text of Utah's fraudulent transfer statute because the cash used to fund the Dividend was encumbered at the time of the transaction.

*Second*, Blue Owl attempts to bring a claim for fraud against all Defendants for allegedly providing Blue Owl with materially false and misleading financial statements (Count IV). But Blue Owl expressly agreed that it "conducted its own independent investigation of the [Company's] financial condition" and that the Loan Agreement constitutes "the entire contract among the parties . . . and supersede[s] any and all previous agreements and understandings, oral or written, relating to the subject matter hereof." In light of these detailed and specific provisions and disclaimers, Blue Owl cannot plead that it relied on any purported misrepresentation from any individual Defendant, let alone all of them. Blue Owl also has not pleaded fraud with the requisite "particularity," and the FAC—like its predecessor—utterly fails to identify who said what to

whom that was fraudulent.  Even more troubling, Blue Owl's fraud claim is really a claim for breach of contract, which should be asserted against Walker Edison.

*Third*, given the deficiencies in Blue Owl's fraud claim, Blue Owl's claims for civil conspiracy (Count III) and aiding and abetting fraud (Count V) should also be dismissed, as they both require an adequately pleaded underlying claim of fraud.

*Finally*, Blue Owl's unjust enrichment claim (Count VI) should be dismissed because Blue Owl has not pleaded that there are no adequate remedies at law.  The use of cash to fund the Dividend was expressly governed by the Loan Agreement and therefore cannot form the basis of a quasi-contractual theory.  Further, Blue Owl has already exercised its remedies, and can pursue any other ordinary breach of contract claims against Walker Edison it may have.

## **FACTUAL BACKGROUND**

Pursuant to Rules 12(b) and 10(c) of the Utah Rules of Civil Procedure, the following factual background is derived from the FAC and documents central to the same.  The facts alleged therein are accepted as true only for purposes of this Motion.

Walker Edison is a Utah corporation founded in 2006 by Brad Bonham and Matthew Davis. ¶ 35.  In September 2018, the PHGP Defendants acquired an approximately 55% ownership in Walker Edison, and the Founder Defendants retained a 45% ownership interest in the Company. ¶ 40.[2]

Walker Edison is in the business of supplying "affordable, ready to assemble home furnishing products through e-commerce channels to consumers worldwide." ¶ 35.  Walker Edison "benefited from the significant and immediate growth in the online furniture industry" in the years

---

[2]    In the FAC, Brad Bonham, MB & BB Holdings, LLC, and Matt Davis are collectively referred to as the "Founder Defendants," with the remaining defendants referred to as the "PHGP Defendants."  ¶¶ 16, 17.  Bonham, Davis, Damiano, Murphy, Suttin, Casella, and Fiorentino are also collectively referred to as the "Board Defendants."  ¶ 42.

leading up to and during the beginning of the COVID-19 pandemic. ¶ 44. From 2017 to 2020, its EBITDA increased by six times. ¶ 44.

In late 2020, seeking to capitalize on the Company's historically strong financial position, Defendants began considering ways to return capital to its investors. ¶ 45. On March 10, 2021, Defendants began engaging in discussions with Blue Owl regarding a transaction, which ultimately culminated in Defendants and Blue Owl settling on a dividend recapitalization transaction (the "Dividend Recapitalization"), whereby it obtained a loan, secured by interests in the Company's assets, and used the loan proceeds to, among other things, issue the Dividend. ¶¶ 45–46, 60.

To facilitate Blue Owl's extensive due diligence of the proposed transaction, Defendants provided Blue Owl with actual and projected financials (the "Financial Statements"), and engaged in multiple due diligence discussions. ¶ 61. Blue Owl claims that Defendants provided "fraudulent projections" that "contemplated that Walker Edison would continue its earlier strong performance despite known and knowable facts to the contrary." ¶ 62. Blue Owl does not, however, plead with particularity the amount of any purported over- or under-statement in the Financial Statements (information that, if true, would be available to Blue Owl as Walker Edison's current owner, yet remains conspicuously absent from the FAC).

Following a three-week period of due diligence, on March 31, 2021, Blue Owl entered into the Loan Agreement with Walker Edison (Borrower), Walker Edison Intermediate, LLC (Holdings/Guarantor), and EW Furniture, LLC (Guarantor). ¶ 99; *see also* Ex. A. None of these entities—who, with Blue Owl, are the only parties to the Loan Agreement—is named as a defendant in the instant action. Of course, Defendants—none of whom personally borrowed any money from Blue Owl—were not signatories to the Loan Agreement.

In the Loan Agreement, Walker Edison represented that the Financial Statements were prepared in accordance with GAAP, Ex. A § 3.04(a), that "[s]ince the Closing Date, there has been no event, change, circumstance or occurrence that . . . has had or would reasonably be expected to result in a Material Adverse Effect," Ex. A § 3.04(b), and that no projections "contained or contains any material misstatement of fact or omitted or omits to state any material fact," Ex. A § 3.13.

Also in the Loan Agreement, Blue Owl acknowledged that it "conducted its own independent investigation of the financial condition and affairs of the Credit Parties and their Subsidiaries and made its own credit analysis and decision to enter into this [Loan] Agreement." Ex. A § 9.07. Blue Owl also agreed that the Loan Agreement and related loan documents "constitute the entire contract among the parties relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof." Ex. A § 10.06.

Further, the Loan Agreement provides that each party to it "irrevocably and unconditionally submits" to any state or federal court in Manhattan, New York in "any action or proceeding arising out of or relating to any Loan Document." Ex. A § 10.09(b).

Pursuant to the Loan Agreement, the Company received approximately $295 million in net cash, roughly $83 million of which was used to repay existing debt, and roughly $210 million of which was used to pay the Dividend. ¶¶ 103. The use of the proceeds was no secret. In fact, as is evident from the very first page of the Loan Agreement, Walker Edison—with Blue Owl's express consent and agreement—intended to use the proceeds to "make a cash Dividend . . . in an amount up to $210,000,000." Ex. A at 1. And use of the loan proceeds for this purpose was an express requirement of the Loan Agreement. Ex. A § 3.11

Blue Owl now alleges that Walker Edison was rendered immediately insolvent as a result of the Dividend, which ultimately led to the consensual restructuring that allowed Blue Owl to take the Company's equity. ¶¶ 115, 122. Nevertheless, a second "New York-based private equity growth firm" invested an additional $250 million in equity into Walker Edison Holding Company, LLC—the Company's indirect owner—two months *after* the Dividend. ¶ 120. Blue Owl alleges, without any supporting facts, that "Defendants presented unreasonable and inflated projections to the private equity growth firm in order to induce it to enter into the equity transaction." *Id.* The private equity firm in question is not a plaintiff in this action and has never asserted any claims against Defendants or Walker Edison.

Though Blue Owl alleges that "anticipated problems were borne out as the months passed" following the Dividend Recapitalization, including that "the Company's ability to borrow cash under its ABL Facility was limited," the Company was able to borrow the full amount available under the ABL Facility by year end 2021. ¶¶ 125–26. In September and December 2021, Defendants themselves made a further equity investment of $60 million into the Company. ¶ 127.

Walker Edison underwent an out-of-court restructuring over a year later, and Blue Owl and other lenders took indirect ownership of the Company (through taking ownership of the Company's 100% owner and holding company, Walker Edison Intermediate, LLC) pursuant to a Restructuring Support Agreement dated January 27, 2023 (the "RSA"). ¶ 131. The FAC alleges that Walker Edison entered into the RSA to "satisfy certain of the Company's ongoing obligations," among other reasons. ¶ 132. In complete contradiction to other allegations sprinkled throughout the FAC (*e.g.*, ¶ 129 ("less than *four months*" after the Dividend closed the Company purportedly informed Blue Owl it may breach financial covenants in the Loan Agreement)), and without any supporting details, Blue Owl states that Defendants' supposed wrongdoing only

"became apparent" once Blue Owl took over the Company and "had access to its books and records and employees." ¶ 135.

## PROCEDURAL HISTORY

On March 30, 2023, Walker Edison—by that time controlled by Blue Owl and its affiliates—filed an action against Defendants in Salt Lake County, Utah, and filed an amended complaint on May 8, 2023 (the "Walker Edison Complaint"). Walker Edison asserted claims for wrongful distribution, constructive fraudulent transfer, actual fraudulent transfer, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, aiding and abetting a breach of fiduciary duty, civil conspiracy, and unjust enrichment. The Walker Edison Complaint alleges substantially identical facts as alleged in the FAC and seeks similar relief. Blue Owl filed this action on April 24, 2024. But rather than asserting claims against Walker Edison (which it now indirectly owns) for breach of contract, Blue Owl asserted a host of improper claims against the wrong parties. Those claims included actual and constructive fraudulent transfer, breach of fiduciary duty and aiding and abetting such breach, civil conspiracy, fraud, aiding and abetting fraud, and unjust enrichment.

On June 24, 2024, Defendants moved to dismiss the original complaint in its entirety (the "First Motion"). Rather than oppose the First Motion, Blue Owl filed the FAC on July 12, 2024, dropping the breach of fiduciary duty claims and making other minor cosmetic changes. *See* Ex. F (redline reflecting changes between the original complaint and the FAC).

## LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), courts must "accept the factual allegations in the complaint as true and interpret those facts, and all reasonable inferences drawn therefrom, in a light most favorable to the plaintiff as the nonmoving party." *Val Peterson Inc. v. Tennant Metals Pty. Ltd.*, 2023 UT App 115, ¶ 20, 537 P.3d 660. The sufficiency of the complaint

"must be determined by the facts pleaded rather than the conclusions stated." *Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶ 60, 70 P.3d 17. Therefore, "mere conclusory allegations in a pleading, unsupported by a recitation of relevant surrounding facts, are insufficient to preclude dismissal." *Howard v. PNC Mortg.*, 2012 UT App 19, ¶ 2, 269 P.3d 995. Allegations of fraud must be pleaded with particularity. *See* Utah R. Civ. P. 9(c).

Documents attached to the FAC or referred to in the FAC and central to Plaintiff's claims "may properly be considered by the district court in deciding a motion to dismiss, even when they contain statements contrary to those averred in the complaint." *Kocherhans v. Orem City*, 2011 UT App 399, ¶ 3 n.3, 266 P.3d 190.

## ARGUMENT

### I.    The FAC Should Be Dismissed on *Forum Non Conveniens* Grounds.

In assessing a motion to dismiss on *forum non conveniens* grounds, the Court must "determine whether the plaintiff's choice of forum is entitled to deference" and then "whether an adequate alternative forum exists." *Diversified Striping Sys., Inc. v. Kraus*, 2014 UT App 287, ¶ 8, 341 P.3d 932. Where there is an adequate alternate forum, the Court must analyze the "*Summa* factors," which include: (1) "the location of the primary parties"; (2) "the place where the fact situation creating the controversy arose"; (3) "the ease of access to proof, including the availability and costs of obtaining witnesses"; (4) "the enforceability of any judgment that may be obtained"; (5) "the burdens that may be imposed upon the court in question in litigating matters which may not be of local concern"; (6) "the practical burden plaintiffs will face in filing a new action after dismissal for *forum non conveniens*"; and (7) "any other relevant considerations." *Id.* (quoting *Summa Corp. v. Lancer Indus. Inc.*, 559 P.2d 544, 546 (Utah 1977)). All of these factors weigh in favor of dismissal here:

*First*, Blue Owl's decision to file this action in Utah should not be entitled to deference because Blue Owl "irrevocably and unconditionally" agreed to litigate "any action or proceeding arising out of or relating to any Loan Document" in the state or federal courts in New York. Ex. A § 10.09(b). "[T]he primary focus of the step-one analysis is whether the plaintiff's choice was motivated by legitimate reasons" (such as "when the plaintiff has brought suit in its home jurisdiction") or if the choice of forum was intended to "harass[] or annoy[] the defendant . . . or for tactical advantage." *Edwards v. Carey*, 2019 UT App 182, ¶ 23, 454 P.3d 73. As set forth above, the claims at issue here are poorly disguised breach of contract claims based on covenants in the Loan Agreement, which contained a forum selection clause. Courts in Utah have made clear that where there is an enforceable contract with a forum selection clause, the "forum selection clause should be weighed in the district court's *forum non conveniens* analysis," and Blue Owl bears the burden of "showing that there is an acceptable reason not to enforce the clause." *Energy Claims Ltd. v. Catalyst Inv. Grp.*, 2014 UT 13, ¶¶ 44, 54, 325 P.3d 70.

Here, Blue Owl is a Maryland corporation headquartered in New York, and the filing of the FAC (and its predecessor) in Utah in contravention of the Loan Agreement's forum selection clause was clearly motivated by a desire to gain a "tactical advantage." *Edwards*, 2019 UT App 182, ¶ 23. Blue Owl does not claim that the Loan Agreement is unenforceable. Instead, Blue Owl argues that Defendants "cannot avail themselves of or otherwise invoke any of the Loan Agreement's provisions" because Defendants "arranged to avoid having themselves serve as signatories or parties to the Loan Agreement." ¶ 98. Blue Owl also points to Section 10.04(a) of the Loan Agreement, which provides that nothing in the agreement "shall be construed to confer upon any person . . . any legal or equitable right, remedy or claim[.]" ¶ 98.

The provision of the Loan Agreement on which Blue Owl relies is not a "no third-party beneficiary" clause. Article IX—entitled "The Administrative Agent and the Collateral Agent"—specifies that "the provisions of *this Article* are solely for the benefit of the Administrative Agent and the Lenders, and neither the Borrower nor any other Credit Party *shall have rights as a third party beneficiary of any such provisions*." Ex. A § 9.01(a). If Blue Owl were correct that a sentence buried within the Successors and Assigns provision operated as a broad "no third-party beneficiary" provision, the more limited "no third-party beneficiary" provision in Section 9.01(a) would be entirely superfluous and violate well-established canons of construction. *See By Design LLC v. Samsung Fire & Marine Ins. Co.*, 173 A.D.3d 590, 592 (N.Y. App. Div. 2019) ("[N]o contractual clause is to be construed as being superfluous.").

In any event, under New York law, "a non-signatory that is closely related to one of the signatories [of a contract] can enforce a forum selection clause . . . when the enforcement of the clause is 'foreseeable by virtue of the relationship between [the non-signatory and the signatory].'" *Pegasus Strategic Partners, LLC v. Stroden*, 2016 WL 3386980, at *3 (N.Y. Sup. Ct. June 20, 2016). The case law is clear: "third-party beneficiary status is not required" for a "closely related" non-signatory to invoke a forum selection clause as against a signatory to an agreement. *Freeford Ltd. v. Pendleton*, 53 A.D.3d 32, 40 (N.Y. 2008). And considering the FAC alleges that Defendants caused Walker Edison to enter the Loan Agreement, ¶ 98, there can be no serious dispute that they were all "closely related" to the transaction. As such, absent an "acceptable reason not to enforce the clause," *Energy Claims*, 2014 UT 13, ¶ 54, Blue Owl's choice of forum should not be entitled to deference.

*Second*, the state and federal courts in New York provide an "adequate alternative forum" for these claims. *Diversified*, 2014 UT App 287, ¶ 8.

*Third*, none of the *Summa* factors caution against dismissal here: (1) even though the FAC now highlights that the Founder Defendants and the non-defendant Company are physically located in Utah, the primary parties relevant to the claims here—Blue Owl and the PHGP Defendants—are based on the East Coast; (2) the FAC centers on communications among individuals in New York or Massachusetts, not the Founder Defendants located in Utah; (3) a majority of the relevant witnesses known to date are located on the East Coast, making New York a convenient central forum (and discovery will otherwise involve electronically stored information, which is equally accessible from either forum); (4) there are no known impediments to Blue Owl enforcing a judgment in New York; (5) the Loan Agreement is to be construed under New York law, and New York's interest in enforcing a duly agreed upon forum selection clause outweighs any burden that may result from considering ancillary issues under Utah law; (6) without waiving any other defenses, all Defendants consent to suit in New York, so Blue Owl will not face any significant burden in filing an action in New York; and (7) the fact that the claims asserted in the FAC are disguised breach of contract claims weigh in favor of holding Blue Owl to litigate in the contractually agreed-upon forum.

For all of these reasons, the FAC should be dismissed without prejudice, and Blue Owl may refile against the proper defendants in the appropriate forum: New York.

<div align="center">*    *    *</div>

If the Court declines to dismiss on *forum non conveniens* grounds, the FAC should be dismissed in any event because Blue Owl has failed to plead a claim upon which relief can be granted, as set forth in detail below.

## II.    The Fraudulent Transfer Claims Should Be Dismissed

Blue Owl alleges that the Dividend was a fraudulent transfer that should be avoided. Count I alleges that Walker Edison did not receive reasonably equivalent value in exchange for issuing

<div align="center">13</div>

the Dividend, and that as a result of the Dividend, Walker Edison was insolvent, "unable to pay its debts as they came due," and "had unreasonably small assets"—*i.e.*, a "constructively" fraudulent transfer.  ¶¶ 137–49.  Count II alleges that the Dividend was designed to "hinder, delay, and/or defraud creditors of Walker Edison"—*i.e.*, an "actually" fraudulent transfer.  ¶¶ 150–56.

Rule 9(c)'s particularity requirement—which applies to all allegations of "fraud or mistake"—applies to actual fraudulent transfer claims.  Utah R. Civ. P. 9(c); *see also Hanks v. Anderson*, No. 219CV00999DBBDAO, 2021 WL 6428041, at *8 (D. Utah Dec. 16, 2021), *adopted*, No. 219CV00999DBBDAO, 2022 WL 111160 (D. Utah Jan. 12, 2022) (noting that "courts generally apply Rule 9(b)'s requirements to intentional fraudulent transfer claims").[3] Nonetheless, Blue Owl fails to state a viable fraudulent transfer claim under any pleading standard.

Blue Owl ratified the Dividend by its contractual consent—which was specifically required by the Loan Agreement—and cannot now seek to avoid it.  Moreover, Blue Owl failed to plead that it currently has any unpaid claim.  This is not surprising as Walker Edison, which has never filed for bankruptcy, is currently operating as a going concern and Blue Owl has not alleged that Walker Edison cannot pay its debts to Blue Owl.  Finally, Blue Owl has not properly alleged any fraudulent transfer because the loan proceeds were fully encumbered while in Walker Edison's possession and therefore expressly fall outside the purview of Utah's fraudulent transfer statute.

### A.    Blue Owl Ratified the Dividend, Barring its Fraudulent Transfer Claims

It is black letter law that a party to a transaction is estopped from challenging its validity when it acquiesces or otherwise affirms the act in question.  *See, e.g., Tanner v. Provo Reservoir Co.*, 289 P. 151, 154 (Utah 1930) ("It has been repeatedly held that a person by acceptance of

---

[3]    Utah Rule of Civil Procedure 9(c) states the heightened pleading requirements for alleging fraud and is substantively identical in all relevant respects to Federal Rule of Civil Procedure 9(b).

benefits may be estopped from questioning the existence, validity and effect of a contract."); *Fidelity & Deposit Co. of Maryland v. Goran, LLC*, No. 2:17-cv-00604-TC-PMW, 2020 WL 7401628, at *8 (D. Utah Dec. 17, 2020) (a party "cannot go along with a contract for the purpose of enjoying benefits" and then seek to avoid the contract when it "discovers the benefits . . . will not be great enough to compensate him for the loss he will sustain by reason of the fraud").

Here, the Loan Agreement ***explicitly provided*** that Walker Edison would "use the proceeds . . . to finance (i) the Closing Date Refinancing, (ii) **the Closing Date Dividends** and (iii) the payment of related fees, costs and expenses related to the foregoing transactions and the other Transactions." *See* Ex. A § 3.11; *see also* ¶ 6 (acknowledging Defendants disclosed the Dividend issuance well before execution of Loan Agreement). Blue Owl cannot now complain about a transfer that was the ***very purpose*** of its loan to the Company. *See In re Lyondell Chem. Co.*, 503 B.R. 348, 385 (Bankr. S.D.N.Y. 2014), *abrogated on other grounds by In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98 (2d Cir. 2016) (to establish ratification, "it is more than sufficient here for the LBO lenders to have known—as the documents themselves establish—that they were lending for the purposes of an LBO, and that the proceeds of their loans were going to stockholders").

Blue Owl's allegation that Defendants fraudulently induced it to enter the Loan Agreement does not change this outcome. As described in Part III, *infra*, the fraud allegations are woefully deficient and do not satisfy Blue Owl's heightened pleading burden under Rule 9(b). And even if Defendants had made materially false or misleading statements in connection with the Loan Agreement, Blue Owl explicitly acknowledged that it (and every other lender) conducted its own investigation into the Company's financial condition and agreed that the Loan Agreement constituted the parties' entire agreement. *See* Ex. A §§ 9.07, 10.06.

Moreover, Blue Owl claims to have known of Walker Edison's financial troubles "less than four months after" the issuance of the Dividend. ¶ 129. Yet Blue Owl continued to reap the benefits of the Loan Agreement, including by exercising its rights and accepting the benefits of its status as a secured creditor by taking the equity, further ratifying the contract in January 2023 when it entered into the RSA. *See* ¶¶ 23, 129, 131. In response to this argument in the First Motion, Blue Owl amended the FAC to allege that, until the RSA transaction was consummated, "Defendants were able to conceal the full extent of their fraud." ¶ 135. This belated insertion, which lacks any particularized details concerning *what* Blue Owl supposedly learned after the RSA transaction, does nothing to save Blue Owl's fraudulent transfer claim, in light of conflicting and more detailed allegations that it learned of Walker Edison's true financial difficulties just months after the Dividend was issued. ¶ 129; *see Farrell v. Mennen Co.*, 120 Utah 377, 383, 235 P.2d 128, 131 (1951) ("[G]eneral allegations in a complaint are controlled by specific allegations."). Therefore, the delay in bringing these claims constitutes "an implied or de facto ratification." *Lowe v. April Indus., Inc.*, 531 P.2d 1297, 1299 (Utah 1974); *see also Frailey v. McGarry*, 211 P.2d 840, 844–45 (Utah 1949) ("Moreover, a defrauded party, after learning the truth will not be permitted to go on deriving benefits from the transaction and later elect to rescind.").

Permitting Blue Owl to proceed with its fraudulent transfer claims, after Blue Owl ratified the Dividend—both before *and* after its issuance—would be contrary to "over a hundred years of Utah case law" that recognizes the equitable principle of ratification. *Swan Creek Vill. Homeowners v. Warne*, 2006 UT 22, ¶¶ 33–34, 134 P.3d 1122. Indeed, given the myriad references to the Loan Agreement throughout the FAC, "the existence of the affirmative

defense . . . appear[s] within the complaint itself," and ratification on this basis is a proper ground for dismissal. *HKS Architects Inc. v. MSM Enters. LTD*, 2021 UT App 70, ¶ 20, 496 P.3d 228.

### B.    Blue Owl Has Not Pleaded Any Injury that the UVTA can Redress

Utah's fraudulent transfer laws "afford remedies for 'creditors' against 'debtors' who have engaged in fraudulent transfers of property," allowing creditors to "seek to undo or void a debtor's transfer, for example, that fraudulently 'plac[es] assets beyond [the] creditors' reach." *Eskelsen v. Theta Inv. Co.*, 2019 UT App 1, ¶ 24, 437 P.3d 1274, 1281; *see also Asphalt Trader Ltd. v. Beall*, No. 1:17-CV-15-HCN-DBP, 2022 WL 3138215, at *16 (D. Utah Aug. 5, 2022), *aff'd*, No. 22-4085, 2024 WL 698313 (10th Cir. Feb. 21, 2024) (Utah's fraudulent transfer laws "provide[] a remedy for creditors who are ***actually harmed*** when a debtor transfers property; it does not provide a remedy in cases of only theoretical harm") (quoting *Rupp v. Moffo*, 2015 UT 71, ¶ 17, 358 P.3d 1060). Moreover, a creditor may only seek to avoid a transfer "to the extent necessary to satisfy the creditor's claim[s]." Utah Code § 25-6-303(1)(a).

Blue Owl does not claim that Walker Edison is ***presently*** unable to satisfy any current obligations to Blue Owl or is currently insolvent. As Walker Edison is currently able to pay its debts to Blue Owl, there is no present injury for this Court to address and the statute's "remedial" purpose will not be served by this Court awarding relief. *See Timothy*, 2019 UT 69, ¶¶ 18, 26 (where debt had been satisfied, plaintiffs could "no longer obtain a remedy under the [UVTA]."). In fact, Blue Owl would likely receive a windfall if it is allowed recovery for its fraudulent transfer claim—the Court should not sanction its attempt to seek recovery over and above what it has ***already received*** through exercising its contractual remedies and taking over the Company under the RSA. *See Asphalt*, 2022 WL 3138215, at *16 (denying fraudulent transfer claim where there is no clear injury to plaintiff and where recovery would result in a "windfall" for plaintiff).

### C.    No "Asset" Was Transferred, Precluding any Fraudulent Transfer Claim as a Matter of Law

Blue Owl's fraudulent transfer claims also fail because the Dividend was not an "asset" transfer under Utah law.  Utah's fraudulent transfer law requires a "transfer," which is defined to include any mode of disposing of an "asset."  Utah Code §§ 25-6-202; 25-6-203; 25-6-102(16). An "asset" is defined as "property of a debtor" but "***not . . . property to the extent it is encumbered by a valid lien***."  Utah Code § 25-6-102(2); *see also Rupp*, 2015 UT 71, ¶ 17 (holding "that the transfer of fully-encumbered property does not constitute a fraudulent transfer").  "Valid lien" is defined as "a lien that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings."  Utah Code § 25-6-102(17).  Utah's Uniform Commercial Code, in turn, provides that a lien is effective against a judicial lienholder if (i) the "debtor has authenticated a security agreement that provides a description of the collateral," and (ii) a "financing statement covering the collateral is filed."  Utah Code §§ 70A-9a-317(1); 70A-9a-203(2)(c)(1).

Walker Edison executed a security agreement on March 31, 2021, which includes a description of the collateral.  Ex. B § 2.1 (a), (j) (granting a security interest in "all Accounts" and "all cash and Deposit Accounts.").  And a financing statement covering the loan proceeds was also filed on March 31, 2021.  Ex. C.  Accordingly, the loan proceeds were subject to a "valid lien" at the time they were transferred.[4]  *See Thermo Credit, LLC v. DCA Servs., Inc.*, 755 F. App'x 450,

---

[4]    In the FAC, Blue Owl alleges that "[t]he liens under the Loan Agreement on the Company's cash were not perfected prior to the Dividend (which was paid on the same day), and the funds used for the Dividend were not fully encumbered by valid liens when transferred from the Company's accounts."  ¶ 103.  This argument that the liens were not "perfected" is  a red herring—the statute does not limit the definition of "valid liens" to those that have been perfected.  Separately, at the time of the Dividend, Wells Fargo had a perfected security interest in the Company's "cash and Deposit Accounts," such that even if Blue Owl were correct that the transfer could not be avoided absent perfection (it is not), the loan proceeds were subject to a perfected lien. Ex. E § 2.1(j) (granting a security interest in all "cash and Deposit Accounts" in favor of Wells Fargo); Ex. A, Schedule 3.23 (listing the Company's Deposit Accounts, all held with Wells Fargo); Utah Code § 70A-9a-314(1) (providing that a security

456 (6th Cir. 2018) ("The proper time to evaluate whether the property was encumbered is prior to the transfer, when it was in [the debtor's] possession and control."); *Am. Fed. Bank v. W. Cent. Ag Servs.*, 530 F. Supp. 3d 780, 788 (D. Minn. 2021) (the "definition of 'asset' requires determining whether the property at issue is encumbered before transfer, when it is property of the debtor").  Because the loan proceeds were fully encumbered until the Dividend was issued, there was no "transfer" of an "asset" for purposes of Utah's fraudulent transfer laws.

## III.    The Fraud Claim Should Be Dismissed

Blue Owl asserts a claim of fraud against "all Defendants" based upon the preparation and transmission of the Financial Statements, which allegedly contained material misstatements and omissions.  ¶¶ 163–74.  This claim should be dismissed for several reasons.

### A.    Blue Owl Ratified the Loan Agreement, Defeating any Claim of Fraud

Blue Owl ratified the Loan Agreement by accepting its benefits for over a year after the alleged misrepresentations had been discovered.  Utah courts consistently hold that a party "cannot go along with a contract for the purpose of enjoying benefits" and then seek to avoid the contract when it "discovers the benefits . . . will not be great enough to compensate him for the loss he will sustain by reason of the fraud."  *Goran*, 2020 WL 7401628, at *8.

Blue Owl does not claim that any Defendant made any misrepresentations after the closing of the Loan Agreement.  To the contrary, by its own admission, Blue Owl was quickly disabused of its claimed misapprehensions of the Company's financial status.  ¶¶ 91, 129.  Blue Owl does not allege that Walker Edison failed to make payments due to Blue Owl under the Loan Agreement, *see, e.g.*, Ex. A § 2.09 (requiring quarterly payments to Blue Owl of 0.25% of the principal), nor does Blue Owl allege any effort to rescind the Loan Agreement.  And, of course,

---

interest in a deposit account may be perfected through control); *see also* Ex. D (financing statement evidencing Wells Fargo's security interest).

almost two years after executing the Loan Agreement, Blue Owl exercised its remedies and took full indirect ownership of Walker Edison under the RSA, further ratifying the Loan Agreement. *See* ¶¶ 131–132.

   As described above, in response to arguments raised in the First Motion, Blue Owl now claims that it did not learn "the full extent of the[] fraud" until Blue Owl took control of the Company.  ¶ 135.  Blue Owl cannot, however, unring the bell.  Blue Owl *still* alleges that "less than *four months*" after the Dividend Recapitalization it began learning about the Company's supposed insolvency, ¶ 129, and Blue Owl does not specify a single piece of additional information that it supposedly only learned once it owned the Company.  As such, once Blue Owl knew of the purported misrepresentations, it was required, "with all reasonable diligence, to disaffirm the contract[.]" *Thurston v. Block United LLC*, 2021 UT App 80, ¶ 17, 469 P.3d 268.[5]  Its failure to do so "gives rise to an implied or de facto ratification."  *See Lowe*, 531 P.2d at 1299.

### B.    Blue Owl's Fraud Claim is Barred by the Loan Agreement

   To plead fraud under Utah law, Blue Owl must allege "(1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage." *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 53 n.38, 201 P.3d 966.  Although the FAC summarily claims Blue Owl was "legally

---

[5]   *See also Hancock v. Luke*, 173 P. 137, 149 (1918) ("Ordinarily the taking of benefits under a contract, and silence and inaction on the part of the defrauded party for a period of six or seven months after he has knowledge of the fraud, is deemed a waiver of the fraud and a ratification and affirmance of the contract.").  Here, Blue Owl quietly accepted the benefits of the Loan Agreement for far longer than "six or seven months" after it claims to have learned of the supposed fraud.

entitled to, and did, rely on" the alleged misrepresentations, this claim is belied by Blue Owl's acknowledgement in the Loan Agreement that it "conducted its own independent investigation of the financial condition and affairs" of the Company. Ex. A § 9.07. In a detailed and specific integration clause, Blue Owl also agreed that "[t]his Agreement and the other Loan Documents . . . constitute the entire contract among the parties relating to the subject matter hereof and ***supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof***." Ex. A § 10.06.[6]

"While general merger clauses are ineffective to exclude parol evidence of fraud in the inducement, a specific disclaimer destroys allegations that the agreements were executed in reliance upon contrary oral misrepresentations." *Cohan v. Sicular*, 214 A.D.2d 637 (N.Y. App. Div. 1995). Even a merger clause that is "general in nature" can "put the [party] on notice as to its intended effect." *Id.* For example, in *Daly v. Kochanowicz*, the court dismissed the plaintiff's fraud claim because the contract specified that the buyer was entering the contract based on his own inspection and was not relying on any "information, data, statements or representations, written or oral" made by the seller. 67 A.D.3d 78, 95 (N.Y. App. Div. 2009). Where, as here, a plaintiff "stipulated in the contract that it was not relying upon any representations as to the very matter as to which it now claims it was defrauded, such specific disclaimer destroys the allegations in the plaintiff's complaint that the agreement was executed in reliance upon the defendant's . . . representations." *Mahn Real Est. Corp. v. Shapolsky*, 178 A.D.2d 383, 385–86 (N.Y. App. Div. 1st Dept. 1991); *see also HSH Nordbank AG v. UBS AG*, 95 A.D.3d 185, 199 (N.Y. App. Div. 1st Dept. 2012) (no fraud claim where plaintiff "expressly disclaimed any reliance upon

---

[6]    Blue Owl does not address these specific provisions in the Loan Agreement, simply adding to the FAC that the Loan Agreement "contained no provision disclaiming reliance."  ¶ 95.

representations by [the defendant]" and represented that "it was relying only on its own judgment and on the views of any advisors of its own choosing whom it had seen fit to consult.").

Blue Owl should be precluded from claiming that it was defrauded after expressly acknowledging in the Loan Agreement that it conducted its own investigation of Walker Edison's financial condition and that the Loan Agreement superseded any oral or written representations. To credit Blue Owl's assertion that Defendants' alleged misrepresentations induced its assent "would in effect condone [Blue Owl's] own fraud in deliberately misrepresenting [its] true intention when it disclaimed reliance on any such representations at the time of contracting." *HSH Nordbank AG*, 95 A.D.3d at 201.

### C.     Blue Owl's Fraud Claim Is Not Pleaded with Particularity

To allege fraud under Utah law, "a party must state with particularity the circumstances constituting fraud[.]" Utah R. Civ. P. 9(c). "To satisfy this particularity requirement, a plaintiff must set forth the relevant surrounding facts . . . with sufficient particularity to show what facts are claimed to constitute such charges." *11500 Space Ctr. LLC v. Private Cap. Grp. Inc.*, 2022 UT App 92, ¶ 57, 516 P.3d 750. "The relevant surrounding facts must typically include the who, what, when, where, and how." *Id.* Critically, "one requirement for pleading fraud with particularity is to identify the offender." *Coroles v. Sabey*, 2003 UT App 339, ¶ 28, 79 P.3d 974; *see also 11500 Space Ctr.*, 2022 UT App 92, ¶ 59 (dismissing fraud claims where plaintiff "did not plead with particularity who said what to whom."). Even after amending, Blue Owl has not come close to satisfying this demanding burden.

Although Blue Owl alludes to a handful of instances where specific Defendants discussed the increase in shipping costs and supply chain disruptions, *see* ¶¶ 52, 54–55, as well as a handful of anodyne conversations between Blue Owl and Defendants and the transmission of the Financial Statements to Plaintiff, ¶¶ 60–61, the FAC does not connect any particular Defendant to any

specific fraudulent representations made to any particular person at Blue Owl.  Blue Owl's ***only*** attempt to do so involves Casella, whom Blue Owl seems to suggest was at all times working at the direction of and with full knowledge of all other Defendants.  For example, Blue Owl claims that Casella "sent a financial model" that had been "prepared and approved" by the PHGP Defendants and the Founder Defendants, and that Casella "participated in a sponsor diligence call with Blue Owl" during which he "falsely represented" certain aspects of the Financial Statements, and "Defendants were aware of, and authorized and aided, Defendant Casella's false statements." ¶¶ 61, 63.  In hopes of avoiding the strictures of Rule 9(b), the FAC also introduces a concept of vicarious liability, through which Blue Owl claims that "each of the Board Defendants"—which includes Casella—"was an agent of the remaining Defendants" and their "conduct and knowledge . . . are imputed to the remaining Defendant entities."

Blue Owl apparently cannot identify who at Blue Owl was on the receiving end of a single communication from or with Casella; Blue Owl makes no attempt to allege what Casella knew at the time that he supposedly conveyed the false Financial Statements; and Blue Owl is unable to allege who among the large group of "Defendants" was aware of or directed the supposed fraud. What is clear from the FAC is that the ***only*** thing Blue Owl knows is that Casella was the messenger through which Walker Edison's Financial Statements were conveyed to some unidentified recipient at Blue Owl.  Everything else is pure conjecture.  Even if viewed collectively, the allegations in the FAC do not give rise to particularized allegations of fraud, and they certainly do not "supply . . . information regarding [each defendant's] personal participation in fraud." *Fid. Nat'l Title Ins. v. Worthington*, 2015 UT App 19, ¶ 12, 344 P.3d 156 (quoting *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 21, 70 P.3d 35).

### D. This Claim Must Be Brought as a Breach of Contract Claim

Although Blue Owl attempts to style this claim as one sounding in fraud, "[i]n actuality[,] it is a cause of action to recover damages for breach of contract, inasmuch as the alleged falsity was a provision of the contract[.]" *Ka Foon Lo v. Curis*, 29 A.D.3d 525, 526 (N.Y. App. Div. 2006). As is clear under New York law—which governs the Loan Agreement at issue here— "[m]erely alleging scienter in a cause of action to recover damages for breach of contract, unless the representations alleged to be false are collateral or extraneous to the terms of the agreement, does not convert a breach of contract cause of action into one sounding in fraud." *Id.*; *see also W.B. David & Co., Inc. v. DWA Commc'ns, Inc.*, No. 02 Civ. 8479(BSJ), 2004 WL 369147, at *3 (S.D.N.Y. Feb. 26, 2004) (New York law does not "recognize claims that are essentially contract claims masquerading as claims of fraud").[7] In the Loan Agreement, Walker Edison represented that the Financial Statements "present fairly in all material respects the financial condition" of the Company, Ex. A § 3.04(a), and the entire theory of fraud relates to a purported breach of this covenant. To the extent Blue Owl has a viable breach of contract claim, the proper defendant is Walker Edison, as party to the Loan Agreement.

## IV. The Ancillary Fraud Claims Likewise Fail

Plaintiff asserts two additional claims, the success of which depends upon the viability of Plaintiff's fraud allegations. Both claims should be dismissed.

---

[7] Utah courts similarly recognize that "when a party is merely suing to recover the benefit of its contractual bargain, there is no inherent unfairness in limiting that party to a breach-of-contract claim." *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 21, 435 P.3d 193; *see also 100 Mt. Holly Bypass v. Axos Bank*, No. 2:20-CV-00856, 2024 WL 1722557, at *10–*11 (D. Utah Apr. 22, 2024) (holding that the economic loss doctrine barred asserted fraud claims where the allegedly fraudulent terms were "explicitly included in the terms of the written financing documents that [p]laintiffs signed and returned," and "[t]he claims all relate[d] to the terms and performance of the finance agreements").

**Civil Conspiracy.** Blue Owl alleges that "Defendants had a meeting of the minds to accomplish their object by providing and causing to be provided materially false, misleading, and fraudulent financial projections, statements, and omission that would induce Blue Owl to invest in the Company[.]" ¶ 160. "In order to plead a claim for civil conspiracy, a complaint must allege sufficient facts to establish (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Harvey v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 2017 UT 75, ¶ 70, 416 P.3d 401. This claim thus requires "***as one of [its] essential elements***, an underlying tort." *Estrada v. Mendoza*, 2012 UT App 82, ¶ 13, 275 P.3d 1024 (quoting *Puttuck v. Gendron*, 2008 UT App 362, ¶ 21, 199 P.3d 971) (alteration in original). As such, "[w]here plaintiffs have not adequately pleaded any of the basic torts they allege . . . dismissal of their civil conspiracy claim is appropriate." *Id.* Further, "insofar as the underlying tort is fraud, the fraud must be pleaded with particularity." *Coroles*, 2003 UT App 339, ¶ 36. Here, Blue Owl explicitly relies on the tort of fraud in support of its civil conspiracy claim. *See* ¶¶ 159–60. Because Blue Owl has failed to adequately plead a fraud claim with particularity, its claim for civil conspiracy must also be dismissed.

**Aiding and Abetting Fraud.** Blue Owl also asserts that "[e]ach Defendant aided and abetted the wrongful conduct perpetrated against Blue Owl and the other Lenders by every other Defendant." ¶ 176. This claim fails because "Utah does not recognize a claim for aiding and abetting fraud." *Pope v. Wells Fargo Bank, N.A.*, No. 2:23-cv-86 JNP DBP, 2023 WL 9604555, at *5 (D. Utah Dec. 27, 2023), *report and recommendation adopted*, 2024 WL 555133 (D. Utah Feb. 9, 2024); *see also DiTucci v. Ashby*, No. 2:19-cv-277-TC-PMW, 2020 WL 956890, at *5 (D. Utah Feb. 27, 2020) ("But setting aside the issue of adequate pleading, the court is not convinced

that aiding and abetting fraud is even a permissible cause of action.  As the [defendants] pointed

out in their motion, no Utah court has ever recognized such a claim.").  And, even if Blue Owl's

aiding and abetting claim was cognizable under Utah law, "the aiding and abetting fraud claim as

a whole (as opposed to only the 'underlying fraud' element of the claim) . . . [is] subject to rule

9(b)." *Coroles*, 2003 UT App 339, ¶ 39.  This claim therefore fails.

## V.    The Unjust Enrichment Claim Fails

Finally, and in the alternative, Blue Owl asserts an unjust enrichment claim against all

Defendants, claiming they were unjustly enriched by the Dividend at Blue Owl's expense. ¶ 192.

"Unjust enrichment is designed to provide an equitable remedy where one does not exist at law."

*AGTC Inc. v. CoBon Energy LLC*, 2019 UT App 124, ¶ 19, 447 P.3d 123.  To pursue an equitable

remedy, Blue Owl "must affirmatively show a lack of an adequate remedy at law on the face of

the pleading."  *BMF Advance, LLC v. Litiscape, LLC*, No. 2:21-cv-00103-DBB, 2022 WL

1307830, at *5 (D. Utah May 2, 2022) ("[T]he complaint must contain some kind of averment that

[plaintiff] lacks an adequate remedy at law, whether it states so expressly or in some other clear

way (e.g., by stating that no valid contract exists)."); *see also Thorpe v. Washington City*, 2010 UT

App 297, ¶ 28, 243 P.3d 500 (similar).  "[W]here 'an express contract covering the subject matter

of the litigation' exists, recovery for unjust enrichment is not available."  *Selvig v. Blockbuster*

*Enters.*, LC, 2011 UT 39, ¶ 30, 266 P.3d 691; *see also Ashby v. Ashby*, 2010 UT 7, ¶ 14, 227 P.3d

246 ("[A] prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable

contract governing the rights and obligations of the parties relating to the conduct at issue.").

Blue Owl has not sufficiently pleaded that there is no adequate remedy at law; rather, the

entire premise of the FAC is a series of contracts under which Blue Owl alleges it can sue if it

believes it has been damaged.  And, the mere fact that Defendants benefited in some way from the

Loan Agreement does not give rise to a claim for unjust enrichment.  *See Com. Fixtures &*

*Furnishings, Inc. v. Adams*, 564 P.2d 773, 774 (Utah 1977) ("The mere fact that a third person benefits from a contract between two others does not make such third person liable in quasi-contract, unjust enrichment, or restitution[.]").  This claim should be dismissed.

## <u>CONCLUSION</u>

The FAC should be dismissed in its entirety on *forum non conveniens* grounds.  In the alternative, the FAC should be dismissed in its entirety for failure to state a viable claim for relief.  Because "it appears to a certainty that [Blue Owl] cannot state a claim," dismissal with prejudice is appropriate.  *Carlton v. Brown*, 2014 UT 6, ¶ 14 & n.5, 323 P.3d 571.

DATE: August 12, 2024

**PARR BROWN GEE & LOVELESS**

/s/ David C. Reymann
David C. Reymann
Kade N. Olsen
Tammy M. Frisby

101 South 200 East, Suite 700
Salt Lake City, Utah 84111
(801) 532-7840
dreymann@parrbrown.com
kolsen@parrbrown.com
tfrisby@parrbrown.com

*For defendants*: Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino,
Kyle Murphy, Walker Edison Holding Co.,
LLC, Prospect Hill Growth Fund II, L.P.,
Prospect Hill Growth Fund II Co-Invest,
L.P., Prospect Hill Growth Partners, L.P.,
JWC-WE Holdco, LLC, and JWC-WE
Holdings, L.P.

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**

/s/ Geoffrey Chepiga
Geoffrey Chepiga
William Clareman

1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000
gchepiga@paulweiss.com
wclareman@paulweiss.com

*For defendants*: Prospect Hill Growth
Fund II, L.P., Prospect Hill Growth Fund
II Co-Invest, L.P., Prospect Hill Growth
Partners, L.P., JWC-WE Holdco, LLC, and
JWC-WE Holdings, L.P.

**SPERLING & SLATER, LLC**

/s/ Greg Shinall
Greg Shinall
Matthew H. Rice

55 West Monroe Street, 32nd Floor
Chicago, Illinois 60603
(312) 641-3200
shinall@sperling-law.com
mrice@sperling-law.com

*For defendants*: Adam Suttin, Phil
Damiano, Kyle Casella, David Fiorentino,
Kyle Murphy, and Walker Edison Holding
Co., LLC

**PARKINSON BENSON POTTER LLP**

/s/ Brennan H. Moss
Brennan H. Moss

2750 Rasmussen Rd, Suite H-107
Park City, UT 84098
(801) 401-1608
brennan@pbplaw.com

*For defendants*: Brad Bonham, MB & BB
Holdings, LLC, and Matt Davis

28

## CERTIFICATE OF COMPLIANCE

Pursuant to Utah R. Civ. P. 7(q)(3), I hereby certify that the foregoing **DEFENDANTS'**

**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** complies with the word

limits in Utah R. Civ. P. 7(q)(1) and contains 8,968 words, excluding the items identified in Utah

R. Civ. P. 7(q)(2).

/s/ David C. Reymann

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of August 2024, I electronically filed the foregoing

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**, which

served all counsel of record.

/s/ David C. Reymann

29

**Notice to responding party**

You have a limited amount of time to respond to this motion. In most cases, you must file a written response with the court and provide a copy to the other party:

- within 14 days of this motion being filed, if the motion will be decided by a judge, or
- at least 14 days before the hearing, if the motion will be decided by a commissioner.

In some situations a statute or court order may specify a different deadline.

If you do not respond to this motion or attend the hearing, the person who filed the motion may get what they requested.

See the court's Motions page for more information about the motions process, deadlines and forms: utcourts.gov/motions



Scan QR code
to visit page

**Finding help**

The court's Finding Legal Help web page (utcourts.gov/help) provides information about the ways you can get legal help, including the Self-Help Center, reduced-fee attorneys, limited legal help and free legal clinics.



Scan QR code
to visit page

**Aviso para la parte que responde**

Su tiempo para responder a esta moción es limitado. En la mayoría de casos deberá presentar una respuesta escrita con el tribunal y darle una copia de la misma a la otra parte:

- dentro de 14 días del día que se presenta la moción, si la misma será resuelta por un juez, o
- por lo menos 14 días antes de la audiencia, si la misma será resuelta por un comisionado.

En algunos casos debido a un estatuto o a una orden de un juez la fecha límite podrá ser distinta.

Si usted no responde a esta moción ni se presenta a la audiencia, la persona que presentó la moción podría recibir lo que pidió.

Vea la página del tribunal sobre Mociones para encontrar más información sobre el proceso de las mociones, las fechas límites y los formularios:

utcourts.gov/motions-span



Para accesar esta página
escanee el código QR

**Cómo encontrar ayuda legal**

La página de la internet del tribunal Cómo encontrar ayuda legal (utcourts.gov/help-span) tiene información sobre algunas maneras de encontrar ayuda legal, incluyendo el Centro de Ayuda de los Tribunales de Utah, abogados que ofrecen descuentos u ofrecen ayuda legal limitada, y talleres legales gratuitos.

Para accesar esta página
escanee el código QR